1  Howard Holderness, CA Bar No. 169814
   MORGAN, LEWIS & BOCKIUS LLP
2  1 Market Street, Spear Tower, 25th Floor
   San Francisco, CA  94105
3  (415) 442-1000 (Telephone)
   (415) 442-1001 (Facsimile)
4

5  Charles L. Babcock, IV, TX Bar No. 01479500
   JACKSON WALKER L.L.P.
6  1401 McKinney, Suite 1900
   Houston, Texas  77010
7  Admitted Pro Hac Vice
   (713) 752-4200 (Telephone)
8  (713) 752-4221 (Facsimile)

9
   George L. McWilliams
10 LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
   TX Bar No. 13877000; AR Bar No. 68078
11 406 Walnut, P.O. Box 58
   Texarkana, ARK-TX  75504-0058
12 Admitted Pro Hac Vice
   (903) 277-0098 (Telephone)
13 (870) 773-2967 (Facsimile)

14
   Attorneys for Respondent
15 RICHARD FRENKEL

16                  UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18 ILLINOIS COMPUTER RESEARCH, LLC,          Miscellaneous Action No.
        Plaintiff and Counterclaim Defendant,   CV 5:08-mc-80074-JF (HRL)
19
                    vs.                        **RICHARD FRENKEL'S**
20                                             **DECLARATION IN SUPPORT OF**
   FISH & RICHARDSON P.C.,                     **OPPOSITION TO MOTION UNDER**
21      Defendant, Counterclaimant and Third   **FED.R.CIV.P. 45 OF ILLINOIS**
        Party Plaintiff,                       **COMPUTER RESEARCH LLC AND**
22                                             **SCOTT C. HARRIS TO COMPEL**
                    vs.                        **RICHARD FRENKEL'S DEPOSITION**
23                                             **AND DOCUMENT PRODUCTION IN**
   SCOTT C. HARRIS,                            **APRIL 2008**
24      Third-Party Defendant and
        Counterclaimant
25
                    vs.
26
   FISH & RICHARDSON P.C.,
27      Defendant, Counterclaimant, Third
        Party Plaintiff and Counterclaim
28      Defendant

RICHARD FRENKEL'S DECLARATION IN SUPPORT OF
OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS
COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO
COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
PRODUCTION IN APRIL 2008

1    I, RICHARD FRENKEL, declare and state as follows:

2    I make this declaration in support of my Memorandum in Opposition to Motion under

3    Fed.R.Civ.P. 45 of Illinois Computer Research LLC and Scott C. Harris to Compel Richard

4    Frenkel's Deposition and Document Production in April 2008; and in support of Cisco Systems,

5    Inc.'s Memorandum in Opposition to Motion under Fed.R.Civ.P. 45 of Illinois Computer

6    Research LLC and Scott C. Harris to Compel Richard Frenkel's Deposition and Document

7    Production in April 2008. I have personal knowledge of the following facts and, if called as a

8    witness, could and would testify thereto.

9    1.    I am an attorney and member of the California Bar since 1999, and am licensed to

10    practice in California.

11    2.    I have worked at Cisco since February 2006 as an attorney in the Intellectual

12    Property Legal Department. As of April 2007, my full title became Director, Intellectual Property

13    – Consumer & Emerging Technologies. Among my responsibilities since April 2007 has been

14    oversight of certain patent litigation and other disputes involving the company, and management

15    of employees doing the same. I am one of a number of lawyers employed by Cisco to oversee the

16    company's intellectual property litigation

17    3.    On May 9, 2007, I began a news-oriented website called "Patent Troll Tracker."

18    My stated goal, in my very first post, was "to educate the world on how many patent cases are out

19    there that are filed by trolls." I continued that education by providing regular news articles about

20    cases filed by non-practicing entities colloquially known as "patent trolls."

21    4.    The Patent Troll Tracker website continued until late February 2008. During these

22    nine months, I published over 180 articles about different facets of patent litigation and "patent

23    trolls."

24    5.    Patent Troll Tracker was published regularly. For example, I had a monthly

25    installment where I would review the patent litigation statistics from the previous month, and

26    report on litigation filed by non-practicing entities. I call this my "Troll Call." Besides the

27    monthly feature, I would try to have an assortment of stories, about two or three per week,

28

5081340v1                    2.    RICHARD FRENKEL'S DECLARATION IN SUPPORT OF
OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS
COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO
COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
PRODUCTION IN APRIL 2008

1    focusing on different interesting cases and the debate on patent reform issues.

2        6.        Until earlier this year, I published the Patent Troll Tracker website anonymously.

3    In September 2007, Chicago attorney Raymond P. Niro ("Niro") contacted me, seeking to find out

4    my true identity.  Niro is well known for writing articles and giving interviews describing himself

5    as the best protector of "patent trolls," such as a July 20, 2006 article in *IP Law & Business*

6    featuring Niro, titled "Meet the Original Patent Troll."  Starting with his mid-September 2007

7    contact to me, Niro began giving interviews publicly decrying my website, and wrote me several

8    emails.  I responded to some of his correspondence in my own website.

9        7.        In late November 2007, I learned that Niro was offering a $5,000 reward for

10   information leading to my identity.  Later, he increased that reward to $10,000, and then to

11   $15,000.  When news stories on other websites and magazines began discussing Niro's reward,

12   someone evidently posted a comment on the website Slashdot, which Niro claimed to be a death

13   threat against him and his family.  After Niro emailed me about this, I explained to him that I had

14   no control over Slashdot, and had nothing to do with whoever posted there.  I told him that I

15   sympathized with him, and I wrote an article on my website discouraging this kind of behavior

16   and encouraging civility.

17       8.        I voluntarily disclosed my identity on my website on February 23, 2008.  My

18   understanding is that Niro claims that he did not have to pay the reward.

19       9.        After I revealed myself to be an attorney employed by Cisco, my employer and I

20   were sued in Texas for defamation relating to an article I posted on October 18, 2007.  As a result

21   of the defamation lawsuit and related investigations, and since the Patent Troll Tracker website is

22   a website that is published solely by me, I decided to temporarily suspend the website.  I intend to

23   resume the publication in the near future, after taking time to attend to some of the legal matters

24   that need my immediate attention.  When I resume the publication, I intend to continue to

25   regularly report on patent reform issues as well as patent litigation filed across the country,

26   focusing primarily on news about patent litigation filed by people or entities that are not making

27   any products or providing any services related to the patents.  At that time, the website will again

28

RICHARD FRENKEL'S DECLARATION IN SUPPORT OF
OPPOSITION TO MOTION UNDER FED.R.CIV P. 45 OF ILLINOIS
COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO
COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
PRODUCTION IN APRIL 2008

1    be open to the public.

2        10.    Niro was a guest on an internet radio program ("Lawyer 2 Lawyer") on March 27,

3    2008 and repeated his criticisms of my website announcing that "I am going to be taking his

4    deposition in a case shortly." *Id.* He also made reference to the Arkansas and Texas litigation

5    where I am a defendant along with Cisco, stating that "I know Johnny Ward (the Arkansas

6    Plaintiff) very well and I know Eric [Albritton] (the Texas plaintiff) too." He then commented on

7    the litigation in a way unfavorable to me.

8        11.    On the morning of Saturday, March 29, as I was leaving the house, I found a

9    subpoena on my doorstep.

10        12.    The subpoena at issue comes from a case pending in the United States District

11    Court for the Northern District of Illinois, Eastern Division, Case No. 07-C-5081, Illinois

12    Computer Research, LLC v. Google, Inc.  A true and correct copy of the subpoena is attached

13    hereto as Exhibit A-1.  My understanding is that the subpoena was issued at the request of the

14    Plaintiff/Counterclaim Defendant Illinois Computer Research ("ICR") and a third party defendant

15    and counterclaimant Scott C. Harris ("Harris").  The Defendant and Counter-Plaintiff is Fish &

16    Richardson P.C. ("Fish").  ICR and Harris are represented by Raymond Niro of Niro, Scavone,

17    Haller and Niro.  The only cited relationship in the subpoena that I am alleged to have with the

18    Chicago case is as "a close associate of Fish."  I am not a party to the Chicago case and I did not

19    have any involvement in Fish's alleged tortious interference with ICR's licensing activity.  I did

20    not work with Fish to create adverse publicity against Harris, ICR, its principals, or their counsel.

21        13.    It is not true that I am a close associate of Fish.  I appeared on one CLE "webinar"

22    panel with a Fish lawyer, Kathi Lutton, and others, and I did not organize the event.  I have never

23    been employed by Fish, and during my career as a patent litigator before joining Cisco, I was

24    personally adverse to Fish in at least two cases.  When I joined Cisco, I learned that Fish was

25    adverse to Cisco in a case pending in the District of Massachusetts.  Up until this case was

26    resolved in mid-October 2007, this conflict prevented Cisco from hiring Fish.

27        14.    In mid-November, it is my understanding that Cisco hired Fish to take over

28

5081340v1                        4.

1   representation of Cisco in a patent infringement case pending in Delaware.  It is not true that I

2   personally retained Fish on behalf of my employer, Cisco.  I was not even involved in the

3   interviews of Fish, if there were any.  To the best of my knowledge, the Delaware litigation is the

4   only litigation matter where Fish represents Cisco.  Although I do not have direct responsibility

5   for this Delaware litigation involving Fish, I have been indirectly involved in that litigation.

6       15.    As part of the ICR/Harris subpoena, I am being asked to testify about and produce

7   documents regarding confidential sources and unpublished information that I have used to gather

8   and report news about patent litigation on my Patent Troll Tracker website.  The subpoena also

9   attempts to compel me to testify about and to produce unpublished documents that I obtained and

10  used for preparation of my communications to the public on my Patent Troll Tracker website.  For

11  example, Request No. 6 asks for "Investigative materials, sources for, and procedure for Patent

12  Troll Tracker blog articles identified in Exhibits A to C."

13      16.    Throughout the entire publication of Patent Troll Tracker, I have been engaged in

14  newsgathering activities for the purpose of reporting on news about patent litigation and the

15  debate regarding patent reform.  I am concerned that if I am forced to produce unpublished

16  information and to testify about and produce such material that it will result in a serious detriment

17  to my ability to gather and disseminate this news.

18      17.    For example, many of the ideas for my articles originated from tips readers would

19  send me about patent lawsuits that were filed, or publicly-available corporate filings by shell

20  corporations revealing the identity of their true owners.  Should I be compelled to reveal my

21  sources for these stories, readers will be less likely in the future to provide me with such

22  information.

23      18.    Moreover, the subpoena deposition topics and document requests are so grossly

24  overbroad and are not properly limited to relevant and non-privileged information in the

25  ICR/Harris/Fish litigation.  As such, complying with the subpoena would impose an undue burden

26  upon me to attempt to comply.  The subpoena, which I found on my doorstep on Saturday

27  morning, March 29, 2008, only gave me nine days to produce numerous documents and only ten

28

RICHARD FRENKEL'S DECLARATION IN SUPPORT OF
OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS
COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO
COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
PRODUCTION IN APRIL 2008

1  days before it required me to appear for a deposition. My objections for each and every document

2  requested are set out by my counsel, George L. McWilliams, as an exhibit to his declaration,

3  attached to Richard Frenkel's Notice of Motion; Motion to Quash Subpoena; Motion for

4  Protective Order; and Memorandum of Points and Authorities. I incorporate those objections by

5  reference herein.

6        19.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

7  Scott Harris.

8        20.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

9  Illinois Computer Research.

10       21.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

11  James Beauregard Parker.

12       22.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

13  the Chicago litigation involving Illinois Computer Research, Fish, and Scott Harris.

14       23.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

15  Raymond P. Niro.

16       24.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

17  the Niro Scavone law firm.

18       25.    I have had no communication with Kathi Lutton or anyone else at Fish regarding

19  Courtney Sherrer, and I have no idea what is her connection to Scott Harris, Illinois Computer

20  Research, James Beauregard Parker, or the Chicago litigation. I had a single article in the history

21  of my website mentioning Courtney Sherrer as the listed owner on corporate records of SP

22  Technologies, what I believed at the time to be a shell corporation that filed a lawsuit in the

23  Eastern District of Texas.

24       I declare under penalty of perjury that the foregoing is true and correct.

25       Executed on April 19, 2008.

26

27                                        Richard Frenkel

28

5081340v1                          6.    RICHARD FRENKEL'S DECLARATION IN SUPPORT OF
                                         OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS
                                         COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO
                                         COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
                                         PRODUCTION IN APRIL 2008

# EXHIBIT A-1

AO88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

Northern District of California, San Jose Division

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC., <br> *Plaintiff and Counterclaim  Defendant,* <br> v. <br> FISH & RICHARDSON P.C., <br> *Defendant, Counterclaimant and* <br> *Third-Party Plaintiff,* <br> v. <br> SCOTT C. HARRIS, <br> *Third-Party Defendant and Counterclaimant,* <br> v. <br> FISH & RICHARDSON P.C., <br> *Defendant, Counterclaimant, Third-Party* <br> Plaintiff and Counterclaim Defendant. | **SUBPOENA IN A CIVIL CASE**[1] <br><br> In the U.S. District Court, Northern District of <br> Illinois, Eastern Division <br><br> Case. No. 07 C 5081 |

To:     Richard Frenkel
        170 West Tasman Dr.
        San Jose, CA 95134
        (408)525-5673

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM: |
|---|---|
| | DATE AND TIME : |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. See **Attached Schedule A.**

| PLACE OF DEPOSITION <br> Cisco Systems, Inc. <br> 170 West Tasman Dr. <br> San Jose, CA 95134  **Or elsewhere by agreement** | DATE AND TIME:    9:00 p.m., April 8, 2008 |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects. **See Attached Schedule A.**

| PLACE: Cisco Systems, Inc. <br> 170 West Tasman Dr. <br> San Jose, CA 95134 <br> **Or elsewhere by agreement or by Federal Express to address below:** <br> Offices of Niro, Scavone, Haller & Niro, 181 W. Madison Street – Suite <br> 4600, Chicago, IL  60602 | DATE AND TIME:    9:00 a.m., April 7, 2008 |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME: |
|---|---|

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Fed. R.Civ.P. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT | DATE:    March 17, 2008 |
|---|---|
| *[signature]* | |

[1] If action is pending in district other than district of issuance, state district under case number.

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| Karen L. Blouin, Niro, Scavone, Haller & Niro, 181 West Madison Street, Suite 4600, Chicago, IL 60602; Telephone 312-236-0733 | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

**Rule 45, Fed. R. Civ. P., Parts C & D**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(ii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assurances that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

{ LUNN / 002 / 00000900.DOC /}

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### Definitions

A.    The term "Harris" means Scott Harris.

B.    The term "Fish" means Fish & Richardson P.C. or any of its attorneys (including its outside counsel), employees, shareholders, principals, managers, and agents.

C.    The term "the relevant lawsuit" refers to Civil Action, Case No. 07 C 5081, filed in the District Court of the Northern District of Illinois.

D.    "NSHN" means any one or more of Niro, Scavone, Haller & Niro, its employees, agents and representatives.

E.    The term "Cisco" means Cisco Systems, Inc. or any of its officers, directors, agents, attorneys, employees, successors, subsidiaries, predecessors, divisions, or affiliates

F.    The term "Jenner & Block" means Jenner & Block LLP, its employees, agents and representatives.

G.    The term "person" refers to both natural persons and to corporate or other business entities and the "acts" of a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.

H.    To "identify a person" means to state the person's name and business address and telephone number and, additionally, in the case of a natural person, his home address, employer, present occupation, job title and telephone number.

I.    "Document" means the broadest definition of document under the Federal Rules of Civil Procedure and the cases interpreting those rules, and specifically includes information in computer-readable format.

1

J.    The terms "and" and "or" should be understood as either conjunctive or disjunctive, whichever is more inclusive in context.

K.    To "identify" or "locate" documents means to provide a brief description of each document sufficient to support a request for production, including at least the type of document, date of the document, identification of the author, as well as identification of each person who presently has custody of the document and of any copy thereof.

L.    The term "communication" means any transmittal of information in the form of facts, ideas, inquiries, or otherwise.

M.    The term "relating" means concerning, referring to, describing, evidencing or constituting.

N.    The term "all" shall be construed as all and each and the term "each" shall be construed as all and each.

O.    The use of the singular form of any word includes the plural and vice versa.

P.    In producing documents, indicate the number (including the appropriate subsection) of each request to which a produced document is responsive.

Q.    In producing documents, furnish all documents known, available to or within your control.

R.    In the event that you object to any request or part thereof, you are requested to produce all documents to which such objection does not apply.

2

<u>Document Categories</u>

1.    All documents that refer to, relate to, comment upon or constitute any of the following deposition topics.

<u>Deposition Topics</u>

1.    Communications with Kathi Lutton concerning Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, Fish and Richardson or the relevant lawsuit.

2.    Papers, speeches and publications, including, but not limited to webinars, where Kathi Lutton was a collaborator, participant, or mentor.

3.    Communications with Fish or its counsel concerning Scott Harris, NSHN, James B. Parker, Courtney Sherrer, Raymond P. Niro or the relevant lawsuit, including without limitation, an identity of the individuals from Fish with whom communications were made and the substance of those communications.

4.    All lawsuits where Fish was retained by Cisco for representation, including any in which Kathi Lutton filed an appearance.

5.    Factual bases for Patent Troll Tracker blog articles identified in Exhibits A to C.

6.    Investigative materials, sources for, and procedure for Patent Troll Tracker blog articles identified in Exhibits A to C.

7.    All Patent Troll Tracker blog entries concerning Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, or the relevant lawsuit.

8.    The origin and history of the Patent Troll Tracker blog.

9.    The decisions on subjects, including but limited to Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, addressed in the Patent Troll Tracker blog.

10.    Any communications with Jenner & Block regarding Scott Harris or the relevant lawsuit.

LA SALLE PROCESS SERVERS LP
COST AND WITNESS FEES ACCOUNT
29 S. LA SALLE STREET, SUITE 956
CHICAGO, IL 60603

2-15-710

13879

DATE _3/18/08_

PAY TO THE
ORDER OF _Richard Frenkel_ | $ 45.00

_Forty Five_ _____ DOLLARS

THE NORTHERN TRUST COMPANY

VOID AFTER 90 DAYS

Northern Trust

MEMO _____

MP

⑈0710001521⑈ 000 2234912⑈ 13879

# EXHIBIT A

| SEARCH BLOG|   | FLAG BLOG|Next Blog»                    Create Blog | Sign In

# Patent Troll Tracker

Showing posts for query Niro.   Show all posts

**SATURDAY, JANUARY 19, 2008**

### The Writing Process

When I started this blog, I just wanted to focus on the great many patent cases being brought by companies that make no products, and exist solely to license patents and monetize them. There was a convenient term already out there -- I'm not Peter Detkin, so I didn't coin it. So I used it: patent troll. I guess I didn't expect all the kerfuffle that would cause among those who make a living monetizing intellectual property. Even Ray Niro used the term in his chapter in the book *Making Innovation Pay* - albeit while arguing that these so-called patent trolls were beneficial to society. Right next to the picture of him with his Ferrari near his Aspen home.

Anyway, over the last few months I have begun to transition out the term. It doesn't add anything to the dialogue; in fact, it distracts from the message I'm trying to get across. That message being that patents are not being asserted like they were 20 years ago, that today's American small and large businesses have to navigate a minefield like never before. Whether the plaintiffs are well-deserving individual inventors, their shell corporations, or large licensing entities solely seeking to monetize patents, it adds up for the mom-and-pop businesses and the big corporations alike. All I want to do is highlight who is behind these cases, who is backing them financially, and where these cases are being litigated. And if we can have some fun along the way, and not take ourselves so seriously, all the better, right?

This whole "reward" business has obviously created a roadblock in my quest. Mr. Niro claims to be close - he may even know who I am already. So be it. This blog, or others like it, will continue whether I'm unmasked or not. In fact, I won't be surprised if others plan similar types of information-gathering services. For profit, of course. (I knew I should have patented this business method).

So I'll continue on for a while, see how it goes. But despite the fact that the vast majority of my readers when surveyed said they aren't offended by the term patent troll, I'm going to cut back on my use, if

**Email TrollTracker**

trolltracker@gmail.com

**About Me**

Troll Tracker
Just a lawyer, interested in patent cases, but not interested in publicity

View my complete profile

**EFF is helping bloggers protect their Constitutional right to anonymous speech**



**Blogs TrollTracker Reads**

Dennis Crouch's Patently-O Blog

Peter Zura's 271 Patent Blog

Patent Prospector

Michael Smith's EDTX Blog

Phillip Brooks' Patent Infringement Updates

Techdirt

Above The Law

WSJ Law Blog

Overlawyered

Patent Baristas

Just a Patent Examiner

Hal Wegner's Blog



not stop using it altogether. You can make your own conclusions.

Many of you wrote in comments in the survey that you don't see how I get the time to write as much as I do. This post took 20 minutes, including writing and editing. There was no research involved. Most of my posts, including research, writing, and editing, take 30-45 minutes, and I do about 4 a week. I tend to think of my ideas for a post while exercising - and usually desperately scribbling notes when I'm done so I don't forget. Some posts (Fortune 100) take longer than others.

My estimate is that over the course of a year, I probably will have sacrificed 200 billable hours to this blog. Lucky for me, I'm a workaholic, so due to the massive hours I have put up in the past, nobody is going to miss those billable hours. I do much of my writing on the weekend.

For example, due to the fact I'm definitely crammed with work this week, I already wrote this week's posts. Unless something earth-shattering happens, this week I'm featuring a look back at entities I have featured in the past. On Monday, I have a dream that I'll feature Acacia, and their efforts to make all inventors equal. Well, I'll focus only on Paul Ware and J. Carl Cooper on Monday, but these are impressive inventors, and their litigation is no less impressive.

If any new cases are filed this week -- well, they'll have to wait until I extricate myself from this pile of paper.

Posted by Troll Tracker at 11:46 AM    11 comments
Labels: blogging

FRIDAY, JANUARY 18, 2008

## Survey Results

View my survey results here. For those of you who just want the summary, read on and don't click through. Note that I couldn't enable the results with the "other" entries revealed, because a few of you provided personal information, such as phone numbers. It would have been a violation of those people's privacy to enable everyone to see, and there was no way for me to delete any entries. So, instead, below are some typical responses for each of the questions which allowed an "other" answer.

The results will remain available for the next week or so, after which the link will be inactive.

1. Are you offended, in general, by the term "patent troll?"

IP Geek

Delaware IP Law Blog

Chicago IP Litigation Blog

Washington State Patent Law Blog

Anticipate This!

Benefit of Hindsight

Patent Demand

Ideation Lab

SCOTUSBlog

How Appealing

The Volokh Conspiracy

Patently Absurd Inventions Archive

Patently Silly

**EMail Newsletter**

Enter your email address below to receive the Patent Troll Tracker blog posts in a daily newsletter. The newsletter, containing the previous day's posts, will be emailed late in the morning, Eastern US Time.

Enter your email address:



Subscribe
Delivered by FeedBurner

**Subscribe Now: Feed Icon**

Subscribe in a reader

**Google**

Google

**Blog Archive**

▼ 2008 (18)

▼ January (18)

Minerva Awarded Exclusive

12% of you are offended.
88% are not.

**2. To which of the following categories should the term patent troll apply?**
88% of you said it should apply to "Corporations whose sole purpose is to obtain and assert patents, with little or no connection to the inventors."
73% of you said it should apply to "Venture capital or other financial firms who are acquiring IP as an investment to be capitalized through enforcement (e.g., Altitude Capital Partners)"
64% of you said it should apply to "Contingency fee lawyers who go around putting bounties on bloggers' heads"
58% of you said it should apply to "Shell corporations set up by the patent inventor, who have filed numerous lawsuits against dozens of companies"
51% of you said it should apply to "Corporations that make products, but are acquiring and asserting patents with no relationship to their products, as a revenue-generating business model"
The other choices got less than majority support.
41 of you indicated "other." Here are some of the more interesting ones:

--> anyone (including, if the shoe fits, individual inventors and/or university entities) engaged primarily in naked patent licensing without any attendant technology transfer; anyone whose business is inventing patents rather than patenting inventions (though perhaps the latter should be labeled troll facilitators)

-->One key feature of a patent troll is the inability of the defendant to assert any patents against patent counterclaims. Corporations that make products take a risk by suing, regardless of the relationship between the asserted patents and their products. Trolls take no risk, and that's what dictates their style of litigating akin to class action securities lawyers.

-->Patent attorneys who write up paper patents with themselves listed as the inventor or co-inventor.

-->Local and state government hiding behind 14th amendment

-->There is no such thing

**3. If I decide to stop using the term "patent troll," which of the following choices is the best substitute?**
66% of you implore me to keep using the term.
17% of you like "non-practicing entity"
Only 6% of you liked "patent speculator"

Paul Ware and Acacia
The Writing Process
Survey Results
A Note About Civility
Oral Argument in Quanta v. LG
Patent Exhaustion Takes Center Stage at SCOTUS
Is the United States Navy the Latest Patent Troll?...
New York Times Article Sets the Stage for Upcoming...
Troll Call and Other Statistics for December 2007
Global Patent Holdings Sues Boca Raton Resort & Cl...
Wednesday Miscellany, 1/9/08
Number of Utility Patent Claims Issued By USPTO Pe...
Rembrandt's Interesting Injunction Strategy (Possi...
4 Interesting New Cases From Last 2 Weeks of Decem...
Acacia December 2007 Update
Global Patent Holdings Update
Happy New Year

► 2007 (136)

Labels

104 E. Houston St. (3)
1st Media (1)
1st Technology (3)
Acacia (42)
Accolade Systems (1)
ADISCOV (2)
Adv Tech Incubator (1)
Alexsam (4)
Aloft Media (1)

21 of you indicated "other." Here are some of the more interesting ones:

-->Patent Shark (I got a lot of these)

-->"PLEC" - Patent Licensing / Enforcement Company

-->patent enforcer

-->Patent [insert derogatory term here]

-->dirty rotten patent sharks (with hat tip to Monty Python episode on names for Belgians)

4. How do you feel about the mix of serious content and humorous content on the blog?
88% of you said "just right."
10% of you said "too serious."
2% of you are no fun whatsoever.

5. If you have any suggestions on how to improve/enhance the blog, please let me know here.
I got 48 comments, with a wide range. Here are some of the more interesting ones:

-->I got quite a few "don't change a thing" - thanks...

-->1. Hold a limerick or "actual rhyme" poetry contest--that would be more fun than haiku. 2. Report more on the patent attorneys with the white hats who fight the big, bad trolls. 3. Solicit other attorneys over the Web to anonymously help you in various projects (e.g., compiling particular kinds of lawsuit statistics; researching and shedding light on the background of certain trolls) to save yourself time and increase effectiveness. 4. Provide an overview of the typical strategies of patent trolls both pre-lawsuit and after a lawsuit is filed. 5. Provide an overview of the typical order of events in a litigation in the various rocket docket jurisdictions (and explain how this differs from non-rocket dockets). [May be a good project to ask other litigators to contribute to, anonymously, one from each of the relevant jurisdictions.]

-->If you are getting too busy, consider accepting posts by guest commentators, sort of like this blog does: http://www.volokh.com/ (note - I'm considering it)

-->More JPEGs

-->add a forum for people to discuss the cases (note - anyone want to

Altitude Capital Partners (9)
anagrams (3)
anonymity (11)
Antor Media (5)
AOL (1)
Apple (8)
Aris Mardirossian (1)
Artesyn (1)
AT_T (6)
attorney-trolls (7)
Austin (1)
Automated Facilities (2)
Autotext (3)
Barry Thomas (1)
BarTex (3)
Beneficial Innovations (1)
Bill Gates (1)
bio-pharma (4)
blogging (15)
Bodog (2)
Boston (1)
bounty (2)
Brian Marcus (1)
British Technology Group (1)
Bruce Renouard (1)
Burst.com (1)
Cablevision (1)
Calvin Ayre (3)
Card Activation Techs (1)
champerty (1)
Charles Hill (1)
Choongsoo Park (1)
Ciba (1)
Cingular (1)
Cisco (4)
Citrix (1)
Clay Dark (1)

send me the "Dummies Guide" to adding a forum to your blog?)

-->I really enjoy reading your blog. I think you do a great job at uncovering a lot of shady lawsuits. However, sometimes I feel like you view anyone other than a large corporation as a patent troll. I know that you came up with metrics to classify level of troll (or non-troll) but the vibe is still there and I am glad that you have created this survey to (hopefully) remedy this problem. Individual inventors and bankrupt companies should be able to exercise their patent rights. They took a chance, disclosed their technology, and for one reason or another could not make it commercially successful. Those who are able to make the invention commercially successful should respect patent rights of others, as others should respect their patent rights.

-->Include nude pictures of the patent attornies involved. Seriously though - Check out Roughly Drafted. The writer uses some really nice graphics to make his points. (comment - no!!!)

-->Be more explicit in expressing the bases for your conclusions. You often assert premises to arguments that are assumed; if you are asserting a particular practice or tactic to be bad or unfair, explain why you think so, rather than simply saying that it is. For example, explain why it's such bad thing to sue multiple defendants if the claims asserted have merit.

-->I am offended by the constant mischaracterization of Acacia as a Patent Troll. Acacia has done an outstanding job of enforcing our patents as an exclusive licensee. We are a small company that could not afford to enforce the patents directly. As is the case of many of the patents that Acacia acts as exclusive licensee, ours are encompassed within our technology and actively marketed by our company. This hardly makes Acacia or our company a patent troll. Boo hoo for the big companies that would otherwise infringe our patents and would rather us be roadkill on their way to huge profits and market domination. I think you should get your facts staright before you start your mischaracterization campaign against Acacia or its clients. I find your vetting of the facts to be fairly accurate, however, this is poisoned by your bias. I do not accept that you would like to see inventors or small companies abridged from enforcing their patents to the benefit of large entities. Your blog is intelligent but this bias toward large entities is illogical.

6. Choose the answer below that best describes you:
16% of you chose "associate at law firm"
14% of you chose "in-house counsel"
14% of you chose "partner at law firm"
10% of you chose "small business owner"
8% of you chose "inventor"

Comcast (1)

Commil USA (2)

Computer Acceleration (3)

Constellation IP (1)

contingency fee (4)

Cooley (2)

Coronary Stent Visualization Corp. (1)

corporate shell games (2)

Creative Internet (1)

Credit Card Fraud Control Corp. (1)

Cross Atlantic (1)

CSIRO (3)

Cybergym (3)

Dallas (4)

Dan Henderson (1)

dance contest (1)

Data Encryption (1)

Data Match (2)

David Pridham (7)

Dechert (2)

defendants_sued (8)

Dell (2)

Dennis Crouch (8)

Diagnostic Systems (1)

Digital Choice (2)

Digital Reg (2)

Digital Technology Licensing (1)

Disc Link (1)

DJ (2)

DocuMed (1)

Document Generation Corp. (1)

eBay (1)

ECF (1)

Electrolux (1)

epicRealm (2)

Eric Albritton (3)

About 5% of you are at a law school (clearly, Dennis Crouch isn't referring enough people to me)
About 3% of you are at the PTO/US Courts/other government

That's the people who answered. I got 25% "others," with some of the interesting answers as follows:

-->I totally forgot about "consultants" - there were a few of you.

-->Journalists

-->Retired

-->Computer Scientist

-->Quite a few people identified themselves as "open source advocates" and the like

7. Choose the answer below that you think best describes me:
29% of you think I'm an associate at a law firm.
21% of you think I'm a partner at a law firm.
13% of you think I'm an in-house counsel.
8% of you think I'm at a law school.
Only 1 of you thinks I'm an inventor.
37 of you chose "other," with some of the interesting answers as follows:

-->You are a patent attorney that specializes in defending large corporations that willfully infringe on the patents of small inventors. You started troll tracker as a vehicle to pollute the jury poll against your rivals and potential rivals :)

-->someone with courage and insight

-->I haven't a clue and I don't care. You perform a public service. Keep it up.

-->Bored

-->I like this question. It gives a good picture of your motivation. Ego!

8. Where do you live?
23% of you live on the East Coast of the U.S.
21% of you live on the West Coast of the U.S.
14% of you live in the Midwest
10% of you live in Texas
10% of you live in Europe
5% of you live in Asia

Erich Spangenberg (13)

ESN (3)

Eurotroll (1)

Evil Pete (1)

examiner overload (1)

F_G Research (1)

Facebook (2)

Federal Circuit (4)

Fenner Investment (1)

Financial Systems Innovation (2)

Fish_Richardson (15)

Fluid Dynamics (1)

Ford (1)

Forgent (1)

Fortune 100 (4)

FotoMedia (1)

FRCP 1 (1)

Freedom Wireless (1)

Friedman Suder (4)

Function Media (2)

GE Healthcare (1)

Gellman (2)

Gemini IP (1)

General Patent Corp (2)

Global Commns (1)

Global Patent Holdings (10)

GM (1)

Google (11)

GPNE (1)

Guardian Media (1)

haiku (3)

Hal Wegner (3)

Harthcock (2)

Hennigan Bennett (3)

Hospital Systems (1)

HP (2)

Hugh Hefner (1)

**9. Where do you think I live?**
26% of you think I live on the East Coast of the U.S.
23% of you think I live in Texas
18% of you think I work at the Niro Scavone law firm or live on Planet Niro
16% of you think I live on the West Coast of the U.S.
1 of you thinks I live in India!

**10. What is your opinion on Global Patent Holdings' assertion of claim 17 of the reexamined '341 patent against anyone with a website with a JPEG image on it?**
46% of you haven't reviewed the claim.
27% of you chose "the claim is invalid" (whether you reviewed the claim before choosing that, I have no idea)
12% don't care, because it's my problem, not yours. Hey, thanks.

Here's a bonus: the top 10 search terms used to reach my blog in the last week (not including troll tracker or something similar):
1. Wiav Solutions
2. Erich Spangenberg
3. Acacia
4. Mondis
5. Altitude Capital
6. Scott Harris
7. silly patents
8. contingency fee lawyers
9. Jerry Harthcock
10. Global Patent Holdings
53. "I need a good patent attorney for my ofdm wireless idea"
58. "Is there a law to stop patent infringement?"
87. "How to troll for fish"
98. "Reverse commode"
101. "When did Barack Obama work for White & Case?" (it was Sidley, wasn't it?)
130. "Your ip address be gone, troll."

Thanks for all the feedback, everybody! I do appreciate it. I may be "unmasked" soon, and I'm not sure if I'll keep the blog going after that, or I might transform it into more of a community/collaboration. But until then, other than some dark periods coming up where work will make blogging just completely prohibitive, I'll be back with more interesting news on patent litigation in general, and patent trolls, shell corporations, individual inventors, greedy corporations, "serial infringers" (as Patent Hawk and others call them), and everyone else.

Posted by Troll Tracker at 9:03 AM    6 comments
Labels: blogging

Hybrid (2)

Hypercom (1)

IBM (2)

Illinois Computer Research (5)

injunctions (1)

Innovative Patented Technology (2)

Inpro (2)

Intellectual Ventures (7)

International Intellectual Mgmt (1)

International Printer (1)

IP business models (1)

IP Innovation (3)

iPhone (1)

J. Carl Cooper (1)

James Parker (9)

James Sokolove (1)

Jarg (1)

Jenner Block (2)

Johnny Ward (3)

Johnson_Johnson (1)

joint infringement (1)

Joseph Zito (2)

Judge Clark (5)

Judge Davis (3)

Judge Everingham (1)

Judge Folsom (3)

Judge Moore (1)

Judge Ward (2)

jury verdict (6)

Katten Muchin (1)

Katz (4)

Kevin Zilka (1)

Keystone Autonics (1)

Klausner (1)

KSR (3)

Larry Flynt (1)


FRIDAY, JANUARY 11, 2008

## Troll Call and Other Statistics for December 2007

We reached the end of 2007. All the other blogs are reporting an overall decrease in IP litigation, a cutback from 2006, or are reporting the slightest of increases in patent filings from 2006 to 2007. That's simply not true. By the real count -- the number of defendants sued for patent infringement -- 2007 was a record year. In fact, here's my headline: "2007 shows a 30% increase in patent litigation over 2006, fueled by a 40% increase in the Eastern District of Texas." And certainly from the number of patent cases brought by non-practicing entities and so-called patent trolls, it was a year that saw a tremendous increase in both the quantity and diversity of these entities.

Before we go on, let's explore statistics for a minute. Say in 2006 there are 25 lawsuits, each against 1 defendant. Then in 2007, there are 20 lawsuits, each against 5 defendants. 25 defendants sued 1 year, 100 the next. The patentees could have filed 100 lawsuits, and in effect, did do so. Why isn't that a 4-fold increase? Yet people look just at the number of cases filed, which gets them to declare a 20% decrease.

This month, I'd like to start with the 2007 year-end statistics. Here's what I have compiled:

As a disclaimer, these numbers are taken raw from PACER/ECF without my usual investigation to make sure they aren't a transfer/duplicate/etc. But since I'm comparing several years, there needs to be an apples-to-apples comparison, and I'm not about to go look at every case in 2006!One other disclaimer: I didn't actually count every defendant in every case. I took the top jurisdictions, counted them, and extrapolated. The ones I counted constituted over two-thirds of the patent cases, so if my number of defendants is off, it's not off by much. Plus, the same extrapolation method was used for all three years I compare below.

With those disclaimers out of the way, this is what the data shows when looking at the national patent infringement statistics:

- In 1990, there were 921 patent cases nationwide (1 in EDTX), and 1,596 defendants sued (1 in EDTX).
- In 2006, there were 2,822 patent cases nationwide (264 in EDTX), and 6,118 defendants sued (996 in EDTX).
- In 2007, there were 2,953 patent cases nationwide (364 in EDTX), and 8,045 defendants sued (1,402 in EDTX).

Larry Germer (1)
law firms (1)
LG (3)
LHConcepts (1)
Lin Packaging (1)
Linex (1)
linux (1)
Lonestar Inventions (2)
Lowe's (1)
LPL Licensing (1)
magically changing docket dates (1)
malpractice (1)
Marshall Credit (2)
Marshall Electronics (3)
Marshall Packaging (2)
Matt Powers (1)
McKesson (1)
McKool Smith (8)
MDL (2)
Media Technologies Licensing (1)
media troll-coverage (8)
Memory Control (1)
MercExchange (1)
Mershon (1)
MHL TEK (2)
Michael Smith (7)
Microsoft (9)
Minerva (6)
MIT (1)
Mobile Micromedia (2)
Mondis (2)
Monts_Ware (6)
motions_compel (1)
Motorola (3)
NDGA (1)
netPL (1)

- Comparing 2007 to 2006, nationwide there was a 4.6% increase in patent cases (I have read 6% elsewhere), but there was a **31.5% increase in the number of defendants sued for patent infringement**.
- Comparing 2007 to 2006 just for the Eastern District of Texas, there was a 37.9% increase in the number of patent cases, and there was a 40.8% increase in the number of defendants sued for patent infringement.
- Comparing 2007 to 1990, nationwide there has been over a tripling in the number of patent cases (+221%), and a quintupling in the number of defendants sued for patent infringement (+404%).
- In 1990, the Eastern District of Texas accounted for roughly 1/100 of all national patent cases, and less than 1/100 of all defendants sued.
- By 2007, those EDTX numbers had grown to being roughly 1/8 of all national patent cases and 1/5 of all defendants sued.

I say pshaw to the notion that patent infringement increased only 4-6% in 2007. Look at the defendants sued: there was over a 30% increase this past year. That's the number that matters. Now where will 2008 fall?

Let's next turn to the numbers from December for the 7 districts I have been highlighting this year.

December statistics

ED Texas: 21 patent cases, 82 defendants sued (11 troll cases)
CD California: 21 patent cases, 82 defendants sued (6 troll cases)
D New Jersey: 11 patent cases, 20 defendants sued (0 troll cases)
D Delaware: 19 patent cases, 40 defendants sued (2 troll cases)
ND Illinois: 12 patent cases, 30 defendants sued (3 troll cases)
ND California: 4 patent cases, 9 defendants sued (0 troll cases)
SD New York: 7 patent cases, 11 defendants sued (1 troll case)

December was the first month this year that another district rivaled the Eastern District of Texas in both cases filed and defendants sued.

Non-EDTX Troll/NPE Cases

There were some interesting non-practicing entity /troll cases filed outside of the Eastern District of Texas in December. Some were very interesting. For the first month since I started the blog, I have more "NPE" cases outside of EDTX than I do inside. A preview of life after venue reform, perhaps? Here are the highlights:

1) Document Generation Corp. v. AllMeds, and 18 other defendants

Network Signatures (1)
New York Times (1)
NextCard (3)
Nintendo (1)
Niro Scavone (23)
Nokia (2)
non-EDTX rocket dockets (1)
Northeastern U (1)
Ocean Tomo (1)
Online Res. (1)
open source (1)
OPTi (3)
Orbitz (1)
Orion IP (12)
Otis Carroll (1)
PA Advisors (1)
Paice (1)
Paid Search Engine (1)
Palm (1)
Parallel Networks (1)
Parallel Processing (1)
patent exhaustion (4)
Patent Hawk (4)
patent reform (33)
Patriot Scientific (1)
Paul Hickman (4)
Paul Ware (1)
Performance Pricing (1)
Peter Courture (1)
Peter Zura (2)
Philips (1)
Phoenix IP (3)
PhoneTel (1)
Plutus IP (11)
Polaris IP (2)
Polymer Solvents (2)
Positive Techs (1)


(SDIL, December 4). I featured this case here.

2) Action Technologies, LLC v. Avid Technology, Inc. (SDNY, December 4). Action is sub of General Patent Corp., according to the statement it filed with the court in New York. I profiled GPC here.

3) Global Patent Holdings, LLC v. ADT, and 6 other defendants (SDFL, December 5). I featured this case here.

4) Innovative Patented Technologies, LLC v. Nokia & Samsung (SDFL, December 5). Scott Harris, J-Beau, and Niro. Blogged it here.

5-8) Network Signatures, Inc. v. Bank of America Corp. (CDCA, December 10).
Network Signatures, Inc. v. Wachovia Corp. (CDCA, December 10).
Network Signatures, Inc. v. Wells Fargo & Co. (CDCA, December 10).
Network Signatures, Inc. v. Washington Mutual Bank (CDCA, December 10). You might think by looking at Network Signatures' website that I have incorrectly included these four cases as "non-practicing entity" cases. But there's more here than meets the eye. I'll elaborate more in a special spotlight on these cases next Tuesday. I'll add a forward link here once I create that post.

9) Guardian Media Technologies, Ltd. v. Daewoo Electronics Corp. (CDCA, December 18). Guardian Media is a Texas limited partnership that bought two patents in 2003, and has sued a bunch of companies. It is in patent litigation all over, and the patent-in-suit is in ex parte reexamination. This lawsuit was filed two months after the PTO issued an 81-page office action rejecting the claims of the patent-in-suit as invalid.

10) PSN Illinois, LLC v. Abcam, Inc., Abgent, Inc., Affinity Bioreagents, Inc., Discoverx Corp., Exalpha Biologicals, Inc., Genetex, Inc., LifeSpan Biosciences, Inc., Multispan, Inc., and Novus Biologicals, Inc. (NDIL, December 21). An old troll friend returns! PSN Illinois is a shell. I'm not sure who owns it, but Chicago-area attorney Michael Mazza represented it in 3 prior patent litigations. 2 of the 3 prior PSN Illinois litigations were over pet litter patents, and the other one over porcelain veneer restoration materials. This new case asserts two patents titled "Molecular Cloning and Expression of G-Protein Coupled Receptors." It's safe to say that if you have a single entity asserting pet litter, porcelain veneer, and molecular cloning patent, it's a troll. And in this case, a BIOTROLL. The inventor of the two patents-in-suit is now a University of Cincinnati professor. He evidently sold his patents back in September 2007.

11) Fifth Market Inc. v. CME Group Inc. (Del, December 21). 5th Market is a failed startup. I found this article from 1999 interviewing

Power Integrations (1)
Power-One (1)
Premier Intl (1)
privilege (2)
PSN Illinois (1)
QPSX (1)
Quantum World (1)
RealNetworks (1)
Red Hat (1)
Reese (1)
Refined Recommendation (2)
Reid (1)
Rembrandt (7)
RIM (2)
Ron Laurie (1)
Rule 11 (2)
Rusty Rose (3)
Rutan Tucker (2)
Sam Baxter (2)
Samsung (2)
Saxon Innovations (3)
Scott Harris (15)
Scott Lewis (3)
Screentone (2)
Seagate (4)
Silicon Valley (2)
silly patents (1)
Simon Passanante (1)
Sky Technologies (2)
Slashdot (1)
small inventors (2)
Software Rights Archive (1)
Sony (1)
SP Technologies (2)
Sprint (1)
ST Sales Tech (3)
standing (1)


some of the inventors of the now-asserted patent. The inventors generally list 5th Market in their LinkedIn profiles as being a past job. But the first-named inventor, Scott Nieboer, still seems to run this website from his office in Nashville, where he also runs a few other businesses - investment businesses. Here is the cached "management" page from the old Fifth Market website. My conclusion? A once-company, now a shell being monetized.

12) Wall Corporation v. BondDesk Group LLC (Del., December 26). I'm really not sure about this one. The first-named inventor, Webster Hughes of Charlotte, NC, was in upper management at X-Bond, the company that first owned the patent-in-suit. Then in September 2004 the patent was assigned to Wall Corp of Greenwich, CT, a company I can find nothing about. Now Wall Corp lists its address as the same as the law firm that filed the suit - Shore Chan Bragalone, of Dallas. Shore Chan is a firm I have featured as representing Acacia. This one has a general smell of a troll case about it, but I can't say for sure. Since there's nothing about Wall anywhere I can find, I'm putting it at least in the NPE camp for now.

13) Zappos.com v. Global Patent Holdings (DNV, December 26) (DJ). See here.

14) Meirav Kesher Hadadi, Ltd. v. Zipcar Inc., Mobility Inc. d/b/a Flexcar, and I-Go (NDIL, December 28). The plaintiff is an Israeli shell corporation set up by the Israeli inventor of the car rental patent. One of the defendants, I-Go, is Chicago's only non-profit car sharing service. It actually seems like a pretty cool idea -- the defendants' idea, that is, not the plaintiff's patent, the claims of which seem stretched to be able to capture the accused "product."

15) Innovative Patented Technology, LLC v. Motorola (NDIL, December 31). I profiled this case here.

16) Harvard Label v. Advanced Card Technologies LLC (CDCA, December 31) (DJ). According to ACT's website, it is a subsidiary of General Patent Corp.

Cumulative Statistics for 2007

Here are the cumulative statistics for all of 2007, comparing the various "big 7" districts.

ED Texas: 364 patent cases, 1,402 defendants sued (151 troll cases)
CD California: 272 patent cases, 729 defendants sued (23 troll cases)
D New Jersey: 187 patent cases, 349 defendants sued (13 troll cases)
D Delaware: 147 patent cases, 350 defendants sued (18 troll cases)
ND Illinois: 137 patent cases, 261 defendants sued (26 troll cases)

statistics (31)
Steve Jobs (1)
StorMedia (2)
stupid patent tricks (8)
Supreme Court (3)
Susman Godfrey (3)
Sutton (1)
T-List (1)
Taeus (1)
Target (2)
TechSearch (1)
Tessera (1)
Texas MP3 Technologies (1)
TGIP (5)
Thomas Harvey (1)
threatening emails (3)
Tillotsin (2)
Time Warner (1)
Tinkers_Chance (1)
Traffic Information (2)
Trent West (1)
Triton IP (2)
troll assessment (3)
Trontech (1)
Typhoon Touch (1)
UFOs (1)
US Navy (1)
Vdata (2)
venue (30)
Verizon (2)
Verve (1)
Viacom (1)
Visto (1)
VTran (1)
Wal-Mart (1)
Ward_Olivo (4)
Warren Heit (1)

ND California: 131 patent cases, 249 defendants sued (19 troll cases)
SD New York: 102 patent cases, 255 defendants sued (14 troll cases)

That's one patent case filed a day in the Eastern District of Texas. 28 defendants sued a week! Twice as many as any other district. Over 150 troll cases (41%).

Here is my last "troll call" for 2007 - the December cases. I'm planning a little bit of a change for 2008, by the way. While EDTX still drives the troll cases, I no longer plan to track EDTX and non-EDTX troll cases separately. Starting with January's troll call, everything will be merged. Hopefully that will make this sort of post more readable.

Troll Call for December 2007 in EDTX

141) Klausner Technologies v. Apple, AT&T, AT&T Mobility, CSC Holdings, Comcast, eBay, GotVoice, Simulscribe (Marshall, December 3). Dovel & Luner filed this lawsuit, which I blogged about here.

142) epicRealm Licensing, LLC v. The Macerich Co. (Texarkana, December 3). epicRealm made my original blog post, at #6, from way back in January. This case is one that Judge Folsom ordered to be bifurcated from the original one.

143) Typhoon Touch Technologies, Inc. v. Motion Computing, Inc., Dell, Inc., Nova Mobility Systems (Tyler, December 5). This looks like a once-company that has gone over to the dark side.

144) Tessera, Inc. v. A-DATA Technology Co., A-DATA Technology USA, Acer, Inc., Acer America, Centon Electronics, Elipida Memory, Elipida Memory USA, International Products Sourcing Group, Kingston Technology Co., Nanya Technology Corp., Nanya Technology USA, Peripheral Devices & Products Systems, Powerchip Semiconductor Corp., ProMOS Technologies, Inc., Ramaxel Technology Ltd., SMART Modular Technologies, Inc., TwinMOS Technologies Inc., TwinMOS Technologies USA (Marshall, December 7). Some people consider Tessera to be a research institution. Some people consider it to be a patent troll. It's hard to decide, but if you sue 18 companies in one lawsuit in Marshall, Texas, you inch towards that troll line.

145) Coronary Stent Visualization Corp. v. Philips Electronics North America Corp. (Marshall, December 17). Acacia, as I described here.

146) Trover Group, Inc. v. Regions Bank (Marshall, December 18). According to this article, Trover Group was previously known as Dozier Financial Corp. Indeed, Trover is run by Charles Dozier, one of the inventors of the patents-in-suit. This appears to be an inventor's shell.

Wayport (1)

Web Telephony (1)

Weil Gotshal (3)

White_Case (1)

Wi-LAN (3)

WIAV (1)

willfulness (3)

Williams Kherkher (1)

Yahoo (2)

Zappos (1)

147) Beneficial Innovations v. AOL, Google, IGN Entertainment, Morris Communications Co., Dallas Morning News, Tribune Interactive, Yahoo! and YouTube (Marshall, December 20). I discussed Beneficial Innovations and inventor Sheldon F. Goldberg last week.

148) Parallel Networks, LLC v. Netflix, ATA Airlines, E*Trade, John Wiley & Sons, SkyMall, and The Finish Line (Marshall, December 28). The funny thing about this case, is that it asserts U.S. Patents 5,894,554 and 6,415,335 -- the same two patents asserted by epicRealm in its prior litigations. Same attorneys, same principals seem to be involved. Perhaps Parallel Networks is just a new name for epicRealm.

149) Media Technologies Licensing, LLC v. Tristar Productions, Ace Authentic, Bench Warmer Int'l, Press Pass, Razor Entertainment Group, Razor Entertainment LLC, SA-GE Collectibles, and Stellar Collectibles (Marshall, December 28). Media Technologies Licensing is a California LLC (in Beverly Hills) formed by the inventor of the patents-in-suit, Adrian Gluck. Those patents are 5,803,501 and 6,142,532. The patents are titled "Memorabilia Card" and had been previously asserted against The Upper Deck Co. in the Central District of California. In fact, Media Technologies Licensing filed another case just last week in CDCA. So it's strange seeing them in Texas, but there they are.

150) American Microsystems Ltd. v. WIAV Solutions, LLC (DJ) (Sherman, December 28). For more on this new case involving new troll WIAV, see here.

151) Mondis Technology Ltd. v. LG Electronics, LG Electronics USA, Hon Hai Precision, and Innolux (Marshall, December 31). And you can go to that same post for information on Mondis, too.

TT

Posted by Troll Tracker at 12:08 AM    3 comments
Labels: epicRealm, General Patent Corp, Guardian Media, Media Technologies Licensing, Parallel Networks, patent reform, PSN Illinois, statistics, Tessera, Typhoon Touch, venue

THURSDAY, JANUARY 10, 2008

## Global Patent Holdings Sues Boca Raton Resort & Club

Check out all of those JPGs on the website at the Boca Raton Resort & Club. I guess somebody had a bad stay there or couldn't get a good tee time, for on Tuesday 1/8, Global Patent Holdings asserted its



JPEG-on-a-website patent in SDFL against the Club. If you don't know what I'm talking about, click on the Global Patent Holdings label below. Niro Scavone, of course.

Posted by Troll Tracker at 11:17 AM    0 comments
Labels: Global Patent Holdings, Niro Scavone

FRIDAY, JANUARY 4, 2008

## 4 Interesting New Cases From Last 2 Weeks of December

Well, what do we have for you today? How about the Rothschild family investing in a Eurotroll, and suing in Marshall, Texas? How about an ex-Fish & Richardson *associate* buying patents for millions of dollars (while an associate) and being D/J'd in Sherman, Texas after trying to shake down an EDTX company? How about a couple of lawsuits by a guy who, with related patents, has made the Electronic Frontier Foundations' 10 Most Wanted Invalid Patents? How about yet another Scott Harris/J-Beau/Ray Niro lawsuit? Yeah, you could read those other ABA-nominated patent blawgs, but I've got your *juicy* patent news right here!

WIAV Solutions; Choongsoo Park

Let's start off with the D/J case of American Microsystems Ltd. v. WIAV Solutions, filed in the Eastern District of Texas on December 28. Now why would anyone file a D/J case in the Eastern District? Well, in this case, perhaps it makes sense. The accused infringer is a company located smack dab in the middle of EDTX. It received letters from WIAV Solutions, a company of unknown origin (so unknown that AML had to plead WIAV was not from Texas on "information and belief"). Actually, the letters came from Sidley Austin-San Francisco. Since AML couldn't figure out who is behind WIAV Solutions, I decided to dig around to see if I could figure it out. It wasn't too hard. WIAV asserted U.S. Patents 5,400,338 and 6,480,497 in its correspondence with AML. These patents, prosecuted by Townsend and Townsend and Crew in San Francisco, were originally assigned to Metricom of Los Gatos, CA. From there, they went to Ricochet Networks, which became part of Terabeam, of San Jose, CA. They show no further assignment.

But Google and the USPTO Assignment database shed more information. The USPTO Assignment database shows WIAV Solutions buying a boatload of patents from Skyworks Solutions. In the transaction, executed in September 2007, WIAV listed an address in Reston, Virginia (which appears to be a home address). If you search for "5400338 6480497 Terabeam," you get one result: a Terabeam SEC

filing showing the sale of these patents. A couple more clicks, and you get this SEC filing -- the actual assignment agreement transferring patents from Terabeam to SPH America, a Virginia limited liability company, located at the same address as WIAV. All in all, SPH America bought 4 patents from Terabeam for $5M, including the two now-in-suit.

But who is behind Virginia LLCs SPH America and WIAV Solutions? According to Virginia corporate filings and Terabeam/Proxim SEC documents, it was Choongsoo Park, who, at the time of the purchases, was a lowly associate in the D.C. offices of Fish & Richardson. TrollTracker does not understand how an associate can afford to spend $5M on patents (more, actually, if you include the 88 patents bought from Skyworks). But apparently Park knew what he was doing - he has an advanced degree in Electrical Engineering.

Park is no longer on the F&R website (as of sometime between Halloween and now), so apparently he no longer works for F&R. Question is whether he's happy or not litigating his patents in Sherman, Texas against a company that actually employs people in the District. More on the case here. More on the technology behind the original Metricom/Ricochet system here. Metricom, the original technology developer, was a victim of the tech bubble bursting. The Ricochet technology is a good example of what others described to be exciting technology that generated a lot of buzz, but never got off the ground due to a bad business model.

It would be nice to hear that Park has left F&R to form his own company to commercialize the Ricochet technology, rather than, as American Metrosystems alleged, making money only "by suing alleged infringers of [the] patents and negotiating license fees from its victims." Time will tell. You have to admit: it's a bit strange, a law firm associate spending multi-millions on patents that are then asserted in an attempt to gain licensing revenue. It's one thing to be Scott Harris, and invent your own patents. It's quite another to be, well, Acacia, or Erich Spangenberg. You have to wonder whether Park is fronting for someone else.

Mondis Technology Ltd.; Inpro Licensing SarL

IPEG had an interesting post about how Europe has generally escaped the patent troll problem. But Europeans have been rumored to be gobbling up US patents to sue in American courts. This case is a perfect example. On New Years' Eve, Mondis Technology Ltd. of London sued Korean manufacturer LG, and Taiwanese manufacturers Hon Hai and Innolux (both related to Foxconn), in Marshall, Texas (on 5 patents). Dechert-Philadelphia filed the complaint, with help from Otis Carroll.

Who is Mondis Technology? According to UK corporate documents, it is Inpro Limited. Inpro is a EuroTroll, apparently. Mondis was originally formed at 160 Queen Victoria St. in London -- home of Dechert's offices there. Then it was moved to 19 Perrin Lane in Hampstead, London. That is the same address as a company known as Inpro IP Services. Inpro IP Services and Inpro Limited appear to me to be related to Inpro Licensing, a Luxembourg company that bought the IP portfolio of once-company Elonex, of London. And Inpro's mission? To make money off of intellectual property. Other ties between Inpro-Luxembourg and Mondis? Inpro considers Dechert to be part of its extended team. The same Dechert lawyers who represented Inpro in patent litigation against RIM appear to be representing Mondis in this case. My conclusion: Mondis is an Inpro company.

Oh, and then there's this: click on "DDC Patents" on Inpro's "Current Projects" web page, and you get 3 out of the 5 patents in suit. So I guess that's more circumstantial evidence.

Another fascinating tidbit: RIT Capital Partners, a publicly traded company on the London Stock Exchange that is about 25% owned by the Rothschild family, owns more than 10% of Mondis. You know, related to the winemaking Rothschilds? Other directors of Mondis include David John Morrison, who owns Prospect Investment Management, a London private equity firm. This is a well-funded EuroTroll. What's it doing slumming in Texas?

I may have the answer: It looks like "Mondis"/Inpro bought the five patents in suit from Hitachi on October 30, 2007. I'm sure LG and Foxconn will send a big thank-you to Hitachi for that. Of course, LG and Hitachi already have 4 patent litigations pending between them in the Eastern District. So could it be that Hitachi is hitting back at LG not just with a suit brought by itself, but with a troll lawsuit? I have no idea, but if true, it would be interesting....

Beneficial Innovations: Sheldon Goldberg

Beneficial Innovations is a Nevada company owned by patent inventor Sheldon F. Goldberg. He is suing companies on U.S. Patents 6,712,702 (Method and System for Playing Games on a [Computer] Network) and 6,183,366 (Network Gaming System). He was noted four years ago on Slashdot for threatening a bunch of companies that he owned the rights to games played on a computer network. Jason Schultz, a/k/a LawGeek, called the '366 patent his Silly Internet Patent #4 a ways back. Sheldon Goldberg made the EFF's "Most Wanted" poster for "Crimes Against the Public Domain, Willful Ignorance of Prior Art, and Egregious Displays of Obviousness." (oh, hello, Acacia!). According to Ted Frank's post on the wonderful blog, Overlawyered, Goldberg's

other patents claimed computer solitaire, on-line game rankings, and pop-up advertising. Goldberg first sued a bunch of defendants in June 2007, and it hardly rated a mention here. But given this second suit and my additional research, this certainly falls under the patent troll category, in my opinion.

16 defendants have now been sued in Marshall: Blockdot, CareerBuilder, Cnet Networks, Digg, Ebaum's World, Jabez Networks, The New York Times, The Washington Post, The Weather Channel, and The Washington Post.Newsweek Interactive Company were sued in June on the same two patents. The latest suit named AOL, The Dallas Morning News, Google, IGN Entertainment, Morris Communications, Tribune Interactive, Yahoo!, and YouTube. Dovel & Luner, a firm that is challenging Niro Scavone for the most contingent-fee multi-defendant cases, represents Beneficial Innovations.

Innovative Patented Technologies: James B. "J-Beau" Parker/Scott Harris

Speaking of Niro, he filed his own New Years Eve case, in Chicago, on behalf of Innovative Patented Technologies. The first IPT case filed was in South Florida, in early December, as I reported here. James "J-Beau" Beauregard Parker owns Innovative Patented Technologies, a company that does nothing other than hold patents invented by Scott Harris, a former Fish & Richardson principal who is in a dispute with his former firm (and litigation in Chicago). IPT does nothing other than assert patents and try to collect licensing fees. The latest company to be sued was Motorola, on the same 4 patents as the South Florida litigation. Since Motorola has a big facility in South Florida, why not sue them there and/or add them to the other case? Anyway, Motorola's popular RAZR phone and its Q smartphone were listed as accused products.

To recap, at least the following 5 lawsuits against 10 defendants are now pending involving the Scott Harris patents now owned by James Parker -- all brought by the Niro firm:

Memory Control Enterprise, LLC v. Honda, LG Electronics, Motorola, Oakley, and US Cellular (NDIL, August 2007)
BarTex Research, LLC v. FedEx (EDTX, August 2007)
Illinois Computer Research v. Google (NDIL, September 2007)
Innovative Patented Technology v. Nokia and Samsung (SDFL, December 2007)
Innovative Patented Technology v. Motorola (NDIL, December 2007)

There were other troll cases filed in the second half of December in EDTX and elsewhere, but that's enough for today! The rest can wait for the December Troll Call, coming sometime next week.

Survey reminder

Don't forget to take my Patent Troll Tracker Blog Survey if you haven't already.

(Update: hey - welcome to all the visitors from The New York Times - my first link from "traditional" media. Wonder if it's because I mentioned they are a defendant in the Goldberg lawsuit. This is a disappearing link, though - after Saturday, January 5, it will likely be gone).

Posted by Troll Tracker at 12:07 AM    0 comments
Labels: Beneficial Innovations, Choongsoo Park, Dechert, Eurotroll, Fish_Richardson, Innovative Patented Technology, Inpro, James Parker, Mondis, Niro Scavone, Scott Harris, WIAV

WEDNESDAY, JANUARY 2, 2008

## Global Patent Holdings Update

Let's start the new year off with an update on our #1 patent troll from 2007, Global Patent Holdings.

To recap, it filed another patent infringement case on the JPEG-on-a-website patent (5,253,341) on December 5 in Florida. Then while I was on hiatus, Nevada company Zappos.com filed a declaratory judgment complaint in Las Vegas on December 26, seeking a declaratory judgment of invalidity, noninfringement and intervening rights on the GPH '341 patent. Parsons Behle & Latimer of Salt Lake City filed the DJ complaint on Zappos.com's behalf.

The DJ complaint, available here, has some nice insights into the Niro firm's method of trying to collect on behalf of GPH. Evidently, on August 14, Mr. Niro sent a claim chart to Zappos, explaining how the Zappos website infringes the reexamined claim 17 of the patent. I'm a bit miffed by that, because Mr. Niro refused to send me a claim chart as to my website. Zappos did not attach the claim chart to its complaint. Nor did it attach the "royalty schedule," which Niro also sent to Zappos. The Niro firm wrote to Zappos again on September 27, notifying it of the Green Bay Packers lawsuit, and then on December 12, notifying it of the Florida lawsuit.

With four litigations now pending in three districts against 17 companies, MDL seems like an increasingly likely option.

Back tomorrow with an update on Acacia.

Posted by Troll Tracker at 9:30 AM    5 comments
Labels: Global Patent Holdings, MDL, Niro Scavone, Zappos

THURSDAY, DECEMBER 20, 2007

## Visitor # 66,666 To My Blog

was someone today, logging in from the Niro Scavone firm.

Posted by Troll Tracker at 9:28 PM    0 comments

## Top Ten Patent Trolls of 2007

Here's the thing: there was so much material to choose from this year,
I had a very hard time narrowing down the list to ten. There are some
patent trolls who, for one reason or another, did not make the list
this year despite their guaranteed inclusion in years past. Dan
Henderson comes to mind, with his Trontech and Hybrid litigations in
full swing. But Henderson lost the Hybrid case in EDTX on a jury
verdict of noninfringement, so he doesn't make the scary list this year.

For one reason or another, I thought the below entities should make
the list.

Honorable Mention: General Patent Corp

10 (tie). Rembrandt and Katz. Rembrandt sued mainly in 2006. But in
2007, the lawsuits were all consolidated in one massive multi-district
litigation (MDL) in Delaware, with defendants in the dozens. And
they're getting ready for a big trial in EDTX (Rembrandt Vision). Katz,
like Rembrandt, did most of its suing previously. But now, on the
other coast (in LA), Katz finds itself beholden to the MDL procedures
against dozens of defendants. 2008 will be a telling year for both of
these patent trolls.

9. Misc. Patent Attorney Trolls, including Paul Hickman and others. It
was amazing to me to find out how many non-practicing entities
turned out to be patent attorneys. Warren Heit and Tinkers & Chance.
Verve. Mobile Micromedia. Traffic Information LLC. Accolade. Aloft
Media. All run by patent attorneys. Who's next?

8. 1st Technology/Scott Lewis. If you sue the gambling industry, and
inspire a billionaire to mock you openly on his blog, and even to have
a "patent troll dance contest" in your honor, you deserve to be on the
top ten Patent Trolls of the Year list. Who won that dance contest,
anyway?

7. Wi-LAN. Wi-LAN is relatively new to the patent troll world. They make the list not only because they sued 22 companies in EDTX, and not only because they listed their mission on their website to go after all the companies in the world, but also because at the same time they started a research program admittedly, in part, to try to pass themselves off as a research entity like CSIRO to be able to get injunctions.

6. Intellectual Ventures. If there were negligence for patent troll trackers, I would be sued for negligence for not including Intellectual Ventures on my top patent trolls of the year list, despite the fact they still have not filed a single lawsuit -- as far as we know. The fact is that just by being out there and acquiring so many patents, IV is driving up the market for patents and is, even by sitting out and not suing, influencing the delicate IP balance.

5. Altitude Capital Partners. ACP is an example of a new form of patent troll: an "IP investment" company. Some individual inventors argue that companies like ACP, Acacia, and IV are good for society - they help the small inventor monitize patents where they otherwise wouldn't have the resources to do so. I'm not so sure. For as long as there have been patents, there have been individual inventors suing big corporations and using contingency fee lawyers. I see nothing wrong with that. What ACP and Acacia are doing are buying up patents at a bargain, and then using their muscle to try to make a profit off of the small inventor. Of course, i'm necessarily assuming that the large corporations paying out settlements would pay out the same amount to the individual inventor as to the ACPs and Acacias of the world. Some would argue this is an improper assumption. Since Altitude Capital Partners has started acquiring patents and monetizing them through litigation, and not a licensing program, they make my top patent trolls of the year list.

4. The trinity of Scott Harris, James Parker, and Ray Niro. These three first hit my radar screen in August, when Memory Control Enterprises sued in Illinois and BarTex sued in Texas. Who's the kingpin, I asked? It seemed like James Parker. But then, another Parker subsidiary, Illinois Computer Research, sued Google, a Fish & Richardson client, and all hell broke loose. Click on any of the names above to recount the story. Now, Fish & Richardson is involved in the litigation, and has told the judge that after discovery, it may add the Niro Scavone firm on some unspecified charges. Meanwhile, the Niro/Parker/Harris group sued in West Palm Beach a few weeks ago -- where Niro has a home and where he probably met James Parker and pinpointed him as the perfect owner of the Harris patents. What really happened may come out in the Fish & Richardson litigation, but it will probably all be redacted. Woe is the public.

3. Acacia. I didn't start tracking Acacia carefully until the summer. But still, on my blog I have reported on over two dozen lawsuits brought by Acacia this year, against more than 235 defendants. That's in addition to the over 200 lawsuits Acacia filed in previous years against hundreds and hundreds of defendants. And that's not including the two lawsuits (at least) Acacia has filed in December against 20 more defendants (yes, Acacia, I'm watching you). Acacia's business model, as a publicly traded company, is to accumulate patents and sue as many companies as possible in order to extract licenses. They have a market cap of over 275 million - that pays for a lot of lawsuits. Unlike other trolls, Acacia tends to not focus on one court in particular, although they have sampled the Eastern District of Texas more this year than in the past.

2. Erich Spangenberg. In any other year, Spangenberg would be #1. His subsidiaries, new ones seemingly being created every month, filed at least 15 lawsuits against over 200 defendants this year. Given Acacia sued at least 50 more defendants than Spangenberg in 2007, it was tempting to reverse their order. But Spangenberg - well, he just seems smarter than Acacia. For example, unlike Acacia, he won his trial ($36M from Hyundai) while Acacia lost its trial to Microsoft. Further, even though he sued less than Acacia, he seems to be more successful in resolving his cases (Acacia takes its cases to multiple Markman hearings taking years of litigation; Spangenberg's cases often seem to go away before there's a scheduling conference).

1. Global Patent Holdings. Sometimes quality is more important than quantity. Global Patent Holdings didn't sue as many defendants as Acacia or Erich Spangenberg this year. But their one patent claim -- claim 17 of the '341 patent -- is as disturbing as any patent being asserted by any non-practicing entity this year. Essentially, prior to the reexamination, GPH asserted that anyone with a JPEG on a website infringed their patent. Despite the fact that all 16 claims of the original patent have been finally cancelled, the one much-amended claim is still being asserted by those representing GPH to cover any website with a JPEG. GPH wasted no time after the reexamination certificate issued, suing 16 companies in 3 lawsuits. The amazing thing is the number of potential defendants. One report I saw had there being 100 million websites. Even if you assume only 40 million of them are in the US (a conservative number, if you ask me), and that only 10% of those websites have JPGs (again, an extremely conservative number), there are 4 million potential defendants. Even at Niro's published minimum of $125,000 per defendant, that's half a trillion dollars. Of course, not that many defendants will be sued, and this patent will surely be challenged, but this amazing statistic and the ramp-up of litigation is enough to earn Global Patent Holdings my seal of Patent Troll of the Year.

Posted by Troll Tracker at 8:30 AM    4 comments
Labels: 1st Technology, Acacia, Altitude Capital Partners, attorney-
trolls, Erich Spangenberg, Global Patent Holdings, Intellectual
Ventures, James Parker, Niro Scavone, Rembrandt, Scott Harris, Wi-
LAN

WEDNESDAY, DECEMBER 19, 2007

## Patent Troll Tracker Haiku Contest Results

You people have not made it easy. I thought I'd get a few submissions,
but I actually got dozens. And I'm a horrible judge. But here are my
favorites - in no particular order within each category. I didn't include
everything I received, but thanks to everyone who sent me a
submission. Some people wanted complete anonymity; others gave
me a moniker. If you submitted something and didn't tell me one way
or the other, I assumed anonymity.

Scott Harris Category

Scott Harris lost his
job 'cause he wanted his Fish
And to eat it too.

-- Anonymous Patent Practitioner

Pesky ethics rules.
Conflicts mean nothing to trolls.
Help me, Ray, help me!

-- Random Examiner

Genius since age twelve.
Invented on boss's time.
Ridiculed on web.

-- Random Examiner

Global Patent Holdings/JPEG Category

J-Peg Patent is
invalid due to B-Boards
from 1980s.

-- Anonymous

A thousand words? If

that pic's a JPEG then it's
worth a thousand bucks.

-- Anonymous Patent Practitioner

Internet is fun:
News, porn, and patent law blogs.
Please don't enjoin it.

-- Random Examiner

Winter for Niro
More Spurious JPEG Suits
Stay at Super 8

-- Anonymous

For a bad time call,
5-2-5-3-3-4-1!
End up on lame date.

-- Applesauce Zombie (in honor of "Jenny")


Ray Niro Category

The first patent troll --
Thought he would have thicker skin.
(I will get sued now.)

-- Random Examiner

Bounty on my head.
Hope my parents don't try to
collect the reward.

-- Patent Troll Tracker

Excuse me, Raymond.
How do you know that I don't
work in your office?

-- Patent Troll Tracker


Eastern District of Texas Category

Huntin' buddy judge.

Brother Bubba is local.
The Eastern District.

-- Anonymous Texas Litigator

Johnny and Otis:
My local counsel one case,
Against me the next.

-- California Litigator

Driving to Marshall.
I-20 is quite boring.
Beam me up, Scotty.

The Markman Hearing:
Judge Clark plays "Grill the Witness;"
My expert blew it.

Client just filed an
inter-partes reexam.
Will Ward stay? No way!

-- Patent Troll Tracker

### Patent Trolling in General Category

Big corporations
stole my patented life's work.
Sam Baxter saves me.

-- "Don't publish my name, asshole"

Trolls and their lawyers
have proved that some of the time
extortion's legal.

-- Anonymous Patent Practitioner

I'm from Ohio
Plaintiff is from NJ, why's
the court in Texas?

-- Anonymous Patent Practitioner

KSR: Court says
everything is obvious.

Oh, my aching head!

-- "Mike"

The snow will not melt
on IBM's patented
way to patent troll.

-- TrolletRolle

I could say "troll" or
non-practicing entity.
Grow some thicker skin.

-- Patent Troll Tracker


Blogging Intelligentsia Category

Hal Wegner sends out
one thousand emails a day;
To Hal: Get a Blog.

-- Anonymous Guy On Hal's Email List

Well meaning law news
turns into patent bitch-fest.
Beats doing real work!

-- Random Examiner

Does Dennis Crouch know
That Kimberly is married
With four kids in tow?

-- Anonymous Patent Practitioner

Patent Hawk tells me
I should go to hell (I think).
It's all in good fun?

What can you expect
from a guy whose patents are
owned by Acacia?

-- Patent Troll Tracker

Write my patent blog.



I wish it paid 160.
Google, buy me please.

-- Anonymous Texas Litigator

Posted by Troll Tracker at 8:04 AM    1 comments
Labels: haiku, Hal Wegner, Niro Scavone, Patent Hawk, Scott Harris

FRIDAY, DECEMBER 14, 2007

## Friday Miscellany

I'm back from out of town, and have a few things in my inbox to clear.
I know these are miscellaneous and seemingly unrelated topics, but
that's why they call it Friday Miscellany...

————————————————————

First, I have a couple of programming announcments. Coming next
week is another installment of Patent Troll Tracker haikus. Submit
your entry to trolltracker@gmail.com, and I'll publish the best.

The theme for next week's haikus: choose from one of the following:

Ray Niro
Ray Niro's client GPH's JPEG-on-a-website patent
Scott Harris
James Beauregard Parker
The patent blogging intelligentsia (e.g., Dennis Crouch, Michael
Smith, Patent Hawk, Hal Wegner).
Eastern District of Texas

I won't publish anything I consider offensive or defamatory. I'll have a
First Place, Second Place, Third Place, and several Honorable
Mentions. I'll post everything anonymously or with whatever moniker
you sign your email, and will delete all emails. You have to
affirmatively tell me if you want me to use your real name.

Deadline is 8pm EST on Tuesday 12/18. I'll post the winning entries (if
I get any at all) on Wednesday.

Next Thursday, I'll have my top ten patent trolls of 2007. Guess who's
number one? (Actually, I haven't decided yet. If you want to nominate
anyone, you can email me that, too).

————————————————————

Have I said how much I am enjoying Techdirt? Thanks for the support
from that community. I chuckled over the comment that the reason
why Ray Niro is really trying to unmask me is so that he can arrange a

clambake! TrollTracker loves clambakes.... Although I think it's more likely to be an alligator bake. After all, Ray is probably headed down to his massive Boca Raton home (complete with pool). Why do you think Niro is filing multi-defendant JPEG lawsuits in West Palm Beach? So he can spend more time at this nice getaway (and write it off on his taxes)?

---

## Are Patent "Trolls" Wrongly Named and Maligned? Do They Have a Future?

That's the question that was asked and answered by James H. Wallace, Jr. of Wiley Rein, at the October 2007 AIPLA Annual Meeting in Washington, D.C. The AIPLA has made his paper available here. Note that it was Wallace who decided to put a JPG of Raymond Niro and Peter Detkin, side by side, in his paper, not me. And by linking to the AIPLA paper, I am in no way condoning the use of JPGs in any computer medium without first sending a check to Mr. Niro and Global Patent Holdings.

My favorite part of the paper is a breakdown given to Wallace by "well-known Silicon Valley patent litigator, Doug Lumish," of the four types of patent trolls. This is a unique way of categorization.

Here is the Lumish Troll Typing:

1. **True Blue Trolls.** "Non-manufacturing companies which acquire patents from inventors." Examples given are Acacia, Rembrandt, and Intellectual Ventures.

2. **The Thinking Person's Trolls.** Entities that "develop inventions for the purpose of licensing and enforcement, not to manufacture and sell products." Lumish/Wallace gives an example of universities, but I disagree. I don't think Universities are trolls. I'd split this group into two. The half that develop inventions for the sake of research and advancing science, and licensing is a side result, are not trolls. The other half that file patent applications only to gain intellectual capital to transform into money, without a legitimate effort to advance science through research, may be appropriate for this "thinking person's troll" category.

3. **Incidental Trolls.** "Failed manufacturing companies left with patent assets ready to be exploited." The example given is NTP. I don't disagree. The somewhat grey line, to me, is when a business is starting to fail, but is still making significant products, but tries to use a licensing program to supplement its failing manufacturing. For example, I don't think Texas Instruments was/is a troll. Other companies fall on the other side of that line.

4. Competitors. "A company [that] acquire[s] patents to target a competitor with suit." Sorry, I strongly disagree here. Broadcom is not a troll. This, to me, falls in the same camp as the "incidental trolls." Anyway, that just goes to show that there is room for healthy debate, and you can categorize in so many different ways and justify it, and open yourself up to criticism. The rest of the Wallace paper is also interesting, arguing that the "patent party" may be over. Anyone who has been watching EDTX in the six weeks since he gave his paper, though, may disagree.

---

MercExchange, the non-practicing entity run by inventor Thomas G. Woolston (former Fish & Richarson patent attorney), finally got a judgment in the long-running eBay case. As you may recall, eBay originally was enjoined, in a decision that was eventually overturned by the Supreme Court. Now there's a judgment in favor of MercExchange in the amount of $30 million.

---

Professor Gerard Magliocca of the Indiana University School of Law has a solution to today's patent troll problem: let's eliminate all software and business method patents. See this blog entry for more details.

---

I got my first email from the Coalition for Patent Fairness, who wants me to pass on to my readers, many of whom are small businesses, that they can sign an online letter in support of the Patent Reform Act of 2007. Evidently, 30 companies have already signed up. I do know that many small businesses are targeted by patent holding companies like Global Patent Holdings, Acacia, Erich Spangenberg, Katz, and others. So if any of you targeted small businesses are actually reading this blog and want to sign, go here.

Of course, the Coalition should update the front page of its website, where it reports that 116 patent cases have been filed in EDTX in the last 16 months. I'm sure that number was true at the time they posted it, but it's much more now. According to PACER, that number is 430 over the past 16 months! That's right, over the past 16 months, the Eastern District of Texas has averaged a patent case a day, when just a few years ago, it was averaging less than one per month.

---

It truly was a post of miscellaneous information, no? Back next week with haikus, top ten lists, and a feature I'm calling "The Running of the Trolls."

Posted by Troll Tracker at 12:03 AM 5 comments
Labels: haiku, MercExchange, patent reform, troll assessment

WEDNESDAY, DECEMBER 12, 2007

## Fish & Richardson Moves to Compel Harris & Illinois Computer Research to Produce Agreements with Niro Firm

Despite Judge Pallmeyer's order granting expedited discovery to Fish & Richardson in its battle with Scott Harris and James "J-Beau" Parker's shell Illinois Computer Research, it looks like Fish has had to file a motion to compel to get the two -- and the Niro firm -- to comply. As you may recall, Fish & Richardson is trying to get discovery to determine whether to add the Niro firm as a party to the Harris litigation. Reasons given by the Niro firm include (1) that there is no written agreement between Harris and the Niro firm; (2) despite no written agreement, all documents and emails between Harris and the Niro firm are privileged; and (3) the Niro firm won't do a privilege log for that category because to prepare such a log "would require an enormous amount of work."

Motions to compel aren't that interesting, but if you are interested, you can look at it here. You can also see a privilege log here, if you're into that sort of thing.

Posted by Troll Tracker at 12:32 AM 2 comments
Labels: BarTex, Fish_Richardson, Illinois Computer Research, James Parker, motions_compel, Niro Scavone, privilege, Scott Harris

SATURDAY, DECEMBER 8, 2007

## Global Patent Holdings, Not Acacia, Apparently Owns JPEG-on-a-Website Patent

An anonymous reader wrote to tell me I made a mistake by assuming that when Acacia owns the '341 patent that I have been discussing this week. The reader claimed that he had first-hand information that Global Patent Holdings sold everything it had to Acacia *except* for the JPEG patent. I decided to take a deeper look.

To explain my original conclusion: I had relied on this article from the New York Times, announcing that Acacia had bought the *company* Global Patent Holdings. I also relied on Acacia's own press release that it acquired *the assets* of GPH, which itself owned TechSearch (I now see a separate press release where "the assets" was modified to "substantially all the assets"). Finally, I had relied on this article describing that among the patents acquired by Acacia from GPH was

TechSearch's patent relating to data transmission on the internet. There were several other similar articles.

One thing I had not done, however, is see the actual document transferring patents from GPH to Acacia. I had checked the SEC filings of Acacia, which gave a lot of information, but did not attach the Disclosure Schedule from the actual transaction.

Now I have looked further, and two items are pointing me away from Acacia. First, Acacia's first post-acquisition press release described the GPH patents it acquired, but none of them seem to describe the '341 patent. Second, the USPTO assignments database doesn't reflect an assignment from GPH to an Acacia subsidiary. That is not to say there was a transfer without a recordation - that happens all the time. But other GPH patents were apparently assigned to Acacia. Of course, when Mr. Niro sent me his threat letter, he didn't say on behalf of whom he was sending the letter.

The circumstantial evidence seems to point to Global Patent Holdings owning the '341 patent, not Acacia. Just goes to show: can't believe everything you read in the newspaper, or on a blog. Just also goes to show: you can create lots of confusion with the corporate shell game, such that you can sue many companies without anyone knowing who you really are, without a deep search. While I'm not 100% sure still, I'm going to go with GPH as the owner of the JPEG-on-a-website patent going forward, not Acacia.

Posted by Troll Tracker at 2:06 PM    3 comments
Labels: Acacia, blogging, Global Patent Holdings, media troll-coverage, Niro Scavone

FRIDAY, DECEMBER 7, 2007

## Global Patent Holdings and Niro File Another Multi-Defendant Lawsuit on JPEG-on-a-Website Patent, Bringing Total to 16 Companies Sued

*Edited 12/8/07 to change "Acacia" to "Global Patent Holdings" per this post*

It turns out there were two patent cases filed by the Niro Scavone firm on Wednesday in West Palm Beach, Florida. The first was the Scott Harris/James Parker case I wrote about yesterday. The second was none other than the Global Patent Holdings JPEG patent! Adam Heffner again acted as local counsel to Ray Niro. Interestingly, all 7 defendants are Florida corporations. Is Acacia preparing for patent reform by filing in jurisdictions that make sense? Are they planning to sue more companies, in more of the 94 judicial districts?

The complaint alleges as follows:

> Defendants have each infringed claim 17 of the '341 patent by
> downloading responsive data, including audio/visual and
> graphical presentations, such as JPEG images and/or other
> compressed data, on their web sites, whose home pages are all
> located on the Internet. The accused downloading utilizes a
> system employing both a server and an end-user station, which
> have asymmetric processing power capabilities. The accused
> method further involves compression and inverse decompression
> techniques (including rendering JPEG images) which require less
> processing power for decompression and are asymmetric.

You can look at the reexamination certificate with claim 17 here (or
download the PDF on PatentFizz).

That is now three patent lawsuits against 16 companies that Global
Patent Holdings has now filed, to prevent the world from putting
compressed images on a web page. Here's the list:

Global Patent Holdings, LLC v. CDW Corp. & Motorola (NDIL, August 8).

Global Patent Holdings, LLC v. Green Bay Packers, Ed Napleton Acura,
Orbitz, Peapod, OfficeMax, Caterpillar, and Kraft Foods (NDIL,
October 23).

Global Patent Holdings, LLC v. ADT Security Services, AutoNation,
Florida Crystals Corp., HearUSA, MovieTickets.com, Ocwen Financial
Corp., and Tire Kingdom (SDFL, West Palm Beach, December 5).

According to IP Law 360, Global Patent Holdings has proposed, for
companies that sell products through their websites, a fully paid-up
royalty of up to $250,000 for companies with annual revenue of
between 0 and $50 million (are they asking for 0.5% of the company's
present annual revenue?). For companies of (annual?) revenue more
than $51.2 billion, the proposed royalty is $15 million (closer to
0.03%).

For companies that do not sell products through their websites but
have compressed images on those sites, Global Patent Holdings is
seeking half the amount - $125,000 and $7.5 million.

Applying this formula to the companies GPH has sued so far, and just
making rough calculations via Yahoo finance, etc., I estimate that
GPH is seeking about $15M in royalties from each lawsuit it files.
Assuming it files one per month for the next 39 months until the

patent expires, then what GPH is really seeking is $600M from US industry for the JPEG-on-a-website patent. My guess is they'll sue many more companies than that, and seek up to a billion dollars - which, assuming a 33% contingency fee (which is low, probably), amounts to a cool $100 million per year for the Niro firm.

And people wonder why he'd like to shut down websites critical of GPH and other patent trolls. The real question is what does he want from you and me, for our photo blogs, our personal websites. His statements to IP Law 360 only referred to companies.

The other real question is how many companies will spend millions in attorneys fees to fight rather than pay the $500K or $1M or $2M that GPH is demanding. That's the sad state of patent litigation these days.

Earlier posts on this POS (patent of substance): I, II, III, IV

Posted by Troll Tracker at 12:02 AM    6 comments
Labels: Acacia, Global Patent Holdings, Niro Scavone, stupid patent tricks

---

THURSDAY, DECEMBER 6, 2007

## Ray Niro and James B. Parker Assert Four Scott Harris Patents Against Fish & Richardson Clients in South Florida

This was going to be my only post today, but you people keep emailing me with good stuff.

The Niro/Harris/Parker/Fish & Richardson battle is brewing in Chicago, but like all good Midwesterners, Niro is going south for the winter. Yesterday he filed a complaint on behalf of Innovative Patented Technology, LLC. The complaint asserts four patents purportedly related to cellphones: 7,096,187 ("Compressed Audio Information"), 7,260,421 ("Communication device that communicates events using compressed audio information"), 6,738,643 ("Phone sync"), and 7,079,652 ("Login Renewal Based On Device Surroundings").

Innovative Patented Technology, LLC is a Florida corporation with one and only one member: Florida attorney James Beauregard Parker (known in these parts as J-Beau). The corporate shell is represented by Ray Niro. The accused products are 4 Samsung cellphones and at least 1 Nokia cellphone. The '652 patent is only asserted against Samsung. The other three patents are asserted against both defendants. Willfulness is not alleged, but an injunction is requested.

Another interesting tidbit: local counsel is Adam Heffner of Schneider

& Heffner. They are located at 1900 N.W. Corporate Blvd, Suite 301W, Boca Raton, Florida. Same exact address given by J-Beau in corporate documents for IPT.

Samsung is or was a Fish & Richardson client. Same with Nokia (is or was).

The non-practicing entity/patent troll known as James Parker a/k/a J. Beauregard Parker a/k/a J-Beau has now filed the following lawsuits:

Memory Control Enterprise, LLC v. Honda, LG Electronics, Motorola, Oakley, and US Cellular (NDIL, August 2007)
BarTex Research, LLC v. FedEx (EDTX, August 2007)
Illinois Computer Research v. Google (NDIL, September 2007)
Innovative Patented Technology v. Nokia and Samsung (SDFL, December 2007)

That's 4 lawsuits against 9 defendants, in a 4-month time span.

By the way, the reason I have been linking to PatentFizz for the patents is not because I'm Matt Buchanan. But Matt has a good idea with his site. A way to link to PDFs, assignment information, and allow users to post anonymous comments. He invites everyone who wants to do so to post comments on any patent (Acacia's JPEG-on-a-website patent, for example). He promises that he does not track IP addresses.

Posted by Troll Tracker at 9:27 AM    0 comments
Labels: Fish_Richardson, Innovative Patented Technology, James Parker, Niro Scavone, Nokia, Samsung, Scott Harris

## Follow-up on Bounty Post

First, thanks for all the visitors, coming from all sorts of blogs and community sites over the last few days. In the thousands. With the visitors has come a lot of email. Thank you to so many of you for your supportive emails. It will take me a while to dig through everything and catch up/respond. Niro also emailed me, but it wasn't as supportive.

Someone did write me somewhere that Niro has something like 8 Ferraris and 2 houses in Aspen. I am clearly in the wrong part of the IP biz.

Second, speaking of IP biz, Stephan Kinsella was forced by IP Law & Business to remove the article from his blog. Their article is posted here, but you need a subscription. Strange, because the story is otherwise publicly available. So I updated my other post with the new

link. Seems silly, huh? When are the legal news organizations going to finally realize they will make more money from making all content free and available and charging more for online ads? I'm willing to bet that most IP lawyers would read IP Law & Business online if it were available. They'd quadruple their subscriber base overnight, be able to charge more for advertising, etc. And they wouldn't lose that much in their magazine circulation, either. After all, we all need something to read on those long plane flights to Texas!

Third, some trackbacks. Techdirt has this summary of the events, and their commentary that "Thomas Jefferson is rolling in his grave." I always enjoy reading Techdirt. Metafilter is a cool website I just discovered - another community weblog. They have some info here. Copyfight has a post here.

Finally, a word on the power of anonymous blogging. The right to criticize authority is a bedrock constitutional principle in our country. Whether it's criticizing the public schools, as Orthomom did in New York (and won, preventing the attempt to unmask her), or the right to criticize one's town, as DaTruthSquad did in New Jersey (hearing scheduled for later this month), the right to communicate one's grievances anonymously dates back to The Boston Tea Party. The Federalist Papers were published by Alexander Hamilton under the pseudonym "Publius."

The Supreme Court, in McIntyre v. Ohio Elections Commission (1995) (citations omitted), observed as follows:

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation -- and their ideas from suppression -- at the hands of an intolerant society.

I had a post already prepared a week ago or so that I keep pushing back on an interesting AIPLA presentation. I'll post that on Friday, and be back with the November stats next week.

Posted by Troll Tracker at 12:01 AM    3 comments
Labels: anonymity, blogging, bounty, media troll-coverage

TUESDAY, DECEMBER 4, 2007

## Ray Niro Offers $5,000 Bounty For Information On My Identity

**12/6/07 Update here**

I have never had a bounty on my head before (see also blog post here). And I can't imagine why Ray Niro would pay $5,000 to find out who I am. I emailed him to find out (from the corner internet cafe, heh). He didn't respond. Ray: if you up it to $50,000, can I collect the reward?

Yes, Ray Niro has decided to offer $5,000 to find out who I am. According to the article, he wants to know "who is saying all those nasty things" about him. I don't think that's fair. I may have disparaged the validity of Acacia U.S. Patent 5,253,341, and I may have claimed that Niro was asserting the '341 patent against me just to shut me up, as he did to Greg Aharonian so many years ago (something that the article's author also implies), but that's not nasty. Is it?

Here is a grand summary of my posts about Ray Niro (you can click on the Niro Scavone labels to read them all):

1) I posted Fish & Richardson's allegations against him. But those were F&R's words, not my own. By the way, the judge granted expedited discovery to allow F&R to determine whether to add Ray Niro personally as a defendant. And if F&R does sue Niro, personally, I'll report about it here. Which is not disparaging him, just reporting.

2) I posted about how Niro secured a permanent injunction that was stayed in light of BMC v. Paymentech. True!

3) I dared Niro to sue the New York Yankees in Boston on the '341 patent. But I don't think he wants to litigate out of state. C'mon Ray, if you want to stay in Chicago, at least add the Detroit Lions and Minnesota Vikings as defendants, too. (They have JPEG images).

4) I reported that he represents Acacia in a bit of patent litigation. All true.

5) I speculated that he actually represents non-practicing entities as a fair amount of his overall practice. Also, true.

Where's the nastiness that is leading to his $5,000 bounty? Please. This is just a publicity stunt, to get him attention (and, after a few days of debate, I make this post anyway, thereby falling right into his trap and giving him the publicity - will I ever learn?). I don't know whether to be flattered by the attention or insulted by the amount.

PS To my very few friends, family, and colleagues in the know, if you're reading this, please don't call Niro and collect the bounty. That would be tacky. OK, thanks.

Posted by Troll Tracker at 9:31 AM    16 comments
Labels: Acacia, anonymity, blogging, bounty, Fish_Richardson, Niro_
Scavone

MONDAY, OCTOBER 29, 2007

## Top 10 Search Terms While I Was Away

Hi, I'm back. Haven't caught up with anything that's happened in the
last several days. But one thing I thought was interesting. While I was
gone, other than searches for "Troll Tracker" or the like, these are the
top 10 search phrases used by people to reach my blog:

10. Seagate impact
9. Calvin Ayre Scott Lewis
8. Ray Niro sues the Green Bay Packers
7. David Pridham
6. Acacia
5. Ward & Olivo patents (or, ward olivo patent troll)
4. Marshall Texas patent lawsuits (or, alternatively, Eastern District of
Texas)
3. patent troll
2. Erich Spangenberg
1. Scott Harris patent

Taking a quick look at EDTX, it does look like the docket was quiet
during the Bench-Bar Conference. I'm sure things will pick up this
week!

Posted by Troll Tracker at 12:42 AM    0 comments
Labels: Acacia, blogging, Calvin Ayre, David Pridham, Erich
Spangenberg, Scott Harris, Scott Lewis, Seagate, Ward_Olivo

WEDNESDAY, OCTOBER 24, 2007

## No Postings For the Rest of the Week

There won't be any posts for the rest of the week because:

(a) I'm on my way out of town for depositions/hearing, and don't feel
like lugging my computer since I'll be up to my ears in boxes.
(b) I'm hiding from Ray Niro.
(c) I'm on my way to Gavelston for the E.D. Texas Bench & Bar
Conference.
(d) I don't think there will be much activity to report due to the E.D.
Texas Bench & Bar Conference.
(e) I am on vacation.
(f) People in my place of employment have started to become

suspicious, and I just need to lay low for awhile.

(g) Some combination of the above.

You pick the answer(s) you want to believe. Back next week.

Posted by Troll Tracker at 10:31 AM    0 comments

Labels: anonymity, blogging, Niro Scavone

FRIDAY, OCTOBER 19, 2007

## Fish & Richardson Strikes Back at Scott Harris

This case concerns a lawyer's grave breach of his duties to his
law firm. Mr. Harris, the attorney, obtained a "portfolio" of
patents while a principal of Fish & Richardson by misusing firm
resources and engaging in unauthorized legal work. The patent
at issue in this case ("the '252 Patent" or "Patent") is one such
patent. Mr. Harris then sought to cash in on his patents,
including the '252 Patent, by offering them to sale to parties that
Mr. Harris knew would file infringement actions against
defendants that included his own firm's clients. The instant
lawsuit by Illinois Computer Research against Google is one such
action against a Fish & Richardson client for alleged infringement
of a patent Harris sold.

That was the beginning of the counterclaim Fish & Richardson filed
this week against Scott Harris after Illinois Computer Research itself
amended its complaint to add Fish & Richardson as a defendant in its
patent infringement suit against Google. The counterclaim attempts
to paint a story about a highly-paid patent attorney who was so
greedy he couldn't resist suing his firm's clients to make a few extra
bucks. The attorneys at Jenner & Block in Chicago drafted this
pleading. Here are some nuggets from the counterclaim:

"Mr. Harris kept his misconduct secret from Fish & Richardson,
concealing from the Firm key facts about his patent dealings and
misrepresenting or omitting other facts when confronted by Firm
personnel. As the facts have emerged, however, the breadth of Mr.
Harris's betrayal is stunning."

"At the time of Mr. Harris's resignation, he was one of the ten most
highly paid principals at Fish & Richardson."

"Mr. Harris filed and prosecuted his applications using Fish &
Richardson's resources, including but not limited to the time and
assistance of Fish & Richardson secretarial and paralegal personnel,

docketing and filing systems, letterhead and forms, and office equipment."

"[A]t least as early as November 1999, Mr. Harris approached a Fish & Richardson client ("Client A") to inquire whether the client had an interest in licensing rights in certain technologies covered by at least one of Mr. Harris's patent applications. Mr. Harris did not disclose to Fish & Richardson that he was proposing a self-interested transaction with a firm client. . . . In return [for a license], the client granted Mr. Harris stock options and a royalty to be applied to the sales of products incorporating the technology. The agreement also required the client to pay $1 million to Harris within three years. Mr. Harris did not disclose this agreement to Fish & Richardson."

"At times, Mr. Harris used Client A's name in Firm recordkeeping systems as the client for which he was supposedly prosecuting the '252 Patent. However, it does not appear that Mr. Harris billed Client A for all of his work on the '252 Patent. Rather, as described, Mr. Harris bartered his legal services while practicing at Fish & Richardson in exchange for consideration from the client to Mr. Harris personally."

"On March 14, 2003, Mr. Harris sent an email to Client A's executives stating that Client A had breached its agreement with Harris for failure to pay $1 million within three years. . . . Client A returned the license to Mr. Harris."

"Mr. Harris [] misled the Firm about the status of his prosecution efforts and the patent license. When Firm personnel asked him the status of the '252 prosecution, Mr. Harris instructed the Patent would "go abandoned" -- i.e., no further action was expected. In fact, however, Mr. Harris continued prosecuting the '252 Patent with the intent of enforcing that patent and his other patents against various parties, including clients of Fish & Richardson."

"In 2006, Mr. Harris began operating a website with the address imapatenttroll.com."

"Mr. Harris was aware of the Firm's adversarial relationship with Mr. Niro's clients and Mr. Niro's litigation against the Firm. Nonetheless, on March 21, 2006, Mr. Harris sought out Mr. Niro's assistance. As Mr. Harris explained in an e-mail he sent to Mr. Niro using the Fish & Richardson e-mail system and server, Harris 'was a patentee on a number of patents, covering a number of things, some of which are being infringed by others.' Notwithstanding his fiduciary obligations to Fish & Richardson's clients and his contractual obligations to the Firm, Mr. Harris inquired of Mr. Niro, 'I was wondering if this was something you could help me with.'"

"As a result of his secret discussions with Mr. Niro, which Mr. Harris did not disclose to any of his fellow principals or firm management at Fish & Richardson, Harris soon after entered into agreements transferring licenses and/or other rights in certain of his patents to a series of entities represented by or otherwise affiliated with Mr. Niro. Mr. Harris used the Firm's resources to facilitate these secret transactions."

"Upon information and belief, the arrangement between Mr. Harris and ICR related to the '252 Patent provides Mr. Harris with a financial interest in the proceeds of litigation or settlements involving alleged infringement of the '252 Patent. Fish & Richardson has asked for a copy of this agreement but Mr. Harris and Mr. Niro have refused to provide it."

"In 2006 [] Mr. Harris had corresponded with another patent attorney (again using the Fish & Richardson e-mail system) regarding potential targets for infringement actions based on the '252 Patent. That attorney suggested to Mr. Harris that Google could be a target of such an action."

"Harris personally acted as a neutral 'referee' [for Fish & Richardson and Google] on a Google conflict resolution inquiry within the Firm."

"Mr. Niro also knew that Google was a client of Fish & Richardson. Mr. Niro had represented at least one plaintiff making patent infringement claims against Google in a matter which Fish & Richardson represented Google."

"After ICR sued Google, Fish & Richardson again confronted Mr. Harris. Harris again equivocated and was not truthful and candid about his activities, misrepresenting some facts and omitting others. In light of his breach of fiduciary duties, breach of his contractual obligations, and his deception of the other shareholders at Fish & Richardson, Harris was asked to resign, which he did effective September 14, 2007."

Joe Mullin of the Daily Journal, a California legal newspaper, writes the following, based on his own discussions with Harris and others (my emphasis in bold):

Harris said his former employer's allegations were "ridiculous and outrageous." He didn't know about Niro's litigation against the firm and its clients, and didn't know how the '252 patent, now asserted against Google, might be used once he sold it earlier this year, he said.

"I didn't know exactly what they were going to do with [the patent]," said Harris. "Fish & Richardson told me, in no uncertain terms, to sell this patent and do it sooner rather than later."

Harris said he never used firm personnel or resources to prosecute his patents, as the complaint alleges. He added that he had billed millions of dollars of fees to the firm over the 14 years he worked there, mostly in the firm's San Diego office.

"They're trying to make it seem like I'm a bad guy," said Harris. "They knew all this stuff. They knew all along I was filing these patents."

Harris declined to say if he had any ongoing financial interest in the litigation against Google. He also declined to elaborate on his business relationship with Florida attorney James Beauregard Parker, who owns BarTex Research and IRC, two patent-holding companies that were set up on July 30 and bought Harris' patents. ...

Regarding the ICR lawsuit against Google, Parker said he was disenchanted to see how Fish & Richardson was treating its former principal.

"I think Mr. Harris is a genius and a prolific inventor, and has a very creative mind," said Parker. "I find [the firm's] conduct reprehensible. As soon as some potential client strong-arms them, they turn their back on their own."

Parker said he met Harris in Chicago, around the same time he bought Harris' patents. He said the two had "spoken before that," but declined to elaborate.

Parker denied ICR was a "patent troll," saying that Harris' patent for "Enhancing Touch and Feel on the Internet," which relates to three-dimensional online displays, was a valuable invention.

"I'm tired of these big companies basically walking all over these little guys, these inventors. If there seems to be a good business opportunity available, and to help out a creative mind at the same time - I'm all about that."

Yeah, right, J-Beau. You're all about aiding and abetting Harris and Niro if you can make a quick and easy buck.

Anyway, there are three big lessons here:

1) Never assume that emails sent on your employer's email system are private.

2) Don't use your employer's computer system, email system, etc., to try to extract money from your employer's clients.

3) If you're one of the top 10 paid professionals in one of the top patent firms in the country, and you still feel a need to supplement your income by becoming a patent troll and suing your law firm's clients, it's going to make headlines. Better to leave the firm first.

Posted by Troll Tracker at 12:02 AM    1 comments
Labels: anonymity, BarTex, Fish_Richardson, Google, Illinois Computer Research, James Parker, Jenner Block, media troll-coverage, Niro Scavone, Scott Harris

**THURSDAY, OCTOBER 11, 2007**

## A Look at the Fortune 100 and Patent Litigation, Part 2 of 2

Yesterday I looked at the different industry sectors of the Fortune 100, and determined that Retail and High Tech were sued the most - High Tech more than anyone, accounting for almost half of all Fortune 100 patent litigations filed, even though there are only 13 High Tech companies in the top 100. I also noticed that there are 0% trolls in the Pharma and Chemicals/Food sectors, while 70% or more trolls in High Tech, Finance, and Insurance.

Let's compare some of the industry sectors, and see now *where* patent infringement lawsuits in each of those sectors was filed, and look at a company from each sector, too.

Aerospace/Defense

These were mostly competitor cases, and the location reflects that. More lawsuits were filed in the Central District of California, where many of these companies are located, than anywhere else. But as for the troll cases in this segment, all were filed in the Eastern District of Texas.

Automotive

One would think that most of these suits would be in the Eastern District of Michigan, right? Well, for the non-troll cases, that is exactly right. But what about the troll cases? 7 were in the Eastern District of Texas, 2 in the Western District of Wisconsin rocket docket, and 2 in the Northern District of Illinois, thanks to Ray Niro. Let's repeat: none of the Automotive defendants was sued by a troll in a

venue where either the troll or the defendant was physically located.

Financial/Banking/Securities

Most of these companies are located in the Southern District of New York. Where were the non-troll cases filed? Trick question! There were no non-troll cases. Every single one of the 16 cases in this sector were filed by patent trolls. And where were they filed? 11 of them were in the Eastern District of Texas. The other 5 were spread out over the country, in Dallas, Orlando, DC and Delaware. But none in New York.

Retail

This one's interesting. There were 87 patent cases filed total, 61 by non-trolls, and 26 by trolls. The non-troll cases were filed in 24 different judicial districts. Here are the districts with more than 2: Central District of California (8); Southern District of Florida (8); Eastern District of Texas (6); Southern District of Ohio (4); Northern District of California (4); Western District of New York (4). Fairly well-distributed. But the 26 troll cases? 19 of them were filed in the rocket dockets of the Eastern District of Texas (16) and the Eastern District of Virginia (3). The rest were spread out in Atlanta, New York, Chicago, Charlotte, and Hartford, Connecticut.

Pharma

There are no trolls in pharma. So where were these mostly Delaware and New Jersey companies sued? Actually, not in New Jersey. Now, to be sure, these companies were plaintiffs TONS of times in New Jersey. But not as defendants. Delaware's the big winner with 8 out of the 28 cases. The rest of the cases were spread over the country, mainly where the plaintiffs were located. The only districts with more than 2 cases were ones with high pharma/biotech concentration: New York and San Diego.

High Tech/Telecom

59 non-troll cases, 133 troll cases. First, the non-troll cases. Not surprisingly, the #1 district was still the Eastern District of Texas. This has become the place for two competitors from Silicon Valley or Austin to sue each other. In fact, EDTX had 26 of the non-troll cases; no other district in the country had more than 2 except for Seattle (4) and Delaware (3). And that's taking into account that some of these cases were D/J cases! Now, let's look at the 133 troll cases. How many do you think were filed in the Eastern District of Texas? 85, actually. Add the 9 in the Western District of Wisconsin, the 4 in the Northern District of Illinois filed by Ray Niro, and the 3 in the Eastern

District of Virginia, and a full 75% of all patent troll cases against the
High Tech industry are filed in a rocket docket with no connection to
either side in the litigation. The other 25%? Spread out over 11 other
jurisdictions (Delaware was the only significant one, with 8). There
were actually 3 in Northern California, but they were all D/J cases. In
fact, if you subtract out the D/J cases filed in places that make sense,
over 90% of all of the patent troll cases in this sector were filed in
EDTX, WDWI, EDVA, or by Ray Niro in NDIL.

Posted by Troll Tracker at 12:02 AM    3 comments
Labels: defendants_sued, Fortune 100, patent reform, statistics,
venue

Newer Posts                        Home                        Older Posts

Subscribe to: Posts (Atom)

# EXHIBIT B

[         SEARCH BLOG]   |   FLAG BLOG | Next Blog»                 Create Blog | Sign In

# Patent Troll Tracker

| Showing posts for query Niro.  Show all posts |
| --- |

**TUESDAY, OCTOBER 9, 2007**

## Last Week Wasn't Even the First Time Niro Scavone Sued Fish & Richardson

Interestingly, while representing patent licensing entity Solaia, Niro Scavone also sued Fish & Richardson for soliciting manufacturers not to honor Solaia's patent, according to this article from two years ago.

Update: Joe Mullin of the Daily Journal has another story on Scott Harris today (another story, which I unfortunately cannot link to because it's for subscribers only). Unlike me, he was actually able to interview Ray Niro, who says that Scott Harris sold his patents to "J. Beauregard Parker, a Florida attorney and investor, [who] acquires, licenses, and enforces patents." So now we know who James B. Parker is. All I could find on the internet about "Beau" Parker is that he took the New York bar and passed in 1999, and now appears on the active roster of the Florida bar. He indeed has a law office in Boca Raton. What I don't know is what's on everyone's mind: from where did Parker materialize? Did he know Niro already? Was he somehow connected to Harris, from way back?

Posted by Troll Tracker at 10:55 PM   0 comments
Labels: Fish_Richardson, James_Parker, media troll-coverage, Niro Scavone, Scott Harris

## Patent Troll Sues Fish & Richardson

Illinois Computer Research, the shell entity that Scott C. Harris sold his patents to, that then sued Google after Harris had previously sued Dell, has amended its complaint to assert tortious interference claims against Harris's former law firm, Fish & Richardson. Niro Scavone did the honors here. According to the amended complaint, which you can view here (hopefully - it's my first time trying to upload a PDF),

-- Harris has been inventing since age 12
-- Fish was aware that he was licensing his 27 patents
-- Other clients before Google complained about Harris
-- Fish & Richardson investigated when Dell complained, and told

**Email TrollTracker**

trolltracker@gmail.com

**About Me**

Troll Tracker
Just a lawyer, interested in patent cases, but not interested in publicity

View my complete profile

**EFF is helping bloggers protect their Constitutional right to anonymous speech**



**Blogs TrollTracker Reads**

Dennis Crouch's Patently-O Blog

Peter Zura's 271 Patent Blog

Patent Prospector

Michael Smith's EDTX Blog

Phillip Brooks' Patent Infringement Updates

Techdirt

Above The Law

WSJ Law Blog

Overlawyered

Patent Baristas

Just a Patent Examiner

Hal Wegner's Blog

Harris to sell his patents
-- Harris did sell his patents - to Illinois Computer Research
-- On August 29, ICR sent a threat letter to Google.
-- On September 12 (two days after ICR sued Google and the very day
I posted my original post -- update here), Fish & Richardson demanded
that Scott Harris resign within 24 hours. Harris complied.
-- Fish & Richardson claimed to what was apparently one of Harris's
many personal attorneys that it, not Harris, owned the patents
-- According to the complaint, Fish & Richardson accessed Harris's
personal email to find out what he was sending to Niro Scavone

Remember - these are all allegations. It begs all sorts of questions,
though. Like, who exactly is behind ICR if it's not Harris? Is it the
James Parker guy? Is there any connection between Parker and Harris?
If not, then why did Harris have to resign from Fish & Richardson. If
you sell your patent and retain no interest, there's no conflict, right?
Or is it just that he still has an agreement to cooperate with
Parker/ICR?

Anyway, fascinating stuff - a look into the inner-politics of a major
patent law firm. A boring patent case by just another troll
represented by Ray Niro against Google has turned into a circus of
finger-pointing and calls for punitive damages.

Posted by Troll Tracker at 1:28 AM   3 comments
Labels: Fish Richardson, Google, Illinois Computer Research, James
Parker, Niro Scavone, Scott Harris

WEDNESDAY, OCTOBER 3, 2007

## Wednesday Miscellany

Today I get rid of a bunch of miscellaneous news.

First, now that TGIP resulted in a massive $156M verdict in Beaumont,
it's time to focus on the next patent trials in the Eastern District. The
very next one will be in Marshall, with Judge Folsom. Yesterday, a
jury was selected in Cybergym Research, LLC v. ICON Health &
Fitness. I featured Cybergym here, in case number 21. It is a shell
entity controlled by Bay Area patent attorney Paul Hickman. All of the
defendants were dismissed from the case except for ICON. Cybergym
is being represented by Jack Russo of Russo & Hale (Palo Alto, CA) and
Carl Roth and fellow blogger Michael Smith of the Roth law firm.
ICON's lead attorney is Larry Laycock of Workman Nydegger & Seeley
of Salt Lake City, with local counsel Germer Gertz of Beaumont.
Following the jury trial will be a bench trial on inequitable conduct.

Also in October, Vista v. Microsoft will go to trial in Marshall with

IP Geek
Delaware IP Law Blog
Chicago IP Litigation Blog
Washington State Patent Law
Blog
Anticipate This!
Benefit of Hindsight
Patent Demand
Ideation Lab
SCOTUSBlog
How Appealing
The Volokh Conspiracy
Patently Absurd Inventions
Archive
Patently Silly

**EMail Newsletter**

Enter your email address below to
receive the Patent Troll Tracker
blog posts in a daily newsletter.
The newsletter, containing the
previous day's posts, will be
emailed late in the morning,
Eastern US Time.

Enter your email address:

[ Subscribe ]
Delivered by FeedBurner

**Subscribe Now: Feed Icon**

Subscribe in a reader

**Google**



**Blog Archive**

▼ 2008 (18)
  ▼ January (18)
     Minerva Awarded Exclusive

Judge Folsom. Visto, a California company with offices in Seattle, and Microsoft, a Seattle company with offices in California, are of course battling it out in Texas. Visto receives backing from Altitude Capital Partners, a hedge fund-like entity investing in IP licensing and litigation. It was discussed in a recent article as being a patent troll itself. I don't know enough to opine on that. The interesting battle being set up in *Visto* is Sam Baxter of McKool Smith (for Visto) vs. David Healey and Matt Powers of Weil Gotshal (for Microsoft). Should be some good lawyerin'. Visto v. Microsoft will follow Cybergym in Marshall.

After that, I have the following cases going to trial in the first full week of November:

an Acacia case with Judge Clark in Beaumont (Computer Acceleration Corp. v. Microsoft, with the same attorney battle: Sam Baxter -- and Judge Robert Parker -- v. David Healey);

a Rembrandt case with Judge Ward in Marshall (Rembrandt Vision Technologies v. Bausch & Lomb & CIBA Vision, with Otis Carroll, Judge Parker and Fish & Richardson for Rembrandt, Eric Albritton and Vinson & Elkins for B&L, and a whole slew of attorneys for CIBA seemingly led by Banner & Witcoff and Mike Jones)

and Mobile Micromedia (a case I featured 8/27) with Judge Folsom inTexarkana.

As far as I know, Judge Davis doesn't have any patent trials in the next two months, but correct me if I'm wrong.

Other news:

On August 30, Judge Patel of the Northern District of California sanctioned Acacia for failing to perform an adequate prefiling investigation. The case, *Micromesh Technology Corp. v. American Recreation Products*, was voluntarily dismissed by Acacia. Judge Patel granted about $128K in attorneys fees because of "Acacia's frivolous infringement investigation. Public literature, visual demonstrations and existing materials make clear that Acacia should have been aware that the [accused product] spacer mesh did not infringe the '878 patent." Venable represented Acacia. ARP was represented by Senniger Powers of St. Louis with local counsel Farella Braun.

Acacia has also been busy with numerous filings over the last week in East Texas. I'll have more on those tomorrow or Friday when I do the September numbers.

Finally, here's one on Niro Scavone. Representing MuniAuction, Niro

Paul Ware and Acacia

The Writing Process

Survey Results

A Note About Civility

Oral Argument in Quanta v. LG

Patent Exhaustion Takes Center Stage at SCOTUS

Is the United States Navy the Latest Patent Troll?...

New York Times Article Sets the Stage for Upcoming...

Troll Call and Other Statistics for December 2007

Global Patent Holdings Sues Boca Raton Resort & Cl...

Wednesday Miscellany, 1/9/08

Number of Utility Patent Claims Issued By USPTO Pe...

Rembrandt's Interesting Injunction Strategy (Possi...

4 Interesting New Cases From Last 2 Weeks of Decem...

Acacia December 2007 Update

Global Patent Holdings Update

Happy New Year

► 2007 (136)

Labels

104 E. Houston St. (3)

1st Media (1)

1st Technology (3)

Acacia (42)

Accolade Systems (1)

ADISCOV (2)

Adv Tech Incubator (1)

Alexsam (4)

Aloft Media (1)

Scavone sued Thomson in the Western District of Pennsylvania. The patent related to a process for conducting municipal bond auctions over electronic networks. Niro Scavone was successful, securing a permanent injunction. Last Friday, that permanent injunction was stayed by the Federal Circuit in light of the recent "no joint infringement" case, *BMC Resources v. Paymentech*. Covington & Burling and Wilmer Hale for defendants below (not sure about appeal - at least Covington).

Thanks to readers for many of the above tidbits. And for suggesting I change the layout/colors. More changes to come.

Posted by Troll Tracker at 5:57 AM    1 comments
Labels: Acacia, Altitude Capital Partners, Cybergym, Judge Folsom, McKool Smith, Michael Smith, Microsoft, Mobile Micromedia, Niro Scavone, Paul Hickman, Rembrandt, Sam Baxter, TGIP, Visto, Weil Gotshal

TUESDAY, OCTOBER 2, 2007

## Unveiling TrollTracker's Troll Severity Assessment System

(10/4 Edit: changed Category 2 to NPE, in transition)

I have been thinking a bunch about small inventors, and, for some of them, whether it is fair to label them as a "patent troll." Obviously, it varies from case to case, and depends on a bunch of factors. And, as a couple of you have pointed out, some of my recent comments have been sounding almost guilty, which is true - my conscience was having a hard time grouping some non-practicing entities in the same category as Acacia and Plutus.

So, I thought, what if I could quantify those troll-like factors, and come up with a Troll Severity Assessment for each non-practicing entity? That would alleviate my problem of grouping all of these disparate entities under one umbrella label. Certainly, I couldn't possibly get all of the factors here. Because my major limitation is that information has to be reasonably publicly available to be useful to my assessment. For example, I usually can't tell whether there has been pre-filing notice (although sometimes it's in the complaint), and I almost never can tell what the level of the demand has been (unless, like Minerva, the demand is shared in a press release).

Here is what I came up with. First, a big disclaimer: *this is a work in progress.* I welcome any suggestions - factors I missed, etc. I am debating whether to use it later this week.

Altitude Capital Partners (9)
anagrams (3)
anonymity (11)
Antor Media (5)
AOL (1)
Apple (8)
Aris Mardirossian (1)
Artesyn (1)
AT_T (6)
attorney-trolls (7)
Austin (1)
Automated Facilities (2)
Autotext (3)
Barry Thomas (1)
BarTex (3)
Beneficial Innovations (1)
Bill Gates (1)
bio-pharma (4)
blogging (15)
Bodog (2)
Boston (1)
bounty (2)
Brian Marcus (1)
British Technology Group (1)
Bruce Renouard (1)
Burst.com (1)
Cablevision (1)
Calvin Ayre (3)
Card Activation Techs (1)
champerty (1)
Charles Hill (1)
Choongsoo Park (1)
Ciba (1)
Cingular (1)
Cisco (4)
Citrix (1)
Clay Dark (1)

1 point is awarded for suing more than X unrelated defendants in a single lawsuit (for now, I think X=3);

1 point for the plaintiff being a shell having no connection to the inventor or having multiple shell corporations or transfers to hide the true inventor;

1 point for blatant venue shopping;

1 point for the plaintiff being a corporation having no R&D and no manufacturing;

1 point for cumulatively suing a slew of defendants and/or filing a slew of lawsuits (I made this subjective on purpose - e.g., suing 10 defendants in 3 lawsuits might qualify, but suing 5 defendants in 5 lawsuits may not -- and this will probably vary from patent to patent)

2 points for having other, troll-like qualities (again, subjective, but what I'm thinking about are things like having Niro Scavone as your counsel, sending threat letters to anonymous bloggers, filing "strike suits" with no warning, etc. I'll know to award it when I see it)

Now, what do we do with all of these points? Here's what I have plotted out:

1-2 points: *not a troll*, just a non-practicing entity (**Category 1 NPE**)
3 points: still a non-practicing entity, but in transition to becoming a patent troll, perhaps a patent troll wannabe? (**Category 2 NPE**)
4-5 points: a full-fledged patent troll (**Category 3 Patent Troll**)
6-7 points: an uber-troll (**Category 4 Patent Troll**)

Notes:
a) I will not go back and reassess my past posts unless the need arises on a case-by-case basis.
b) I will still track, going forward, all 4 categories.
c) Even though one of the categories I am tracking is just the non-practicing entity category, I will not change the name of my blog!
d) This is an experiment, subject to abandonment if it becomes too much work, or if it just doesn't work.

Maybe this will make more sense with some examples.

Let's say you are an individual inventor, having sued a couple of defendants in East Texas when you have no connection. That will likely be 1 point - an NPE. If you form a shell corporation in Texas to file the suit? Probably 2 points, still an NPE. But if you are venue shopping, form the shell with no R&D or manufacturing, and you have sued 42 defendants on one day? 3 or 4 points.

By the way, in the past, I have left off the 1-point cases from my list - an individual inventor who is not venue shopping, and has sued only a couple of infringers. I probably won't include that case in the future. But Plutus? Acacia? Each are 6-7 points.

Comcast (1)

Commil USA (2)

Computer Acceleration (3)

Constellation IP (1)

contingency fee (4)

Cooley (2)

Coronary Stent Visualization Corp. (1)

corporate shell games (2)

Creative Internet (1)

Credit Card Fraud Control Corp. (1)

Cross Atlantic (1)

CSIRO (3)

Cybergym (3)

Dallas (4)

Dan Henderson (1)

dance contest (1)

Data Encryption (1)

Data Match (2)

David Pridham (7)

Dechert (2)

defendants_sued (8)

Dell (2)

Dennis Crouch (8)

Diagnostic Systems (1)

Digital Choice (2)

Digital Reg (2)

Digital Technology Licensing (1)

Disc Link (1)

DJ (2)

DocuMed (1)

Document Generation Corp. (1)

eBay (1)

ECF (1)

Electrolux (1)

epicRealm (2)

Eric Albritton (3)

Anyway, that's what I came up with. I decided to match the hurricane warning levels, because they make sense. I could have gone with the Homeland Security system, but honestly, does anyone understand it? Can you ever get to anything other than yellow/orange/red? It's a joke.

So let's see how this works later in the week.

Hmmm, should I have applied for a patent on this?

Posted by Troll Tracker at 8:44 AM    10 comments
Labels: Acacia, Plutus IP, troll assessment

MONDAY, OCTOBER 1, 2007

## Patent Reform, Front and Center in the News -- and Law Review Articles

There have been some interesting articles emailed to me recently. One, from MIT Technology Review, is titled "Patent Law Gets Saner," and talks about the Supreme Court's interest in patent law. You can access it here: https://www.technologyreview.com/Biztech/19180/ (free registration required).

Someone else sent me a link to an article from the Daily Journal (legal newspaper in California) about Scott Harris and his departure from Fish & Richardson. That one requires registration that's not free, though. And it's a horrible website, so I'm not even going to link to it. But it's a great article, if you can find it.

One article/blog you can read is from the San Jose Mercury News over the weekend, titled Let's Hope Senators Pass Patent Reform.

Last, but certainly not least, Peter Detkin, formerly of Intel, now of Intellectual Ventures, has an article in the John Marshall Intellectual Property Law Review, explaining why he no longer favors the term "Patent Troll." It is a fascinating article about what Detkin claims is the process small inventors have to go through in order to get corporations to take a license. One must assume that some of this information is taken from Detkin's experience at Intel.

You can access the article, titled "Leveling the Patent Playing Field," here (note, it's a PDF, need Adobe to read it, etc.): http://www.jmripl.com/Publications/Vol6/Issue4/Detkin.pdf. Detkin's solution for the small inventor? Why, sell or exclusively license your patents to Intellectual Ventures, of course!

Erich Spangenberg (13)
ESN (3)
Eurotroll (1)
Evil Pete (1)
examiner overload (1)
F_G Research (1)
Facebook (2)
Federal Circuit (4)
Fenner Investment (1)
Financial Systems Innovation (2)
Fish_Richardson (15)
Fluid Dynamics (1)
Ford (1)
Forgent (1)
Fortune 100 (4)
FotoMedia (1)
FRCP 1 (1)
Freedom Wireless (1)
Friedman Suder (4)
Function Media (2)
GE Healthcare (1)
Gellman (2)
Gemini IP (1)
General Patent Corp (2)
Global Commns (1)
Global Patent Holdings (10)
GM (1)
Google (11)
GPNE (1)
Guardian Media (1)
haiku (3)
Hal Wegner (3)
Harthcock (2)
Hennigan Bennett (3)
Hospital Systems (1)
HP (2)
Hugh Hefner (1)

Since I have been often criticized for labeling some plaintiffs as patent trolls, I wanted to point out that the guy who originally coined the phrase is now saying this:

> While I coined the term "patent troll," I refrain from using it today. It has become too emotionally charged and too often hurled carelessly as an epithet to disparage just about every kind of plaintiff in a patent suit. In place of name-calling and contentious debate about the symptoms of imbalances in the market for patents, we need to address their underlying cause.

Detkin, 6 J. Marshall Rev. Intell. Prop. L. 636, 642 (2007).

Hey - I'm not disparaging *every* plaintiff. Just the ones I carefully hand-select. And I do admit, there are grey areas, and people can disagree, for example, about whether this or that non-practicing entity is a troll. Under some people's definition, even IBM is a patent troll.

As for Detkin's article, it is interesting, mainly due to how much his personal views have changed as a result of his evolution in position. Now that he's working for a company whose core business is IP, of course the world revolves around IP. And if your world is IP-centric, where IP is king, then of course you will think of Acacia or Rembrandt IP as legitimate companies providing a benefit to society. Detkin, at 643.

There are many good ideas in this article, but what also strikes me is how it just ignores that in all of this IP being bandied about, relating to semiconductors, computers, etc., - it's all just worthless if the companies who actually manufacture the goods cannot afford to make a decent return on investment due to extremely high royalty stacking. Yes, IP has a role in the economy and policymakers should and are keeping that in mind. But it can't be given too much importance, or innovation is equally stifled.

Coming up this week, unless I change my mind:

Tuesday: Unveiling TrollTracker's Troll Severity Assessment System
Wednesday: More News, including Acacia! and Niro Scavone!
Thursday: September 2007 Statistics

Posted by Troll Tracker at 12:03 AM    2 comments
Labels: Intellectual Ventures, media troll coverage, patent reform, small inventors

WEDNESDAY, SEPTEMBER 26, 2007

Hybrid (2)
Hypercom (1)
IBM (2)
Illinois Computer Research (5)
injunctions (1)
Innovative Patented Technology ( 2)
Inpro (2)
Intellectual Ventures (7)
International Intellectual Mgmt ( 1)
International Printer (1)
IP business models (1)
IP Innovation (3)
iPhone (1)
J. Carl Cooper (1)
James Parker (9)
James Sokolove (1)
Jarg (1)
Jenner Block (2)
Johnny Ward (3)
Johnson_Johnson (1)
joint infringement (1)
Joseph Zito (2)
Judge Clark (5)
Judge Davis (3)
Judge Everingham (1)
Judge Folsom (3)
Judge Moore (1)
Judge Ward (2)
jury verdict (6)
Katten Muchin (1)
Katz (4)
Kevin Zilka (1)
Keystone Autonics (1)
Klausner (1)
KSR (3)
Larry Flynt (1)

## Reply From Ray Niro

Was going to post something analytical about patent reform today, but it just didn't happen. May do so later today, but meanwhile, I got this reply from Ray Niro to my follow-up letter to his original patent assertion.

*Dear Mr. Tracker:*

*When you identify yourself (maybe you can include your photograph), we can respond. I suggest you read pp. 64-65 of the Board's decision. ("A typical instance of an asymmetric technique is one for continuous-tone imagery such as JPEG.").*

*Raymond P. Niro*

OK, that doesn't answer many, if any, of my questions. But since I'm not going to identify myself, I guess we're at a standoff. I'll be following the case in Chicago, though. You know, the one where the Green Bay Packers are the lead defendant. What's next, suing the Yankees in Boston?

Posted by Troll Tracker at 11:01 AM    12 comments
Labels: Acacia, anonymity, Global Patent Holdings, Niro Scavone, stupid patent tricks

TUESDAY, SEPTEMBER 25, 2007

## Follow-up Letter to Niro Scavone

September 25, 2007

Dear Mr. Niro,

It has been 11 days since my last letter, and you have not provided me with any explanation how the inclusion of a simple JPEG picture on a website infringes the only remaining claim of the patent you have asserted. Here is claim 17 - the very one you are now attempting to assert against the Green Bay Packers, Apple, Inc., Orbitz.com, and me (among others).

A method for downloading responsive data from a remote server comprising the following steps:

(a) identifying a query via a data input means and inputting said query to remote query and data retrieval means;

(b) transmitting said query from said remote query and data

Larry Germer (1)

law firms (1)

LG (3)

LHConcepts (1)

Lin Packaging (1)

Linex (1)

linux (1)

Lonestar Inventions (2)

Lowe's (1)

LPL Licensing (1)

magically changing docket dates (1)

malpractice (1)

Marshall Credit (2)

Marshall Electronics (3)

Marshall Packaging (2)

Matt Powers (1)

McKesson (1)

McKool Smith (8)

MDL (2)

Media Technologies Licensing (1)

media troll-coverage (8)

Memory Control (1)

MercExchange (1)

Mershon (1)

MHL TEK (2)

Michael Smith (7)

Microsoft (9)

Minerva (6)

MIT (1)

Mobile Micromedia (2)

Mondis (2)

Monts Ware (6)

motions compel (1)

Motorola (3)

NDGA (1)

netPL (1)

retrieval means to said remote server via an input/output means;

(c) receiving a compressed or non-compressed response to said query at said remote query and data retrieval means from said remote server via said input/output means;

(d) displaying a presentation corresponding to said compressed or non-compressed response on output means;

(e) wherein said compressed or non-compressed response is compressed prior to receipt at said remote query and data retrieval means, and wherein said compressed response is decompressed at said remote query and data retrieval means using an asymmetric decompression technique corresponding to the inverse operation of the technique used to compress said compressed or non-compressed response.

Now, please answer the following questions:

(1) I took a picture with my digital camera, after which I downloaded, from the camera, a JPEG image. Using blogger's software, I uploaded that picture onto a blogger server, where, presumably, it sits. I have displayed that JPEG picture on my website. Anyone who visits my website will see it automatically, without having to make any kind of query - no clicking on a link, nothing. What, exactly, in this fact pattern, is the "query" of claim 17 of the '341 patent?

(2) If your response is that the "query" is when my blog is loaded onto a computer, then isn't it in fact your accusation that every single reader of my blog is a direct infringer? If that is the case, then isn't every single person who has a computer and an internet connection a serial infringer?

(3) Since I obviously don't understand your infringement accusations, please provide a claim chart so I can better understand how, exactly, my website is violating your patent rights.

(4) During reexamination, the BPAI reversed the finding of anticipation of this claim in light of patents to Walter and Pocock, but the examiner and BPAI never considered whether this claim is obvious, for reasons that escape me. Further, the BPAI decision did not have the advantage of KSR. How is claim 17 of the '341 patent not invalid as obvious in light of Pocock, US Patent 5,014,125, just as a matter of common sense under KSR? It was well-known in the art in the late 1980s how to compress and decompress using a decompression technique that requires a different amount (less) of processing power than does the compression technique. As the '341 patent admits, that well-known technique was JPEG.

Network Signatures (1)

New York Times (1)

NextCard (3)

Nintendo (1)

Niro Scavone (23)

Nokia (2)

non-EDTX rocket dockets (1)

Northeastern U (1)

Ocean Tomo (1)

Online Res. (1)

open source (1)

OPTi (3)

Orbitz (1)

Orion IP (12)

Otis Carroll (1)

PA Advisors (1)

Paice (1)

Paid Search Engine (1)

Palm (1)

Parallel Networks (1)

Parallel Processing (1)

patent exhaustion (4)

Patent Hawk (4)

patent reform (33)

Patriot Scientific (1)

Paul Hickman (4)

Paul Ware (1)

Performance Pricing (1)

Peter Courture (1)

Peter Zura (2)

Philips (1)

Phoenix IP (3)

PhoneTel (1)

Plutus IP (11)

Polaris IP (2)

Polymer Solvents (2)

Positive Techs (1)

(5) If your argument is that the Pocock '125 patent lacks the magic word "JPEG" in it, then why isn't claim 17 of the '341 patent obvious under KSR in light of Pocock '125 in combination with Forgent patent 4,698,672 - the infamous JPEG patent? That patent had a filing date of years before the '341 patent. If a person of skill in the art, looking at Pocock, saw compression and decompression, it would be obvious to use the well-known JPEG technique and all of its advantages as outlined in the '672 Chen patent.

(6) Even if you can explain how each claim element fits my fact pattern and even if claim 17 of the '341 patent is not invalid, now answer this question: does any one person infringe it? In other words, it seems that under the Federal Circuit's decision in BMC v. Paymentech, your only viable infringement theory is one of divided infringement. Please be sure in your response to me to explain why the BMC case doesn't sink your infringement theory.

In conclusion, you seem to think that by virtue of this single claim that survived reexamination, your client can sue anybody who uses a website containing a JPEG image. But I believe that whether in the district court or on appeal, you'll eventually lose. For example the examiner only rejected then-claim 101 as anticipated, and did not make a contingent obviousness rejection just in case his "inherency" argument failed. Why? Perhaps your firm wore him down with your 250-page office action responses! And of course the BPAI cannot review a rejection that the examiner never made. These examiners are overworked and underpaid, and, unfortunately, invalid patent claims like this slip through once in a while, both in initial examination and, it seems, in 7-year reexaminations, too.

Despite my views, I am quite a reasonable person. Once I get a meaningful response from you, including a claim chart and answers to my other questions, I will consider removing the JPEG. Until then, however, you have not explained how the sole remaining claim of the patent is either infringed or valid in light of the art cited during the reexamination, but never applied in an obviousness analysis, and so my single JPEG will remain posted.

Yours truly,


TrollTracker

UPDATE: Ray Niro responded. See here.

Posted by Troll Tracker at 9:30 AM    3 comments
Labels: Acacia, Global Patent Holdings, KSR, Niro Scavone, stupid

Power Integrations (1)

Power-One (1)

Premier Intl (1)

privilege (2)

PSN Illinois (1)

QPSX (1)

Quantum World (1)

RealNetworks (1)

Red Hat (1)

Reese (1)

Refined Recommendation (2)

Reid (1)

Rembrandt (7)

RIM (2)

Ron Laurie (1)

Rule 11 (2)

Rusty Rose (3)

Rutan Tucker (2)

Sam Baxter (2)

Samsung (2)

Saxon Innovations (3)

Scott Harris (15)

Scott Lewis (3)

Screentone (2)

Seagate (4)

Silicon Valley (2)

silly patents (1)

Simon Passanante (1)

Sky Technologies (2)

Slashdot (1)

small inventors (2)

Software Rights Archive (1)

Sony (1)

SP Technologies (2)

Sprint (1)

ST Sales Tech (3)

standing (1)

patent tricks

**MONDAY, SEPTEMBER 24, 2007**

## Acacia Does Dallas

Later this week, I hope to find time to noodle over a couple of patent reform issues as they relate to small inventors. But first, I need to get in a couple of long-overdue Acacia posts. Today, I look at an Acacia case filed in Dallas a week ago.

Acacia's subsidiary Financial Systems Innovation, represented not by TrollTracker favorite Ray Niro, but instead by Friedman Suder & Cooke, sued 11 defendants in the Northern District of Texas last Monday. This is the same Acacia entity that sued 108 defendants in Rome, Georgia back in June. Not sure why these follow-on defendants were sued in Dallas on this expired patent, rather than with the others in Rome, but they were.

Defendants are Avis Budget Car Rental, CompUSA, Fossil, Barney's, Ben Bridge-Jeweler, Big Lot Stores, Diesel U.S.A., PUMA North America, Safeway, Swatch, and Zara USA.

This is the 7th patent litigation filed by Acacia subsidiary Financial Systems Innovation (they were also D/J'd 5 times, meaning this entity has now been involved in a dozen patent cases, against over 130 defendants). Overall, Acacia and its many subsidiaries have been involved in at least 220 patent lawsuits (I lost count). I think that Acacia has only been filing patent lawsuits for 5 years, although they may have acquired entities that had filed earlier suits. Still, that works out to close to 1 patent lawsuit filed by Acacia per week over the last 5 years.

What other person, corporation, or any other kind of entity have you ever heard of, that has filed one lawsuit per week over a five-year period? Anybody?

Posted by Troll Tracker at 12:01 AM     2 comments
Labels: Acacia, Dallas, Financial Systems Innovation, Friedman Suder

**FRIDAY, SEPTEMBER 14, 2007**

## TrollTracker Responds to Ray Niro's Threat Letter

TrollTracker got the following email from Ray Niro of Niro Scavone (timed to arrive just before 5pm on a Friday, no less). Apparently, he's serious about suing me personally. And people keep asking me why the anonymity:

statistics (31)

Steve Jobs (1)

StorMedia (2)

stupid patent tricks (8)

Supreme Court (3)

Susman Godfrey (3)

Sutton (1)

T-List (1)

Taeus (1)

Target (2)

TechSearch (1)

Tessera (1)

Texas MP3 Technologies (1)

TGIP (5)

Thomas Harvey (1)

threatening emails (3)

Tillotsin (2)

Time Warner (1)

Tinkers_Chance (1)

Traffic Information (2)

Trent West (1)

Triton IP (2)

troll assessment (3)

Trontech (1)

Typhoon Touch (1)

UFOs (1)

US Navy (1)

Vdata (2)

venue (30)

Verizon (2)

Verve (1)

Viacom (1)

Visto (1)

VTran (1)

Wal-Mart (1)

Ward_Olivo (4)

Warren Heit (1)

*Please identify yourself. You may be infringing United States Patent No. 5,253,341.*

*Raymond P. Niro*
*(Transmitted by Donna L. Wartman)*

I looked, and this patent belongs to Acacia**. So now Acacia wants to shut down this website? Here is my response:

Dear Mr. Niro,

I have received your email dated September 14, 2007. TrollTracker respects the intellectual property rights of third parties, and takes such accusations seriously. In order to better investigate your claim that I "may" be infringing U. S. Patent No. 5,253,341, please provide me with more information. How, exactly, am I infringing any claim of this patent? Is any blogger automatically infringing the '341 patent by posting a blog? Or does your claim pertain to my methods of searching public databases to get information? Is it your claim that anyone who searches the PTO Assignments database or the Illinois Corporations database automatically infringes Acacia's '341 patent? Would you be willing to put that in writing?

I look forward to your response. However, unless and until I get a more detailed response outlining how, exactly, I am infringing the Acacia '341 patent, I will be unable to further respond to your letter.

Sincerely,

TrollTracker

PS Greg Aharonian, help me now!

**Update:** Well, that didn't take long. Just yesterday, Global Patent Holdings, LLC, a subsidiary of Acacia**, sued the Green Bay Packers, Ed Napleton Acura, Apple, Orbitz, Peapod, OfficeMax, Caterpillar, and Kraft Foods, for infringement of the '341 patent. Case filed in Chicago by Ray Niro, of course. Didn't show up on my radar because Niro filed it as an amended complaint in a case that had been originally filed against Greg Aharonian and stayed for 7 years. In the Green Bay Packers' case, they were accused of "participating in at least one football contest against the Chicago Bears every year." Suing the Packers in Chicago? To get the jury swayed? Right. Anyway, evidently this patent just emerged from a 7-year reexamination, where only a single claim survived. And supposedly **the posting of a JPEG picture on a website is the act of infringement.** I guess there goes the Troll Crossing photo (temporarily)!

| | |
|---|---|
| Wayport (1) | |
| Web Telephony (1) | |
| Weil Gotshal (3) | |
| White Case (1) | |
| Wi-LAN (3) | |
| WIAV (1) | |
| willfulness (3) | |
| Williams Kherkher (1) | |
| Yahoo (2) | |
| Zappos (1) | |

**Edit 12/8/07** : Acacia doesn't own the patent, Global Patent
Holdings, which is not a subsidiary of Acacia, does own it, per this post

Posted by Troll Tracker at 5:22 PM    8 comments
Labels: Acacia, contingency fee, Global Patent Holdings, Niro
Scavone, stupid patent tricks

WEDNESDAY, SEPTEMBER 12, 2007

## Google Sued by Patent Troll: But Who's The Kingpin?

For the third time in a month, a patent invented and prosecuted by
Fish & Richardson attorney Scott C. Harris, who opines that the effect
of KSR on patent owners will be minimal, was asserted in litigation.
First, Harris assigned a patent to BarTex, who hired Niro Scavone to
sue FedEx in Tyler, Texas (see #92 here). Second, Harris assigned a
patent to Memory Control Enterprise, LLC, who sued Motorola and
others in Chicago (which I briefly alluded to in the same post, but
didn't get the Harris connection at the time).

Then just a month ago, Scott C. Harris assigned a patent to Illinois
Computer Research, LLC, who hired Niro Scavone to sue Google. And
sue Google he/it/they did, filing a lawsuit on Monday accusing the
Google Book Search feature of infringing US Patent 7,111,252
("Enhancing Touch and Feel on the Internet"). Thomas Claburn from
Information Week has more here. Funny thing: in the
required "corporate disclosure statement," Ray Niro reported that
Illinois Computer Research has no parent corporation, but he signed it
on behalf of Memory Control Enterprise, LLC. Oops, Ray. Can't get
your troll's shells straight?

So what are the signs pointing away from Harris being the troll
mastermind? First of all, the BarTex company is purportedly owned by
James Parker and located in Dallas. The Illinois Computer Research
company, on the other hand, is located at 125 S. Wacker Drive, Suite
300, in Chicago. How does Harris have a connection to either of these
places? Confusingly, this second address is the exact same address as
apparently legitimate voice and video company Speakerbus. (Per a
comment, there are apparently several legitimate companies at this
address - perhaps it's the address of a registered agent/corporate
organizing company).

Now, for the evidence that Scott C. Harris is, in fact, a patent troll.
Well, for one, he runs a website called "I'm A Patent Troll" -- where,
as he claims on his personal website, he provides advice on "how to be
and/or protect against patent trolls," and provides his Fish &

Richardson email address. Second, Harris has many continuations on his Illinois Computer Research patent, all of which he is still prosecuting himself. He also is prosecuting pending continuations off of the BarTex patents.

Digging further, TrollTracker was also able to determine that Harris assigned some of his other patents as follows:

(The BarTex and Illinois Computer Research assignments, as discussed above and in other posts)

In May 2007, 1 patent to Memory Control Enterprise LLC of Chicago. Harris (represented by Niro Scavone) sued Dell, GM, Panasonic individually, with MCE as exclusive licensee, prior to this transfer. He also sued 9 other defendants, the first 4 individually, and the last 5 by MCE alone last week. Are any of these defendants FR clients?

In July 2007, 1 patent to Parker Innovative Technology of Boca Raton, Florida. Niro Scavone filed suit on behalf of Parker against 3Com in SDFL.

In July 2007, 1 patent to Innovative Biometric Technology of Boca Raton, Florida. No lawsuits filed -- yet -- that I can see.

In August 2007, 2 patents to Virginia Innovative Technology of Glen Allen, VA.

Niro Scavone took care of all of the paperwork for these transfers. All this points to Harris being the patent troll. Yet there's something else interesting - the name James B. Parker came up again. First, he's the manager of BarTex. Second, he's the manager and sole member of Parker Innovative Technologies. Third, he's the manager and sole member of Innovative Biometric Technology. I'll bet he's probably manager of all of these companies.

So does James B. Parker own all of these companies and is suing all sorts of defendants all over the country using Niro Scavone? Or is it Scott "I'm A Patent Troll" Harris? It remains a mystery to me.

Posted by Troll Tracker at 12:02 AM    10 comments
Labels: attorney-trolls, Fish_Richardson, Google, Illinois Computer Research, James Parker, Memory Control, Niro Scavone, Scott Harris

TUESDAY, SEPTEMBER 11, 2007

## Billionaire Badboy Calvin Ayre Mocks and Threatens Patent Troll 1st Technology


Most patent troll cases aren't that interesting. I mean, you hear one story about greedy individual forming numerous entities to hold patents and sue in Texas, you hear them all. The interesting parts are the sheer shocking nature of the cumulative troll statistics, and maybe one or two outrageous cases or patents. Oh yeah, every once in a while you get a former partner of the current President of the United States, but the typical fare isn't really that interesting when it comes down to it. But thanks to a reader tip, I got exposed to a very different patent troll story today. This one involves an outlawed billionaire, a troll that's trying to collect on a judgment by taking over internet gambling websites, and a threat to involve the Mohawk Nation.

Scott W. Lewis, formerly and possibly currently of Los Gatos and/or Saratoga, California, has formed 3 entities, 1st Technology LLC, 1st Media LLC, and 1st Telephony LLC, and has populated these entities with 7 different patents. He is now suing the entire e-gaming industry in federal court in Las Vegas. So far he appears to have filed 7 lawsuits (hmm, 7 patents, 7 lawsuits - Vegas is the place for him).

Lewis first formed his corporations as California corporations, but then reformed them in Las Vegas. Perhaps he moved there, or perhaps he was just concerned about his cases being transferred out. In fact, in one of his cases, a motion to transfer was withdrawn after he refiled his corporate papers in Las Vegas. So this is no different, apparently, then the patent trolls who manufacture venue in Marshall, Texas - Lewis is just manufacturing it in Las Vegas. Why? Because the internet gambling industry is probably perceived by the community negatively, as a threat to jobs in Las Vegas. That's my guess, anyway.

Lewis first threatened the entire industry, and shook them down for a low amount of money based on one of his patents. Evidently the industry wasn't sophisticated, or looked at the low amount and didn't fight the licensing issues too much, because he came back with other patents now.

Lewis and his "companies" are represented in patent litigation by the Niro Scavone lawfirm. In fact, in press releases people are asked to contact him via attorney William Flachsbart of Niro Scavone.

Lewis sued Bodog Entertainment Group for patent infringement in one of his cases. He was able to convince the judge that Bodog, incorporated in Costa Rica, was properly served, and he got a default judgment of nearly $50 million. Using the default judgment, Lewis convinced a Washington state court judge to seize Bodog's thousands of registered domain names to be held and liquidated in satisfaction of the judgment. Bodog is currently moving to set aside the default

judgment, claiming it was not properly served (according to the papers, 1st Technology served a secretary, and told the court they served someone "in charge").

Calvin Ayre is an interesting character. He was pictured on the cover of Forbes magazine in an article titled "Catch Me If You Can." In any case, Ayre recently entered into an agreement with the Mohawk nation to take over his business or be a partner or something, so now Ayre is joking on his website that 1st Technology and Lewis had better watch out. It's pretty funny - especially the troll picture, you can find it here. Ayre warns: "Beware Patent Trolls, Mohawks Have Been Known To Eat Their Enemies." In fact, Ayre has now announced a Patent Troll Dance Contest! "Dressing in the dorkiest, hickest, ugliest one-toothed Patent Troll costume will give you extra points," according to Ayre. First prize? $1,000, an iPod, a trophy, and the envy of patent trolls everywhere.

You can't make this stuff up. If Ayre ever does post the winning patent troll dance entry, I'll be sure to include a link here.

Posted by Troll Tracker at 12:11 AM    2 comments
Labels: 1st Technology, Bodog, Calvin Ayre, dance contest, Scott Lewis

MONDAY, SEPTEMBER 10, 2007

## Troll Call and Other Patent Stats for August 2007

At the end of August, the Eastern District of Texas still dominates all other district courts in terms of number of total patent cases filed, number of defendants sued, and number of patent troll cases - both for the month, and cumulatively for 2007. As with past months, it still isn't even close. Here are the stats just for August.

ED Texas: 42 patent cases, 169 defendants sued (19 troll cases)
CD California: 18 patent cases, 54 defendants sued (2 troll cases)
D New Jersey: 11 patent cases, 27 defendants sued (0 troll cases)
ND California: 17 patent cases, 33 defendants sued (2 troll cases)
ND Illinois: 10 patent cases, 16 defendants sued (4 troll cases)
D Delaware: 8 patent cases, 14 defendants sued (0 troll cases)
SD New York: 4 patent cases, 6 defendants sued (0 troll cases)

Let's highlight a couple of interesting statistics: more defendants were sued in the Eastern District of Texas in August 2007 than in all of Los Angeles, San Francisco, New Jersey, New York City, Delaware, and Chicago *combined*. Of course, so-called patent troll cases outnumbered those other 6 big patent districts by a wide margin.

For the record, here are the 8 non-Texas troll cases I have logged for
August:

Memory Control Enterprise, LLC v. Honda, LG Electronics, Motorola,
Oakley, and US Cellular Corp. (NDIL)
Edge Capture, LLC & Edge Specialists, LLC v. Citadel Investment
Group & Citadel Derivatives Group (NDIL)
Technology Development and Licensing LLC v. Motorola (NDIL)
Global Patent Holdings, LLC v. CDW Corp., Motorola (NDIL)
Acticon Technologies, LLC v. Pretec Electronics Corp. & 7 related
individuals/entities (NDCA)
Ardente, Inc. v. Shanley et al. (NDCA)
24P, LLC v. Silicon Imaging, Inc. (CDCA)
Diagnostic Systems Corp. (Acacia) v. Oracle, SAS, BMC Software,
Business Objects, and Cognos (CDCA)

Interesting things about this group of troll cases: first, Motorola was
sued by 3 different trolls in August in Chicago, in addition to being
sued by Macrovision in Northern California and again by another
company this past week in Delaware - 5 patent cases filed against it in
one month, and none in Texas; second, Niro Scavone did most of the
suing in NDIL on behalf of trolls, and then, in a different case, as a
party, filed a D/J complaint against a patent-holder trying to prove
noninfringement and invalidity.

Now, I have a correction to make. In researching the patent cases for
August, I discovered that the Central District of California runs about
a week behind in getting cases posted to ECF. (And they don't put
complaints online - very frustrating). I decided to go back and check
my numbers for the entire year for CDCA. While the numbers for
January-May were accurate, I did find mistakes for the June and July
numbers. In June, I ran the numbers on the last day of the month.
Therefore, I missed the entire last week of June in CDCA.

It turns out that during that last week, there were 18 more patent
cases filed there, including 3 troll cases. In July, I waited to run the
numbers until August 6, so I only missed the last day of July, which
had 2 cases filed, including 1 troll case. So I undercounted the Central
District of California by 20 patent cases. The numbers are all fixed in
the cumulative stats below.

The added troll cases for CDCA for June and July are:

Netcurrents Information Services v. Dow Jones & Factiva (defunct
company, remaining shell, Ray Niro - you do the math)
Parallax Group International LLC v. BJ's Wholesale Club
Papst Licensing GmbH v. Samsung (Eurotroll)
dbest products v. Staples

Now, here are the fixed and updated statistics for 2007 through the end of August, comparing the various districts:

ED Texas: 244 patent cases, 874 defendants sued (101 troll cases)
CD California: 186 patent cases, 420 defendants sued (14 troll cases)
D New Jersey: 109 patent cases, 196 defendants sued (5 troll cases)
ND California: 95 patent cases, 189 defendants sued (15 troll cases)
ND Illinois: 91 patent cases, 179 defendants sued (18 troll cases)
D Delaware: 83 patent cases, 213 defendants sued (9 troll cases)
SD New York: 71 patent cases, 173 defendants sued (10 troll cases)

Even with the correction, ED Texas is still in first place by a wide margin. And subtract out LA, and no other district in the county has even half the number of patent cases as East Texas.

That's really quite amazing. Last year, ED Texas was #2 with 262 cases - for all of 2006. This year, ED Texas should hit that number sometime next month, and end up probably up 40% from last year. Barring a sudden surge of filings in California, ED Texas is clearly going to be #1 by a huge amount. Not only that, but the district is on pace for 1,311 defendants sued in 2007 - about 25 per week.

Certainly more patent cases have been filed by trolls in ED Texas than in all the rest of the country combined.

Now here's the troll call for the Eastern District of Texas for August, 2007 - some interesting cases in there:

83) SP Technologies, LLC v. Apple (Tyler, 8/2/07). Discussed here.

84) Orion IP v. Chrysler Corporation and 2 other related entities (Tyler, 8/3/07). Is it me, or has Erich Spangenberg (the man behind all of the Constellation entities) been filing lawsuit after lawsuit against Chrysler? What's up with that? Give the guy a new car already!

85) Harvey v. Apple (Marshall, 8/6/07). Discussed here.

86) Automated Facilities Management Corp. v. IBM (Marshall, 8/7/07). This is either Acacia, or the people behind Acacia starting Acacia II. Discussed here.

87) Screentone Systems Corp. v. Canon U.S.A., Eastman Kodak, Panasonic Corp. of North Am., Ricoh Americas Corp., Konica Minolta Printing Solutions USA, Kyocera Mita America, and Heidelberg USA (Marshall, 8/8/07). This one's Acacia.

88) Commil USA, LLC v. Cisco Systems, Inc. (Marshall, 8/8/07). Here's

what I wrote about it previously: Commil USA's sole member is Jonathan David, an attorney from Houston, Texas, whose mission is life is to stop negligent corporations from being negligent. I guess rather than willful patent infringement, he's going to allege negligent patent infringement? Definitely a troll case.

89) Marshall Electronics Co., LLC v. Digital On-Demand, Inc., and Barnes & Noble (Marshall, 8/8/07). Get all the sordid details here.

90) Lonestar Inventions LP v. Sandisk Corp. (Tyler, 8/9/07). Lonestar is a repeat troll. See, e.g., #8 here.

91) Nextcard LLC v. American Express, Discovery, HSBC and PNC (Marshall, 8/16/07). See here and here.

92) BarTex Research, LLC v. FedEx Corp. and 3 related entities (Tyler, 8/16/07). This one deserves some commentary. BarTex is a brand spankin' new Texas corporation, represented by the self-proclaimed king of patent trolls, Ray Niro of Niro Scavone. This one is hard to figure out, though. The patent was owned, up until the end of July 2007, by one Scott C. Harris of San Diego, a partner at Fish & Richardson. But Scott apparently assigned his patent to BarTex, which has an address in Austin at a process server, and lists as its sole member one James B. Parker. He lists an address in an office building in Dallas with dozens of offices - but doesn't provide a suite number. Is this a front for a Fish & Richardson patent lawyer, or something else? I guess FedEx will find out, since BarTex sued them in Tyler.

93) International Printer Corp. v. Brother Int'l Corp., Brother Industries, Ltd., Dell Inc., Eastman Kodak, HP, Muratec America, Murata Machinery, Oce North America, Oce N.V., Oki Data Americas, Oki Data Corp., Panasonic of North America, Matsushita Electric, Samsung, Samsung Americas, Epson America, Seiko Epson, Toshiba, Toshiba America, and Xerox (Marshall, 8/20/07). Details here.

94) Lonestar Inventions LP v. Xilinx (Tyler, 8/21/07). See #90 above.

95) Vcode Holdings & Vdata, LLC v. Datalogic Scanning, Hand Held Products, & Siemens (Tyler, 8/21/07). Acacia subsidiary Vdata, LLC, represented by Friedman Suder & Cooke, sued Siemens and two other defendants.

96) Phoenix IP v. Honeywell International, Inc. (Marshall, 8/23/07). Constellation troll.

97) Phoenix IP v. Emerson Electric, Emerson Climate Technologies, ABB Inc., ABB Ltd., Power Measurement, Consolidated Edison Solutions, and Consolidated Edison, Inc. (Marshall, 8/23/07). Same.

98) Constellation IP v. Allstate, Capital One, Continental Airlines, Hilton Hotels, Hampton Inns, Blockbuster, Netflix, Countrywide Financial, Southwest Airlines, E*Trade, TD Ameritrade, IAC/Interactive, Match.com, Fidelity Brokerage, and 15 related entities (Texarkana, 8/23/07). Even more of the same.

99) Polaris IP v. Google, Yahoo!, Amazon.com, A9.com, Borders, AOL, and IAC/Interactive (Marshall, 8/27/07). Will this troll never quit? More on this all over the web, including here and here.

100) elcommerce.com, inc. v. SAP (Marshall, 8/31/07). This is an interesting one. A bunch of related guys from Massachusetts, all named Perry, plus a couple of others, form this company, elcommerce.com, which holds these patents. There's no information available on the web on this company. It doesn't seem like this company does anything today other than this current lawsuit. Of course, I could be wrong. It could be a 5-person company completely off the matrix. Who knows? For now, it falls in the troll category. Especially since if you actually go to http://www.elcommerce.com/, you get a page completely in Russian. In 2007, one Sergey Strutinsky of Sevastopol registered this site. If your company is such that even though you are named after a website, you let the website registration lapse and then sue on the patents anyway, you're probably appropriately in the troll category.

101) Phoenix Licensing, LLC & LPL Licensing, LLC v. Chase Manhattan Mortgage Co.; JP Morgan Chase Bank, N.A.; Citibank, N.A.; Citibank USA, N.A.; Citibank South Dakota, N.A.; CitiMortgage, Inc.; and CitiGroup, Inc. (Marshall, 8/31/07). Phoenix Licensing and LPL Licensing are both believed to be controlled by Richard Libman of Scottsdale, Arizona, formerly of Santa Monica, California. State Farm beat Libman to the punch and filed a declaratory judgment lawsuit against him in July, in the District of Arizona. Libman probably got spooked that others he was threatening were going to D/J him so he fired in Texas (especially since the ballpark in Phoenix? Chase Field - not good to sue the corporate philanthropist in the town where they plunked down millions on the local baseball team for naming rights).

That's all for now - back later in the week with statistics on which courts have the highest amount of patent cases as a percentage of all civil cases. Guess who's #1? You may be surprised.

Posted by Troll Tracker at 12:02 AM    2 comments
Labels: Acacia, Automated Facilities, BarTex, Commil USA, Fish Richardson, James Parker, LPL Licensing, Marshall Electronics, NextCard, Niro Scavone, Plutus IP, Scott Harris, Screentone, statistics

THURSDAY, SEPTEMBER 6, 2007

## While We Wait for CDCA, Some More Troll Anagrams

I had so much fun anagramming Cooley Godward Kronish into *Lying Crooks Who Are Odd* a couple of weeks ago, that I decided to try a few more while I wait patiently for the Central District of California PACER/ECF crew to hurry up! so I can post the August statistics (they run about a week behind in putting patent cases online - more on that tomorrow). Here are a few more I came up with:

Niro Scavone = Naive? Or Cons?
Rod G. Dorman, Tall Lawyer = Amoral Troll, Gnawed Dry
Leonard Davis = Android Slave
*Fish & Richardson* should be representing EchoStar because their anagram is *Dish Franchisor*

Eh. That's all I could come up with. Apologies to Ray Niro, Rod Dorman, and Judge Davis. All in good fun. No apologies to Fish & Richardson or EchoStar.

If anyone sends me any good ones, I'll post them here! Send to trolltracker@gmail.com

Posted by Troll Tracker at 8:53 AM    0 comments
Labels: anagrams, Cooley, Fish_Richardson, Hennigan Bennett, Judge Davis, Niro Scavone

THURSDAY, AUGUST 23, 2007

## Cooley Godward Files Massive Acacia Suit in EDTX

Earlier this week, "International Printer Corporation" sued 20 defendants in Marshall, including HP, Dell, Samsung, Toshiba, and Xerox. IPC, a subsidiary of Acacia according to its own admission, is purportedly the exclusive licensee to six patents involving remote photocopy monitoring.

TrollTracker has covered Acacia before here, and, well, the fact is that they are keeping quite a few lawyers busy. This lawsuit will certainly employ at least ten law firms if not more. Interesting that in this case, Acacia turned to Cooley Godward Kronish, the Silicon Valley law firm that represent(s)(ed) industry stalwarts like Adobe, GM, AT&T, nVidia, AOL, eBay and others. Then again, Cooley also recently filed 19 patent litigation cases for Ronald A. Katz Technology Licensing in the Eastern District of Texas.

(TrollTracker thinks it's funny that if you anagram "*Cooley Godward Kronish*" you get *Lying Crooks Who Are Odd*).

Acacia has been busy this month:

- Its subsidiary Global Patent Holdings, LLC, represented by Niro Scavone, sued CDW Corp. and Motorola in the Northern District of Illinois on August 8.
- Further, TrollTracker has heard that Acacia subsidiary Diagnostic Systems Corp., represented by Rutan & Tucker, filed a lawsuit in the Central District of California last week. Acacia appears to have replaced Hennigan, Bennett & Dorman in the previous DSC case, just in the last month or so, and replaced them with Rutan, along with Shore Chan Bragalone, a Dallas firm.
- Finally (maybe), Acacia subsidiary Vdata, LLC, represented by Friedman Suder & Cooke, sued Siemens and two other defendants in Tyler, Texas this past week.

*Edit 12/8/07*: Global Patent Holdings is not a subsidiary of Acacia per this post

More in a couple of weeks when I do the August roundup.

Posted by Troll Tracker at 8:50 AM    0 comments
Labels: Acacia, anagrams, Cooley, Diagnostic Systems, Friedman Suder, Global Patent Holdings, International Printer, Katz, Niro Scavone, Rutan Tucker, Vdata

MONDAY, AUGUST 13, 2007

## A Deeper Look at Acacia

When I started this blog, I was under the impression that the Constellation group of companies (Plutus, Orion, Taurus, Constellation, etc.) was the largest patent troll. And in terms of cases filed and defendants sued in the Eastern District of Texas, that is certainly true.

But looking at the actual number of patent holding company subsidiaries and/or lawsuits filed, there's even a bigger patent troll - Acacia. TrollTracker has compiled this list of all Acacia subsidiaries and the cases they have filed. This list is a minimum list: it is possible that Acacia has or had subsidiaries that I have not been able to locate.

What I have found, though, is astounding. Acacia has sued hundreds of defendants in 213 different patent lawsuits brought by 36 different Acacia subsidiaries. That's right - they have sued in 36 different names! By doing so, Acacia, a publicly traded company, has

increased its market cap by tenfold, going from a 35M company in early 2003 to a 350M company today. Yet, even thought Acacia's primary corporate mission is to file patent lawsuits, it has largely escaped negative publicity, with some going as far as to paint them as "The Belle of the Ball." Acacia has spent money to buy and buy and buy, more patent portfolios, more patent holding companies - even TechSearch, the original company that caused Peter Detkin to coin the phrase "patent troll." Certainly a public company that has filed at least 213 patent lawsuits deserves increased scrutiny. TrollTracker will be making an effort to fill that void.

To start, here is the breakdown of the cases known to be affiliated with Acacia:

4 cases involving Acacia subsidiaries **IP Innovation LLC, Technology Licensing Corp., New Medium Technologies & AV Technologies, LLC**. Niro Scavone represents Acacia in these. Filings are in Chicago.

106 cases where **Acacia Media Technology Group** or **Acacia Research** (or another Acacia entity) is first-named plaintiff or first-named declaratory judgment defendant. Didn't look at all, but Hennigan, Bennett & Dorman representing Acacia in most cases if not all. Most cases filed in Orange County, California.

3 cases involving Acacia subsidiary **Broadcast Data Retrieval Corp.**, in New York and Los Angeles. Hennigan, Bennett & Dorman representing Acacia in 2 of them.

2 cases filed by Acacia subsidiary **Broadcast Innovation, LLC**. Texas attorneys Ed Goldstein and the folks at Friedman, Suder & Cooke working for Acacia, even though the cases are in Colorado.

1 case brought by Acacia subsidiary **Computer Acceleration Corp.**, in Lufkin, Texas. McKool Smith of Dallas leading the way for Acacia here.

4 cases involving Acacia subsidiary **Computer Cache Coherency Corp.**, in tandem with Acacia subsidiary Financial Systems Innovation LLC. 3 brought in San Jose and 1 in Los Angeles. Hennigan, Bennett & Dorman representing Acacia.

1 case filed by Acacia subsidiary Computer Docking Station Corp., against Toshiba, Dell and Gateway in Madison, Wisconsin. Defendants won on summary judgment of noninfringement, with Hennigan, Bennett & Dorman representing Acacia. Vinson & Elkins, Dechert, and Knobbe Martens teamed to defeat Acacia in Madison. Madison hasn't been that friendly to patent trolls, by the way, but that's a subject for another post.

1 case filed by Acacia subsidiary **Contacts Synchronization Corp.**, in Madison, Wisconsin, versus 16 defendants. This time, Acacia turned to Hahn, Loeser & Parks, of Cleveland, Ohio. Defendants have moved to transfer to the Northern District of California. Recently, another group of defendants in Gemini IP Technologies (one of the Constellations) v. Hewlett-Packard was successful in transfering a case from the Western District of Wisconsin to the Northern District of California. But that was Judge Shabaz, and Acacia's case is with Judge Crabb. We'll see if she is as eager to transfer troll cases out of Madison as Judge Shabaz is.

1 case filed by Acacia subsidiary **Data Encryption Corp.** against Dell and Microsoft, in Los Angeles. Hennigan Bennett & Dorman did the honors, completely blowing it for Acacia, in that defendants won summary judgment of noninfringement. Defendants represented by Fish & Richardson (Microsoft) and Jones Day (Dell).

1 case filed by Acacia subsidiary **Data Innovation LLC** (Bartlit Beck of Chicago representing Acacia) against Time Warner (Kaye Scholer) in the Western District of Texas.

1 case brought by Acacia subsidiary **Diagnostic Systems Corp.** against 7 defendants including Symantec. Rutan & Tucker representing Acacia in the Central District of California.

2 cases filed in Texarkana, Texas by Acacia subsidiary **Disc Link Corp.** About 32 defendants named. Friedman, Suder & Cooke of Fort Worth, Texas leading the way for Acacia.

10 cases brought by Acacia subsidiary **Financial Systems Innovation LLC**, including the one discussed in a recent post with 108 defendants. Most of these cases brought in the Northern District of Georgia. Friedman Suder & Cooke on these for Acacia.

1 case brought by Acacia subsidiary **Fluid Dynamics Corp.** in Marshall, Texas. 8 defendants. Simon Passanante of St. Louis is the firm representing Acacia there.

4 cases filed by Acacia subsidiary **Information Technology Innovation, LLC.** 2 cases brought in Chicago by Niro Scavone, one case in Marshall, Texas by Friedman Suder & Cooke, and 1 case brought in Colorado.

6 cases filed by Acacia subsidiary **InternetAd Systems LLC** against 30 defendants. All cases brought in Dallas by Friedman Suder & Cooke.

18 cases (other than the ones mentioned above) brought solely by Acacia subsidiary **IP Innovations, LLC.** These were filed all over -

Dallas, Houston, Chicago. Firms were Friedman Suder & Cook, Goldstein Fawcett, and Niro Scavone. And maybe more.

1 case brought in Dallas by Acacia subsidiary **KY Data Systems LLC** against 3 defendants. Goldstein Fawcett and Friedman Suder & Cooke.

4 cases filed by Acacia subsidiary **Micromesh Technology Corp.** 2 cases in San Francisco, 2 in Marshall, Texas. Acacia represented in all 4 by Venable LLP.

2 cases filed by Acacia subsidiary **Microprocessor Enhancement Corp.**, 1 in Los Angeles, 1 in the OC. Acacia represented by Hennigan Bennett & Dorman.

1 case recently brought by Acacia subsidiary **Mobile Traffic Systems Corp.** against 4 defendants, including Magellan Navigation. Defendants just served. Case brought in Huntsville, Alabama, by Thomas Kayden of Atlanta.

1 case filed by Acacia subsidiary **Product Activation Corp.** in Marshall, Texas against 3 defendants. Friedman Suder & Cooke represented Acacia.

2 cases involving Acacia subsidiary **Resource Scheduling Corp.** 1 case filed in Marshall, Texas, and the other a declaratory judgment action brought in Wilmington, Delaware. Friedman, Suder & Cooke on both.

1 case brought by **Safety Braking Corp.**, a subsidiary of Acacia, in Delaware, against numerous defendants. Connolly Bove represents Acacia.

Acacia subsidiary **Screentone Systems Corp.** has filed 1 case, just last week, in Marshall, Texas. Friedman, Suder & Cooke represents Acacia.

2 cases filed by Acacia subsidiary **Soundview Technologies Inc.**, 1 in Chicago and 1 in Las Vegas, both by Niro Scavone.

1 case brought by Acacia subsidiary **Spreadsheet Automation Corp.** in Marshall, Texas. Friedman Suder & Cooke.

19 cases filed by Acacia subsidiary **TechSearch LLC**, in various places, but the vast majority in Chicago by Niro Scavone.

**Telematics Corp.**, an Acacia subsidiary, sued a slew of defendants in 1 case filed this year in Atlanta by Thomas Kayden.

8 cases brought by Acacia subsidiary **VData LLC**, mainly in Minneapolis, but with Friedman Suder & Cooke coordinating them.

Case 5:08-mc-80074-JF    Document 16-3    Filed 04/21/2008    Page 29 of 50
Patent Troll Tracker: Search results for Niro
Page 26 of 27

1 case filed by **Automated Facilities Management Corp.,** who TrollTracker thinks is an Acacia subsidiary. See August 7th post. Joseph Zito representing plaintiff.

1 case filed by **Parallel Processing Corp.,** who TrollTracker thinks is an Acacia subsidiary. See August 6th post (#79). Simon Passanante representing Acacia.

1 case filed by **Creative Internet Advertising Corp.,** who TrollTracker thinks is an Acacia subsidiary. See August 6th post (#80). Simon Passanante representing Acacia.

Posted by Troll Tracker at 1:30 PM    2 comments
Labels: Acacia, Friedman Suder, Hennigan Bennett, McKool Smith, Niro Scavone, Rutan Tucker, Simon Passanante

MONDAY, JULY 23, 2007

### Defense Verdict in Marshall vs. Troll

Hybrid Networks used to be a real company. Then it sold its assets to Daniel Henderson, who formed the company Hybrid Patents, Inc. Hybrid Patents is a patent troll, and Henderson is a king troll wannabe. Henderson also owns Trontech Licensing Inc. (which sued Thomson recently) and owns PhoneTel Licensing Inc. (which was involved in lawsuits, too). More on Henderson's early days, working with his buddy Ray Niro, here.

Charter Communications, on the other hand, is a cable company with almost 6 million customers, and has over 15,000 employees. Despite the fact that Charter is headquartered in St. Louis and Henderson and his entities are in Fort Worth, the litigation was filed in Marshall, Texas. Henderson/Hybrid claimed that Charter, by using cable modems compliant with the DOCSIS standard, infringed three patents. Hybrid, in a second suit, also sued Comcast, Cox, Time Warner Cable, Cablevision, and other related entities.

As is typical with Judge Ward's cases, there was not a claim construction ruling until 2 months before trial. And although Charter moved for summary judgment of noninfringement, Judge Ward denied that motion on July 6th - 3 days after jury selection.

The case went to trial, and after five days of trial, the jury took only an hour and a half to find all three patents not infringed. Click here to download a copy of the verdict. It looks like the other cable companies will get to ride on the coattails of the Charter team (represented by Kirkland & Ellis, John Desmaris - Hybrid was

represented by William Slusser). For if Hybrid accused Charter of infringing the DOCSIS standard, and if Charter's products, which practice the standard, don't infringe the patents, collateral estoppel would dictate that Hybrid loses the rest of its DOCSIS cases, too.

So, if you're counting at home, that's three patent troll jury trials in Texas in the last three months:

Forgent Networks: patent invalidated by Echostar.
Orion IP: $36M verdict against Hyundai.
Hybrid Patents: jury found patents not infringed by Charter.

Posted by Troll Tracker at 10:11 PM    1 comments
Labels: Dan Henderson, Forgent, Hybrid, Judge Ward, jury verdict, Orion IP, PhoneTel, Trontech

Newer Posts                    Home                    Older Posts

Subscribe to: Posts (Atom)

# EXHIBIT C

|SEARCH BLOG|  | FLAG BLOG|Next Blog»    Create Blog | Sign In

# Patent Troll Tracker

A look behind the curtain at the people or organizations behind the many patent lawsuits brought by corporations that make or sell no goods or services.

SATURDAY, FEBRUARY 23, 2008

## Blogger, Revealed

Live by anonymity, die by anonymity.

Yes, I have been unmasked. It happened quite the way this blog happened - I got an anonymous email, from the guy who probably collected the bounty, telling me I better tell everyone who I am (and he clearly knew), or else he would take care of it for me. The clear threat in the email is that he would do it in a way I wouldn't be happy about. I don't know what that means, but as I have been growing weary of anonymity anyway, here I am.

So now that it's happened, let me introduce myself. My name is Rick Frenkel. I started in IP over 10 years ago, as a law clerk at Lyon & Lyon in Los Angeles. After a few years there as a law clerk and attorney, I litigated patent cases for several years at Irell & Manella. Two years ago I moved to the Valley and went in-house at Cisco. In my career, I have represented plaintiffs, defendants, large companies, small companies, individual inventors, universities, and everything in between. I currently work at Cisco.

When I started the blog, I did so mainly out of frustration. I was shocked to learn that a huge portion of the tech industry's patent disputes were with companies that were shells, with little cash and assets other than patents and a desire to litigate, and did not make and had never made any products. Yet when I would search the internet for information about these putative licensors, I could find nothing. I was frustrated by the lack of information, and also by the vast array of anti-patent-reform bloggers out there, without a voice supporting what I did believe and still believe is meaningful reform.

Why blog anonymously? For one, I really didn't want the publicity. Second, I feared that someone would claim to have the patent on blogging, and I might face a retaliatory lawsuit. I was close, no?

I never expected the blog to get quite the following it did. It has brought new information to me, in the many emails from people alerting me to this, that, and the other. Incredible stories, about

## Email TrollTracker

trolltracker@gmail.com

### About Me

Troll Tracker
Just a lawyer, interested in patent cases, but not interested in publicity

View my complete profile

EFF is helping bloggers protect their Constitutional right to anonymous speech



### Blogs TrollTracker Reads

Above The Law (People Magazine, for Lawyers)

Anticipate This!

Benefit of Hindsight

Chicago IP Litigation Blog

Delaware IP Law Blog

Dennis Crouch's Patently-O Blog (the Godfather of Patent Blogs)

How Appealing (Howard Bashman)

IAM Magazine Blog (Euro-focused)

patents on gift cards and videos-on-a-website, and demand for tens of millions of dollars. I have been exposed to a clearly overworked PTO examining core, who can't help the fact that the number of claims being examined has quintupled in recent years, while the average years of service of the examiner core has been decreasing. Couple that with the "correction" to obviousness laws by the Supreme Court in KSR, and the huge increase in the number of patent cases in the courts, and we are in the middle of the perfect storm of patent news. My blog fulfilled a long-felt need - the need for people to share information about who are the entities out there asserting patents. And for those people who keep claiming that I am biased against the individual inventor, you haven't been reading me close enough. I just don't think that if you sue dozens of companies in one lawsuit, claiming to own the smartphone on a patent issued years after the smartphone market took off, you shouldn't be shocked if you are the subject of scrutiny, whether from me or others.

Although my direct manager at Cisco knew I was writing the blog, the content was entirely my own, and nobody at Cisco ever wrote any content for me or made any attempts to edit me, nor was anyone up the chain above my direct manager aware that I was the author.

Cisco respects intellectual property, and indeed is one of the most innovative companies in the world. Our patent portfolio, consistently ranked as one of the tops in our field, is the result of numerous of hours spent by our hard-working engineers. Our research and development is significant; during the last fiscal year, Cisco spent over $4.5 billion in developing innovative new products and solutions. Cisco also has a culture of openness and transparency. Within Cisco, there are both company blogs, and also blogs by employees on their own time. This blog is in that tradition, and I am proud to be part of a terrific organization.

Thanks to Dennis Crouch for blazing the patent blawg path. I have been reading your blog from day one. In that light, also to Peter Zura, Michael Smith, and even Gary Odom (Patent Prospector), who probably gets the most credit in inspiring me to write something from my own perspective.

Thanks also to all the people who kept my secret for so long. I'm surprised with all the friends and family that knew, it took as long as it did. Someone may have made $15,000 or so from a bounty posted by Ray Niro on this one - not sure I'll ever find out who or how. I don't actually even care.

Finally, thanks to all the readers who have emailed me with support and ideas. Not sure any of you want to be named, but you know who

Ideation Lab

IP Dragon (China)

IP Geek (Euro-focused)

IP Kat (UK)

Just a Patent Examiner

Michael Smith's EDTX Blog

Overlawyered

Patent Baristas

Patent Demand

Patent Prospector

Patently Absurd Inventions Archive

Patently Silly

Peter Zura's 271 Patent Blog

Phillip Brooks' Patent Infringement Updates

SCOTUSBlog

Spicy IP (India)

Techdirt

The Volokh Conspiracy

Washington State Patent Law Blog

WSJ Law Blog

**EMail Newsletter**

Enter your email address below to receive the Patent Troll Tracker blog posts in a daily newsletter. The newsletter, containing the previous day's posts, will be emailed late in the morning, Eastern US Time.

Enter your email address:

Subscribe

Delivered by FeedBurner

**Subscribe Now: Feed Icon**

encouraged me to write as a hobby. I'll thank them personally.

Now that I have been unmasked, I'm not sure where the blog is going from here. I'd like to keep it going. For one, I still have quite a few post ideas in me (indeed, I have several already prepared, waiting to go). Further, there aren't many in-house counsel blogging, and I think we deserve a voice. I'm going to take off the next couple of weeks to think it over.

Rick Frenkel
trolltracker@gmail.com

Posted by Troll Tracker at 4:00 PM    50 comments
Labels: blogging

FRIDAY, FEBRUARY 22, 2008

## Desire2Appeal

A Lufkin, Texas jury found for Blackboard in the Desire2Learn patent trial, finding the claims valid, infringed, and awarding $3.1 million in damages, according to Desire2Learn's blog and other newswires. News reports say that Blackboard sought $17 million. Ex parte and inter partes reexaminations have been ordered by the Patent Office (13 months ago), but there have been no office actions in those reexams, despite the Patent Office's commitment to resolve reexaminations with "special dispatch."

An inequitable conduct trial to Judge Clark is ongoing.

Posted by Troll Tracker at 7:20 PM    0 comments
Labels: Blackboard, Desire2Learn, jury verdict, Lufkin

## Ted Frank on Patent Reform

Ted Frank is a resident fellow at the American Enterprise Institute for Public Policy Research and Director of the AEI Legal Center for the Public Interest, and a blogger-contributor to Overlawyered ("Chronicling the high cost of our legal system"). Frank authored an interesting paper, published yesterday, titled "There Is a Role for Congress in Patent Reform." In it he concludes:

Barfield and Calfee's Biotechnology and the Patent System is correct about the importance of the patent system to American innovation. But patent litigation is broken, and Congress is every bit as qualified as--and often more qualified than--the courts to fix it. Patent reforms are possible that discourage patent trolls while protecting the rights of both legitimate patent-holders and

Subscribe in a reader

Google



Blog Archive

▼ 2008 (49)
  ▼ February (20)
    Blogger, Revealed
    Desire2Appeal
    Ted Frank on Patent Reform
    Email From Sorensen
    Mike Masnick on Intellectual Property
    Troll Wars
    Saffran Final Judgment Upped to $501 Million Again...
    Business Method Patents To Face Scrutiny By En Ban...
    Friday Miscellany, 2/15/08
    Happy Valentine's Day
    Taurus/Orion/Spangenberg Hold Off Ford in Madison;...
    $432 Million Verdict in Marshall Texas Patent Case...
    Saffran v. Boston Scientific
    Two New Blogs I'm Reading on Global IP
    Acacia Sues Apple over iTunes ... In East St. Loui...
    Patent Litigation Statistics for January 2008
    Global Patent Holdings' Amended Complaint in Flori...
    Victory for Rembrandt
    The Once-Company
    Manic Monday
  ► January (29)
► 2007 (136)



defendants and satisfying the "do no harm"[46] principle of Barfield and Calfee.

To read Frank's entire report, click here. To read the other side of the story, about why patent reform is evil and will bankrupt our economy, click on the "Patent Prospector" link on the right.

Posted by Troll Tracker at 3:30 PM    1 comments
Labels: patent reform

## Email From Sorensen

Dear Anonymous:

It has come to the attention of Sorensen Research and Development Trust that your blog has made reference to SRDT, describing recently filed cases as a "last gasp to get retirement money" and "last gasp for filing infringement suits."

In the interest of fair reporting, you may want to investigate a little further. Attached is a news release for your review. You may find it interesting to know that in the infringement litigation involving Black & Decker, defense counsel for Black & Decker is none other than the law firm of Niro Scavone, et al.

+++++++

Well, I'm always interested in fair reporting. So here is the Sorensen Press Release. Sorensen is seeking $1.44 Billion from Black & Decker, and has filed 23 new patent lawsuits in the last 3 months. Clearly, Sorensen is seeking more than retirement money. I stand corrected.

Posted by Troll Tracker at 3:06 PM    1 comments
Labels: Sorensen

**THURSDAY, FEBRUARY 21, 2008**

## Mike Masnick on Intellectual Property

Mike Masnick of TechDirt has posted the first in what he promises to be a series exploring intellectual property. In the first installment, he explores the dialog between two of our founding fathers, Thomas Jefferson and James Madison, on the nature of intellectual property, and their concerns that too-strong intellectual property laws could lead to abuse. The compromise that they arrived upon was the now-familiar refrain from Article I, Section 8 of our Constitution:

### Labels

104 E. Houston St. (3)

1st Media (1)

1st Technology (3)

Acacia (47)

Accolade Systems (1)

ADISCOV (2)

Adv Tech Incubator (1)

Alexsam (5)

Aloft Media (1)

Altitude Capital Partners (9)

anagrams (3)

anonymity (12)

Anthony O. Brown (1)

Antor Media (5)

AOL (1)

Apple (9)

Aris Mardirossian (1)

Artesyn (1)

AT_T (6)

attorney-trolls (7)

Austin (1)

Automated Facilities (2)

Autotext (3)

Barry Thomas (1)

BarTex (3)

Beneficial Innovations (1)

Bill Gates (1)

bio-pharma (4)

Blackboard (2)

blogging (22)

Boca Resort (3)

Bodog (2)

Boston (1)

Boston Scientific (2)

bounty (2)

Brian Marcus (1)

The Congress shall have Power ... To promote the Progress of
Science and useful Arts, by securing for limited Times to Authors
and Inventors the exclusive Right to their respective Writings and
Discoveries.

Mike queries whether the patent system we have today is always
generating exclusive rights that "promote the progress of science." It
will be fun to see where Mike goes with this.

Posted by Troll Tracker at 11:41 PM    9 comments
Labels: constitution, TechDirt

**TUESDAY, FEBRUARY 19, 2008**

## Troll Wars

Some interesting developments in the Global Patent Holdings
litigation going on in Nevada (against Zappos) and Florida (against
Boca Resort). The long sad story is below, but for those with a short
attention span, here is the abbreviated version: Essentially, Global
Patent Holdings, hurting that Boca Resort *called it a patent troll*,
said "oh yeah, GPH is really an 80-year-old and a 70-year-old in a
wheelchair - who you callin' troll, son of Enron?" Meanwhile, at the
same time in Nevada, GPH told the court that it, not the inventors,
owned the rights to the patents. Boca Resort replied by saying, "Hey
Niro, you started it - you were the one who wrote the article saying
you're a patent troll anyway. And by the way, if the inventors have a
stake, then where's the real party in interest? Dismiss this case, your
honor!"

Or something like that. Not sure I would have used the T-word in the
first place in a pleading, but you have to admit - Boca Resort is trying
the "raw and fresh" approach.

So what's so interesting about this, other than the playground insults
being tossed about? Well, if you remember, Global Patent Holdings
filed an amended complaint in Florida to better plead joint
infringement. I reported on it a couple of weeks ago, and also
suggested that Boca Resort file a motion to strike impertinent
material.

What I missed at the time was that GPH also filed an opposition to
Boca's initial motion to dismiss, and in it, suggested that Global
Patent Holdings consisted of the 70 and 80-year-old inventors,
confined to their wheelchairs and destitution. If you don't believe me,
read it for yourself here - see pp 1-2 & 12. GPH also cited the Judge
Folsom decision in EDTX preventing ICON Health & Fitness from calling

British Technology Group (1)

Bruce Renouard (1)

Burst.com (1)

business method patents (1)

Cablevision (1)

Calvin Ayre (3)

Card Activation Techs (1)

champerty (1)

Charles Hill (1)

Choongsoo Park (1)

Ciba (3)

Cingular (1)

Cisco (4)

Citrix (1)

Clay Dark (1)

Comcast (1)

Commil USA (2)

Computer Acceleration (3)

Constellation IP (1)

constitution (1)

contingency fee (4)

Cooley (2)

Coronary Stent Visualization
Corp. (1)

corporate shell games (2)

Creative Internet (1)

Credit Card Fraud Control Corp. (
1)

Cross Atlantic (1)

CSIRO (3)

Cybergym (3)

Dallas (4)

Dan Henderson (1)

dance contest (1)

Data Encryption (1)

Data Match (2)

David Pridham (7)

Dockert (2)

Paul Hickman a patent troll *at trial* over his Cybergym holding company, and a stipulation in a NDCA case where the parties *stipulated* not to call Rambus a patent troll.

But that's interesting, about the inventors being part of GPH, or otherwise having an interest in the case, because in the Zappos case, in its motion to transfer from Nevada to Illinois, GPH submitted a declaration of Anthony O. Brown, stating under oath that GPH owned the patents fully and exclusively. See here, on page 2. So which is it, do the inventors of the GPH patent have an interest in the litigation or not?

Also, in the GPH Zappos Exhibits, notice on page 8 the royalty schedule being offered: from $50,000 for a company of annual revenue of $10M to $50M, up to $15M for a company of $51.2B annual revenue or more. The GPH letter to the Boca Resort demanded $800K for the right for Boca to post JPEG or other compressed images on its website, so GPH must have figured out the Boca Resort's revenue.

Anyway, Boca Resort must have listened to me, because it also filed a motion to strike the GPH Amended Complaint as being impertinent - like I suggested! Boca suggests that Niro injected the "patent troll" term into the debate by authoring a law review article, declaring that he is the original patent troll. The motion to strike is "because the [amended complaint of GPH] (1) invades the privacy of individuals who are in no way involved in the suit and is misued by Plaintiff in an offensive and insensitive manner, or (2) disparages Boca Resort's ultimate owner, also a non-party, on matters that are irrelevant to Boca Resort, its business, or the subject matter of the suit."

Boca Resort also filed a renewed motion to dismiss the new complaint, explained here. Evidently, GPH's infringement contentions sent in its pre-filing letters differ greatly from its amended complaint. It's an interesting theory - not sure it can happen "on the pleadings," or whether the court will allow discovery before treating it as a summary judgment motion.

Fun to watch things heat up. I think GPH is now forced into a corner to either submit declarations of the inventors that they have a financial stake in the litigation, or barring that, it seems to be an admission that their amended complaint was much ado about nothing, and should be stricken. GPH's right next move is to file a second amended complaint, removing the references to the inventors, and avoid having to reveal that information. Whether GPH's amended complaint survives Boca's renewed motion to dismiss the amended complaint: that's another thing. I think the complaint survives.

Venable is representing Boca Resort; Parsons Behle & Latimer (of Salt

defendants_sued (8)

Dell (3)

Dennis Crouch (9)

Desire2Learn (2)

Diagnostic Systems (1)

Digital Choice (2)

Digital Reg (2)

Digital Technology Licensing (1)

Disc Link (1)

DJ (2)

DocuMed (1)

Document Generation Corp. (2)

eBay (1)

ECF (1)

EDTX (1)

Electrolux (1)

en banc (1)

epicRealm (2)

Eric Albritton (4)

Erich Spangenberg (14)

ESN (3)

Eurotroll (2)

Evil Pete (1)

examiner overload (1)

F_G Research (1)

Facebook (2)

Federal Circuit (5)

Fenner Investment (1)

Financial Systems Innovation (2)

Fish_Richardson (16)

Fluid Dynamics (1)

Ford (1)

Forgent (1)

Fortune 100 (4)

FotoMedia (1)

FRCP 1 (1)

Freedom Wireless (1)

Lake City, Utah) is representing Zappos; and Niro Scavone appears for the 70-year-old woman in the wheelchair, the 80-year old destitute inventor, and some company run by Anthony O. Brown that must be proud to be sharing all that licensing revenue with these inventors. They must be getting as much as the Niro firm's contingency, right?

On an unrelated note, LexisNexis now has a Patent Law Center, and they named this blog one of their "Top Blogs," along with 7 others. That Top Blogs list also led me to two great foreign blogs I have now added to my blogroll: IP Dragon out of China, and IP Kat out of the UK. Thanks for the honor, LexisNexis.

TT

(By the way, this entire post was due to a reader tip. My email inbox exploded over the weekend with suggestions for new posts. I appreciate the input. I actually had all my posts prepared for the week, and had to shift things around.)

Posted by Troll Tracker at 12:07 AM    3 comments
Labels: Boca Resort, Global Patent Holdings, Niro Scavone, Parsons Behle, Venable, Zappos

**MONDAY, FEBRUARY 18, 2008**

## Saffran Final Judgment Upped to $501 Million Against Boston Scientific

Judge Ward awarded $69 Million in pre-judgment interest, and entered final judgment in the amount of $501,261,011. You can download the final judgment here.

Posted by Troll Tracker at 12:13 AM    0 comments
Labels: Boston Scientific, Judge Ward, Saffran

**FRIDAY, FEBRUARY 15, 2008**

## Business Method Patents To Face Scrutiny By En Banc Federal Circuit

Dennis Crouch has an excellent summary of the Federal Circuit's en banc order today, revisiting whether business method claims are patentable and whether State Street Bank should be overruled. Dennis lists the en banc questions and claim 1 of the Bilski patent here.

In addition to Dennis's excellent summary and questions to ponder, I also invite potential amici to recall the Supreme Court's handling of *Laboratory Corp. of America v. Metabolite Labs* (2006). On that

Friedman Suder (4)

Function Media (2)

GE Healthcare (1)

Gellman (2)

Gemini IP (1)

General Patent Corp (3)

Global Commns (1)

Global Patent Holdings (16)

GM (1)

Google (11)

GPNE (1)

Guardian Media (1)

haiku (3)

Hal Wegner (3)

Harthcock (2)

Hennigan Bennett (3)

Hospital Systems (1)

HP (2)

Hugh Hefner (1)

Hybrid (2)

Hypercom (1)

IBM (2)

Illinois Computer Research (6)

indirect infringement (1)

injunctions (1)

Innovative Patented Technology ( 4)

Inpro (2)

Intellectual Ventures (7)

International Intellectual Mgmt ( 1)

International Printer (1)

IP business models (1)

IP Innovation (5)

IPCom (1)

iPhone (1)

J. Carl Cooper (2)

James Parker (10)



appeal from the Federal Circuit, the Supreme Court first granted
certiorari, on the following question:

> Is it permissible to patent a correlational relationship in a
> medical test result, such that a doctor necessarily infringes on
> the patent simply by thinking about the relationship after
> looking at the test result?

However, before a decision could be issued, the Court DIG'd the case
(dismissed it as improvidently granted). There was surmise, at the
time, that the Court felt comfortable raising the 35 USC 101 issue
when the Federal Circuit had not even considered the issue in its
opinion. It was the wrong vehicle.

Justices Stevens, Breyer and Souter dissented from the decision to
DIG the case. In their opinion, written by Justice Breyer, the 3
justices queried whether claim 13 of that patent could really be
patentable. Claim 13 was:

> A method for detecting a deficiency of cobalamin or folate in
> warm-blooded animals comprising the steps of:
> assaying a body fluid for an elevated level of total homocysteine;
> and
> correlating an elevated level of total homocysteine in said body
> fluid with a deficiency of cobalamin or folate.

On page 13 of the dissent, the 3 justices pointed out that *State Street
Bank* might be inconsistent with prior cases of the Supreme Court,
citing the 1854 Supreme Court decision in *O'Reilly v. Morse*. The 3
justices concluded that the correlation of claim 13 was
an "unpatentable natural phenomenon."

Now, we really will have the Federal Circuit focusing on business
method patents, fair and square. And you can be certain that this
patent-happy Supreme Court, fresh off of decisions in *eBay,
Medimmune* and *KSR*, will itself be taking up 35 USC 101 in the 2008-
2009 term.

Party briefs are due March 6. Amicus briefs (for whatever position)
are due 30 days later. Oral arguments to take place May 8, 2008 in
Washington, D.C. Expect a Federal Circuit en banc opinion sometime
in the late Summer or Fall.

Note: any bets on the first blogger to declare that this en banc order
is yet another reason for Congress to stop considering patent reform?
My money is on Gary Odom.

Posted by Troll Tracker at 4:32 PM    3 comments

James Sokolove (1)

Jarg (1)

Jenner Block (2)

John Desmaris (1)

Johnny Ward (3)

Johnson_Johnson (1)

joint infringement (1)

Joseph Zito (2)

Judge Clark (6)

Judge Davis (3)

Judge Everingham (1)

Judge Folsom (3)

Judge Love (1)

Judge Moore (1)

Judge Ward (3)

jury verdict (10)

Katten Muchin (1)

Katz (5)

Kevin Zilka (1)

Keystone Autonics (1)

Klausner (1)

KSR (3)

Larry Flynt (1)

Larry Germer (1)

law firms (1)

LG (3)

LHConcepts (1)

Lin Packaging (1)

Linex (1)

linux (1)

Lonestar Inventions (2)

Lowe's (1)

LPL Licensing (1)

Lucent (1)

Lufkin (1)

magically changing docket dates (
1)

Labels: business method patents, en banc, Federal Circuit, usefulness

# Friday Miscellany, 2/15/08

Here are seven random patent tidbits I have collected recently, thanks in large part to emailed tips.

1) There have already been as many patent lawsuits filed in the Eastern District of Texas in February than in all of January there. A busy month, indeed.

2) When Acacia (a California corporation) sued Apple (a California corporation) for the second time recently in the Southern District of Illinois, I asked out loud in one of my posts, why the SDIL? I think I may know the answer: because it's faster than Texas. *Document Generation v. Allmeds* got an 18-month time-to-trial already - June 2009. In Texas, that case would have been slated for trial probably six months later than that, at least. What remains to be seen is if it's a district that will transfer cases out, like WDWI.

3) I have heard from a couple of commenters on the blog plus a few emails that the Sorensen Research & Development patent expired on February 5, 2008, so this was the last gasp for filing infringement suits. At least two of the defendants have filed for re-exam at the USPTO. Most actions are being stayed pending re-exam.

4) In the Scott Harris/Illinois Computer Research/James Parker/Ray Niro v. Google/Fish & Richardson case in Chicago, things are starting to heat up again. Fish & Richardson has filed a motion for leave to file an amended complaint, adding six new defendants other than Scott Harris. They claim that each of the defendants has an interest in the outcome of the lawsuits involving Illinois Computer Research's patent bought from Scott Harris. Unfortunately, the proposed amended complaint was filed under seal. According to paragraph 6 of the complaint, each of the new entities "appears to be closely connected to and represented by the same law firm representing Mr. Harris and ICR, namely Niro, Scavone, Haller & Niro." Of course, the best things in life are always in the footnotes. And here is footnote 2:

> In moving to amend its Counterclaim and Third-Party Complaint, Fish & Richardson is obligated to advise the Court that this may not be the last proposed amendment to add parties that Fish & Richardson will file. Fish & Richardson currently believes that it has an adequate factual and legal basis to add the Niro firm as a party defendant to this lawsuit, based upon claims of aiding and abetting breaches of fiduciary and contractual duty. Many of the facts upon which those claims may be based are set forth in the

malpractice (1)
Marshall Credit (2)
Marshall Electronics (3)
Marshall Packaging (2)
Matt Powers (1)
McKesson (1)
McKool Smith (9)
MDL (4)
Media Technologies Licensing (1)
media troll-coverage (8)
Memory Control (1)
MercExchange (1)
Mershon (1)
MHL TEK (2)
Michael Smith (7)
Microsoft (9)
Minerva (7)
MIT (1)
Mobile Micromedia (2)
Mondis (2)
Monts_Ware (6)
motions_compel (1)
Motorola (3)
NDGA (1)
netPL (1)
Network Signatures (1)
New York Times (1)
NextCard (4)
Nintendo (1)
Niro Scavone (27)
Nokia (3)
non-EDTX rocket dockets (1)
Northeastern U (1)
Ocean Tomo (1)
once-company (1)
Online Res. (1)
open source (1)



proposed Amended Counterclaim and Third-Party Amended Complaint.

Recognizing the consequences and gravity of naming a professional law firm as a party to a lawsuit, however, particularly in a case in which they are counsel of record, at this time Fish & Richardson has not added the Niro firm as a party in its proposed Amended Counterclaim and Third-Party Complaint. Instead, before Fish & Richardson would ask for leave to do so, it would seek to complete at least the expedited discovery it requested of Mr. Harris in November 2007, and which remains outstanding, and to depose Mr. Harris and conduct a Rule 30(b)(6) deposition on issues relating to the Niro firm's activities. Given the time that will be required to complete that discovery and other outstanding issues, Fish & Richardson may later request the Court to extend the deadline for adding parties from March 31, 2008, to a date that allows the completion of at least the outstanding expedited discovery and the depositions identified above.

Joe Mullin, on his blog, has a L'Affaire Harris Timeline.

5) And now for something completely different: the Top Ten Search Terms of the Week to reach this website:

1. Saffran or Boston Scientific
2. Rembrandt
3. Scott Harris
4. IPcom Nokia
5. Erich Spangenberg
6. Minerva
7. Eric Albritton
8. Antor Media
9. Global Patent Holdings
10t. Wiav/Choongsoo Park
10t. Alexsam
10t. Altitude Capital
10t. Courtney Sherrer (why so many????)
23. When can you see Gemini constellation?
45. Who is Troll Tracker?

6) Traffic Information, LLC pulled an Antor Media (or is it a Fulbright?) last month. First it sued just 3 defendants; then in an amended complaint filed just after the original complaint, it added 9 more defendants, to make 12 total. In my monthly totals, I had only counted the first three defendants. I have now corrected the statistics on the original page, which you can see here. If anyone catches on to any other cases with amended complaints adding other

OPTi (3)
Orbitz (1)
Orion IP (12)
Otis Carroll (1)
PA Advisors (1)
Paice (1)
Paid Search Engine (1)
Palm (1)
Parallel Networks (1)
Parallel Processing (1)
Parsons Behle (1)
patent exhaustion (4)
Patent Hawk (4)
patent reform (36)
Patriot Scientific (1)
Paul Hickman (4)
Paul Ware (1)
Performance Pricing (1)
Peter Courture (1)
Peter Zura (2)
Philips (1)
Phoenix IP (3)
Phoenix Licensing (1)
PhoneTel (1)
Plutus IP (11)
Polaris IP (2)
Polymer Solvents (2)
Positive Techs (1)
Power Integrations (1)
Power Jamb (1)
Power-One (1)
Premier Intl (1)
private equity funded patent litigation (1)
privilege (2)
PSN Illinois (1)
QPSX (1)

defendants, feel free to clue me in.

7) Finally, in the Global Patent Holdings v. ADT case in Florida, there has been a motion to stay pending reexam filed 2/14 by HearUSA. It will be interesting to see how that develops. Do South Florida judges typically grant stays pending reexam?

TT

Posted by Troll Tracker at 10:08 AM    0 comments
Labels: Acacia, blogging, Document Generation Corp., Fish Richardson, Global Patent Holdings, Illinois Computer Research, Niro Scavone, Reexamination, Scott Harris, Sorensen, Traffic Information, venue

**THURSDAY, FEBRUARY 14, 2008**

## Happy Valentine's Day

This being Valentine's Day, I thought I'd point out Michael Smith's humorous post about why some lawyers in Texas are hanging with Chad, while others choose Love.

This is a good patent to litigate with Judge Love on Valentine's Day:

Quantum World (1)
RealNetworks (1)
Red Hat (1)
Reese (1)
Reexamination (2)
Refined Recommendation (2)
Reid (1)
Rembrandt (10)
Restricted Spending Solutions (1)
RIM (2)
Ron Laurie (1)
Rule 11 (2)
Rusty Rose (3)
Rutan Tucker (2)
Saffran (2)
Sam Baxter (2)
Samsung (2)
Saxon Innovations (3)
Scott Harris (16)
Scott Lewis (3)
Screentone (3)
Seagate (4)
Sharp (1)
Silicon Valley (2)
silly patents (2)
Simon Passanante (1)
Sky Technologies (2)
Slashdot (2)
small inventors (2)
SMDK (2)
Software Rights Archive (1)
Sony (1)
Sorensen (3)
Source Inc. (2)
SP Technologies (2)
Sprint (1)
ST Sales Tech (3)



Candy box construction and method, Steven W. Stanton

Posted by Troll Tracker at 12:01 AM    0 comments
Labels: Judge Love, silly patents

WEDNESDAY, FEBRUARY 13, 2008

## Taurus/Orion/Spangenberg Hold Off Ford in Madison; Blackboard-Desire2Learn Trial Begins in Lufkin

Dennis Crouch has an interesting post about the Erich Spangenberg dispute with car companies in Madison, Wisconsin. See his post here, complete with links to the decision of Judge Crabb, ruling that at this point, the court is not willing to pierce the corporate veil to hold that an agreement between Orion IP (a Spangenberg company) and defendants was binding on Orion IP's sister corporation, Taurus IP (a Spangenberg company). Now you see the marker, now you don't. Quite a shell game.

What also intrigued me about Dennis's post was the link to the 2007 Foley presentation on patent trolls. Thanks for the plug on page 10,

standing (1)
statistics (32)
Steve Jobs (1)
StorMedia (2)
stupid patent tricks (8)
Supreme Court (3)
Susman Godfrey (3)
Sutton (1)
T-List (1)
Taeus (1)
Target (2)
TechDirt (2)
Technology Licensing Corp. (1)
TechSearch (2)
Tessera (1)
Texas MP3 Technologies (1)
TGIP (5)
Thomas Harvey (1)
threatening emails (3)
Tillotsin (2)
Time Warner (1)
Tinkers_Chance (1)
Traffic Information (4)
Trent West (1)
Triton IP (2)
troll assessment (3)
Trontech (1)
Typhoon Touch (1)
UFOs (1)
US Navy (1)
usefulness (1)
Vdata (2)
Venable (1)
venue (35)
Verizon (2)
Verve (1)
Viacom (1)

Foley! What most intrigued me about the Foley presentation was its comment, on page 17, that Sharp is "the most sophisticated patent troll yet"). Wait a minute. This Sharp? This one? Maybe it's Sharp Technology Ventures. Still, a troll? Does anyone know what Foley is talking about?

In other news, Blackboard (a company headquartered in Washington, DC) and Desire2Learn (a Canadian company, from Ontario), are litigating U.S. Patent 6,988,138 ("Internet-Based Education Support System and Methods") in Lufkin, Texas. Jury selection was Monday in Judge Clark's courtroom.

Interestingly, Desire2Learn is blogging about the trial. Desire2Learn has already invalidated 35 out of the 44 claims of the '138 patent. I love how Desire2Learn refers to the inventors in quotes - "inventors." From Desire2Learn's blog, we learn that the Software Freedom Law Center filed an ex parte reexamination request, and Desire2Learn filed an inter partes reexamination request. Both were granted, and are continuing in parallel to the trial. We also learn that Judge Clark did not rule on any pending summary judgment motions, and decided to hold them for trial.

I absolutely love the transparency. I wish more companies - plaintiffs or defendants - would blog about their litigation like this. Other coverage on the trial: The NOSE; Desire2Blog; and The Kitchener, Ontario Record (which begins: "Everything Desire2Learn has built over the last nine years will soon be in the hands of 12 randomly selected people from an area where pro rodeo circuit stops outnumber sizeable software companies two to zero. Unlike barbecues, taco places, and Southern Baptist churches, the high-tech industry doesn't have much of a presence in Lufkin, Texas, where Blackboard Inc. has chosen to sue its Kitchener (Ontario)-based competitor for patent infringement. East Texas is, however, known for juries friendly to patent owners like Blackboard ....").

Barbecues, taco places, and Southern Baptist churches. That ought to get my random referrals from Google churning. Seriously, though - how long has it been since there has been a patent trial in Lufkin, Texas? Should be interesting to follow along the Desire2Learn blog.

Posted by Troll Tracker at 12:01 AM   9 comments
Labels: Blackboard, Dennis Crouch, Desire2Learn, Erich Spangenberg, Judge Clark, Sharp

**TUESDAY, FEBRUARY 12, 2008**

## $432 Million Verdict in Marshall Texas Patent Case

Visto (1)
VTran (3)
Wal-Mart (1)
Ward_Olivo (5)
Warren Heit (1)
Wavport (1)
Web Telephony (1)
Weil Gotshal (3)
White_Case (1)
Wi-LAN (3)
WIAV (1)
willfulness (3)
Williams Kherkher (1)
Yahoo (2)
Zappos (3)

This one deserves its own post. See the verdict here, awarding nearly $432 Million as a reasonable royalty to a New Jersey doctor against Boston Scientific. My prior post is below.

Anyone know what percentage this is of the Boston Scientific accused product's sales? Email me.

Posted by Troll Tracker at 11:42 AM    7 comments
Labels: Boston Scientific, jury verdict, Saffran

## Saffran v. Boston Scientific

Dr. Bruce Saffran sued Boston Scientific Corp. in December 2005 on U.S. Patent 5,653,760 ("Method and Apparatus for Managing Macromolecular Distribution"). Dickstein Shapiro (DC) filed the complaint, along with Eric Albritton. Kenyon & Kenyon appeared for Boston Scientific, along with Melvin Wilcox and Melissa Smith. The plaintiff is a doctor from Princeton, New Jersey. The defendant is a company based in Massachusetts. The trial? Marshall.

Opening arguments and jury selection were last Monday, February 4. Eric Albritton did both for Dr. Saffran. Kenyon chose to use its own attorneys for opening and voir dire. Wonder if they pronounced it the right way - the Texas way (Vwahr Dye-er). Closing arguments were yesterday morning. Michael Smith said he will have the scoop when the jury reaches a verdict - but there is no word yet. When there is, I'll provide a link.

Posted by Troll Tracker at 12:11 AM    0 comments
Labels: EDTX, Eric Albritton, jury verdict

## Two New Blogs I'm Reading on Global IP

Well, these blogs aren't new, but they're new to me.

First, I am enjoying Spicy IP, a blog written by 9 contributers (including Duncan Bucknell, the clear non-Indian of the bunch but a well-known IP blogger). Spicy IP's goal is to "increase transparency in Indian intellectual property policy/institutions." The contributors have now posted over 350 posts on Indian IP issues. According to this post, India has had about 80 or so patent cases so far -- in its history. There were that many in the first ten days of 2008 in the US. But it's fair to say that Indian patent litigation is something that might be on our minds less than a decade from now. So no time like the present to start to learn the issues.

Second, Intellectual Asset Management Magazine (IAM) has a blog,

which doesn't appear to have any name - perhaps the IAM Magazine Blog? Joff Wild, the London-based editor, comments mainly on European patent issues like the Nokia-IP-Com case, but on other issues as well. While I'd like to see IAM put up some links on the side of its page to some of the blogs it cites (it is more like a magazine than a blog right now), it's a very interesting and timely read. For example, this recent post surmises that a proposed new pan-European patent court will adopt injunction rules that will be very bad for trolls.

Other interesting blogs are on the right side of my page. I'm sure I'm forgetting some others. Although I don't agree with IP attorney Brett Trout on some issues, he does have a pretty big list of patent blogs on his site. His blogroll seems focused on US patent issues - comprehensively, I might add. Perhaps he'll be interested in a global patent meme as well.

Posted by Troll Tracker at 12:07 AM    0 comments
Labels: blogging

MONDAY, FEBRUARY 11, 2008

## Acacia Sues Apple over iTunes ... In East St. Louis, Again

New Acacia subsidiary Restricted Spending Solutions, LLC sued Apple last Wednesday in East St. Louis, Illinois, in the Southern District of Illinois. Acacia sued Apple last November in the Southern District of Illinois over the iChat feature, as I reported here. Then Acacia sued 19 defendants in the medical field in East St. Louis in December. This caused me to puzzle why East St. Louis? So this is the third lawsuit filed by Acacia in the Southern District of Illinois in the last four months.

The latest Apple lawsuit asks the court to order Apple to contact each of its customers of iTunes, and destroy all existing copies of iTunes that uses the "iTunes Allowance component" featured on iTunes. The complaint alleges that:

> The iTunes Allowance feature is a component of iTunes which allows family members and friends to create an account for automatically transferring chosen dollar amounts via a credit card to a recipient's iTunes Store account for use by recipient in the iTunes Store.

In this case, Acacia alleges it owns the patent-in-suit, 7,143,064, titled "Controlled Entertainment Spending Account," as opposed to other cases where it is an exclusive licensee. Here's claim 1 of what I consider to be a business-method patent:

A computer-based method for allocating parental funds in preestablished accounts for use by children, comprising;

providing a bank or credit account containing parental funds for allocation to at least one child;

creating a secondary account file with an internet music file supplier accessible by a child for spending on internet music purchases; and

periodically transferring directly and automatically to said secondary account file from said bank or credit account an allowance payment for use by said child to purchase and transfer music files over the internet using a personal computer;

wherein said steps of creating a secondary account file and periodically transferring funds from said bank or credit account to said secondary account are performed using information supplied by said parent over the internet using a personal computer.

The priority date of the '064 patent is possibly April 16, 1996 (it is a continuation-in-part of a division of a continuation-in-part of an abandoned application). Pretty early if it is entitled to the earliest application, but either way definitely a headache for Apple on one of its top-selling services.

Posted by Troll Tracker at 6:32 AM    3 comments
Labels: Acacia, Apple, Restricted Spending Solutions, venue

**FRIDAY, FEBRUARY 8, 2008**

## Patent Litigation Statistics for January 2008

At long last, here are my January 2008 patent litigation statistics (updated 2/13/08 to account for 9 defendants added in an amended complaint). In total, PACER/ECF showed 230 patent cases filed in January 2008, compared to 210 in January 2007. This is a 10% year-to-year increase. PACER/ECF has a flaw in that it records what I have heard called "false positives." For example, when TiVo v. EchoStar came back from the Federal Circuit appeal, the Eastern District of Texas counted it as a new case, and it was counted as one of the February 2008 cases. I will not include it on my list. False positives were present in 2007 and they are present in 2008, so I still think there is a 10% year-to-year increase. But, in actuality, out of the 230 cases PACER/ECF counted, I think there were actually 202 new patent litigation cases filed in January 2008.

I have a tradition of tracking the top jurisdictions both by number of cases filed and by number of defendants. Here is my top 10 list for January 2008. Guess who's number 1?

1. Eastern District of Texas: 15 new cases filed, 116 defendants sued. (11 Marshall, 1 Texarkana, 3 Tyler)
2. Northern District of California: 15 cases, 26 defendants.
3. District of New Jersey: 11 cases, 20 defendants.
4. District of Delaware: 10 cases, 32 defendants.
5. Central District of California: 10 cases, 20 defendants.
6. Western District of Washington: 9 cases, 14 defendants.
7. Northern District of Illinois: 9 cases, 12 defendants.
8. Southern District of California: 8 cases, 12 defendants.
9. Southern District of New York: 6 cases, 16 defendants.
10. Southern District of Florida: 6 cases, 7 defendants.

So what's new about this month's top ten? For one, we welcome a few new districts: Western District of Washington, Southern District of California, and Southern District of Florida. What's not new? The fact that 1 out of every 4 defendants sued nationwide was sued in the Eastern District of Texas (116 out of 453).

Other districts with double-digit number of defendants: Eastern District of Michigan (11), Western District of Wisconsin (11), and Eastern District of Virginia (10). All in all, 52 out of the 94 judicial districts in the country had at least one patent case in January.

For the top ten, here's the percentage, in each district, of total civil cases that are patent infringement cases:

1. District of Delaware: 14%
2. Eastern District of Texas: 7%
3. Western District of Washington: 4%
4. Southern District of California: 3.5%
5. Northern District of California: 2%
6. District of New Jersey: 2%
7. Central District of California: 1%
8. Northern District of Illinois: 1%
9. Southern District of New York: 1%
10. Southern District of Florida: 1%

So I think that #3-#10 above are in the "noise" range. But it's pretty amazing about the Eastern District, and especially Delaware.

I also tracked cases by "categorization." My categories were as follows:

Patentee is company that makes products: 149 cases, 257 defendants
(1.7 defendants per case)
University/research center: 0 cases
Patentee is individual inventor: 12 cases, 14 defendants (1.2
defendants per case)
Patentee is company that makes no products: 41 cases, 182
defendants (4.4 defendants per case)
That's interesting: "competitor" patent cases comprised 74% of all
cases in January, but 57% of all defendants sued. "Non-competitor"
patent cases were 26% of cases, and 43% of defendants sued.

I also looked at the breakdown
between "competitor/university/research" (CUR) and "individual
inventor/shell corporation/troll" (IST) cases for each of the top ten
districts.

TXED: 27% CUR, 73% IST
CAND: 47% CUR, 53% IST
NJD: 91% CUR, 9% IST
DED: 90% CUR, 10% IST
CACD: 80% CUR, 20% IST
WAWD: 89% CUR, 11% IST
ILND: 56% CUR, 44% IST
CASD: 13% CUR, 87% IST
NYSD: 67% CUR, 33% IST
FLSD: 50% CUR, 50% IST

Well, this really comes as no surprise. Most of the non-practicing
entities are flocking to Texas. A few in Northern California (although
that's a little bit due to declaratory judgment cases like RealNetworks
v. Burst.com). In case you are surprised about the Southern District of
California, see #2 below.

To conclude, here are a dozen of the more interesting non-practicing
entity cases from January 2008. My intent is to pick the 12 of each
past month I found most interesting. That's completely subjective.
Disclaimer: of course, the below list is not comprehensive of all such
cases filed in January (I left at least 5 off this list, including cases I
previously featured, like Alexsam and others), the below list is not in
any particular order, and the fact that these cases are listed below
does not mean I am criticizing or condoning any of these cases!

1) Power Jamb, LLC v. City of New York; New York City Fire
Department; New York City Fire Academy; and 4 Fire Department
leaders (New York, New York, January 17). Power Jamb is a shell for
the inventor, Michael Bishop. He has asserted U.S. Patent
5,906,493, "Firefighter Training Door Device." His complaint alleges
that he applied for the patent in 1997, and the fire department

bought training devices from him. His patent issued in 1999, and continued to purchase until 2006, when the NYFD copied his device for its own. So I can understand the suit, if the allegations are true. I'm just trying to picture, suing the NYFD in New York. It doesn't look like Bishop has requested a jury trial. Good move.

2) Sorensen Research & Development Trust v. 13 defendants in 9 cases (7 in San Diego, California, and 2 in San Francisco, California, January 4-23). I have yet to feature SRDT, an entity asserting the patents invented by Jens Ole Sorensen relating to plastic injection molded parts. One of the more notable defendants was Motorola. Not sure why the surge of cases, though - there have already been 3 more in February. Last gasp to get retirement money?

3) Credit Card Fraud Control Corp. v. Full Spectrum Telecommunications; National A-1 Advertising; Network Telephone Services; SPG Solutions; Teligence; UTEL Networks (Marshall, Texas, January 7). This is Acacia, with another multi-defendant lawsuit, this time in Texas. See #5 here.

4) Global Patent Holdings v. Panthers BRHC d/b/a Boca Raton Resort & Club (West Palm Beach, Florida, January 8). I want to know the back story. Ray Niro, according to published interviews with him in legal magazines, has a home in the West Palm Beach area. Was he treated badly here? Why sue the local resort? The latest volley was an amended complaint, blaming the Boca Resort for Enron and the subprime mortgage crisis. Posts on this case: 4A; 4B; 4C.

5) Minerva Industries v. RIM, Apple, Motorola, and 30 other companies (Marshall, Texas, January 22). This one struck me because of the broadness of the issued claim and the breadth of the companies sued. Every smart phone sold in the country could possibly be implicated. And of all my stories in January, this one got the most widely disseminated. Well, all of the ones I started. Read the Minerva saga here: 5A; 5B. Our Patent Office is creating global chuckles. Read about it in Italian, Polish, German, Russian, French, Japanese, Dutch, or in English on any one of a number of websites.

6) Source, Inc. v. 38 defendants (Marshall, Texas, January 23). This one got my Bloated Case Award for the most number of defendants sued in one case during the month of January.

7) Innovative Patented Technology v. ICON Health & Fitness (West Palm Beach, Florida, January 24). I thought this case was interesting because it demonstrated that there's another connection between Niro Scavone and J. Beauregard Parker other than the Scott Harris connection. Parker's company sued on a patent not invented by Harris. My post on it was here.

8) VTran Media Technologies v. 11 defendants in 4 cases (Marshall, Texas; Huntsville, Alabama; Harrisburg, Pennsylvania; and Philadelphia, Pennsylvania, January 25-31). This one got my Most Likely To Be MDL'd Award for January.

9) SMDK Corp. v. Creative Labs, Audiovox, Coby Electronics, Creative Tech, Epson America, Seiko-Epson, Seiko Corp.; Phison Corp., TIC Computer; Thomson; and Vosonic Tech (Marshall, Texas, January 24). This one intrigued me because SmartDisk was an actual company, whose assets were sold to Mitsubishi. Everything but the patents, which remained with the owners, who decided to go into the lawsuit business. The prototypical once-company.

10) IP Innovation, LLC & Technology Licensing Corp. v. Mitsubishi Electric (Chicago, Illinois, January 17). This was J. Carl Cooper's 10th patent litigation (at least) involving the same patent. My feature on Cooper and his companies was here.

11) LivePerson, Inc. v. NextCard, LLC & Marshall Credit Strategies, LLC (Wilmington, Delaware, January 29) (D/J). Next Card and Marshall Credit Strategies are shells controlled by Edward "Rusty" Rose, a friend of President Bush. Evidently, they are running around accusing LivePerson's product of infringement, even though LivePerson isn't part of the suit filed by NextCard and MCS in Texas. This one looks like a likely candidate for transfer. For my earlier posts, see here: 11A; 11B.

12) Traffic Information LLC v. Alpine Electronics of America; Magellan Navigation; and Sanyo North American Corp. (Marshall, Texas, January 8). Another multi-defendant case for the shell of Portland patent attorneys looking to make some money. See #8 here. And what do you, know - they added nine defendants making this a 12-defendant case. A brief update here.

Anyway, that's what I found interesting. Hope you found this month's statistics useful. Let me know what else you might want to see out of this.

TT

Posted by Troll Tracker at 12:19 AM   2 comments
Labels: Acacia, Global Patent Holdings, Innovative Patented Technology, IP Innovation, Minerva, NextCard, Power Jamb, SMDK, Sorensen, Source Inc., statistics, Traffic Information, venue, VTran

THURSDAY, FEBRUARY 7, 2008

## Global Patent Holdings' Amended Complaint in Florida and Motion to Dismiss in Nevada

In the case in Florida against the Boca Resort, GPH amended its complaint to add the following two passages:

> The coinventors of the '341 patent were Anthony Rozmanith and Dr. Neil Berinson. Anthony Rozmanith is 80 years old; Dr. Berinson is now deceased but is survived by his 70-year-old widow; both live on Social Security payments and minimal royalties from their licenses. Mr. Rozmanith suffers from diabetes and had no taxable income at all in 2006. Dr. Berinson's widow, who suffers from neuropathy, colitis and arthritis of the hip and spine (as a result of which she is unable to walk without assistance), had a total of $18,100 in taxable income in 2006.

and

> Defendant Boca Resort is a Delaware corporation with principal offices at 501 East Camino Real, Boca Raton, Florida 33431. Its ultimate owner, The Blackstone Group LP, 345 Park Avenue, New York, N.Y. 10154, manages funds of hedge funds and real estate funds, among other activities. Blackstone owns more than 1,400 hotels having a reported value of $24.7 billion, for which it states that it provides in-house operating expertise in every facet of the business, particularly Internet-related functions. In addition to being a financial advisor to Enron, Blackstone has been the promoter of a number of collateralized debt obligations funds (CDO's) - the type of security which is at the heart of the subprime mortgage crisis. Blackstone Group has been reported by Forbes as having annual revenues of $8.7 billion on which it makes an annual profit of $2.3 billion. Its annual revenue from real estate such as Boca Resort has been reported as $1.22 billion.

What GPH's amended complaint doesn't allege is that the inventor's widow is getting any money at all from the ongoing litigation. Without that, the statements about her health are just irrelevant. Even if she is sharing in the litigation proceeds, her financial state and state of health are hardly complaint material. Further, how is Boca Resort's parents alleged participation in the Enron scandal and the subprime mortgage crisis relevant to a patent case?

If Vegas had a line on possible responses to this complaint, I'd place my money on Federal Rule of Civil Procedure 12(f):

> The court may strike from a pleading an insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter.

A non-scandalous part of the amended complaint, which seems to at least facially address Boca Resort's motion to dismiss, is the description of how Boca Resort is a "joint infringer" because it controls and directs the performance of each of the method steps of claim 17:

> Boca Resort is a "joint infringer" of claim 17 of the '341 patent (a form of direct infringement) because Boca Resort, through its website (http://www.bocaresort.com/) controls and directs the performance of each of the method steps of claim 17 which are not performed by the Boca Resort website itself. Boca Resort's website includes Javascript programs and html directives, which are downloaded to the user's computer and are executed on that computer. Copies of these Javascript programs, html files and other website materials (computer programs) are stored on Boca Resort's servers, for downloading and use on user's computers. In order to control the execution of the programs which are executed on the user's computer, Boca Resort's website stores a set of computer programs which it then sends to the user's computer for execution by that computer. Since the programs which the user's computer eventually executes are all supplied to the user's computer by Boca Resort's own website, operating on Boca Resort's own server, Boca Resort controls and directs the operation of those programs on the user's computer. Nothing happens at the user's computer in connection with the method steps of claim 17 that is not a direct result of the execution of programs and website material supplied by Boca Resort's website.

I haven't considered this substantively, but it was an interesting strategy by Boca Resort to force GPH's hand so early in the litigation, and get the kind of detailed infringement contentions that one usually fights to get a plaintiff to give and usually doesn't get it until well into discovery.

In Nevada, on the other hand, Global Patent Holdings claims the court has no personal jurisdiction over it in the declaratory judgment action brought by Zappos. That's despite the fact it directed threat letters into Nevada at 3 Nevada corporations, and settled with 2 of them. I'm not sure *Red Wing Shoe* saves GPH or not. Part of GPH's theory is that the previous two licenses were issued by TechSearch, not GPH, and they are not the same company. But aren't they both shells of Anthony O. Brown? He claims GPH has no affiliation with TechSearch, *so maybe there's more to that story?* Zappos will respond later this month, and I'm sure will have an answer.

What about the fact that GPH has sued not only in Chicago, where it

is located, but also in West Palm Beach, Florida? Can a patent
licensing entity sit in its offices, firing letters all over the country,
suing wherever it feels like it, really not be subject to personal
jurisdiction in the judicial districts where it sends its licensing
demands? Well, hey, Lauren Gelman over at Stanford blurbed a case
where a judge seemed to regrettingly say yes (link). Nice blurb,
Lauren.

The key here for Zappos is going to be to establish that TechSearch,
the shell company owned by Anthony O. Brown (see here) and GPH,
the shell company owned by Anthony O. Brown (per Acacia), are the
same for the purposes of examining whether it is "fair play and
substantial justice" to make Brown's GPH stand trial in Nevada since
the patents it now controls were licensed to Nevada companies, an
act that would seem to meet the exception in *Red Wing Shoe*. The
judge should look at analogous circumstances, such as the FTC's
recent enforcement against Negotiated Data Solution, making it abide
by commitments made by its predecessor-in-interest, who pledged
$1,000 licenses to a standards body (interesting analysis here). If
standards-body commitments run with the patent, then so should
personal jurisdiction based on licensing revenue. In this case, it
shouldn't matter, because Zappos might be able to pierce the
corporate veil and argue that fairness should not allow Mr. Brown to
play corporate shell games to avoid facing declaratory judgment
lawsuits. But even if GPH was independently owned, I think there's a
fairness argument that personal jurisdiction should run with the
patent, and where it has previously been licensed and enforcement
activity.

Or am I nuts for thinking that? No, wait, don't answer that.

Posted by Troll Tracker at 6:23 AM    7 comments
Labels: Boca Resort, Global Patent Holdings, Zappos

## Victory for Rembrandt

Rembrandt, a licensing entity that acquires patents and sues
companies that make products, and that allegedly makes no products
of its own, got $41M from a Marshall, Texas jury yesterday, according
to Michael Smith's blog. Well, the verdict part was according to his
blog, not the commentary on who is Rembrandt. What else does
Rembrandt have in its attic? A whole lot more patent litigation, that's
what. In Marshall, Texas. Also according to Smith: the jury did not
find willfulness, and rejected Ciba's defenses of invalidity.

It will be interesting to see what happens with the motion for a
permanent injunction.

Posted by Troll Tracker at 6:10 AM    0 comments
Labels: Ciba, jury verdict, Rembrandt

TUESDAY, FEBRUARY 5, 2008

## The Once-Company

I have used the expression "once-company" in some of my posts. Let me explain. Sometimes a company has a really great idea, builds products, hires people, files patent applications. Due to some factor -- maybe it's just the right product at the wrong time, maybe it's just poor sales and marketing -- the company doesn't make it. It goes out of business, shuts its doors, or sells its assets to the highest bidder.

Some of those times, the company says "ho, what do we have here, some patents?" Then they decide, "well, we couldn't make any money selling products to consumers, so let's make money the old-fashioned way: sue our competitors who are successful selling products to consumers." You know, because even though our business selling products covered by our patents was a complete and total failure, our competitors' success is entirely based on our patented technology.

That was a little tongue-in-cheek, but this accounts for a large chuck of the patent litigation I see. So now when you see the phrase "once-company," you know what I'm talking about. If you need an example, consider the case filed a couple of weeks ago, SMDK Corp. v. Creative Labs, and 10 other defendants. Even though SMDK is from Florida, and all of the defendants are either from California, New York, or overseas, the case was filed in Marshall, Texas, of course. SMDK used to be known as SmartDisk Corporation. SmartDisk actually had a pretty good product - not a complete failure. They sold all of their assets to a subsidiary of Mitsubishi last July. Why? According to the former company's explanation, financial losses and cash shortages made the business untenable. Oh, and their struggle to maintain market share due to "infringement of SmartDisk's intellectual property by unlicensed third parties." So they morphed from SMartDisK into SMDK, for the stated purpose of having the "company's primary business" be "generat[ing] income from its patent portfolio."

SmartDisk's chairman of the board was Addison M. Fischer, who is the head of Fischer International in Naples, Florida. Fisher is well-known in the computer security industry, having been a founder of VeriSign. SmartDisk was a spin-off from Fischer International. It is unknown but I suspect Fischer has some financial stake in SMDK (he had a nearly 40% stake in SmartDisk).

From the Smartdisk disclosure, we also learn that the company had asserted its patents before, against Archos. In that case, filed in the

Eastern District of Texas with Judge Ward (2:05-cv-101), the claims of
the two patents-in-suit (6,658,202 and 6,987,927) were construed on
November 28, 2006. Based on that Markman ruling, Archos moved for
summary judgment of noninfringement on each patent in April 2007.
But the case settled over the summer of 2007, before Judge Ward
ruled on the motions.

And that is the story of the once-company, SmartDisk of Florida, now
a shell whose purpose is to do nothing but sue others and get money.
And they hired good attorneys to do it: Ward & Olivo and McKool
Smith. There are plenty of other companies of similar ilk out there, in
various stages of unwinding. As I try to categorize cases as
either "competitor" or "shell corporation" patent lawsuits, the once-
company is the most difficult to pigeonhole.

Now, I know I'm going to get a bunch of email asking me why I hate
failed or failing companies, and how dare I suggest they don't have a
right to assert patents. To be clear: I have nothing wrong with a
patent-holder from asserting its/his/her patents. I certainly think a
failed or failing company has the right to do so (with qualifications I
need not get into here, such as the founders didn't hoard the IP and
hide it from the creditors to try to cash in on their own, etc.). I'm
only making this post to point out a category of patentee I see a lot,
and how hard it is to define this category of company.

That's it for me when I'm back with the January patent litigation
statistics on Friday. Unless, of course, any cases pop up this week
with scads of defendants or a request billions of dollars.

Posted by Troll Tracker at 12:02 AM    12 comments
Labels: McKool Smith, once-company, SMDK, Ward_Olivo

MONDAY, FEBRUARY 4, 2008

## Manic Monday

It's February now, and I'm working on the January patent litigation
statistics. So I won't have much to post this week. But over the
weekend I came up with a couple of posts, for today and tomorrow.

Before I get into things, I wanted to note that Michael Smith is
reporting that the Rembrandt v. CibaVision trial started in Marshall
last Thursday. Here is my earlier post on that trial.

(Michael Smith is also reporting that Lucent won a defense verdict
over Dell in a long-running patent dispute in Sherman. I hear this one
is noninfringement. If I am counting right, that's two big defense
verdicts for John Desmaris of Kirkland & Ellis in a little over six

months in the Eastern District. I noted the other one here).

This month, I'm working on a little different angle for patent litigation statistics. As I have said, I am no longer focusing primarily on the Eastern District of Texas. Sure, interesting cases are still being filed there, but I have started to notice cases being filed in places where you just don't hear about patent cases. I am still experimenting on different ways of presenting the data, and I'm still waiting on the returns from California and New York.

Meanwhile, here are a couple of my highlights for January:

Most Likely To Be MDL'd: VTran Media Technologies. After filing a lawsuit a few months ago in the Eastern District of Texas against Comcast, Charter, Time Warner and Verizon, VTran has been quiet. As I reported here (#118), VTran is asserting patents first involved in a divorce proceeding, and then sold in an Ocean Tomo auction. But last week, VTran went wild, filing three new lawsuits. The first was also in the Eastern District of Texas, against Cebridge Acquisition Corp. (d/b/a Suddenlink Communications, formerly known as Cox). Fair enough. But then VTran sued Bright House Networks, Knology Inc., and Mediacom Communications Corp. in Huntsville, in the Northern District of Alabama. The next day, VTran sued Atlantic Broadband Finance, Cablevision, and MetroCast Cablevision of New Hampshire in Harrisburg, in the Middle District of Pennsylvania. With four lawsuits in three judicial districts against eleven companies, I'd say it's time to whip out those MDL rules.

2/1 Late Morning Update: Make that five lawsuits in four judicial districts against fifteen companies. I missed one VTran filed in Philadelphia against Armstrong Utilities, Blue Ridge Communications, RCN Corp, and Service Electric Television.

Bloated Case Award: This award goes to Source Inc., who sued 38 defendants in one case in the Eastern District of Texas. You can see the list of the 38 defendants, including JP Morgan and US Bank, on this Affiliate Marketing blog. The patent-in-suit is RE36,116 (see it here, including in red the changes made in the reissue). The inventor listed is Patrick D. McCarthy of Louisville, Kentucky. Source, Inc. has a website touting its "LoyaltyShare" program. It looks like Source has a whole team -- in the Central District of California, mind you; it doesn't appear to be a pure patent troll. McCarthy doesn't appear to be listed among the executives. This blog not only has a link to the complaint, but has some reactions from those sued and asks some good questions.

*More tomorrow.*

Posted by Troll Tracker at 12:35 AM    0 comments
Labels: Ciba, Dell, John Desmaris, Lucent, MDL, Rembrandt, Source
Inc., VTran

THURSDAY, JANUARY 31, 2008

## Nokia Sued for 17.7 Billion USD By IP Licensing Shop

That got your attention, didn't it? Thanks to a reader tip, we get a
story from Cellular News that German IP licensing company IPCom
GmbH & Co., KG, asserting German patents obtained from Robert
Bosch GmbH, sued Nokia for $17.7B USD ($12B Euros) at the end of
December in Manheim. IPCom is 50% owned by a private equity fund,
Fortress Investment Group of Frankfurt, who is funding the legal
action, according to the report. Heise Online reports that IPCom is
an "exploiter of patents." For those who were wondering, yes, there
are US counterparts. I think they're buying cowboy hats as we speak in
Pullach (near Munich).

Saturday update: Interesting post on the JPEG blog about the IP-
Com/Nokia lawsuit.

Posted by Troll Tracker at 7:30 PM    4 comments
Labels: Eurotroll, IPCom, Nokia, private equity funded patent
litigation

## Boca Resort Opens New Front in Assault on Global Patent Holdings' JPEG-on-a-Website Patent

Ray Niro emailed me yesterday, complaining about the personal
attacks being made on him in Slashdot. There's a right to free speech,
but there's also a line. I don't care if one's address is public
information or not: don't publish someone else's personal information
in a blog post or in comments. I have had plenty of home addresses
available to me on the web - even Niro's - but legal or illegal, I
thought it's plain wrong. I hope Slashdot can remove the entries
telling people where he and his children live.

He also tells me he now definitely knows who I am. I'm waiting for
confirmation, since he didn't tell me my name. Then we'll see.
According to him, one of my "friends" turned me in for the cash.
Thanks, whoever you are, if true.

Meanwhile, I might as well get rid of a couple of posts I have saved,
and was planning to post next week, when I'm not going to be able to
post for various reasons. You know, go out with a bang, so to speak!

Global Patent Holdings is facing several new attacks from parties it has sued on its JPEG-on-a-website patent. Boca Resort, the latest to be sued, has filed a motion to dismiss based on the theory that GPH has not and cannot prove direct infringement of its claim by any one entity, and under *BMC v. Paymentech*, the complaint requires dismissal. It's an interesting strategy, and one that nobody else in the GPH lawsuits has tried yet.

In the GPH v. CDW & Motorola case in the Northern District of Illinois, CDW has moved to stay the litigation pending the ex parte reexamination just filed on the '341 patent, which I discussed here. Click on the Global Patent Holdings label/tag below if you don't know what I'm talking about.

Finally, according to GPH's status report in the Green Bay Packers litigation, both Apple and Kraft have settled, choosing to pay far less than the cost of litigation. The rest of the defendants, including the Green Bay Packers, will continue to fight. Global Patent Holdings has asked for a fact discovery period of 3 months, ending May 1, followed by expert reports on May 15 and June 1, and trial in August 2008. They claim that there is no requirement for a Markman hearing, and that "the reexamination has effectively decided the issues of validity and claim construction." Defendants would like more time, of course.

So when's someone going to refer this case to MDL? Or do we really want three judges making Markman rulings at the same time?

Posted by Troll Tracker at 10:05 AM    8 comments
Labels: anonymity, blogging, Boca Resort, Global Patent Holdings, indirect infringement

**WEDNESDAY, JANUARY 30, 2008**

## Hola

I have been counting visitors now for a little over 6 months. This morning, around 5am Eastern, visitor #100,000 came to the blog, from Mendoza, Argentina, through this link (hey, Digg in Spanish). Muchas gracias!

Posted by Troll Tracker at 10:23 AM    30 comments
Labels: blogging

## Patent Cases and Multi-District Litigation

Today at 9:30 am in Phoenix, Arizona, the Judicial Panel on Multidistrict Litigation will meet to select new cases for MDL treatment. The fact that they are holding the hearing at the site of

the Super Bowl, so close to the big game, has to be coincidental, right? Ever try getting a hotel in a Super Bowl city so close to the game? Not easy.

All patent litigators need to learn the MDL rules and JPML procedure. Why? Because after patent reform, patentees will be litigating their multi-defendant cases in multiple venues. Congress already anticipated how to manage these types of cases. Let's take a look at 28 USC 1407:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

That's just legal-talk for this: if a patent is being litigated in a multiple of districts, it's a candidate for MDL treatment.

Now, why should the contingency bar learn to love the JPML? It's simple: the JPML can transfer patent cases *anywhere.* So, after patent reform, a patentee like Minerva can sue 33 companies in 6 fora (they'll have to sue somewhere that actually makes sense), then ask the JPML to send the case somewhere where there is a judge with good patent experience and plenty of time and willingness to handle complex patent litigation. And where better for that than the Eastern District of Texas?

Yes, patent reform may end the prospect of having *trials* in Marshall when it doesn't make sense to do so, but that won't stop plenty of patent cases being referred there by the JPML for pretrial. Of course, defendants will argue for keeping the case at least in a court that will eventually see the case for trial, so there are more battles ahead. Pracitioners should learn these rules!

There are already a few existing MDL patent cases: the ones involving Katz, Rembrandt, and Acacia's streaming media patent. Currently, the many Katz cases are consolidated in Los Angeles with Judge R. Gary

Klausner, who had heard a Katz case or two in the past. The
Rembrandt cases are consolidated with Judge Gregory Sleet in
Delaware. Again, he's the trial judge for at least some of the
numerous cases. Finally, the Acacia cases are consolidated with Judge
James Ware of San Jose, California, who already has construed many
(if not all) claim terms.

There are currently two patent cases being considered for MDL
treatment. Today, the JPML will discuss MDL No. 1910 -- *In Re Phoenix
Licensing, LLC Patent Litigation*. State Farm, USAA, and others filed a
declaratory judgment complaint against Phoenix Licensing, LLC and
LPL Licensing (represented by Dovel & Luner) in July 2007. In August
2007, Phoenix and LPL sued Chase Manhattan, JP Morgan Chase, etc.,
etc., etc., in a massive 23-defendant litigation in Marshall, Texas.
Discover Products filed a DJ in Chicago in October 2007, and Citicorp
Credit Services filed a DJ in Delaware in October 2007.

Who are Phoenix Licensing and LPL Licensing? I posted about them
back in September here - see #101. Richard Libman is the manager
(and maybe sole member) of Phoenix Licensing, according to Arizona
corporate records available here (hopefully). He also is the manager
of LPL Licensing (here). The patents involved in the MDL are
5,987,434 ("Apparatus and Method for Transacting Marketing and Sales
of Financial Products"), 6,076,072 ("Method and Apparatus for
Preparing Client Communications Involving Financial Products and
Services"), and 6,999,938 ("Automated Reply Generation Direct
Marketing System"). Yes, I'm sure that Chase and JP Morgan didn't do
any sales or marketing before Libman showed them how it's done.
Then again, Sterne Kessler did have Libman write an article on
business method patents in the financial services industry. The article
says he "is a recognized leader, innovator and important influence in
the area of financial product marketing." So it must be true.

In addition, the defendants sued by Acacia subsidiary Screentone
Systems are seeking MDL treatment in MDL No. 1926 - *In Re Halftone
Color Separations ('809) Patent Litigation*. I'm not sure this one will
succeed. Under current venue rules, Screentone probably had proper
venue in the Eastern District of Texas when they sued all the
defendants. However, according to the defendants,
Acacia/Screentone may not have had proper standing at the time of
filing. If that's true, then the first-filed cases would be the 4
declaratory judgment cases filed by defendants in the Western
District of Washington, Central District of California, and District of
Delaware. I can see MDL treatment being proper under the new venue
rules, and can see it when the actual first-to-file cases are in
different districts, so maybe this will work. But I also understand the
counter-argument: defendants should not be able to split up and file
DJs to manufacture MDL jurisdiction. Right now, the JPML meets

every other month, so the Acacia Screentone MDL probably will be considered at their hearing at the end of March.

For those who think that the JPML being overrun with cases is not going to happen, look at all of the products liability cases that are given MDL treatment. It works, and there's no reason to think it won't work in the patent context, too. The real battle will be over where to refer the case. Much more information on the JPML website for those who want to get a head start.

On another note, Michael Martin has a post on the pending patent reform in the Senate. He explains why the proposed reforms could help solve the problem of patent thickets. He even backs off his earlier conclusion that damages apportionment may be disastrous for the emerging market for ideas. It's an intelligent post, and I encourage everyone to read it. If the Patent Prospector blog is posting that the pending reform isn't far from being fair, then perhaps it's going to happen, after all. This is consistent with what I'm reading: that patent reform is in "the final stretch."

Posted by Troll Tracker at 12:09 AM    7 comments
Labels: Acacia, Katz, MDL, patent reform, Phoenix Licensing, Rembrandt, Screentone, venue

TUESDAY, JANUARY 29, 2008

## I'm Being Hacked

Several email alerts from Blogger this morning, warning me that people are trying to figure out my password and log into my account. Blogger is not the paradigm of security, so who knows how much time I have left. Even though my password was already strong, to be safe, I changed it to something even stronger. There are 62 upper-case-letter, lower-case-letter, and number choices for each slot, so an 8-character password has, I think, 220,000,000,000,000,000 different combinations. That's 220 trillion. Good luck. And that's if I limited my password to 8 characters or less.

Meanwhile, hacking is a crime. Can anyone tell me whether there are civil or criminal penalties for inducing others to hack?

On a happier note, thanks for all the email. I won't be able to respond to it all, or even look at it closely until the weekend.

Posted by Troll Tracker at 11:22 AM    27 comments
Labels: blogging

## Innovative Patented Technology Asserts Patent

## Not Invented By Scott Harris

I reported here that Innovative Patented Technology LLC, a James Beauregard Parker company, existed solely to assert the patents invented by former Fish & Richardson partner Scott Harris. So imagine my surprise when last Thursday, Innovative Patented Technology, represented by Niro Scavone, sued ICON Health & Fitness on a patent invented by Gary J. Colassi, a different Niro Scavone client. Correction: Innovative Patented Technology exists solely to assert patents it didn't invent, just like many others are doing. Hey - it's the American way. (Yeah, let's not "cause harm to the current regime" and "destabilize" this wonderful system of ours).

Colassi, from Norton, Massachusetts, owns the World Gym in Foxborough, home of the New England Patriots. According to the Boston Globe, he sued Cybex International in 2002 on a "Treadmill Belt Support Deck." Three years later, Colassi's lawyers at Niro Scavone won a $2.5 million jury verdict for him ($2.63M including interest). Judge Rya Zobel (D. Mass.) granted a permanent injunction in favor of Colassi. That verdict was affirmed on appeal on February 14, 2007. The Federal Circuit issued its mandate on March 30, 2007.

Curiously, despite this tremendous victory, Colassi wasted no time getting rid of his patent. Before the Federal Circuit even officially affirmed the district court, Colassi assigned the patent (which had been 6,123,646, but reissued in 2006 as RE39,180). Innovative Patented Technology became the owner of the '180 reissue patent as of February 28, 2007. That's now two Niro Scavone clients who "found" James B. Parker to continue to assert their patents.

While the Colassi v. Cybex lawsuit was filed in Boston, and went through an extensive Markman hearing and ruling with Judge Zobel there, along with extensive motion practice, a jury trial, and post trial motions, Innovative Patented Technology sued ICON, a Delaware corporation with Utah headquarters, in West Palm Beach, Florida. That's near where Parker lives, but otherwise has no connection to the case.

Why would Gary Colassi, fresh off a $2.6M verdict and permanent injunction, affirmed on appeal, then sell his patents to another Niro client, James Parker? Could it be that Parker is funding the expenses for the probably contingency-fee lawsuit and Colassi gets a cut? For Colassi's sake, I hope so. But it's an interesting strategy, with these Scott Harris and now Gary Colassi cases coming to Parker and then being filed in South Florida. I don't pretend to understand it yet, but there's something about this strategy that just cries for investigation by a real journalist.


Posted by Troll Tracker at 5:27 AM    3 comments
Labels: Innovative Patented Technology, James Parker, Niro Scavone, venue

MONDAY, JANUARY 28, 2008

### Welcome

Welcome to all the new visitors to my site. Evidently, I was TechDirt'd, Slashdotted, and featured as the ABA Blawg of the Week all at the same time. Pretty cool.

Posted by Troll Tracker at 8:52 PM    8 comments
Labels: blogging, Slashdot, TechDirt

### Global Patent Holdings' JPEG Patent: Back to Reexamination

An anonymous third-party requester,* represented by attorney Vernon Francissen of Chicago (Ray Niro's next-door neighbor!), has filed a request for ex parte reexamination of the just-reexamined claim 17 of Global Patent Holdings' U.S. Patent 5,253,341, the JPEG-on-a-website patent. You can download the request, look at it yourself, copy it as an exhibit for your answer and/or other pleadings, here (very big file, please be patient while it loads). The request suggests 19 new substantial questions of patentability, 3 involving anticipation and 16 involving obviousness.

Of course, the best part of the reexamination request is the citation of this blog! See Request at 15-16 & nn. 22-24. Now, this isn't the holy grail of legal journalism, an acknowledgement from Linda Greenhouse or Nina Totenberg (like that's going to happen), but this may be even better. I actually haven't reviewed the entire 61-page request that closely yet, but wanted to get the news before you read a puff piece about it in the Chicago Tribune or ABA Journal. I can see the Trib's headline now: "Pesky Serial Infringers Dare to Challenge The Great and Almighty Niro in What Surely Will Be Futile Act of Desperation." Or, you can read the real news here (click on this link for all of my posts tagged "Global Patent Holdings" - especially good for those just tuning in who have no idea what I'm talking about - it's a patent, being asserted against the use of compressed data like a JPEG, on a website).

Now, who IS Global Patent Holdings? Simply put, it's what TechSearch became after it sold most of its assets to Acacia. TechSearch/GPH is Anthony O. Brown. And who is Mr. Brown? A lawyer, for one. According to this DePaul Law School publication (see page 22), Mr. Brown has a law degree from Case Western Reserve in Cleveland, and

was an attorney-advisor with the SEC in Washington. Then he became a partner at Jenner & Block in Chicago. Brown made a $24 million deal with Acacia in January 2005, obtaining $5 million in cash, $17 million in Acacia stock, and a $2 million guarantee for two years of consulting. Here's a March 2001 Wall Street Journal article about TechSearch, quoting Brown and his attorney, Ray Niro.

More to come, I'm sure.

TT

* It wasn't me, I swear.

Posted by Troll Tracker at 12:08 AM    5 comments
Labels: Anthony O. Brown, Global Patent Holdings, Reexamination

## Alexander Poltorak: Check Your Facts

Alexander Poltorak is CEO of General Patent Corp., an IP licensing shop I featured some time ago, nicknaming them "Acacia of the East" (watch out for falling houses). Poltorak has an editorial in the Christian Science Monitor today where he decries the impending patent reform that the Senate will soon take up. He claims, without citation, that

> just a handful of high-tech giants -- Microsoft, Intel, Cisco, Oracle, and Dell -- support the proposed reforms. Small high-tech companies -- the true innovators of this industry -- overwhelmingly reject them as do innovators from other industries.

Ignoring for now the false and unfounded claim that these companies are not "true innovators," his premise that these five companies are the entire support for the patent reform bill is absolutely not true, and Polotrak should open his eyes and learn the truth. Just last week, over 150 companies and organizations sent a letter in support of patent reform to the Senate leadership, urging passage of S.1145. Those letter-signers included more than just the 5 high-tech "giants" that Polotrak alleges constitute the entire support for patent reform. See for yourself here.

Supporters include members of the financial services industry, like Capital One, Citigroup, and Fidelity Investments, members of the energy industry, like Chevron, venture capital firms like Sternhill Partners, other industries, such as the American Corn Growers Association, plenty of Chambers of Commerce, representing small businesses of America, and even some of the "small" high-tech

companies Polotrak claims to unanimously oppose patent reform (e.g., Netflix). No, despite what some people claim, the support for the first meaningful reform to our patent laws in 50 years is far but "narrow."

I also take issue with Polotrak's unsupported claim that

> the proposed changes in US patent law will make it easier for offshore copycats to bring their pirated goods into the US with impunity. More jobs will be lost as a result, with devastating consequences for American competitiveness in the global economy.

Sorry, I just don't buy the argument that damages apportionment and venue reform will be a devastating blow to American competitiveness in the global economy. Where's the economic support for that? Further, damages reform and venue reform do NOT affect the ITC's jurisdiction and the ability to get exclusion orders there against "offshore copycats." The real opposition from the General Patent Corporations of the country is the fear that a patent will no longer be a lottery ticket, a spin on the wheel of fortune. And I'm sure we will hear an ever-louder parade of horribles from this crew as the Senate approaches its vote.

(Note: I realize the biotech industry has a different angle, and their own reasons for opposition. My comments above were aimed at the patent licensing industry's organized opposition, not the biotech opposition. That's for another day).

Posted by Troll Tracker at 12:01 AM    16 comments
Labels: General Patent Corp, patent reform

**FRIDAY, JANUARY 25, 2008**

## Robert Dorf and Alexsam

Alexsam first came onto my radar in July 2007, when it sued Evolution Benefits & Humana in Marshall, Texas on an electronic gift card patent, 6,000,608. Alexsam is represented by McClanahan & Clearman in that case, which has just had its initial status conference, and discovery is just beginning. In September, Alexsam filed a second lawsuit, this time against IDT Corporation. The '608 patent was also asserted, but so was U.S. Patent 6,189,787. Same lawyers. Pleadings completed in December; still waiting on a scheduling conference.

Let's see, July, September, ... November! Yep, in November, Alexsam filed a third lawsuit, against Unitedhealth Group, Exante Bank, and 2

related entities. Again, same lawyers, same 2 patents. This one's also in the pleading stage.

What's two months from November, you ask? Why, it's January. And right on schedule, Alexsam filed a fourth case on January 17 against Shell Oil Co., Pier 1 Imports, and Metromedia Steakhouses Company (Ponderosa and Bonanza), against using the same lawyers to assert the same '608 and 787 patents. All because the defendants sell gift cards that practice the invention of the patents, according to the complaints.

My first post on Alexsam explained that the company was set up in Texas as a shell for the inventor Robert Dorf, and that his wife also appeared to be an officer. An address in Sarasota, Florida was listed. In fact, Robert Dorf also has a non-functioning website, http://www.alexsam.net/.

Alexsam also sued once before: it filed a lawsuit in September 2003 in the Eastern District of Texas against Datastream Card Services, Globetel Communications Corp., Interactive Communications Int'l, Transcend LLC, MBC Direct LLC, ITC Financial Services, American Express, Galileo Processing, One Global Finance, Simon Property Group, FSV Payment Systems, NetSpend Corp., Next Estate Communications, Wildcard Systems, Qwest, and 3 other defendants (18 in total). The patents asserted were the '608 and 787 patents. McClanahan & Clearman of Houston took the lead. There was a claim construction hearing in May 2005, but as far as I know, it settled before any opinion was issued.

I did not notice any reexaminations on the '608 or 787 patents.

Now who is Robert Dorf? According to his LinkedIn profile, he operates this website relating to "GoPay." Note that the website is marked with the two patent numbers. That's all I could really find out about him. He either lives in Raleigh, NC, or Sarasota, FL, or both.

I don't think many people will find these cases that interesting. But I do think that a bunch of cases filed in the last half-year over these gift-card patents has propelled Alexsam towards the top of the lists of inventor-shell corporations that sue a lot. With that activity will come attention, and maybe a reexam, but who really knows? The priority dates for the patents are July 1997. Was the following representative independent claim really new and nonobvious in July 1997?

20. A loyalty card system, comprising:
a. at least one loyalty card having a unique identification number encoded on it, said identification number comprising a bank identification number approved by the American Banking



Association for use in a banking network, said identification
number corresponding to the loyalty card system;
b. means for receiving loyalty data from an unmodified existing
standard retail point-of-sale device when said loyalty card is
swiped through the point-of-sale device, said loyalty data
comprising the unique identification number of the card and
purchase data; and
c. means for crediting an account corresponding to the loyalty
card with loyalty points based upon the purchase data.

So that's Robert Dorf and Alexsam: 5 lawsuits, 28 defendants, and
counting, on claims that seem kind-of-broad, to me. Who else has
electronic gift cards, prepaid phone cards or loyalty cards that might
be targeted?

TT

PS - Nice comments in the previous blog post. Thanks for both
viewpoints! I do think that if you file a lawsuit, you're a limited public
figure. What, it would be wrong for me to comment on something
that any person anywhere in the world could find with a few clicks on
the Internet? Anyway, thanks for keeping the commentary civil.

Posted by Troll Tracker at 12:08 AM     7 comments
Labels: Alexsam

**THURSDAY, JANUARY 24, 2008**

## J. Carl Cooper and Technology Licensing Corporation

What's a troll tracker to do? I have poor J. Carl Cooper's biography
already written, but there are so many other tempting stories. First,
there's this drivel, on how patent reform will ruin society and lead to
the crash of our economy, etc. I'll respond in a couple of weeks -
closer to the actual debate in the Senate. It sure got the cheering
section going, though. Second, there are 37-defendant cases being
filed in Texas left and right. Minerva on Tuesday; Source, Inc.
yesterday. So I'll add that one to the list. Third, I'm getting a ton of
email from people suggesting this story or that story - good leads,
most of them. So I now have a backlog of ideas to last me a while.

Without further adieu, on to J-Carl. I previously posted this feature on
a case Technology Licensing Corporation and IP Innovation, LLC filed
in the Eastern District of Texas against Red Hat and Novell. At the
time, I concluded, correctly, that Technology Licensing Corporation
was a shell corporation for the inventor, J. Carl Cooper. I didn't really
explore too much, though.

Now I have. In numerous court filings, Technology Licensing Corp. (not to be confused with the totally separate California patent licensing shop, Technology Licensing Company -- more on them another day) admits it is a shell for J. Carl Cooper. TLC first started working with TechSearch back in the day, and now Acacia since the big Acacia-TechSearch transaction.

Who is J. Carl Cooper, anyway? For one, he is a registered patent agent. He also sometimes testifies as an expert in patent litigation. He used to be affiliated with the Los Gatos, California company Pixel Instruments Corp., but now has moved to the Lake Tahoe area. Similarly, Technology Licensing, once located at the home offices of Pixel in Los Gatos, has moved to Carson City, Nevada.

This article on Ray Niro (titled, by someone else, "Meet the Original Patent Troll") states that Cooper came to Niro through an introduction made by Anthony O. Brown of TechSearch. The article claims that Niro has netted over $50 million for Cooper.

According to this cached page from 3 years ago, Cooper was on the Board of Directors of TechSearch before it was vastly sold to Acacia. He had over 43 patents as of that time. Cooper's company submitted an amicus brief in the eBay case re injunctions. His attorneys explained that Cooper could not compete against foreign copyists, "and thus turned to licensing and patent enforcement instead of manufacturing." Cooper recently told the Wall Street Journal that the Supreme Court's decisions have made his enforcement program harder, due to the difficulty of getting injunctions.

Technology Licensing Corp. also has a website. On it, they explain that the amount of money they have made is actually $100 million. We also learn that they have a licensing manager in Pebble Beach, California - Warren E. Small. And now they have over 60 patents.

The reason the number jumped from 43 to 60 is that TLC is now not only licensing its own home-grown patents, but is in the business of buying patents of others and suing on those patents to make money. Given the number of lawsuits, the amount of money he has made, and this recent patent-buying-for-the-purpose-of-assertion binge, I'm hard-pressed to call J. Carl Cooper the typical "small inventor." The most recent case that got a ton of press was the case where Acacia and TLC went halvsies on patents from Xerox, and then sued Red Hat and Novell (after quickly getting a settlement from Apple), and then, Google.

So let's look at the litigation filed by Cooper and TLC. He started out on his own in 1997, suing Toshiba and Circuit City. In 1998, HP filed a


declaratory judgment action against him, and his attorneys were
disqualified. That's when he first hooked up with the Niro Scavone law
firm and Ray Niro. That second case involved U.S. Patent 5,424,780.
Two ex parte reexaminations were filed on the '780 patent, and a
reexam certificate issued in 2002.

In total, Cooper and TLC have filed at least 23 litigations against at
least 44 defendants, and have obtained at least 34 settlements. They
lost two cases. One involved a dismissal for lack of standing, which
was affirmed on appeal. The other was a loss at a bench trial, where
the district court found one patent invalid and the other not
infringed. That particular case is on appeal to the Federal Circuit.

Niro Scavone has represented TLC and Cooper in about 12 of the 23
litigations, although there are a couple others recently filed in Texas
where the firm may be behind the scenes but hasn't made an
appearance. The three cases TLC filed in 2007, against Apple, Red Hat
and Novell, and Google, all involved patents purchased from Xerox,
and all three were filed in Marshall, Texas. The Apple case settled
quickly, but the other two are still in the very early pleading stage.

The most recent litigation was just last Thursday, January 17, in the
Northern District of Illinois. Acacia subsidiary IP Innovation & Cooper's
Technology Licensing Corp., represented by Niro, sued Mitsubishi for
infringement of the '780 patent, as well as U.S. Patents 6,529,637 and
6,870,964. Neither the '637 nor the '964 patents have been involved in
any reexamination. The '964 is a continuation of the '637, which is a
continuation-in-part of the '780. This is at least the tenth time
the '780 patent family has been asserted in litigation by Cooper.

Other than the case up on appeal to the Federal Circuit and the 2
cases recently filed in Texas, the only other TLC case pending before
last week was one brought by IP Innovation and TLC in Chicago in
September 2005 against 9 defendants. The Fourth Amended Complaint
in that litigation asserts 11 different patents, including the 3 asserted
by IP Innovation and TLC in the Mitsubishi case (the 2005 case also
includes co-plaintiffs New Medium/Acacia, and AV
Technologies/Acacia. Evidently, each Acacia subsidiary teams with
Cooper to assert different groups of patents).

So that's one story of the small American inventor at work, buying
patents, forming shells, suing hundreds of companies. In both Cooper's
case and the earlier story on Ware, they had patents that survived ex
parte reexamination -- as many patents do. Nobody has tried to put
Cooper's recent patents into inter partes reexamination. More likely,
companies look at the vast portfolio, the number of patents asserted,
the number of settlements, the high cost of patent litigation, and the
chilling estoppel effect of inter partes reexamination (and recent



slowness of the PTO Board of Patent Appeals), and decide to do what dozens others have done: settle.

Posted by Troll Tracker at 12:02 AM    38 comments
Labels: Acacia, IP Innovation, J. Carl Cooper, Niro Scavone, Technology Licensing Corp., TechSearch

TUESDAY, JANUARY 22, 2008

### Minerva Awarded Exclusive Right to Cellphones with Wireless Internet and Other Generic Features; Sues RIM, Apple, and Motorola

At 12:01 this morning, Minerva Industries (a Los Angeles patent holding corporation for Los Angeles inventor Ki Il Kim, represented by Los Angeles lawyers at Russ, August & Kabat, and who I featured previously), filed 3 lawsuits on recently issued U.S. Patent 7,321,783. The first lawsuit named Research In Motion and Cricket Communications as defendants. I saw this lawsuit appear on January 21, and had a post up about it, briefly. But Minerva caught its mistake, killed that lawsuit, and filed the new one. The now-dead lawsuit will appear on ECF, but clicking through will just generate a message that nothing's there. So problem solved, apparently (RIM still could have seen the mistake and filed a DJ on the East Coast to win the race to the courthouse -- a race that will almost completely be eliminated by patent reform. It would have been useless, though, given the earlier filed lawsuit by Minerva against 40+ defendants in Marshall, including RIM).

The second lawsuit was against Apple and AtlanticRT over the iPhone. From the Apple complaint, it appears that the Minerva patent was about to issue in August, Apple waited until a week before issuance, and then sent prior art to Minerva. Minerva pulled the patent from issuance, sent the art to the PTO, interviewed the examiner, and got the issuance over that prior art. Kudos to Connolly Bove Los Angeles for smart prosecution moves.

The third lawsuit names 29 defendants: Motorola, Nokia, Alltel, AT&T Mobility, Dobson Cellular, Helio, HP, MetroPCS Wireless, Sprint Spectrum, Nextel of Texas, Nextel South Corp., Nextel of New York, Nextel of the Mid-Atlantic, Nextel of California, Nextel West, T-Mobile USA, Tracfone Wireless, Cellco Partnership, Virgin Mobile USA, High Tech Computer Corp., HTC America, Kyocera Wireless, LG, Palm, Pantech Wireless, Sanyo, Utstarcom, Sony Ericsson, and Samsung.

That's a total of 33 defendants sued just minutes after this patent issued. And what a patent it is! The '783 patent has 125 claims. The broadest claim appears directed to a cellphone with a wireless

internet connection, a memory card, a microprocessor, a display panel for displaying internet data. So far, so broad. Also required are 1 of the following: voice dialing, wireless earphone, or wired earphone with microphone. OK, then also required are that the phone is capable from downloading one of the following from the internet: videos, music, or videos and music combined. The patent has a little over 4 columns in the specification, but has almost 32 columns of claims! Don't believe me? See for yourself.

Priority date: either March 2000 or, if CIP entitled to earlier priority date, then April 1997. I know of prior art predating the 2000 date, but what about April 1997? Does the original specification really support the claims? Is it enabling? I'll leave that to the experts.

Posted by Troll Tracker at 1:00 AM    19 comments
Labels: Apple, Minerva, Motorola, RIM

MONDAY, JANUARY 21, 2008

## Paul Ware and Acacia

OK, people. I'm not dead yet. To the small inventor commentor on the last post, did you even *read* what I wrote?

Since I have gotten so many emails and comments regarding how great the "small inventor" is and how these inventors are unfairly maligned, I thought I'd put the spotlight on a couple of prolific inventors. Well, prolific in the sense of number of defendants sued, anyway.

I'll start off today looking at Paul Ware.

Paul N. Ware (not to be confused with Goodwin Proctor lawyer Paul F. Ware) is a former airline pilot who owns a patent reported to be on "a system that eliminates the need to have a cardholder's name and account number printed on a receipt by numbering the credit card sales," a method that "is used by nearly every retailer in the country."

Ware's patent is U.S. Patent 4,707,592, titled "Personal Universal Identity Card System for Failsafe Interactive Financial Transactions." It was filed in October 1985 and issued in November 1987. In 2003, he granted an exclusive license to TechSearch, LLC -- the company that is now Global Patent Holdings. Later, Acacia acquired that license from TechSearch.

Ware has been featured in several news articles as the "face of the small inventor." See this Financial Post story from January 2006, reporting that how he knew the industry was practicing his invention

back in the late 80s, but waited until Acacia called him in 2004 before actively monitizing his invention. See similar insight from Mr. Ware here.

In May 2005 and September 2005, two ex-parte reexaminations on the '592 patent were filed. After interviews conducted by lawyers from the litigation firm Friedman, Suder & Cooke, and a response emphasizing the uniqueness of the transaction number, which was alleged to be new in 1985, the PTO issued a reexamination certificate last summer confirming all of the claims of the '592 patent.

Ware and Financial Systems Innovation, LLC (a subsidiary of Acacia, formerly a subsidiary of TechSearch, the company now known as Global Patent Holdings) have filed 10 patent litigations in the last four years, against 144 defendants. Friedman, Suder & Cooke is representing Ware and Acacia in all of the litigation, most of which are pending either in the Northern District of Georgia or Northern District of Texas. The big filing was one last June against 106 defendants, which I reported on here. While 3 of Ware's cases were settled, the rest were stayed pending the first reexamination. There are motions in each of those cases to lift the stay. Some are being granted, but in other cases, more trouble brews.

The reason is that in April and May of 2007, following the Supreme Court's decision in *KSR*, two other third party requesters submitted ex parte reexamination requests based on other prior art. The PTO granted the reexam requests in each case, and each case is now awaiting a first office action.

In fact, in the massive Ware/FSI/106-defendant case in Rome, Georgia, Judge Beverly Martin ordered the one case to be split into four parts and stayed pending this second reexamination. She really seemed to criticize Acacia's strategy of suing everyone in one case, and perhaps her ruling was a bit of a backlash. She wrote (on December 27, 2007):

> As the court advised plaintiffs' counsel at a hearing on December 17, 2007, the court finds itself utterly unable to manage this case as a single lawsuit. . . . Because of the enormity of the number of defendants accused of infringement in this action, and because each of those defendants will be entitled to be heard from in the claim construction process, this case is particularly appropriate for a stay pending the USPTO's determination as to whether any claims will be cancelled. Cancellation of even one claim could eliminate hundreds of pages of briefing on the subject by the numerous defendants sued in this action. . . . Mr. Ware has made the tactical choice to



sue over 100 defendants in this action, and did not file this action until roughly six months ago. As a result of Mr. Ware's decision in this regard, the court must necessarily look for ways to manage this litigation, and waiting for the USPTO's reevaluation of his patent seems an obvious solution.

So that's where Mr. Ware is today. Having allegedly discovered a great way to combat credit card fraud in 1985, he waited 22 years to sue the industry, and now is having his cases stayed pending reexaminations going on at the PTO. Many defendants allege that his patent should not have been issued at the time, and are thus refusing to pay him. Others have settled. I don't know how much money he has made over this idea, but I'm quite sure that without TechSearch and Acacia, he would have made nothing. It's a win-win situation for Ware and Acacia. He helps Acacia make money and thus satisfy its shareholders; Acacia helps him get money from a patent he had left for dead. It will be interesting to see what happens now.

Wednesday*, I'll look at an inventor with even more patents and more lawsuits: J. Carl Cooper.

* It was "tomorrow," but I think that I'll spread my posts over two weeks instead, as I need some time off from blogging. Unless something surprising happens, of course.

Posted by Troll Tracker at 12:01 AM    10 comments
Labels: Acacia, Financial Systems Innovation, Friedman Suder, Paul Ware, TechSearch

SATURDAY, JANUARY 19, 2008

## The Writing Process

When I started this blog, I just wanted to focus on the great many patent cases being brought by companies that make no products, and exist solely to license patents and monetize them. There was a convenient term already out there -- I'm not Peter Detkin, so I didn't coin it. So I used it: patent troll. I guess I didn't expect all the kerfuffle that would cause among those who make a living monetizing intellectual property. Even Ray Niro used the term in his chapter in the book *Making Innovation Pay* - albeit while arguing that these so-called patent trolls were beneficial to society. Right next to the picture of him with his Ferrari near his Aspen home.

Anyway, over the last few months I have begun to transition out the term. It doesn't add anything to the dialogue; in fact, it distracts from the message I'm trying to get across. That message being that patents

are not being asserted like they were 20 years ago, that today's American small and large businesses have to navigate a minefield like never before. Whether the plaintiffs are well-deserving individual inventors, their shell corporations, or large licensing entities solely seeking to monetize patents, it adds up for the mom-and-pop businesses and the big corporations alike. All I want to do is highlight who is behind these cases, who is backing them financially, and where these cases are being litigated. And if we can have some fun along the way, and not take ourselves so seriously, all the better, right?

This whole "reward" business has obviously created a roadblock in my quest. Mr. Niro claims to be close - he may even know who I am already. So be it. This blog, or others like it, will continue whether I'm unmasked or not. In fact, I won't be surprised if others plan similar types of information-gathering services. For profit, of course. (I knew I should have patented this business method).

So I'll continue on for a while, see how it goes. But despite the fact that the vast majority of my readers when surveyed said they aren't offended by the term patent troll, I'm going to cut back on my use, if not stop using it altogether. You can make your own conclusions.

Many of you wrote in comments in the survey that you don't see how I get the time to write as much as I do. This post took 20 minutes, including writing and editing. There was no research involved. Most of my posts, including research, writing, and editing, take 30-45 minutes, and I do about 4 a week. I tend to think of my ideas for a post while exercising - and usually desperately scribbling notes when I'm done so I don't forget. Some posts (Fortune 100) take longer than others.

My estimate is that over the course of a year, I probably will have sacrificed 200 billable hours to this blog. Lucky for me, I'm a workaholic, so due to the massive hours I have put up in the past, nobody is going to miss those billable hours. I do much of my writing on the weekend.

For example, due to the fact I'm definitely crammed with work this week, I already wrote this week's posts. Unless something earth-shattering happens, this week I'm featuring a look back at entities I have featured in the past. On Monday, I have a dream that I'll feature Acacia, and their efforts to make all inventors equal. Well, I'll focus only on Paul Ware and J. Carl Cooper on Monday, but these are impressive inventors, and their litigation is no less impressive.

If any new cases are filed this week -- well, they'll have to wait until I extricate myself from this pile of paper.

Posted by Troll Tracker at 11:46 AM    18 comments
Labels: blogging

FRIDAY, JANUARY 18, 2008

## Survey Results

View my survey results here. For those of you who just want the
summary, read on and don't click through. Note that I couldn't enable
the results with the "other" entries revealed, because a few of you
provided personal information, such as phone numbers. It would have
been a violation of those people's privacy to enable everyone to see,
and there was no way for me to delete any entries. So, instead, below
are some typical responses for each of the questions which allowed
an "other" answer.

The results will remain available for the next week or so, after which
the link will be inactive.

1. Are you offended, in general, by the term "patent troll?"
12% of you are offended.
88% are not.

2. To which of the following categories should the term patent troll
apply?
88% of you said it should apply to "Corporations whose sole purpose is
to obtain and assert patents, with little or no connection to the
inventors."
73% of you said it should apply to "Venture capital or other financial
firms who are acquiring IP as an investment to be capitalized through
enforcement (e.g., Altitude Capital Partners)"
64% of you said it should apply to "Contingency fee lawyers who go
around putting bounties on bloggers' heads"
58% of you said it should apply to "Shell corporations set up by the
patent inventor, who have filed numerous lawsuits against dozens of
companies"
51% of you said it should apply to "Corporations that make products,
but are acquiring and asserting patents with no relationship to their
products, as a revenue-generating business model"
The other choices got less than majority support.
41 of you indicated "other." Here are some of the more interesting
ones:

--> anyone (including, if the shoe fits, individual inventors and/or
university entities) engaged primarily in naked patent licensing
without any attendant technology transfer; anyone whose business is
inventing patents rather than patenting inventions (though perhaps
the latter should be labeled troll facilitators)

-->One key feature of a patent troll is the inability of the defendant to assert any patents against patent counterclaims. Corporations that make products take a risk by suing, regardless of the relationship between the asserted patents and their products. Trolls take no risk, and that's what dictates their style of litigating akin to class action securities lawyers.

-->Patent attorneys who write up paper patents with themselves listed as the inventor or co-inventor.

-->Local and state government hiding behind 14th amendment

-->There is no such thing

3. If I decide to stop using the term "patent troll," which of the following choices is the best substitute?
66% of you implore me to keep using the term.
17% of you like "non-practicing entity"
Only 6% of you liked "patent speculator"
21 of you indicated "other." Here are some of the more interesting ones:

-->Patent Shark (I got a lot of these)

-->"PLEC" - Patent Licensing / Enforcement Company

-->patent enforcer

-->Patent [insert derogatory term here]

-->dirty rotten patent sharks (with hat tip to Monty Python episode on names for Belgians)

4. How do you feel about the mix of serious content and humorous content on the blog?
88% of you said "just right."
10% of you said "too serious."
2% of you are no fun whatsoever.

5. If you have any suggestions on how to improve/enhance the blog, please let me know here.
I got 48 comments, with a wide range. Here are some of the more interesting ones:

-->I got quite a few "don't change a thing" - thanks...

-->1. Hold a limerick or "actual rhyme" poetry contest--that would be

more fun than haiku. 2. Report more on the patent attorneys with the white hats who fight the big, bad trolls. 3. Solicit other attorneys over the Web to anonymously help you in various projects (e.g., compiling particular kinds of lawsuit statistics; researching and shedding light on the background of certain trolls) to save yourself time and increase effectiveness. 4. Provide an overview of the typical strategies of patent trolls both pre-lawsuit and after a lawsuit is filed. 5. Provide an overview of the typical order of events in a litigation in the various rocket docket jurisdictions (and explain how this differs from non-rocket dockets). [May be a good project to ask other litigators to contribute to, anonymously, one from each of the relevant jurisdictions.]

-->If you are getting too busy, consider accepting posts by guest commentators, sort of like this blog does: http://www.volokh.com/ (note - I'm considering it)

-->More JPEGs

-->add a forum for people to discuss the cases (note - anyone want to send me the "Dummies Guide" to adding a forum to your blog?)

-->I really enjoy reading your blog. I think you do a great job at uncovering a lot of shady lawsuits. However, sometimes I feel like you view anyone other than a large corporation as a patent troll. I know that you came up with metrics to classify level of troll (or non-troll) but the vibe is still there and I am glad that you have created this survey to (hopefully) remedy this problem. Individual inventors and bankrupt companies should be able to exercise their patent rights. They took a chance, disclosed their technology, and for one reason or another could not make it commercially successful. Those who are able to make the invention commercially successful should respect patent rights of others, as others should respect their patent rights.

-->Include nude pictures of the patent attornies involved. Seriously though - Check out Roughly Drafted. The writer uses some really nice graphics to make his points. (comment - no!!!)

-->Be more explicit in expressing the bases for your conclusions. You often assert premises to arguments that are assumed; if you are asserting a particular practice or tactic to be bad or unfair, explain why you think so, rather than simply saying that it is. For example, explain why it's such bad thing to sue multiple defendants if the claims asserted have merit.

-->I am offended by the constant mischaracterization of Acacia as a Patent Troll. Acacia has done an outstanding job of enforcing our patents as an exclusive licensee. We are a small company that could

not afford to enforce the patents directly. As is the case of many of the patents that Acacia acts as exclusive licensee, ours are encompassed in our technology and actively marketed by our company. This hardly makes Acacia or our company a patent troll. Boo hoo for the big companies that would otherwise infringe our patents and would rather us be roadkill on their way to huge profits and market domination. I think you should get your facts staright before you start your mischaracterization campaign against Acacia or its clients. I find your vetting of the facts to be fairly accurate, however, this is poisoned by your bias. I do not accept that you would like to see inventors or small companies abridged from enforcing their patents to the benefit of large entities. Your blog is intelligent but this bias toward large entities is illogical.

6. Choose the answer below that best describes you:
16% of you chose "associate at law firm"
14% of you chose "in-house counsel"
14% of you chose "partner at law firm"
10% of you chose "small business owner"
8% of you chose "inventor"
About 5% of you are at a law school (clearly, Dennis Crouch isn't referring enough people to me)
About 3% of you are at the PTO/US Courts/other government

That's the people who answered. I got 25% "others," with some of the interesting answers as follows:

-->I totally forgot about "consultants" - there were a few of you.

-->Journalists

-->Retired

-->Computer Scientist

-->Quite a few people identified themselves as "open source advocates" and the like

7. Choose the answer below that you think best describes me:
29% of you think I'm an associate at a law firm.
21% of you think I'm a partner at a law firm.
13% of you think I'm an in-house counsel.
8% of you think I'm at a law school.
Only 1 of you thinks I'm an inventor.
37 of you chose "other," with some of the interesting answers as follows:

-->You are a patent attorney that specializes in defending large

corporations that willfully infringe on the patents of small inventors. You started troll tracker as a vehicle to pollute the jury poll against your rivals and potential rivals :)

-->someone with courage and insight

-->I haven't a clue and I don't care. You perform a public service. Keep it up.

-->Bored

-->I like this question. It gives a good picture of your motivation. Ego!

**8. Where do you live?**
23% of you live on the East Coast of the U.S.
21% of you live on the West Coast of the U.S.
14% of you live in the Midwest
10% of you live in Texas
10% of you live in Europe
5% of you live in Asia

**9. Where do you think I live?**
26% of you think I live on the East Coast of the U.S.
23% of you think I live in Texas
18% of you think I work at the Niro Scavone law firm or live on Planet Niro
16% of you think I live on the West Coast of the U.S.
1 of you thinks I live in India!

**10. What is your opinion on Global Patent Holdings' assertion of claim 17 of the reexamined '341 patent against anyone with a website with a JPEG image on it?**
46% of you haven't reviewed the claim.
27% of you chose "the claim is invalid" (whether you reviewed the claim before choosing that, I have no idea)
12% don't care, because it's my problem, not yours. Hey, thanks.

Here's a bonus: the top 10 search terms used to reach my blog in the last week (not including troll tracker or something similar):
1. Wiav Solutions
2. Erich Spangenberg
3. Acacia
4. Mondis
5. Altitude Capital
6. Scott Harris
7. silly patents
8. contingency fee lawyers
9. Jerry Harthcock

10. Global Patent Holdings
53. "I need a good patent attorney for my ofdm wireless idea"
58. "Is there a law to stop patent infringement?"
87. "How to troll for fish"
98. "Reverse commode"
101. "When did Barack Obama work for White & Case?" (it was Sidley, wasn't it?)
130. "Your ip address be gone, troll."

Thanks for all the feedback, everybody! I do appreciate it. I may be "unmasked" soon, and I'm not sure if I'll keep the blog going after that, or I might transform it into more of a community/collaboration. But until then, other than some dark periods coming up where work will make blogging just completely prohibitive, I'll be back with more interesting news on patent litigation in general, and patent trolls, shell corporations, individual inventors, greedy corporations, "serial infringers" (as Patent Hawk and others call them), and everyone else.

Posted by Troll Tracker at 9:03 AM    6 comments
Labels: blogging

THURSDAY, JANUARY 17, 2008

## A Note About Civility

It is absolutely unacceptable for people to post threats in the comments. They will be deleted as soon as I see them. I was just made aware of one such threat posted over a month ago, and was appalled. I don't care if the threats are meant to be sympathetic towards me, it will be deleted.

Also, please be aware that unless you are using a proxy server, I can obtain the IP address of anyone who leaves a comment on this blog.

Posted by Troll Tracker at 7:06 PM    2 comments

WEDNESDAY, JANUARY 16, 2008

## Oral Argument in Quanta v. LG

The Supreme Court had oral argument this morning in Quanta v. LG, the patent exhaustion case. Maureen Mahoney of Latham & Watkins argued for Quanta. Thomas G. Hungar, Deputy Solicitor General, gave the United States' views on behalf of Quanta. Carter G. Phillips of Sidley & Austin argued for LG.

It's very hard to read Supreme Court tea leaves. In this case, though, I think that Justices Roberts, Stevens, and especially Breyer honed in on exactly the problem with the Federal Circuit's opinion in LG.

Justices Alito and Thomas were completely quiet. Justices Scalia, Kennedy, Ginsburg and Souter asked questions, but without really revealing which way they were leaning, although Justice Scalia did seem to discount that LG/Intel's notice meant anything, and Justice Ginsburg picked up on the fact that LG could have expressly conditioned its license requiring Intel to sell products only to licensed companies. So, on balance, I'd say the Court appears to be *leaning* towards overturning the Federal Circuit, but perhaps only slightly, and I certainly won't be surprised if it's a 5-4 or 6-3 decision the other way. And who knows what the scope of the opinion will be? Should be interesting.

That's just my opinion. You can form your own opinions by reading the oral argument transcripts, located here. Scroll to the end of this post if you want to see the links to news stories on the case. Meanwhile, these are a couple of highlights:

This is what Deputy SG Hungar was able to rattle off before he was interrupted by Justice Ginsburg:

> For 150 years this Court has held that an authorized sale removes the particular item sold from the protection of the patent laws. The [Federal Circuit] erroneously transformed that patent-exhaustion doctrine from a definitional principle that delimits the scope of the patent grant into an optional default assumption that can be discarded at the whim of the patentee. If the rationale of the court of appeals were correct, this Court's decisions in cases like Univis, Motion Picture Patents, Straus, Bauer and Boston Store would have to have gone the other way, because in each of those cases this Court held that the exhaustion principle overrode express restrictions that the patentee had attempted to impose on after-sale use or resale by an authorized purchaser.
>
> This Court should follow its precedents and reaffirm the principle that the patent-exhaustion doctrine precludes a patentee from employing the patent law to enforce post-sale restrictions on use or resale by authorized purchasers . . .

I also thought this exchange between Justice Breyer and Carter Phillips was the heart of why Justice Breyer will either write the majority opinion or a strongly worded dissent!

> JUSTICE BREYER: So what I do I go to the shop and I buy this, this mechanism with the pedals on it, and then I insert it in my bicycle. Now, actually I need help in doing that, but I do it. Okay. Now I start pedaling off, and now what is it for all these


things here that would stop that original inventor from catching
me and hauling me into court, and say, what you've done,
Breyer, is you've put my -- my mechanism here in this bicycle
and I happen to have a patent on the system. And now you start
talking to me about, well, the patent was exhausted on the
bicycle -
MR. PHILLIPS: Pedal.
JUSTICE BREYER: -- pedals, but not on the system.
MR. PHILLIPS: Right.
JUSTICE BREYER: And you agree that shouldn't happen.
MR. PHILLIPS: Right.
JUSTICE BREYER: But if I follow you and I write an opinion just
for you, what stops it from happening?
MR. PHILLIPS: Well, in that -- in that particular context, in the
absence of relatively clear notice, I think it would be quite
reasonable to potentially find that there was an implied license
to use it under those circumstances.
JUSTICE BREYER: Then why isn't it in your case?
JUSTICE BREYER: Why doesn't it mean that? Why isn't it in your
case equally?
MR. PHILLIPS: Because the courts below specifically analyzed
whether there was -- JUSTICE BREYER: You mean that they just
got it all wrong? You mean it should be that they got it wrong?
MR. PHILLIPS: No, no. They got it right because there was very
specific and explicit notice provided to the purchaser at the time
of the purchase that, while this clearly gives you the right to use
this particular product, what it doesn't give you the right
JUSTICE BREYER: Oh, so if I go in the bicycle shop, I go in the
bicycle shop and I buy the pedals and then they give me, you
know, one of these pieces of paper that has all of the 42,000
words on it and there in these 42,000 words it says, and now you
are put on notice that once you put it in your bicycle and you
pedal away, they're going to get you and you're going to be
hauled into Patent Court, then -- then that's okay?
MR. PHILLIPS: Well, Justice Breyer, we can quarrel about sort of
the nature of the notice and what notice is adequate to do that,
but the basic point here, which I think is indisputable, is that,
one, the notice here is quite clear. It's one page. It's very
specific. These are very sophisticated parties and they
understood that they were not obtaining an implied license by
purchasing the chips rather than going out and purchasing the
systems.
JUSTICE SOUTER: Okay. But assuming a simple notice, the
answer to his bicycle hypo is yes, they can chase me down the
road.
MR. PHILLIPS: Oh, to be sure.

I just cannot imagine this court -- the court that issued *KSR* --

accepting a situation where bicycle manufacturers can chase bicycle users down the road. Again, maybe I'm wrong. Maybe they'll just count on the courts to invalidate "system" patents strongly based on "component" patents.

Later, Justice Breyer was back on his bicycle kick...

JUSTICE BREYER: Then explain -- now this you might know because it's just following up on what Justice Souter said better than I did. I think from these briefs I've gotten the impression that at least some people think that where you invent a component, say, like the bicycle pedals, and it really has only one use, which is to go into a bicycle, it's the easiest thing in the world to get a patent not just on that component but to also get a patent on the system, which is called handlebars, body, and pedals.
And since that's just a drafting question, all that we would do by finding in your favor is to destroy the exhaustion doctrine, because all that would happen, if it hasn't happened already, is these brilliant patent lawyers, and they don't even -- they can be great patent lawyers, not just fine lawyers, and just draft it the way I said and that's the end of the exhaustion doctrine. And that's why it is preferable to say it is exhausted. What is exhausted? One, the patent on this component and, two, the patent on any system involving this component where that system is the only reasonable use of the component, rather than using the terminology "implied license."
Now, I think that's an argument that's being made in some of these briefs, and if so I'd like to you reply.
MR. PHILLIPS: Well, I think that clearly understates the role of the PTO in granting a separate patent. I mean, this is not -- these are not things you pick up at the corner drugstore. You have to justify them. And if you look at Section 282, "a patent shall be presumed valid," each claim shall be presumed valid independently of the validity of other claims. And there's an independence that's embedded in this entire scheme. If it's true that the PTO has in fact granted patent rights on something that's fundamentally not different from the other -- from some other patent, the solution to that is a validity challenge. And candidly, I think that's exactly what all of those arguments are
CHIEF JUSTICE ROBERTS: Well, then -
MR. PHILLIPS: -- is patent validity challenges.
CHIEF JUSTICE ROBERTS: That argument didn't prevail last year in the KSR case, right? I mean, we're -- we've had experience with the Patent Office where it tends to grant patents a lot more liberally than we would enforce under the patent law.
MR. PHILLIPS: Right, but all -- I'm not --I'm not particularly

criticizing the PTO. What I'm saying is that the statutory scheme presumes that there is a separateness when a patent is issued and, therefore -- and which is why -- again, the first -- there's no reason to go to an expansion of the first-sale doctrine in order to deal with the kinds of problems you have here because in general -- in general you can deal with it as a matter of implied license, but that issue has been resolved adverse to the other side in this case, and there's no reason to sort of fill in that void.

Finally, Chief Justice Roberts identified what is troubling him. I thought Carter Phillips' reply was pretty good:

CHIEF JUSTICE ROBERTS: And the way you achieve that result is to condition the sale. What you're trying to do is expand what you get under a condition to what you get under a notice. And the reason that troubles me is because if you had imposed a condition on the sale, Intel wouldn't have paid you as much for it. But you say, all right, we'll take the money because -- additional money because there's no condition, but we want to achieve the same result because of the notice.
MR. PHILLIPS: I mean there can't -- there's no serious basis for doubting what Intel knew precisely what it was getting in this. It was getting peace on both sides of the aisle in terms of litigation, and it knew that there were separate patents here and that when it sold the chips it would certainly be entitled to assume that there would be exhaustion. That's the provision you read. But when it sells the chips, it didn't know and it specifically gave notice that it recognized that that doesn't remotely say what the right answer is with respect to the systems and with respect to the methods. And that to me, Mr. Chief Justice, is the fundamental distinction.

Here are some links to news stories about the oral argument in *Quanta v. LG*. I'll update these with additional links as they come in.

Justices Skeptical of Patent-Holders' Claim (law.com, subscription required?)
U.S. Patent Case Likely to Redefine Royalties (International Herald Tribune, quoting Bob Krupka of Kirkland & Ellis)
U.S. High Court Uncomfortable with LG Position in Patent Case (CNNMoney)
Court May Limit Patent Owners' Rights (AP)
Quanta v. LG: Will the Supreme Court Clarify the Exhaustion Doctrine? (Patently-O, guest post by Charley Macedo)

Note that all of the above links tend to predict that the Supreme

Court will overturn the Federal Circuit. Now, for a contrary view, we have:

Patent Exhaustion: Supreme Court Fatigue? (e-Commerce News -- the author concludes that the entire patent bar "hopes that the Supreme Court does not overrule the reasonable approach taken by the Federal Circuit." You mean, other than all those members of the patent bar who submitted amicus briefs for Quanta? I guess if Hal Wegner says it, it must be true for the entire patent bar if you're a DC patent lawyer...).

Exhaustion Exasperated (Patent Hawk). Of course there's Patent Hawk on the other side, describing Quanta's attorney as a "spitter" and the deputy SG as a "lapdog." Ever the painter of words, is Patent Hawk. I may not agree with his point of view, but it's refreshing to see the irreverance.

Posted by Troll Tracker at 5:37 PM    0 comments
Labels: patent exhaustion, Supreme Court

## Patent Exhaustion Takes Center Stage at SCOTUS

I'm pushing the survey results back until Friday because (1) I'm out of the office this week, (2) I haven't figured out how to share my results yet, and (3) I had forgotten that today is the Supreme Court oral argument in Quanta v. LG. I previously posted about the case here and here, but for the really best summary, I have two words for you: SCOTUS Wiki!!! Seriously, today is the first I have ever checked out this really cool website.

See also this article from today's Financial Times, which calls LG's position "absurd," and adds

chips are only useful if combined with other components to make a computer. But in the true spirit of global profit- maximisation, LG wants the people that make computers - and not just people that make chips - to pay for its technology. The Supreme Court must decide whether LG's patent rights are "exhausted" when it licenses the technology to Intel, or whether it can continue to extract patent royalties all the way up the manufacturing chain.

Hat tips to Howard Bashman for pointing out the FT article and to SCOTUSBlog for directing me to the wiki. For more information, see this guest post on Philip Brooks' Patent Infringement Updates blog, by a couple of attorneys from Amster Rothstein.

While I won't be able to follow the Supreme Court argument in real time, I'll post some observations on it tonight, time permitting.

Posted by Troll Tracker at 5:14 AM    0 comments
Labels: patent exhaustion, Supreme Court

TUESDAY, JANUARY 15, 2008

## Is the United States Navy the Latest Patent Troll?

Network Signatures, LLC of Rancho Santa Margarita, California, is the
exclusive licensee of U.S. Patent 5,511,122, a patent which is owned
by the U.S. Navy. This patent relates to secure communication and
authentication methods involving the use of public and private keys.
Thanks to the plaintiff filing their agreement with the Navy publicly,
we learn that the Navy gets 30% of any litigation proceeds.

Well, Network Signatures has now sued Bank of America, Wachovia,
Wells Fargo, and Washington Mutual, all in the Central District of
California (Orange County), hoping to start monetizing the Navy's
patent. The U.S. Navy is not practicing this invention, but their
exclusive licensee told the Navy that it was. Is that so? Check out
their website and decide for yourself. One could argue it is practicing
something - using a cell phone to authenticate so you don't have to
carry around a VPN password-generating device. But that's not what
Network Signatures is suing over, if you read the complaint carefully.

While I am not making this conclusion, there is certainly room to
argue that in this case, the United States Navy is authorizing the filing
of some very patent troll-like lawsuits. At the very least, the Navy has
authorized patent infringement lawsuits against the financial services
industry, and stands to make money off of those suits. Unbelievable.

Posted by Troll Tracker at 9:15 AM    2 comments
Labels: Network Signatures, US Navy

MONDAY, JANUARY 14, 2008

## New York Times Article Sets the Stage for Upcoming Patent Reform Debate Renewal

The New York Times had an interesting feature on the soon-to-be-
renewed fight in Washington over patent reform. The reporter, John
Markoff, highlighted that the big corporations were for patent reform,
and that certain individual inventors are against it, and summarized
some of the reasons given for the positions of both sides (e.g., huge
NTP-RIM damages award out of proportion to the inventiveness and
validity of the NTP patents in one corner, the chance that patent
reform will change the incentive for inventors in the other).
Unfortunately, the article seemed to miss the third wheel here: the
biotech industry's opposition.

The individual inventors featured in the article were Dean Kamen and
Steve Perlman. There is no doubt that Kamen and Perlman are
not "patent trolls," despite that the article seems to improperly lump
them with the trolls. There are extensive quotes from Perlman. I have
a few problems with Perlman's conclusions about how the proposed
patent reform will impact inventors like him.

First, Perlman claims that patent reform is unnecessary in light of two
recent Supreme Court cases: *eBay v. MercExchange* and *KSR v.
Teleflex*. This makes little sense. Sure, the threat of injunction has
been greatly reduced for trolls. But that won't stop the Acacias and
Global Patent Holdings of the world from suing massive amounts of
defendants. Further, many patent trolls are simply
conducting "research" to take advantage of the "CSIRO loophole" to
eBay. In addition, *KSR* is of little help in jurisdictions that rarely if
ever grant summary judgments. Patent holders will still be able to sue
on clearly invalid patents, get no stay pending reexamination, and put
tremendous pressure on defendants to settle or face massive verdicts.

The proposed patent reform addresses these problems. In the words
of Mark Lemley, quoted in the article, "I have to say I'm frankly
astonished that apportionment has been this controversial. I can't
think of a straight-faced argument that you as a patent owner are
entitled to more than your invention has contributed to a product."

Perlman also is concerned because in the computer industry,
innovation reduces cost. According to Perlman, under patent reform,
if you reduce the cost of your device, then your apportionment
becomes less and less. Huh? I sure hope he was misquoted there (the
problems with newspaper interviews - I'm sure there's a 1,000-word
explanation that makes his point better). But if you invent a
tremendous improvement in computers, that drives the market, the
current patent reform bill will allow you to get the entire market
value. And if you just invent a tweak that's very useful, you can still
use experts to prove how much your improvement is worth as a
percent of the overall invention. What's controversial about that?

Finally, Perlman opines that under patent reform, "Microsoft will
clone a crummy version of one of [his] inventions, and [he]'ll be
bowled over." Yes, and if they do that, then under patent reform, you
still will be able to get an injunction and enhanced damages for
Microsoft's willful infringement.

To be sure, there's more to the current patent reform bill than
damages apportionment and venue reform. Some of it I support, some
of it, well, I could live without it (first-to-file!). And I'm sure there
will be many changes ahead. But I sure hope that the individual

inventor community does better than "damages apportionment will lead to the end of innovation as we know it" and "let the Supreme Court fix it, and don't touch the laws, Congress."

Update: The following blogs are also covering the NYT story:
Immodest Proposals has a blog titled "This Congress Might Get Something Right?!?"
Leveraging Ideas has a story titled "Patent Reform: Boring But Important"
ZDNet has a Government Blog titled "Patent Reform: Stopping the Insanity or Inventor Ripoff?"
TechCrunch has a blog titled "Patent Reform Act Focuses on the Wrong Problem" (the real problem is poor patent quality, says the blog.

Posted by Troll Tracker at 12:01 AM    9 comments
Labels: New York Times, patent reform

FRIDAY, JANUARY 11, 2008

## Troll Call and Other Statistics for December 2007

We reached the end of 2007. All the other blogs are reporting an overall decrease in IP litigation, a cutback from 2006, or are reporting the slightest of increases in patent filings from 2006 to 2007. That's simply not true. By the real count -- the number of defendants sued for patent infringement -- 2007 was a record year. In fact, here's my headline: "2007 shows a 30% increase in patent litigation over 2006, fueled by a 40% increase in the Eastern District of Texas." And certainly from the number of patent cases brought by non-practicing entities and so-called patent trolls, it was a year that saw a tremendous increase in both the quantity and diversity of these entities.

Before we go on, let's explore statistics for a minute. Say in 2006 there are 25 lawsuits, each against 1 defendant. Then in 2007, there are 20 lawsuits, each against 5 defendants. 25 defendants sued 1 year, 100 the next. The patentees could have filed 100 lawsuits, and in effect, did do so. Why isn't that a 4-fold increase? Yet people look just at the number of cases filed, which gets them to declare a 20% decrease.

This month, I'd like to start with the 2007 year-end statistics. Here's what I have compiled:

As a disclaimer, these numbers are taken raw from PACER/ECF without my usual investigation to make sure they aren't a transfer/duplicate/etc. But since I'm comparing several years, there


needs to be an apples-to-apples comparison, and I'm not about to go
look at every case in 2006!One other disclaimer: I didn't actually
count every defendant in every case. I took the top jurisdictions,
counted them, and extrapolated. The ones I counted constituted over
two-thirds of the patent cases, so if my number of defendants is off,
it's not off by much. Plus, the same extrapolation method was used
for all three years I compare below.

With those disclaimers out of the way, this is what the data shows
when looking at the national patent infringement statistics:

- In 1990, there were 921 patent cases nationwide (1 in EDTX),
  and 1,596 defendants sued (1 in EDTX).
- In 2006, there were 2,822 patent cases nationwide (264 in
  EDTX), and 6,118 defendants sued (996 in EDTX).
- In 2007, there were 2,953 patent cases nationwide (364 in
  EDTX), and 8,045 defendants sued (1,402 in EDTX).
- Comparing 2007 to 2006, nationwide there was a 4.6% increase
  in patent cases (I have read 6% elsewhere), but there was a
  31.5% increase in the number of defendants sued for patent
  infringement.
- Comparing 2007 to 2006 just for the Eastern District of Texas,
  there was a 37.9% increase in the number of patent cases, and
  there was a 40.8% increase in the number of defendants sued
  for patent infringement.
- Comparing 2007 to 1990, nationwide there has been over a
  tripling in the number of patent cases (+221%), and a
  quintupling in the number of defendants sued for patent
  infringement (+404%).
- In 1990, the Eastern District of Texas accounted for roughly
  1/100 of all national patent cases, and less than 1/100 of all
  defendants sued.
- By 2007, those EDTX numbers had grown to being roughly 1/8
  of all national patent cases and 1/5 of all defendants sued.

I say pshaw to the notion that patent infringement increased only 4-
6% in 2007. Look at the defendants sued: there was over a 30%
increase this past year. That's the number that matters. Now where
will 2008 fall?

Let's next turn to the numbers from December for the 7 districts I
have been highlighting this year.

December statistics

ED Texas: 21 patent cases, 82 defendants sued (11 troll cases)
CD California: 21 patent cases, 82 defendants sued (6 troll cases)

D New Jersey: 11 patent cases, 20 defendants sued (0 troll cases)
D Delaware: 19 patent cases, 40 defendants sued (2 troll cases)
ND Illinois: 12 patent cases, 30 defendants sued (3 troll cases)
ND California: 4 patent cases, 9 defendants sued (0 troll cases)
SD New York: 7 patent cases, 11 defendants sued (1 troll cases)

December was the first month this year that another district rivaled
the Eastern District of Texas in both cases filed and defendants sued.

Non-EDTX Troll/NPE Cases

There were some interesting non-practicing entity /troll cases filed
outside of the Eastern District of Texas in December. Some were very
interesting. For the first month since I started the blog, I have
more "NPE" cases outside of EDTX than I do inside. A preview of life
after venue reform, perhaps? Here are the highlights:

1) Document Generation Corp. v. AllMeds, and 18 other defendants
(SDIL, December 4). I featured this case here.

2) Action Technologies, LLC v. Avid Technology, Inc. (SDNY, December
4). Action is sub of General Patent Corp., according to the statement
it filed with the court in New York. I profiled GPC here.

3) Global Patent Holdings, LLC v. ADT, and 6 other defendants (SDFL,
December 5). I featured this case here.

4) Innovative Patented Technologies, LLC v. Nokia & Samsung (SDFL,
December 5). Scott Harris, J-Beau, and Niro. Blogged it here.

5-8) Network Signatures, Inc. v. Bank of America Corp. (CDCA,
December 10).
Network Signatures, Inc. v. Wachovia Corp. (CDCA, December 10).
Network Signatures, Inc. v. Wells Fargo & Co. (CDCA, December 10).
Network Signatures, Inc. v. Washington Mutual Bank (CDCA, December
10). You might think by looking at Network Signatures' website that I
have incorrectly included these four cases as "non-practicing entity"
cases. But there's more here than meets the eye. I'll elaborate more
in a special spotlight on these cases next Tuesday. I'll add a forward
link here once I create that post.

9) Guardian Media Technologies, Ltd. v. Daewoo Electronics Corp.
(CDCA, December 18). Guardian Media is a Texas limited partnership
that bought two patents in 2003, and has sued a bunch of companies.
It is in patent litigation all over, and the patent-in-suit is in ex parte
reexamination. This lawsuit was filed two months after the PTO issued
an 81-page office action rejecting the claims of the patent-in-suit as
invalid.

10) PSN Illinois, LLC v. Abcam, Inc., Abgent, Inc., Affinity Bioreagents, Inc., Discoverx Corp., Exalpha Biologicals, Inc., Genetex, Inc., LifeSpan Biosciences, Inc., Multispan, Inc., and Novus Biologicals, Inc. (NDIL, December 21). An old troll friend returns! PSN Illinois is a shell. I'm not sure who owns it, but Chicago-area attorney Michael Mazza represented it in 3 prior patent litigations. 2 of the 3 prior PSN Illinois litigations were over pet litter patents, and the other one over porcelain veneer restoration materials. This new case asserts two patents titled "Molecular Cloning and Expression of G-Protein Coupled Receptors." It's safe to say that if you have a single entity asserting pet litter, porcelain veneer, and molecular cloning patent, it's a troll. And in this case, a BIOTROLL. The inventor of the two patents-in-suit is now a University of Cincinnati professor. He evidently sold his patents back in September 2007.

11) Fifth Market Inc. v. CME Group Inc. (Del, December 21). 5th Market is a failed startup. I found this article from 1999 interviewing some of the inventors of the now-asserted patent. The inventors generally list 5th Market in their LinkedIn profiles as being a past job. But the first-named inventor, Scott Nieboer, still seems to run this website from his office in Nashville, where he also runs a few other businesses - investment businesses. Here is the cached "management" page from the old Fifth Market website. My conclusion? A once-company, now a shell being monetized.

12) Wall Corporation v. BondDesk Group LLC (Del., December 26). I'm really not sure about this one. The first-named inventor, Webster Hughes of Charlotte, NC, was in upper management at X-Bond, the company that first owned the patent-in-suit. Then in September 2004 the patent was assigned to Wall Corp of Greenwich, CT, a company I can find nothing about. Now Wall Corp lists its address as the same as the law firm that filed the suit - Shore Chan Bragalone, of Dallas. Shore Chan is a firm I have featured as representing Acacia. This one has a general smell of a troll case about it, but I can't say for sure. Since there's nothing about Wall anywhere I can find, I'm putting it at least in the NPE camp for now.

13) Zappos.com v. Global Patent Holdings (DNV, December 26) (DJ). See here.

14) Meirav Kesher Hadadi, Ltd. v. Zipcar Inc., Mobility Inc. d/b/a Flexcar, and I-Go (NDIL, December 28). The plaintiff is an Israeli shell corporation set up by the Israeli inventor of the car rental patent. One of the defendants, I-Go, is Chicago's only non-profit car sharing service. It actually seems like a pretty cool idea -- the defendants' idea, that is, not the plaintiff's patent, the claims of which seem stretched to be able to capture the accused "product."

15) Innovative Patented Technology, LLC v. Motorola (NDIL, December 31). I profiled this case here.

16) Harvard Label v. Advanced Card Technologies LLC (CDCA, December 31) (DJ). According to ACT's website, it is a subsidiary of General Patent Corp.

Cumulative Statistics for 2007

Here are the cumulative statistics for all of 2007, comparing the various "big 7" districts.

ED Texas: 364 patent cases, 1,402 defendants sued (151 troll cases)
CD California: 272 patent cases, 729 defendants sued (23 troll cases)
D New Jersey: 187 patent cases, 349 defendants sued (13 troll cases)
D Delaware: 147 patent cases, 350 defendants sued (18 troll cases)
ND Illinois: 137 patent cases, 261 defendants sued (26 troll cases)
ND California: 131 patent cases, 249 defendants sued (19 troll cases)
SD New York: 102 patent cases, 255 defendants sued (14 troll cases)

That's one patent case filed a day in the Eastern District of Texas. 28 defendants sued a week! Twice as many as any other district. Over 150 troll cases (41%).

Here is my last "troll call" for 2007 - the December cases. I'm planning a little bit of a change for 2008, by the way. While EDTX still drives the troll cases, I no longer plan to track EDTX and non-EDTX troll cases separately. Starting with January's troll call, everything will be merged. Hopefully that will make this sort of post more readable.

Troll Call for December 2007 in EDTX

141) Klausner Technologies v. Apple, AT&T, AT&T Mobility, CSC Holdings, Comcast, eBay, GotVoice, Simulscribe (Marshall, December 3). Dovel & Luner filed this lawsuit, which I blogged about here.

142) epicRealm Licensing, LLC v. The Macerich Co. (Texarkana, December 3). epicRealm made my original blog post, at #6, from way back in January. This case is one that Judge Folsom ordered to be bifurcated from the original one.

143) Typhoon Touch Technologies, Inc. v. Motion Computing, Inc., Dell, Inc., Nova Mobility Systems (Tyler, December 5). This looks like a once-company that has gone over to the dark side.

144) Tessera, Inc. v. A-DATA Technology Co., A-DATA Technology USA, Acer, Inc., Acer America, Centon Electronics, Elipida Memory, Elipida

Memory USA, International Products Sourcing Group, Kingston
Technology Co., Nanya Technology Corp., Nanya Technology USA,
Peripheral Devices & Products Systems, Powerchip Semiconductor
Corp., ProMOS Technologies, Inc., Ramaxel Technology Ltd., SMART
Modular Technologies, Inc., TwinMOS Technologies Inc., TwinMOS
Technologies USA (Marshall, December 7). Some people consider
Tessera to be a research institution. Some people consider it to be a
patent troll. It's hard to decide, but if you sue 18 companies in one
lawsuit in Marshall, Texas, you inch towards that troll line.

145) Coronary Stent Visualization Corp. v. Philips Electronics North
America Corp. (Marshall, December 17). Acacia, as I described here.

146) Trover Group, Inc. v. Regions Bank (Marshall, December 18).
According to this article, Trover Group was previously known as Dozier
Financial Corp. Indeed, Trover is run by Charles Dozier, one of the
inventors of the patents-in-suit. This appears to be an inventor's shell.

147) Beneficial Innovations v. AOL, Google, IGN Entertainment, Morris
Communications Co., Dallas Morning News, Tribune Interactive,
Yahoo! and YouTube (Marshall, December 20). I discussed Beneficial
Innovations and inventor Sheldon F. Goldberg last week.

148) Parallel Networks, LLC v. Netflix, ATA Airlines, E*Trade, John
Wiley & Sons, SkyMall, and The Finish Line (Marshall, December 28).
The funny thing about this case, is that it asserts U.S. Patents
5,894,554 and 6,415,335 -- the same two patents asserted by
epicRealm in its prior litigations. Same attorneys, same principals
seem to be involved. Perhaps Parallel Networks is just a new name for
epicRealm.

149) Media Technologies Licensing, LLC v. Tristar Productions, Ace
Authentic, Bench Warmer Int'l, Press Pass, Razor Entertainment
Group, Razor Entertainment LLC, SA-GE Collectibles, and Stellar
Collectibles (Marshall, December 28). Media Technologies Licensing is
a California LLC (in Beverly Hills) formed by the inventor of the
patents-in-suit, Adrian Gluck. Those patents are 5,803,501 and
6,142,532. The patents are titled "Memorabilia Card" and had been
previously asserted against The Upper Deck Co. in the Central District
of California. In fact, Media Technologies Licensing filed another case
just last week in CDCA. So it's strange seeing them in Texas, but there
they are.

150) American Microsystems Ltd. v. WIAV Solutions, LLC (DJ)
(Sherman, December 28). For more on this new case involving new
troll WIAV, see here.

151) Mondis Technology Ltd. v. LG Electronics, LG Electronics USA,


Hon Hai Precision, and Innolux (Marshall, December 31). And you can go to that same post for information on Mondis, too.

TT

Posted by Troll Tracker at 12:08 AM    3 comments
Labels: epicRealm, General Patent Corp, Guardian Media, Media Technologies Licensing, Parallel Networks, patent reform, PSN Illinois, statistics, Tessera, Typhoon Touch, venue

**THURSDAY, JANUARY 10, 2008**

## Global Patent Holdings Sues Boca Raton Resort & Club

Check out all of those JPGs on the website at the Boca Raton Resort & Club. I guess somebody had a bad stay there or couldn't get a good tee time, for on Tuesday 1/8, Global Patent Holdings asserted its JPEG-on-a-website patent in SDFL against the Club. If you don't know what I'm talking about, click on the Global Patent Holdings label below. Niro Scavone, of course.

Posted by Troll Tracker at 11:17 AM    0 comments
Labels: Global Patent Holdings, Niro Scavone

**WEDNESDAY, JANUARY 9, 2008**

## Wednesday Miscellany, 1/9/08

A bunch of tidbits today, mainly thanks to reader tips. Before I get to them, if you haven't done so already, you have two days to take my Patent Troll Tracker Blog Survey before it closes. I'll provide the results next week.

1) My post last Friday on Mondis prompted Inpro to take Dechert off of its "extended team" on its website. But thanks to a reader tip, you can still see Dechert featured as part of the Inpro team in this Inpro document.

2) A reader (who I am keeping anonymous for now) compiled for me a list of recent patent litigations where the inventor(s) of the patent(s)-in-suit were patent attorneys. I know there are more than are on the list, but these are mainly the cases I have featured on this blog. If anyone knows of any other patent-attorney-as-inventor cases, let me know. Meanwhile, see the current list by clicking on this link. Note this list doesn't include the case brought yesterday in Texas (see #8 below). **Update, 1/10/08:** now it does, plus it includes another case sent my way.

3) Not many interesting cases from last Wednesday-Friday, but one did catch my eye. After Burst.com got a reported $50M settlement from Microsoft, and a reported $10M from Apple, RealNetworks decided to file its own declaratory judgment case against Burst, in the Northern District of California. An eager Burst.com investor has evidently been posting evidence of several companies' infringement on YouTube (see here), including RealNetworks. Unfortunately, the complaint is not available online yet.

4) I don't usually post about Federal Circuit decisions, but I have to take issue with the CAFC's 2-1 opinion in *SRI Int'l, Inc. v. Internet Security Sys., Inc.* (January 8, 2008). The majority (Rader, Mayer) acknowledged that the prior art Live Traffic paper invalidated the four patents-in-suit, if publicly available, but reversed a summary judgment of invalidity because it was doubtful that putting a paper on an Internet FTP Server constituted public availability. They likened it to the thesis, sitting in the library, without an index so people could find it. Anyone who has ever used an FTP server knows that this conclusion is just not true. And Judge Moore, in dissent, picked up on the exact issue in footnote 1 and surrounding text:

> The majority concludes without any evidence or support in the record that the FTP server "did not contain an index or catalog or other tools for customary and meaningful research." The majority bases this conclusion on a number of "facts" not supported by the record or even argued by the parties. First, the majority implies that a sophisticated computer security researcher would need a "README" file to find a file in an FTP server. There is no support in the record for this suggestion and the parties never argued it. The majority also states, without record support, that "it is doubtful that anyone outside the review committee looking for papers submitted to the Internet Society's Symposium would search a subfolder of an SRI server" and "it is also doubtful that anyone outside the review committee would have been aware of the paper or looked for it at all in early August 1997." Neither of these "doubts" are supported by any record evidence. Moreover, the relevant inquiry for public accessibility is not whether a reference is available to people looking specifically for that reference, but rather whether the reference is publicly available to someone looking for information relevant to the subject matter. Given that the EMERALD subdirectory was publicized to the cyber security community as a source of information related to projects on intrusion detection, this paper, like everything else in the EMERALD subdirectory, was publicly accessible to anyone interested in material on intrusion detection.

Right on, Judge Moore! This is actually an important issue: there


haven't been many published cases if any at all that attempt to meaningfully extrapolate the CAFC's library indexing law to specific areas of the Internet. This is important enough that I hope the whole court considers the issue *en banc*. But somehow I doubt it.

5) Acacia has struck again. Its subsidiary, Credit Card Fraud Control Corporation, sued six companies (Full Spectrum Telecommunications, National A-1 Advertising, Network Telephone Services, SPG Solutions, Utel Networks, and Teligence), on U.S. Patent No. 6,282,276 ("Method of Billing a Value-Added Call"). Acacia alleges it is the exclusive licensee of the '276 patent. The patent itself seems to be owned by Fraud Control Systems.com, a Boca Raton, Florida company owned by the inventor, David Felger. The fascinating thing about this is that if you go to Fraud Control Systems' website (and you should do it before they change it, which they always do to TrollTracker), it says for more information about the "patented fraud-control solutions," contact Rick S. Nathan of Pricewaterhouse Coopers. Is PWC somehow involved in this Acacia litigation? Somehow, I doubt it.

6) Speaking of Acacia, I profiled here a 23-defendant case Acacia subsidiary Autotext filed in Cleveland. I thought the case was frivolous and should be dismissed immediately. I guess Acacia listened, for yesterday it did dismiss the entire litigation. No reasons given, of course.

7) Further speaking of Acacia, it has moved to transfer its own case! Really. Acacia subsidiary Refined Recommendation Corporation sued Netflix in New Jersey. Netflix moved to transfer the case to the Northern District of California, where it is headquartered, and where significant prior art is located (not to mention it's close to the Portland, Oregan patent attorney inventor, Gary Odom a/k/a Patent Hawk - see here for my prior post explaining that one). Take that, said Acacia. Not only will we oppose your motion, but we'll cross-move to transfer the case - to the Central District of California. The reasons? There's infringement there. But there was alleged infringement in New Jersey, right? What makes CDCA *more* convenient than NDCA? According to Acacia, it gets cases done faster -- 7.2 months to 7.4 months. Not kidding. Acacia wants the court to transfer the case to CDCA to save 6 days. Their cross-motion seems like a bit of a waste of the court's time. If you're going to send the case 3,000 miles across the country, why not send it to where the defendant and all the documents are located?

8) And speaking of meaningless shells, venue ridiculousness, and patent-attorney-trolls, we turn to Traffic Information LLC, a company formed by yet other Portland, Oregon patent attorneys Bruce DeKock and Kevin Russell to assert U.S. Patent No. 6,785,606. "Traffic" made my September Troll Call at #103 when it/they sued Honda. Yesterday



they/it struck again, suing Alpine Electronics (CDCA), Magellan Navigation (NDCA), and Sanyo North America (SDCA) in Marshall, Texas. Parker Bunt & Ainsworth leads the 3-Texas-firm contingent representing Traffic Information/DeKock/Russell. 42% of ALL complaints filed in Marshall so far in 2008 have been patent infringement complaints (3 out of 7), and 100% of the EDTX patent cases this year have been filed in Marshall. The statistic is meaningless now due to the early date, but I'll be checking back with it periodically throughout the year.

Back on Friday with December's Troll Call.

Posted by Troll Tracker at 9:17 AM    0 comments
Labels: Acacia, attorney-trolls, Autotext, Burst.com, Credit Card Fraud Control Corp., Dechert, Federal Circuit, Inpro, Judge Moore, Mondis, RealNetworks, Refined Recommendation, Traffic Information, venue

TUESDAY, JANUARY 8, 2008

## Number of Utility Patent Claims Issued By USPTO Per Year Has Quintupled in 30 Years

Dennis Crouch had an interesting post from December 23 on rising claim counts. Dennis provides a graph showing that the number of average total claims in a U.S. Patent rose from about 10 in 1976, to 15 in 1995, to nearly 20 in 2004.

Looking at 1976 through 2006, we can go here to find the number of utility patents issued per year, and multiply it by Dennis's number, to get roughly the following graph, of the number of patent claims issued per year, over a 30-year period (imagine that there are actually *readable* numbers along the x-axis representing years from 1976 to 2006 - it's amazing I was even able to figure out how to do this graph - can't figure out how to get the years on it so anyone can read them, but you get the picture).



## Number of Utility Patent Claims Issued by USPTO per Year, 1976-2006

| Year | Patents Issued | Claims/Patent | Claims Issued |
|------|----------------|---------------|---------------|
| 1976 | 70,226 | 10.1 | 709,282 |
| 1977 | 65,269 | 10.2 | 665,744 |
| 1978 | 66,102 | 10.7 | 707,291 |
| 1979 | 48,854 | 11.7 | 571,572 |
| 1980 | 61,819 | 11.3 | 698,555 |
| 1981 | 65,771 | 12.4 | 815,560 |
| 1982 | 57,888 | 11.6 | 671,501 |
| 1983 | 56,860 | 11.7 | 665,262 |
| 1984 | 67,200 | 11.4 | 766,080 |
| 1985 | 71,661 | 11.0 | 788,271 |
| 1986 | 70,860 | 11.8 | 836,148 |
| 1987 | 82,952 | 11.9 | 987,129 |
| 1988 | 77,924 | 12.6 | 981,842 |
| 1989 | 95,537 | 13.2 | 1,261,088 |
| 1990 | 90,365 | 12.9 | 1,165,709 |
| 1991 | 96,511 | 12.5 | 1,206,388 |
| 1992 | 97,444 | 13.0 | 1,266,772 |
| 1993 | 98,342 | 14.8 | 1,455,462 |

| 1994 | 101,676 | 14.6 | 1,484,470 |
|------|---------|------|-----------|
| 1995 | 101,419 | 16.1 | 1,632,846 |
| 1996 | 109,645 | 17.2 | 1,885,894 |
| 1997 | 111,984 | 17.1 | 1,914,926 |
| 1998 | 147,518 | 16.7 | 2,463,551 |
| 1999 | 153,485 | 17.9 | 2,747,381 |
| 2000 | 157,494 | 18.4 | 2,897,890 |
| 2001 | 166,036 | 18.9 | 3,138,080 |
| 2002 | 167,331 | 19.2 | 3,212,755 |
| 2003 | 169,023 | 19.6 | 3,312,851 |
| 2004 | 164,291 | 20.2 | 3,318,678 |
| 2005 | 143,806 | 19.5 | 2,804,217 |
| 2006 | 173,771 | 19.5 | 3,388,535 |

Note that the number of claims issued per year has almost quintupled in those 30 years, from under 700,000 claims per year to over 3 million for the last several years. That's amazing. And people wonder why the PTO is passing rules attempting to limit continuations and the number of claims per application.

Posted by Troll Tracker at 12:02 AM    0 comments
Labels: examiner overload, patent reform, statistics

MONDAY, JANUARY 7, 2008

## Rembrandt's Interesting Injunction Strategy (Possibly)

There is one patent troll case (that I know of) going to trial this month in the Eastern District of Texas: Rembrandt v. Ciba Vision. Rembrandt may be up to something interesting.

Besides Rembrandt's foray into high tech patents, Rembrandt also bought contact lens patents, and put them in a shell named Rembrandt Vision Technologies, L.P. Rembrandt sued Bausch & Lomb and Ciba Vision in Marshall, Texas back in October 2005. Eventually, Bausch & Lomb settled, and Ciba decided to take it to trial. The parties agreed to have Magistrate Everingham preside over the case (or, as several friends in Texas call him, "Magistrate Chad"). Jury selection was supposed to have been January 3, with trial beginning January 15 (update: I am informed jury selection is January 30, with opening statements to begin immediately thereafter).

In the pretrial order, Ciba asserted that Rembrandt settled with

Bausch & Lomb, whereby in exchange for money, not only did
Rembrandt dismiss B&L (and maybe give it a license), it also gave its
injunction rights to B&L. According to Ciba, Rembrandt did this in an
attempt to skirt *eBay*:

> CIBA wishes to bring to the Court's attention the serious issues
> that arise from the Master Agreement (the "Settlement
> Agreement") settling the dispute between defendant Bausch &
> Lomb Inc. ("B&L") and Rembrandt Vision. In addition to
> dismissing all pending claims between B&L and Rembrandt
> Vision, the Settlement Agreement will effectively cause B&L to
> switch sides in this litigation - from being CIBA's co-defendant
> (and sharing privileged defense strategies with CIBA under a
> common interest agreement) to pursuing an injunction against
> CIBA under the Chang patent. While the Settlement Agreement is
> lengthy and complex, in effect it purports to split the beneficial
> ownership of the patent such that Rembrandt Vision's parent
> companies keep rights to virtually all monies flowing from this
> action, but B&L obtains the right to seek an injunction against
> CIBA under the patent in the event that Rembrandt Vision
> prevails against CIBA at trial. This assignment of the right to seek
> an injunction is a transparent attempt to circumvent the
> guidance of the Supreme Court's eBay decision, in which a
> plurality of justices counseled against granting injunctions to
> non-practicing plaintiffs. *See eBay, Inc. v. MercExchange, LLC*,
> 126 S. Ct. 1837, 1842 (2006). Neither Rembrandt Vision nor its
> parent companies practice the invention of the Chang patent. By
> purporting to transfer the right to seek an injunction to B&L,
> Rembrandt Vision hopes to improve its chances of obtaining an
> injunction. CIBA believes there are serious problems with this
> arrangement in addition to those concerning injunctive relief
> that could affect the trial of this case and intends to raise these
> issues at the appropriate time, including, but not limited to, an
> opposition to any post-verdict motion by Rembrandt Vision for an
> injunction. CIBA expects that discovery on the circumstances
> underlying the Settlement Agreement and the timing of B&L's
> decision to switch sides in this litigation will be necessary. CIBA
> also anticipates that B&L's new alignment with Rembrandt
> Vision, given the confidential, strategic information governed by
> the Common Interest Agreement between CIBA and B&L, may
> give rise to separate issues regarding the conduct of counsel for
> Rembrandt Vision and B&L. CIBA may also take separate action
> against B&L and Rembrandt Vision for breaching the terms of the
> Common Interest Agreement between B&L and CIBA.

Of course, Rembrandt disagreed, stating that Ciba mischaracterized
the Rembrandt-B&L agreement and that Rembrandt would be happy
to explain at the court's convenience, but it did not flat-out deny it


wouldn't use the agreement to aid in its seeking an injunction. If true, and that's what Rembrandt is really trying to do, then it's a very interesting strategy. Side with one of the co-defendants and induce them to switch sides to improve their chance of an injunction. Fish & Richardson represents Rembrandt, along with a host of local counsel, including Parker Bunt & Ainsworth, Ireland Carroll & Kelley, Brown McCarroll, and Jones & Jones. Banner Witcoff appears to represent Ciba, along with Sidley Austin and Potter Minton, and perhaps others. Note's Ciba's veiled threat to go after Fish & Richardson. Just what Fish needs!

The other case that was going to go to trial in January was Mobile Micromedia Solutions LLC v. Nissan. Just last week, however, Judge Folsom granted a motion continuing the trial until May 2008, due to the "numerous pending motions for summary judgment, Daubert motions, voluminous motions *in limine*, and a plethora of exhibit issues and deposition designations," along with the unavailability of a key plaintiff's witness. Judge Clark's cases slated for January 2008 trial appear to have settled. I don't know of any Ward or Davis cases going to trial, so Rembrandt may have center stage this month in EDTX.

Posted by Troll Tracker at 12:06 AM   1 comments
Labels: Ciba, injunctions, Judge Everingham, Rembrandt

FRIDAY, JANUARY 4, 2008

## 4 Interesting New Cases From Last 2 Weeks of December

Well, what do we have for you today? How about the Rothschild family investing in a Eurotroll, and suing in Marshall, Texas? How about an ex-Fish & Richardson *associate* buying patents for millions of dollars (while an associate) and being D/J'd in Sherman, Texas after trying to shake down an EDTX company? How about a couple of lawsuits by a guy who, with related patents, has made the Electronic Frontier Foundations' 10 Most Wanted Invalid Patents? How about yet another Scott Harris/J-Beau/Ray Niro lawsuit? Yeah, you could read those other ABA-nominated patent blawgs, but I've got your *juicy* patent news right here!

WIAV Solutions: Choongsoo Park

Let's start off with the D/J case of American Microsystems Ltd. v. WIAV Solutions, filed in the Eastern District of Texas on December 28. Now why would anyone file a D/J case in the Eastern District? Well, in this case, perhaps it makes sense. The accused infringer is a company located smack dab in the middle of EDTX. It received letters from

WIAV Solutions, a company of unknown origin (so unknown that AML had to plead WIAV was not from Texas on "information and belief"). Actually, the letters came from Sidley Austin-San Francisco. Since AML couldn't figure out who is behind WIAV Solutions, I decided to dig around to see if I could figure it out. It wasn't too hard. WIAV asserted U.S. Patents 5,400,338 and 6,480,497 in its correspondence with AML. These patents, prosecuted by Townsend and Townsend and Crew in San Francisco, were originally assigned to Metricom of Los Gatos, CA. From there, they went to Ricochet Networks, which became part of Terabeam, of San Jose, CA. They show no further assignment.

But Google and the USPTO Assignment database shed more information. The USPTO Assignment database shows WIAV Solutions buying a boatload of patents from Skyworks Solutions. In the transaction, executed in September 2007, WIAV listed an address in Reston, Virginia (which appears to be a home address). If you search for "5400338 6480497 Terabeam," you get one result: a Terabeam SEC filing showing the sale of these patents. A couple more clicks, and you get this SEC filing -- the actual assignment agreement transferring patents from Terabeam to SPH America, a Virginia limited liability company, located at the same address as WIAV. All in all, SPH America bought 4 patents from Terabeam for $5M, including the two now-in-suit.

But who is behind Virginia LLCs SPH America and WIAV Solutions? According to Virginia corporate filings and Terabeam/Proxim SEC documents, it was Choongsoo Park, who, at the time of the purchases, was a lowly associate in the D.C. offices of Fish & Richardson. TrollTracker does not understand how an associate can afford to spend $5M on patents (more, actually, if you include the 88 patents bought from Skyworks). But apparently Park knew what he was doing - he has an advanced degree in Electrical Engineering.

Park is no longer on the F&R website (as of sometime between Halloween and now), so apparently he no longer works for F&R. Question is whether he's happy or not litigating his patents in Sherman, Texas against a company that actually employs people in the District. More on the case here. More on the technology behind the original Metricom/Ricochet system here. Metricom, the original technology developer, was a victim of the tech bubble bursting. The Ricochet technology is a good example of what others described to be exciting technology that generated a lot of buzz, but never got off the ground due to a bad business model.

It would be nice to hear that Park has left F&R to form his own company to commercialize the Ricochet technology, rather than, as American Metrosystems alleged, making money only "by suing alleged

infringers of [the] patents and negotiating license fees from its victims." Time will tell. You have to admit: it's a bit strange, a law firm associate spending multi-millions on patents that are then asserted in an attempt to gain licensing revenue. It's one thing to be Scott Harris, and invent your own patents. It's quite another to be, well, Acacia, or Erich Spangenberg. You have to wonder whether Park is fronting for someone else.

Mondis Technology Ltd.; Inpro Licensing SarL

IPEG had an interesting post about how Europe has generally escaped the patent troll problem. But Europeans have been rumored to be gobbling up US patents to sue in American courts. This case is a perfect example. On New Years' Eve, Mondis Technology Ltd. of London sued Korean manufacturer LG, and Taiwanese manufacturers Hon Hai and Innolux (both related to Foxconn), in Marshall, Texas (on 5 patents). Dechert-Philadelphia filed the complaint, with help from Otis Carroll.

Who is Mondis Technology? According to UK corporate documents, it is Inpro Limited. Inpro is a EuroTroll, apparently. Mondis was originally formed at 160 Queen Victoria St. in London -- home of Dechert's offices there. Then it was moved to 19 Perrin Lane in Hampstead, London. That is the same address as a company known as Inpro IP Services. Inpro IP Services and Inpro Limited appear to me to be related to Inpro Licensing, a Luxembourg company that bought the IP portfolio of once-company Elonex, of London. And Inpro's mission? To make money off of intellectual property. Other ties between Inpro-Luxembourg and Mondis? Inpro considers Dechert to be part of its extended team. The same Dechert lawyers who represented Inpro in patent litigation against RIM appear to be representing Mondis in this case. My conclusion: Mondis is an Inpro company.

Oh, and then there's this: click on "DDC Patents" on Inpro's "Current Projects" web page, and you get 3 out of the 5 patents in suit. So I guess that's more circumstantial evidence.

Another fascinating tidbit: RIT Capital Partners, a publicly traded company on the London Stock Exchange that is about 25% owned by the Rothschild family, owns more than 10% of Mondis. You know, related to the winemaking Rothschilds? Other directors of Mondis include David John Morrison, who owns Prospect Investment Management, a London private equity firm. This is a well-funded EuroTroll. What's it doing slumming in Texas?

I may have the answer: It looks like "Mondis"/Inpro bought the five patents in suit from Hitachi on October 30, 2007. I'm sure LG and Foxconn will send a big thank-you to Hitachi for that. Of course, LG

and Hitachi already have 4 patent litigations pending between them in the Eastern District. So could it be that Hitachi is hitting back at LG not just with a suit brought by itself, but with a troll lawsuit? I have no idea, but if true, it would be interesting....

Beneficial Innovations: Sheldon Goldberg

Beneficial Innovations is a Nevada company owned by patent inventor Sheldon F. Goldberg. He is suing companies on U.S. Patents 6,712,702 (Method and System for Playing Games on a [Computer] Network) and 6,183,366 (Network Gaming System). He was noted four years ago on Slashdot for threatening a bunch of companies that he owned the rights to games played on a computer network. Jason Schultz, a/k/a LawGeek, called the '366 patent his Silly Internet Patent #4 a ways back. Sheldon Goldberg made the EFF's "Most Wanted" poster for "Crimes Against the Public Domain, Willful Ignorance of Prior Art, and Egregious Displays of Obviousness." (oh, hello, Acacia!). According to Ted Frank's post on the wonderful blog, Overlawyered, Goldberg's other patents claimed computer solitaire, on-line game rankings, and pop-up advertising. Goldberg first sued a bunch of defendants in June 2007, and it hardly rated a mention here. But given this second suit and my additional research, this certainly falls under the patent troll category, in my opinion.

16 defendants have now been sued in Marshall: Blockdot, CareerBuilder, Cnet Networks, Digg, Ebaum's World, Jabez Networks, The New York Times, The Washington Post, The Weather Channel, and The Washington Post.Newsweek Interactive Company were sued in June on the same two patents. The latest suit named AOL, The Dallas Morning News, Google, IGN Entertainment, Morris Communications, Tribune Interactive, Yahoo!, and YouTube. Dovel & Luner, a firm that is challenging Niro Scavone for the most contingent-fee multi-defendant cases, represents Beneficial Innovations.

Innovative Patented Technologies: James B. "J-Beau" Parker/Scott Harris

Speaking of Niro, he filed his own New Years Eve case, in Chicago, on behalf of Innovative Patented Technologies. The first IPT case filed was in South Florida, in early December, as I reported here. James "J-Beau" Beauregard Parker owns Innovative Patented Technologies, a company that does nothing other than hold patents invented by Scott Harris, a former Fish & Richardson principal who is in a dispute with his former firm (and litigation in Chicago). IPT does nothing other than assert patents and try to collect licensing fees. The latest company to be sued was Motorola, on the same 4 patents as the South Florida litigation. Since Motorola has a big facility in South Florida, why not sue them there and/or add them to the other case? Anyway,

Motorola's popular RAZR phone and its Q smartphone were listed as accused products.

To recap, at least the following 5 lawsuits against 10 defendants are now pending involving the Scott Harris patents now owned by James Parker -- all brought by the Niro firm:

Memory Control Enterprise, LLC v. Honda, LG Electronics, Motorola, Oakley, and US Cellular (NDIL, August 2007)
BarTex Research, LLC v. FedEx (EDTX, August 2007)
Illinois Computer Research v. Google (NDIL, September 2007)
Innovative Patented Technology v. Nokia and Samsung (SDFL, December 2007)
Innovative Patented Technology v. Motorola (NDIL, December 2007)

There were other troll cases filed in the second half of December in EDTX and elsewhere, but that's enough for today! The rest can wait for the December Troll Call, coming sometime next week.

Survey reminder

Don't forget to take my Patent Troll Tracker Blog Survey if you haven't already.

(Update: hey - welcome to all the visitors from The New York Times - my first link from "traditional" media. Wonder if it's because I mentioned they are a defendant in the Goldberg lawsuit. This is a disappearing link, though - after Saturday, January 5, it will likely be gone).

Posted by Troll Tracker at 12:07 AM    1 comments
Labels: Beneficial Innovations, Choongsoo Park, Dechert, Eurotroll, Fish Richardson, Innovative Patented Technology, Inpro, James Parker, Mondis, Niro Scavone, Scott Harris, WIAV

THURSDAY, JANUARY 3, 2008

## Acacia December 2007 Update

Turning to our busiest patent troll in 2007, Acacia, it kept up momentum in December with new lawsuits.

Acacia's new subsidiary Coronary Stent Visualization Corp., established in Delaware on 11/19/07 with a principal place of business of 500 Newport Center Drive, 7th Floor, Newport Beach, CA, filed a lawsuit less than a month after formation. Acacia sued Philips Electronic North America Corp. on 3 patents owned by Cedars-Sinai Medical Center (Los Angeles) and allegedly exclusively licensed to

Acacia. The exclusive license likely happened at some point just prior to February 2007, when Cedars-Sinai (represented by Jones Day-LA) told the PTO it had lost its small entity status. The 3 patents are 5,054,045; 5,457,728; and 5,822,391. The lawsuit, involving a Los Angeles patentee, Los Angeles inventors, a Los Angeles exclusive licensee/plaintiff, a Los Angeles prosecuting attorney/law firm (well, now-defunct Lyon & Lyon, anyway), and a New York defendant, was filed in Marshall, Texas on 12/17/07 by DiNovo Price Ellwanger of Austin.

Acacia also filed a big case on December 4, in the Southern District of Illinois (East St. Louis) - the second case they have filed there. This time the sub was Document Generation Corp., and Acacia used Simon Passanante of St. Louis. Patent asserted was 5,148,366. Again, Acacia said it is only the exclusive licensee. 19 defendants were sued, all in the medical software field. GE Healthcare and McKesson are the big ones, but 17 small-to-medium business were sued, too:

1. AllMeds, Inc. (Tennessee-based corporation)
2. Allscripts, LLC (Chicago, Illinois)
3. Cerner Corp. (Missouri)
4. Healthport, Inc. (South Carolina)
5. eClinicalWorks, LLC (Massachusetts)
6. Sage Software Healthcare, Inc. (Florida)
7. AMT Solutions, Inc. (Texas)
8. iMedica Corp. (California - Northern)
9. McKesson Corp. (California - Northern)
10. MediNotes Corp. (Iowa)
11. Misys Healthcare Systems, LLC (North Carolina)
12. NextGen Healthcare Information Systems, Inc. (Pennsylvania)
13. Noteworthy Medical Systems, Inc. (Ohio - Northern)
14. Infor-Med Medical Information Systems, inc. (California - Central)
15. Pulse Systems, Inc. (Kansas)
16. SSIMED, LLC (Connecticut)
17. Physician Micro Systems, Inc. (Washington)
18. A4 Health Systems, Inc. (Chicago, Illinois)
19. GE Healthcare (New Jersey)

So, let's get this straight. Acacia, a California company located in CDCA, is an exclusive licensee who has sued 19 defendants, who are located in 17 different judicial districts (including CDCA). The original assignee and inventors were all from Minnesota, then the patent was transferred via merger and relocation to a company in the Southern District of Ohio, and finally has ended up with I-Think, LLC, an Ann Arbor Michigan corporation which appears to be a subsidiary of the original Minnesota assignee, now called DocuMed. That's about 20 different judicial districts that make sense in terms of venue, yet Acacia chose the Southern District of Illinois. Why, exactly? What's in

East St. Louis that appeals to Acacia?

According to this website, DocuMed itself has only 2 employees, one of which is presumably the VP, Secretary and Treasurer of I-Think, Douglas Kassab. This looks like a once-company, looking for a cashout before one of its remaining assets, a patent that expires in 22 months, is no longer useful.

Back tomorrow with some highlights of the last couple of weeks in the Eastern District of Texas.

Posted by Troll Tracker at 12:07 AM    0 comments
Labels: Acacia, Coronary Stent Visualization Corp., DocuMed, Document Generation Corp., GE Healthcare, McKesson, Philips, venue

WEDNESDAY, JANUARY 2, 2008

## Global Patent Holdings Update

Let's start the new year off with an update on our #1 patent troll from 2007, Global Patent Holdings.

To recap, it filed another patent infringement case on the JPEG-on-a-website patent (5,253,341) on December 5 in Florida. Then while I was on hiatus, Nevada company Zappos.com filed a declaratory judgment complaint in Las Vegas on December 26, seeking a declaratory judgment of invalidity, noninfringement and intervening rights on the GPH '341 patent. Parsons Behle & Latimer of Salt Lake City filed the DJ complaint on Zappos.com's behalf.

The DJ complaint, available here, has some nice insights into the Niro firm's method of trying to collect on behalf of GPH. Evidently, on August 14, Mr. Niro sent a claim chart to Zappos, explaining how the Zappos website infringes the reexamined claim 17 of the patent. I'm a bit miffed by that, because Mr. Niro refused to send me a claim chart as to my website. Zappos did not attach the claim chart to its complaint. Nor did it attach the "royalty schedule," which Niro also sent to Zappos. The Niro firm wrote to Zappos again on September 27, notifying it of the Green Bay Packers lawsuit, and then on December 12, notifying it of the Florida lawsuit.

With four litigations now pending in three districts against 17 companies, MDL seems like an increasingly likely option.

Back tomorrow with an update on Acacia.

Posted by Troll Tracker at 9:30 AM    5 comments
Labels: Global Patent Holdings, MDL, Niro Scavone, Zappos

TUESDAY, JANUARY 1, 2008

## Happy New Year

I thought the last half of December would be quiet in terms of patent troll activity. Well, not really. Happy New Year to everyone, and look for the following stories this week and next:

- Global Patent Holdings and Acacia updates
- News about a bunch of patent troll cases in the Eastern District of Texas, including one involving yet another Fish & Richardson attorney?
- Is one of the newest patent trolls . . . the US Navy?
- Wrap-up on 2007 statistics, including December's list.

Meanwhile, nothing starts the new year like some humor. Thanks to a reader, we have these two comic strips by James Turner, about patent trolls (click here and here).

Posted by Troll Tracker at 1:11 PM    1 comments

Newer Posts                     Home                     Older Posts

Subscribe to: Posts (Atom)