Howard Holderness, CA Bar No. 169814
MORGAN, LEWIS & BOCKIUS LLP
1 Market Street, Spear Tower, 25th Floor
San Francisco, CA 94105
(415) 442-1000 (Telephone)
(415) 442-1001 (Facsimile)

Charles L. Babcock, IV, TX Bar No. 01479500
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Admitted Pro Hac Vice
(713) 752-4200 (Telephone)
(713) 752-4221 (Facsimile)

George L. McWilliams
LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
TX Bar No. 13877000; AR Bar No. 68078
406 Walnut, P.O. Box 58
Texarkana, ARK-TX 75504-0058
Admitted Pro Hac Vice
(903) 277-0098 (Telephone)
(870) 773-2967 (Facsimile)

Attorneys for Respondent
RICHARD FRENKEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC,<br>    Plaintiff and Counterclaim Defendant,<br><br>        vs.<br><br>FISH & RICHARDSON P.C.,<br>    Defendant, Counterclaimant and Third<br>    Party Plaintiff,<br><br>        vs.<br><br>SCOTT C. HARRIS,<br>    Third-Party Defendant and<br>    Counterclaimant,<br><br>        vs.<br><br>FISH & RICHARDSON P.C.,<br>    Defendant, Counterclaimant, Third<br>    Party Plaintiff and Counterclaim<br>    Defendant | Miscellaneous Action No.<br>CV 5:08-mc-80074-JF (HRL)<br><br>**DECLARATION OF CHARLES L. BABCOCK, IV IN SUPPORT OF OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT PRODUCTION IN APRIL 2008** |

1

1

DECLARATION OF CHARLES L. BABCOCK, IV IN SUPPORT OF
OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS
COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO COMPEL
RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
PRODUCTION IN APRIL 2008

1    I, Charles L. Babcock, declare and state as follows:

2    1.    I am a partner with the law firm of Jackson Walker L.L.P.  I am counsel for

3    Richard Frenkel and Cisco Systems, Inc. in the above-referenced matter.

4    2.    An attorney for Richard Frenkel, George L. McWilliams, has conferred with

5    counsel for Illinois Computer Research LLC and Scott C. Harris, but agreement on the scope of

6    the subpoena could not be reached.

7    3.    Attached as "Exhibit B-1" is a true and correct copy of Richard Frenkel's

8    Objections to Subpoena Duces Tecum, which was served upon counsel for Illinois Computer

9    Research LLC and Scott C. Harris, the issuers of the subpoena, on April 7, 2008.

10    4.    Attached as "Exhibit B-2" is a true and correct copy of relevant excerpts of Illinois

11    Computer Research LLC's Amended Complaint, which it filed in the Chicago case, Case No. 07

12    C 5081 in the United States District Court for the Northern District of Illinois, Eastern Division

13    (the "Chicago case").

14    5.    Attached as "Exhibit B-3" is a true and correct copy of relevant excerpts of Fish &

15    Richardson P.C.'s Third Party Complaint, which it filed in the Chicago case.

16    6.    Attached as "Exhibit B-4" is a true and correct copy of relevant excerpts of the

17    Motion to Proceed filed by Illinois Computer Research LLC and Scott C. Harris in the Chicago

18    case.

19    7.    Attached as "Exhibit B-5" is a true and correct copy of *Seabulk Towing, Inc. v.*

20    *Oceanografia S.A.*, No. MISC. 01-3791, 2002 WL 1837855 (E.D. La. 2002) (unpublished).

21    8.    Attached as "Exhibit B-6" is a true and correct copy of *Jack Frost Lab., Inc. v.*

22    *Physicians & Nurses Mfg. Corp.*, No. 92-CV-9264, 1994 WL 9690 (S.D.N.Y. Jan. 13, 1994)

23    (unpublished).

24    9.    Attached as "Exhibit B-7" is a true and correct copy of Richard Frenkel's Motion

25    to Quash Subpoena and Memorandum of Points and Authorities (N.D. Cal. Case 5:08-mc-80075-

26    JF-HRL, docket entry 4), filed on April 7, 2008.

27

28

DECLARATION OF CHARLES L. BABCOCK, IV IN SUPPORT OF
OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS
COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO COMPEL
RICHARD FRENKEL'S DEPOSITION AND DOCUMENT
PRODUCTION IN APRIL 2008

10.     Attached as "Exhibit B-8" is a true and correct copy of Cisco Systems, Inc.'s Motion to Quash Subpoena and Memorandum of Points and Authorities (N.D. Cal. Case 5:08-mc-80075-JF-HRL, docket entry 1), filed on April 7, 2008.

11.     Attached as "Exhibit B-9" is a true and correct copy of *Nidec Corp. v. Victor Co. of Japan*, No. C-05-0686, 2007 WL 1994171 (N.D. Cal. July 5, 2007) (unpublished).

12.     Attached as "Exhibit B-10" is a true and correct copy of *In re Coan*, No. C 06-80350 MISC SI, 2007 WL 128010 (N.D. Cal. Jan. 12, 2007) (unpublished).

13.     I declare under penalty of perjury that the foregoing is true and correct. Executed on April 21, 2008.

Charles L. Babcock, IV

DECLARATION OF CHARLES L. BABCOCK, IV IN SUPPORT OF OPPOSITION TO MOTION UNDER FED.R.CIV.P. 45 OF ILLINOIS COMPUTER RESEARCH LLC AND SCOTT C. HARRIS TO COMPEL RICHARD FRENKEL'S DEPOSITION AND DOCUMENT PRODUCTION IN APRIL 2008

EXHIBIT B-1

1  Howard Holderness, CA Bar No. 169814
   MORGAN, LEWIS & BOCKIUS LLP
2  1 Market Street, Spear Tower, 25th Floor
   San Francisco, CA 94105
3  (415) 442-1000 (Telephone)
   (415) 442-1001 (Facsimile)
4

5  Charles L. Babcock, IV, TX Bar No. 01479500
   JACKSON WALKER L.L.P.
6  1401 McKinney, Suite 1900
   Houston, Texas 77010
7  **(Application for Pro Hac Vice Admission Pending.)**
   (713) 752-4200 (Telephone)
8  (713) 752-4221 (Facsimile)

9  George L. McWilliams
   LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
10 TX Bar No. 13877000; AR Bar No. 68078
11 406 Walnut, P.O. Box 58
   Texarkana, ARK-TX 75504-0058
12 **(Application for Pro Hac Vice Admission Pending.)**
13 (903) 277-0098 (Telephone)
   (870) 773-2967 (Facsimile)
14
   Attorneys for Movant
15 RICHARD FRENKEL

16              UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18 ILLINOIS COMPUTER RESEARCH, LLC,          | Miscellaneous Action No.
       Plaintiff and Counterclaim Defendant,
19                                            _____
       vs.
20                                            **SUBPOENA ISSUED ON**
   FISH & RICHARDSON P.C.,                    **MARCH 17, 2008**
21     Defendant, Counterclaimant and Third
       Party Plaintiff,
22                                            **RICHARD FRENKEL'S OBJECTIONS**
       vs.                                    **TO SUBPOENA DUCES TECUM**
23
   SCOTT C. HARRIS,
24     Third-Party Defendant and
       Counterclaimant
25
       vs.
26
   FISH & RICHARDSON P.C.,
27     Defendant, Counterclaimant, Third
       Party Plaintiff and Counterclaim
28     Defendant

5071832v1                          1.

TO:    Illinois Computer Research, LLC, and Scott C. Harris, by and through their
        counsel of record, Raymond P. Niro, Richard B. Megley, Jr., Paul K. Vickrey, and
        Karen L. Blouin, Niro, Scavone, Haller & Niro, 181 West Madison, Suite 4600,
        Chicago, IL 60602.

Pursuant to Federal Rule of Civil Procedure 45(c)(2)(b), Richard Frenkel

("Frenkel") asserts the following objections to the Subpoena Duces Tecum (the

"Subpoena") issued by Illinois Computer Research, L.L.C. and Scott C. Harris

(collectively, the "Issuers") to Frenkel in the above-referenced matter:

### I.    General Objections.

1.01    Frenkel objects generally to the Subpoena as set forth below:

1.02    Frenkel objects to the Subpoena to the extent that it seeks documents or

information protected by the reporter's privilege (as recognized under the First

Amendment of the U.S. Constitution, the federal common law, and California statutory

and common law), the California Shield Law, the attorney-client-privilege, attorney work

product or any other applicable privilege.

1.03    Frenkel objects to the Subpoena to the extent that it purports to require the

production of documents that are not in the possession, custody or control of Frenkel.

1.04    Frenkel objects to the Subpoena to the extent that its requests are vague,

ambiguous, overbroad, unduly burdensome, unreasonably duplicative, and oppressive.

1.05    Frenkel objects to the Subpoena to the extent that it seeks documents that

are not relevant or reasonably calculated to lead to the discovery of admissible evidence to

be used in the Litigation pursuant to which the Issuers purport to have the authority to

issue the Subpoena.

1.06    Frenkel objects to the Subpoena to the extent that it seeks documents that

are publicly available and therefore of no greater burden for the Issuers to obtain than for

Frenkel to obtain; are available from non-journalistic sources; and/or are already in the

Issuers' possession.

### II.    Objections to Individual Document Requests.

1.07    Frenkel asserts the following objections to the Subpoena's request for

documents, and is seeking a protective order pursuant to Federal Rule of Civil Procedure 26(c) concerning same:

Request No. 1: Communications with Kathi Lutton concerning Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, Fish and Richardson or the relevant lawsuit.

Frenkel objects to Request No. 1 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information. In any event, there are no responsive documents relating to Harris, Niro, NSHN, Parker, Sherrer, or the relevant lawsuit.

Request No. 2: Papers, speeches and publications, including but not limited to webinars, where Kathi Lutton was a collaborator, participant, or mentor.

Frenkel objects to Request No. 2 because it is overbroad, not limited in time, unduly burdensome, not relevant, and/or not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 3: Communications with Fish or its counsel concerning Scott Harris, NSHN, James B. Parker, Courtney Sherrer, Raymond P. Niro or the relevant lawsuit, including without limitation, an identity of the individuals from Fish with whom communications were made and the substance of those communications.

Frenkel objects to Request No. 3 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information. In any event, there are no responsive documents.

Request No. 4: All lawsuits where Fish was retained by Cisco for representation, including any in which Kathi Lutton filed an appearance.

Frenkel objects to Request No. 4 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information.

Request No. 5: Factual bases for Patent Troll Tracker blog articles identified in Exhibit A to C.

Frenkel objects to Request No. 5 because it is overbroad, not limited in time, unduly burdensome, not relevant, not

reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information.

Request No. 6: Investigative materials, sources for, and procedure for Patent Troll Tracker blog articles identified in Exhibits A to C.

> Frenkel objects to Request No. 6 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information.

Request No. 7: All Patent Troll Tracker blog entries concerning Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, or the relevant lawsuit.

> Frenkel objects to Request No. 7 because it is overbroad, not limited in time, unduly burdensome, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 8: The origin and history of the Patent Troll Tracker blog.

> Frenkel objects to Request No. 8 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information.

Request No. 9: The decisions on subjects, including but not limited to Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, addressed in the Patent Troll Tracker blog.

> Frenkel objects to Request No. 9 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information. In any event, there are no responsive documents related to Harris, Niro, NSHN, Parker, or Sherrer.

Request No. 10: Any communications with Jenner & Block regarding Scott Harris or the relevant lawsuit.

> Frenkel objects to Request No. 10 because it is overbroad, not limited in time, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged and/or confidential information. In any event, there are no responsive documents.

1   Dated:   April 7, 2008                MORGAN, LEWIS & BOCKIUS LLP

2                                         By _____

3                                              Howard Holderness

4                                         Attorneys for Movant
                                          RICHARD FRENKEL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2   Dated: April 4, 2008                    JACKSON WALKER L.L.P.

3                                           By _____

4                                              Charles L. Babcock

5                                           Attorneys for Movant
                                            RICHARD FRENKEL
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5071832v1                         6.

Dated: April 4, 2008

LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.

By _George L. McWill_____
George L. McWilliams

Attorneys for Movant
RICHARD FRENKEL

5071832v1

7.



1   HOWARD HOLDERNESS, State Bar No. 237923
    MORGAN, LEWIS & BOCKIUS LLP
2   1 Market Street, Spear Tower, 25th Floor
    San Francisco, CA 94105
3   Tel: 415.442.1000
    Fax: 415.442-1001
4
    CHARLES L. BABCOCK, IV, TX Bar No. 01479500
5   JACKSON WALKER L.L.P.
    1401 McKinney, Suite 1900
6   Houston, Texas 77010
    **(Application for Pro Hac Vice Admission Pending.)**
7   (713) 752-4200 (Telephone)
    (713) 752-4221 (Facsimile)
8
    Attorneys for Movant
9   CISCO SYSTEMS, INC.

10                  UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13  ILLINOIS COMPUTER RESEARCH,          Miscellaneous Action No.
    LLC,
14                                       _____
            Plaintiff and Counterclaim
15          Defendant,
                                         **PROOF OF SERVICE**
16              vs.

17  FISH & RICHARDSON P.C.,

18          Defendant, Counterclaimant and
            Third Party Plaintiff,
19
                vs.
20
    SCOTT C. HARRIS,
21
            Third Party Defendant and
22          Counterclaimant,

23              vs.

24  FISH & RICHARDSON P.C.,,

25          Defendant, Counterclaimant, Third
            Party Plaintiff and Counterclaim
26          Defendant.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

## CERTIFICATE OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is One Market St., Spear Tower, San Francisco, CA 94105.

On April 7, 2008 I served on the interested parties in said action the within document(s) as indicated on the attached service list:

**RICHARD FRENKEL'S OBJECTIONS TO SUBPOENA DUCES TECUM**

X    (Via Overnight Delivery – Federal Express) by placing the document(s) listed bove in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for overnight delivery

X    by transmitting **via facsimile** the document(s) listed above on this date.

☐    by causing the documents to be delivered by electronic mail addressed as set forth below.

☐    by causing the documents to be delivered by hand to the offices of the interested parties.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Signed this 7th day of April, 2008, in San Francisco, California.

_Catherine Greenblatt_
Catherine Greenblatt

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

## SERVICE LIST

| | |
|---|---|
| Raymond P. Niro<br>Paul K. Vickrey<br>Richard B. Megley, Jr.<br>Karen L. Blouin<br>Niro, Scavone, Haller & Niro<br>181 West Madison, Suite 4600<br>Chicago, IL 60602<br>(312) 236-0733<br>(312) 236-3137 - Facsimile | **Attorneys for Plaintiff, ILLINOIS COMPUTER RESEARCH, LLC and SCOTT C. HARRIS, Third Party Defendant** |
| David J. Bradford<br>Terrence J. Truax<br>Eric A. Sacks<br>Daniel J. Weiss<br>Jenner & Block, LLP<br>330 North Wabash Avenue<br>Chicago, IL 60611<br>(312) 222-9350<br>(312) 527-0484 – Facsimile | **Attorneys for FISH & RICHARDSON, P.C., Defendant** |
| Charles L. Babcock, IV<br>Jackson Walker<br>1401 McKinney, Suite 1900<br>Houston, Texas 77010 | **Attorneys for Movant CISCO SYSTEMS, INC.** |
| George L. McWilliams<br>Law Offices of George L. McWilliams, P.C.<br>406 Walnut, P.O. Box 58<br>Texarkana, ARK 71854-5219 | **Attorneys for Movant RICHARD FRENKEL** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

EXHIBIT B-2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC., ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C. 5081 |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| GOOGLE INC. and FISH & RICHARDSON ) | Honorable Rebecca R. Pallmeyer |
| P.C. ) | Mag. Judge Maria Valdez |
| Defendants. ) | |

## AMENDED COMPLAINT

Plaintiff Illinois Computer Research, LLC ("ICR") complains of defendants, Google Inc. ("Google") and Fish & Richardson P.C. ("Fish") as follows:

### NATURE OF CLAIMS

1.    This is a claim for patent infringement against Google arising under the patent laws of the United States, Title 35 of the United States Code.  ICR also asserts related claims for tortious interference with prospective economic advantage and declaratory judgment against Fish, arising out of Fish's:  (1) unlawful and false claims of ownership of the patent-in-suit and other patents owned by ICR; (2) threats and conduct designed to intimidate the inventor of the patent-in-suit and key witness in this case, Scott Harris; and (3) other misconduct, including intentionally and unlawfully accessing privileged communications between Mr. Harris and his counsel, the Niro, Scavone, Haller & Niro law firm, which represents ICR in this case.

involved with patent law and was named the top patent prosecuting attorney in the *IP Law & Business* "Patent Hall of Fame" in 2003.

10.    Mr. Harris has 27 patents and has pending approximately 80 patent applications covering many different fields of technology.    Most have been sold to different companies that license and enforce the patents.  At all times, Fish was aware of Mr. Harris's personal inventorship activities.  Indeed, the co-inventor of one of his patents is the wife of the former managing partner of Fish.  Plaques identifying some of Mr. Harris's patents were on display in his office at Fish.

11.    In 2007, Dell Computer complained to Fish that it had been sued for infringement of a patent on which Mr. Harris was a named inventor.  Thereafter, Fish conducted an investigation, headed by John Steele, Fish's Ethics and Conflicts Director and Special Counsel.  As a result of that investigation, Fish concluded that Mr. Harris had done nothing unethical or inappropriate and so informed Mr. Harris in April 2007. At first, Fish told Mr. Harris that Dell was an existing Fish client.  When Mr. Harris made further inquiry of Fish, he was informed that Fish partner Kathy Lutton (wife of the patent counsel for Apple Computer, a Fish client) wanted to get Dell as a client.  In May 2007, Ms. Lutton told Mr. Harris that he might have to leave Fish.

12.    Instead of demanding that he leave Fish, in May 2007, Fish demanded that Mr. Harris divest himself of any ownership interest in the '252 Patent and other patents now owned by ICR to maintain his position at Fish.

13.    At the instruction and demand that Harris sell his patents, Harris entered into a Patent Sale Agreement (the "Agreement") with ICR in which he sold ICR the '252 Patent and U.S. Patent Nos. 7,231,050 B1, 7,194,624 B1, 7,069,315 B2, as well as U.S.

4

E.    Any other relief deemed appropriate by the Court.

## Jury Demand

Plaintiff demands a trial by jury on all issues presented in this Complaint.


/s/ Paul K. Vickrey_____
Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Fax:  (312) 236-3137

Attorneys for Illinois Computer Research, LLC

EXHIBIT B-3

 
**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** | ) | |
| *Plaintiff and Counterclaim Defendant* | ) ) ) | |
| *v.* | ) ) | No. 07 C 5081 |
| **GOOGLE, INC.,** | ) ) | Judge Pallmeyer |
| *Defendant, and* | ) ) | Magistrate Judge Valdez |
| **FISH & RICHARDSON P.C.,** | ) | |
| *Defendant, Counterclaimant and Third-Party Plaintiff,* | ) ) ) | |
| *v.* | ) ) | |
| **SCOTT C. HARRIS,** | ) | |
| *Third-Party Defendant.* | | |

**FISH & RICHARDSON P.C.'S COUNTERCLAIM AGAINST ICR**
**AND THIRD-PARTY COMPLAINT AGAINST SCOTT C. HARRIS**

Fish & Richardson P.C. ("Fish & Richardson" or the "Firm") counterclaims against Illinois Computer Research, LLC ("ICR") and states its third-party complaint against Mr. Scott C. Harris as follows:

**<u>Nature Of Claims</u>**

1.    This case concerns a lawyer's grave breach of his duties to his law firm. Mr. Harris, the attorney, obtained a "portfolio" of patents while a principal of Fish & Richardson by misusing firm resources and engaging in unauthorized legal work. The patent at issue in this case ("the '252 Patent" or "Patent") is one such patent. Mr. Harris then sought to cash in on his patents, including the '252 Patent, by offering them for sale to parties that Mr. Harris knew would file infringement actions against defendants that included his own firm's clients. The

instant lawsuit by ICR against Google, Inc. ("Google") is one such action against a Fish & Richardson client for alleged infringement of a patent Harris sold.

2.     In touting his patents for sale, Mr. Harris sought to identify prospective "targets" that purchasers could sue for alleged infringement. Those targets included Fish & Richardson clients, *i.e.*, current clients of Mr. Harris's own firm of which he was a principal.

3.     Nonetheless, knowing full well that the purchasers would sue Fish & Richardson clients, Mr. Harris arranged to sell rights in the patents to various companies represented by Mr. Raymond Niro and his law firm, well-known patent plaintiffs' attorneys. The plaintiff in this action, ICR, is one such Niro-represented company, created on the very same day that Mr. Harris purported to assign it the '252 Patent.

4.     Further, and according to ICR, Mr. Harris promised *to assist* with the prosecution of infringement actions arising on transferred patents, lawsuits that Mr. Harris knew would include claims against Fish & Richardson clients like Google. On information and belief, Mr. Harris stood and may still stand to benefit financially from these suits against Firm clients.

5.     Less than two months after Mr. Harris purportedly assigned the '252 Patent, ICR (represented by Mr. Niro), turned around and sued Google in this action for alleged infringement. Similarly, other Niro-represented companies have sued other Fish & Richardson clients for alleged infringement of patents obtained and assigned by Mr. Harris.

6.     Mr. Harris kept his misconduct secret from Fish & Richardson, concealing from the Firm key facts about his patent dealings and misrepresenting or omitting other facts when confronted by Firm personnel. As the facts have emerged, however, the breadth of Mr. Harris's betrayal is stunning. While a principal of Fish & Richardson, Mr. Harris: (a) obtained and prosecuted numerous patents for his own benefit with misappropriated Firm resources and in

2

violation of his duties to the Firm; (b) specifically targeted Firm clients for lawsuits on the patents; (c) purported to sell the patents for his own personal gain to parties that he knew would sue Firm clients; and (d) pledged to assist in those lawsuits against Firm clients and likely retained a financial interest in the proceeds of those suits.

7.      At each step, Mr. Harris's breaches of his fiduciary and contractual obligations were numerous and severe.   At a minimum, Mr. Harris violated multiple provisions of his contract with Fish & Richardson and his duties of care and loyalty.   Fish & Richardson brings the third-party claims stated herein against Mr. Harris to remedy those breaches and to stop the continuing breaches of duty and ongoing damage caused by Mr. Harris.

8.      Fish & Richardson additionally asserts counterclaims against ICR, the initial plaintiff in this action, for a determination of the parties' rights in respect of the '252 Patent and all other patents that Mr. Harris assigned to ICR.   Both under the agreement between Fish & Richardson and Mr. Harris, and as a result of the misconduct described herein, Fish & Richardson possesses legal and/or equitable ownership rights in those patents that are inconsistent with and superior to those claimed by ICR.   The patents, including the '252 Patent, are also subject to a covenant not to sue companies who were clients of Fish & Richardson when Mr. Harris obtained the patents as a principal of the Firm.   Fish & Richardson, as owner or co-owner of the patents, does not consent to this lawsuit against Google.   The Court should declare Fish & Richardson's rights in the patents, including the '252 Patent, and should hold that ICR has no standing to sue Google for infringement of the Patent.   To the extent that Mr. Harris did possess any rights in the '252 Patent and transferred those rights to ICR, the Court should impose a constructive trust upon those rights for the benefit of Fish & Richardson and/or its clients.

Dated:  October 16, 2007

Respectfully submitted,

FISH & RICHARDSON P.C.

By:    s/David J. Bradford
        dbradford@jenner.com
        One of Its Attorneys

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois  60611
Telephone No:  312 222-9350
Facsimile No:  312 527-0484

20

## CERTIFICATE OF SERVICE

I, Daniel J. Weiss, an attorney, caused the foregoing Fish & Richardson's Counterclaim and Third-Party Complaint to be filed with the Court by means of the Court's CM/ECF system, which will send notification of such filing to the following counsel at their e-mail addresses on file with the Court:

> Raymond P. Niro
> Paul K. Vickrey
> Richard B. Megley, Jr.
> Karen L. Blouin
> Niro, Scavone, Haller & Niro
> 181 W. Madison, Suite 4600
> Chicago, Illinois 60602

*Counsel for Illinois Computer Research, LLC*

In addition, counsel will secure a waiver of summons from or will issue a summons to third-party defendant Scott C. Harris and will file the same with the Court.

s/Daniel J. Weiss
dweiss@jenner.com
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Telephone No: 312 222-9350
Facsimile No: 312 527-0484

EXHIBIT B-4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC.,<br>*Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>FISH & RICHARDSON P.C.,<br>*Defendant, Counterclaimant and*<br>*Third-Party Plaintiff,*<br><br>v.<br><br>SCOTT C. HARRIS,<br>*Third-Party Defendant and Counterclaimant,*<br><br>v.<br><br>FISH & RICHARDSON P.C.,<br>Defendant, Counterclaimant, Third-Party<br>Plaintiff and Counterclaim Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  07 C 5081<br><br>Judge Rebecca R. Pallmeyer<br><br>Mag. Judge Maria Valdez |

## SCOTT HARRIS'S AND ICR'S MOTION TO PROCEED WITH DISCOVERY

Scott Harris and Illinois Computer Research, LLC ("IRC") now move to proceed with discovery that the Court previously stayed for the following reasons:

1.    It has now become clear that the parties cannot settle this case. Regardless of what happens with the pending motions, discovery will be needed on a number of topics, including at least:  (1) Fish's knowledge and authorization of Mr. Harris's inventorship activities; (2) Fish's communications with third parties about Mr. Harris; (3) Fish's investigation of Mr. Harris; (4) Fish's knowledge and treatment of so-called "side businesses" of its attorneys; and (5) Fish's purported damages, including purported requests for indemnification.

2.    Further delay will continue to prejudice Scott Harris and others, since Fish's ownership claims continue to cause irreparable harm.  Just last week, in another case in this District, Motorola filed the following affirmative defense claiming Fish owns the Harris patents since:

> 25.    On information and belief, Harris's prosecution, assignment and/or licensing of the asserted patents violated terms of the Contract that Harris entered into with Fish and/or breached Harris's fiduciary duties to Fish clients and/or to Fish. On information and belief, under the terms of the Contract and/or as a result of Harris's actions while employed by Fish, ***Fish is an owner or co-owner of the asserted patents.***

(Exhibit A at ¶¶ 25; emphasis added).

3.    Independently, other parties have reduced their settlement offers or demanded indemnities from Mr. Harris's assignees, including a full refund of any settlement payments if Fish owns the Harris patents.

4.    Further delay also is creating prejudice to Mr. Harris's counsel.   For example, a formerly anonymous blogger ("The Patent Troll Tracker"), now identified as a close associate of Fish, has launched numerous attacks on the Niro firm and Mr. Harris, which have culminated in the posting of a death threat against Mr. Niro and separate calls for vigilante action against him, his partners  and their families:

> Vigilantism is not only necessary, it is justified. ***We need to seek out the personal information of this lawyer, his entire firm***, and the President and board of directors of the companies that employ them. ***Publish their names, home addresses, any phone numbers that can be found, their license plate numbers, the names of their family members, the schools their children attend. Everything. This is War***, ladies and gentlemen. Of a more dire and extreme sort than any in history. Only by securing true strategic objectives can the enemy be worn down. We must destroy not just his willingness, but his ability to fight.  Destroy the ability of those who drive the conflict to live their lives in the most basic way and victory is assured.
>
> We, the greater whole of society, are everywhere.  We surround them.  We

2

can destroy them.  All that is required is the will.

Joseph N. Hosteny, Intellectual Property Today, March 8, 2008, "The Cowardice of Anonymous Bloggers" (quoting an anonymous posting on Slashdot.org; emphasis added).

5.      Discovery will reveal the close connection between the formerly anonymous blogger and Fish:

> You spent a lot of time beating up on Scott Harris, the former Fish & Richardson partner, who possibly lost his job as a result of your tirades. Now that you have told everyone about your connection with Cisco, why don't you tell them about your connection with Fish & Richardson's litigation partner Kathy Lutton? Didn't she represent Cisco in a case in Delaware? Hasn't she sat on various panels with you? Isn't she the partner that forced Scott Harris out of Fish & Richardson?
>
> Now is the time to tell the whole story--the truth and nothing but the truth!
> Very truly yours,
> jayslax555
> February 24, 2008

https://www.blogger.com/comment.g?blogID=4629413688975444690&posted=31063206

For all of these reasons, Scott Harris and ICR request that they be allowed to proceed with discovery immediately.

/s/ Paul K. Vickrey
Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
(312) 236-0733
Fax:  (312) 236-3137

Attorneys for Illinois Computer Research, LLC and Scott C. Harris

3

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing SCOTT HARRIS'S AND ICR'S MOTION TO PROCEED WITH DISCOVERY was electronically filed with the Clerk of Court using CM/ECF system, which will send notification by electronic mail to the following:

David J. Bradford
Eric A. Sacks
Daniel J. Weiss
Terrence J. Truax
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL  60611
(312) 222-9350

**Counsel for Fish & Richardson, P.C.**

on February 28, 2008.

/s/ Paul K. Vickrey

EXHIBIT B-5

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2002 WL 1837855 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1837855)

**H**Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.

E.D.La.,2002.

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

SEABULK TOWING, INC., et al

v.

OCEANOGRAFIA S.A. DE C.V., et al

**No. MISC. 01-3791.**

Aug. 8, 2002.

*HEARING ON MOTION*

SHUSHAN, Magistrate J.

**\*1** APPEARANCES: Submitted on briefs

MOTION: OTTO CANDIES' MOTION FOR A PROTECTIVE ORDER (Rec. doc 4)

GRANTED

Before the undersigned is the motion of the non-party, Otto Candies, L.L.C. ("Otto Candies"), for a protective order quashing subpoenas directed to it and its bank, Hibernia National Bank ("Hibernia"). The subpoenas were issued by the plaintiffs, Seabulk Towing, Inc. and Seabulk Offshore, Ltd. (collectively referred to as "Seabulk"). Otto Candies contends that the sole purpose of Seabulk's discovery is to locate assets belonging to the defendant, Oceanografia S.A. de C.V. ("Oceanografia"), that can be seized. Otto Candies argues that such discovery is inappropriate under Fed.R.Civ.P. 69 prior to Seabulk obtaining a judgment against Oceanografia.

This is the second time that relief in this Court has been sought on a discovery matter even though the action is pending in federal district court in Brownsville, Texas.[FN1]Previously Seabulk filed a motion to compel production of documents by Otto Candies. See Rec. doc. 1 in "Seabulk Towing, et al v. Oceanografia S.A. de C.V., et al," Misc. No. 01-3791 "J"(1) *("Seabulk I"*). The undersigned granted in part and denied in part that motion to compel. See Rec. doc. 18 in *Seabulk I.* The District Court overruled the objections of Otto Candies and

affirmed the undersigned's order. See Rec. doc. 23 in *Seabulk I.* Even though the trial court in the Brownsville action is better suited to resolving issues affecting the scope of discovery, Otto Candies has filed its motion for a protective order in this Court.[FN2]

> FN1.*Seabulk Towing, Inc., f/k/a Hvide Marine Towing, Inc., et al v. Oceanografia S.A. de C.V., et al,* CA No. B-01-094 (S.D.Tx.) (the "Brownsville action").

> FN2. See *In re: Sealed Case,* 141 F.3d 337, 343 (D.C.Cir.1998), where the court held that: "if the nonparty deponent fails ... to move for a protective order in the trial court, the issuing court must make the decision whether discovery may be had, and its scope, since it is the only court with the power to order enforcement."

The factual background in the Brownsville action is described in the rulings by the District Court and the undersigned in *Seabulk I* . See Rec. does. 18 and 23 in *Seabulk I.* Seabulk describes its Brownsville complaint against Oceanografia and its principal, Amado Yanez Osuna ("Osuna"), as a corporate accountancy action. Rec. doc. 8 at p. 9. Seabulk acknowledges that the purpose of the current discovery sought from Otto Candies and its bank is to find assets belonging to Oceanografia that can be seized. Seabulk contends that the Brownsville action also involves claims of divestiture of assets from Oceanografia and that any information regarding the assets of Oceanografia and their relation to Otto Candies is relevant. It argues that the current discovery is needed to provide it with the opportunity to obtain security for its claims against Oceanografia, before it completes its alleged plan to divest itself of its assets. *Id.* at 7. This issue was not resolved in *Seabulk I.*

Generally facts about the financial status of a party are not discoverable prior to obtaining a judgment against the party. See Fed. Rule Civ. P. 26(b)(2) Advisory Committee's Note, 1970 amendments; and 8 Wright, Miller and Marcus, Federal Practice and Procedure § 2010 (2d ed.1994). Seabulk argues that in an admiralty action pre-judgment discovery of a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1837855 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1837855)

defendant's assets, including those in the possession of a third party, is permissible pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

**\*2** Rules B and C only apply to the seizure of assets within the district in which the action is filed. Pursuant to Rule B the plaintiff attaches or garnishes a vessel or other property belonging to the defendant which is located within the judicial district where action is to be commenced. 29 James Wm. Moore, et al., Moore's Federal Practice ¶ 705.04[1] (3d ed.1997). Pursuant to Rule C the plaintiff's complaint must "in an admiralty and maritime proceeding state that the property is within the district or will be within the district while the action is pending...." Fed.R.Civ.P. Supplemental Rule C. Seabulk filed its action in Brownsville, but it seeks assets in the Eastern District of Louisiana. Assuming for the moment that Rules B and C permitted pre-judgment discovery of a defendant's assets, they do not provide authority for a search for assets outside of the district where the action is pending.

Seabulk argues that the Eleventh Circuit's decision in _Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottachi S.A. de Navegacion,_ 773 F.2d 1528 (11th Cir.1985), shows it is entitled to discovery regarding Oceanografia's assets. The Eleventh Circuit said a "[m]aritime attachment is designed to assure a defendant's appearance and to secure satisfaction if the suit is successful."773 F.2d at 1535. At issue was whether the maritime attachment procedures employed by the district court complied with the constitutional procedural due process requirements. The Eleventh Circuit found that an immediate postattachment hearing before a judge provided the maritime debtor with the process he was due. _Id . at 1539._It does not follow from this decision that a plaintiff in an admiralty proceeding is entitled to pre-judgment discovery of a defendant's assets.

In _Nehring v. Steamship M/V Point Vail,_ 901 F.2d 1044 (11th Cir.1990), the Eleventh Circuit said:

There are two reasons for the procedure authorized in Supplemental Rule B: to assure respondent's appearance, and to assure satisfaction in case the suit is successful. Supplemental Rule B, however, cannot be used purely for the purpose of obtaining security: The two purposes may not be separated, however, for

security cannot be obtained except as an adjunct to obtaining jurisdiction.

Id. at 1051 (citations, quotation marks and brackets omitted). Seabulk does not argue that the discovery is needed in order to maintain jurisdiction over Oceanografia in Brownsville. Seabulk has not shown a basis for departing from the general rule that discovery of a defendant's assets prior to judgment is not permitted.

Seabulk also contends that such discovery is relevant to its claim that the defendants mishandled the finances of Oceanografia. Fed.R.Civ.P. 26(b)(1). It argues that the full disclosure of accounts, assets and transfers is necessary to support its action against the defendants. Rec. doc. 8. Seabulk has made no showing that the trial court has ordered Oceanografia to provide such discovery.

**\*3** The parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed.R.Civ.P. 26(b)(1). Under the revised Fed.R.Civ.P. 26(b)(1) the court must focus on the claims and defenses involved in the action. Fed. Rule Civ. P. 26(b)(1) Advisory Committee's Note, 2000 amendments. "(T)he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action."_Id._ In this action Seabulk describes its claim as a corporate accountancy action. It has not submitted copies of its complaint and the defendants' answer in the Brownsville action in order to permit an analysis of the claims pending in that action. Seabulk has not provided a sufficient basis to show that the information sought is relevant to its claims. The mere conclusory statement that such discovery is relevant is insufficient. Even if the information sought is not relevant, the undersigned may order discovery of any matter relevant to the subject matter involved in the action for good cause shown. _Id._

In further support of its request for the discovery Seabulk submitted a response to Otto Candies' reply memorandum. Rec. doc. 25. Seabulk's supplemental response is silent on its contention that Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims gave it the right to seek pre-judgment discovery of Oceanografia's assets. Instead Seabulk argues that the discovery it now seeks from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d           Page 3
Not Reported in F.Supp.2d, 2002 WL 1837855 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1837855)**

Otto Candies and its bank was actually discovery the undersigned ordered Otto Candies to produce in *Seabulk I* but which it failed to produce. Seabulk, however, adds that to the extent the discovery it now seeks may be interpreted as going beyond the scope of the *Seabulk I* order, the new discovery is "modified to seek documents co-extensive with this Court's prior order."Rec. doc. 25 at p. 3. Seabulk's belated attempt to recast its current discovery as an effort to force Otto Candies to comply with the *Seabulk I* order is without merit. If Otto Candies did not comply with the order in *Seabulk I,* Seabulk should have filed a motion to compel and for sanctions. As previously conceded by Seabulk, its new discovery of Otto Candies and its bank is aimed at finding Oceanografia assets it can seize. Seabulk has not shown any basis for pre-judgment discovery of Oceanografia's assets.

Seabulk also presents a term loan agreement that was not implemented. It provided that Otto Candies would guarantee a $15 million loan to an entity that Seabulk contends was going to purchase or charter Oceanografia vessels. Seabulk also reports that Yanez testified that the Otto Candies/Oceanografia joint venture was placed on hold because of Seabulk's suit against Oceanografia. Rec. doc. 25 at p. 4. Seabulk has not shown that the new discovery is relevant to its claim in its corporate accountancy action. It also has not made any showing of good cause.

**\*4** IT IS ORDERED that Otto Candies' motion for a protective order (Rec.doc. 4) is GRANTED and the subpoenas issued by Seabulk to Otto Candies and Hibernia are quashed.

E.D.La.,2002.
Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.
Not Reported in F.Supp.2d, 2002 WL 1837855 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B-6

Westlaw.

Not Reported in F.Supp.    Page 1
Not Reported in F.Supp., 1994 WL 9690 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1994 WL 9690)**

▷Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.
S.D.N.Y.,1994.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
JACK FROST LABORATORIES, INC., Plaintiff,
v.
PHYSICIANS & NURSES MANUFACTURING
CORPORATION, Defendant and Third-Party
Plaintiff,
v.
PFIZER INC., CLAIROL, INC., and Prescribed
Marketing Ltd., Third-Party Defendants.
**No. 92 CIV. 9264 (MGC).**

Jan. 13, 1994.

MEMORANDUM AND ORDER

DOLINGER, United States Magistrate Judge:
**\*1** Third-party defendant Pfizer Inc. has moved by letter for an order quashing subpoenas served by plaintiff on a non-party corporate witness, Pelton Shepherd Industries ("PSI") and its president, both of whom are located in California. The application is denied without prejudice to a motion to quash presently pending in the Eastern District of California.

This is a patent infringement suit in which Pfizer has asserted a defense of patent invalidity. This defense is based in part on the asserted design, manufacture and sale of competing products that are said to use the same art as is covered by plaintiff's patent. This prior art defense has been asserted in a motion by Pfizer for partial summary judgment, and in that motion Pfizer relies particularly on deposition testimony by Ms. Alicia Shepherd, the president of PSI.

Ms. Shepherd testified on behalf of PSI on August 25, 1993 at a deposition noticed in California by Pfizer. In the course of that deposition, she was extensively questioned by Pfizer's counsel. In addition, PSI produced documents called for in Pfizer's subpoena, which sought production for a period ending in 1985. Although plaintiff's counsel also questioned Ms. Shepherd, she declined to answer a number of its questions, and, as noted, the company's document production was limited to the time period specified in Pfizer's subpoena.

The current motion to quash was occasioned by plaintiff's service on December 15, 1993 of a new subpoena duces tecum on PSI and a deposition subpoena on Ms. Shepherd. Those subpoenas, which were plainly elicited by Pfizer's summary judgment motion, call for the production of post-1985 documents as well as a further deposition of PSI. Pfizer claims that the requested document production is overbroad, that a second deposition is unwarranted, and that plaintiff has failed to comply with the newly amended Fed.R.Civ.P. 30(a)(2)(B), which requires leave of the court to depose a person who has previously been deposed in the case.

This is not the only motion to quash plaintiff's subpoenas. On December 29, 1993 Ms. Shepherd filed such a motion in the United States District Court for the Eastern District of California. That motion apparently is still pending, with a return date of February 17, 1994.

*ANALYSIS*

Pfizer's motion raises several thorny procedural questions, including the proper venue of a motion to quash a subpoena served on an out-of-state witness, the applicability of the new Rule 30(a)(2)(B) to the case and its effect on the venue issue. Ultimately we need not resolve these matters to reach a conclusion on the current dispute.

Rule 45(c) appears to indicate that the appropriate venue for a motion to quash is the court that issued the subpoena. Thus it states that if the witness serves and files an objection, he need not comply with the subpoena "except pursuant to an order of the court by which the subpoena was issued." Fed.R.Civ.P. 45(c)(2)(B). Similarly the Rule directs that the objecting party may seek relief by a motion to quash, but specifies that relief, in the form of an order modifying or quashing the subpoena, is to be issued by "the court by which [the] subpoena was issued." Fed.R.Civ.P. 45(c)(3)(A). Finally, an unjustified

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                Page 2
Not Reported in F.Supp., 1994 WL 9690 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1994 WL 9690)**

failure to comply with a subpoena "may be deemed a contempt of the court from which the subpoena issued." Fed.R.Civ.P. 45(e).[FN1] This language suggests that we may be jurisdictionally barred from considering Pfizer's motion. See In re Digital Equip. Corp., 949 F.2d 228, 231 (8th Cir.1991) (no jurisdiction unless court that issued subpoena transfers the motion to quash).

\*2 The analysis is somewhat complicated, however, by the terms of Rule 26(c), which provides that the court in which the action is pending "or, alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken," may issue protective orders conditioning, limiting or precluding sought-after discovery. This language has led some courts to suggest that the court where the suit is pending may be authorized to adjudicate motions to quash out-of-state subpoenas, at least in some circumstances. See, e.g., Petersen v. Douglas County Bank & Trust Co., 940 F.2d 1389, 1391 (10th Cir.1991) (quoting Fed.R.Civ.P. 26(c), Notes of Advisory Committee on Rules, 1970 Amendment) (motion to quash may be transferred to forum in which suit is pending). See also Lampshire v. Proctor & Gamble Co., 94 F.R.D. 58, 59 (N.D.Ga.1982) (district court where deposition is pending should handle the motion for a protective order except where the trial court's intimate familiarity with the case is needed).

It also bears noting that newly-enacted Rule 30(a)(2)(B) requires court approval of a subpoena for a second deposition of a witness, but does not specify what court is to review the matter.[FN2] This rule is presumably applicable to the current case even though it was filed well before the effective date of the new rules,[FN3] and it could be read to authorize the court in which the action is pending to rule on that question, although such a reading is not compelled.

Even if we assume for present purposes that Pfizer's motion is properly venued, however, the relief by Pfizer is inappropriate. We start by noting that the information sought by plaintiff-both by deposition and by document production-is relevant to the issues raised by Pfizer's summary judgment motion, and that plaintiff has concededly denied access to at least some of it at the prior deposition. The consistent policy of the federal courts is to promote resolution of cases on their merits, if reasonably possible, see,

e.g., Sony Co. v. Elm State Elec. Inc., 800 F.2d 317, 320 (2d Cir.1986); Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981); Robinson v. Worldwide Mgt. Services Inc., No. 93 CV. 182, 1993 WL 367081 at \*5 (N.D.N.Y. Sept. 15, 1993), and that policy would be served by permitting plaintiff to conduct a further deposition of PSI, together with a somewhat expanded scope of document production.

We must still address claims of undue burden or prejudice. The most obvious burden is borne by the non-party witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others. See, e.g., Haworth Inc. v. Herman Miller Inc., 998 F.2d 975, 978 (Fed.Cir.1993). Nonetheless, PSI and Ms. Shepherd have the opportunity to litigate that matter in the Eastern District of California, and are pursuing the issue there. Even if we had the jurisdiction to deal with an out-of-state witness's claim of burden, respect for courts of coordinate jurisdiction would suggest that we not address the issues currently before the California court.

\*3 As for Pfizer's own prejudice, it consists of the additional time and expense that it would bear by having its attorney prepare for, travel to and participate in the second deposition. These expenses might have been avoided or greatly lessened if plaintiff had served its own document demand prior to the first deposition and had sought immediate relief from the California district court during the deposition when confronted by a refusal of the witness to answer questions. Cf.Fed.R.Civ.P. 30(d)(3). Nonetheless, such prejudice may be alleviated by conducting the deposition by telephone, a procedure to which plaintiff apparently consents. SeeFed.R.Civ.P. 30(a)(2)(B), Notes of Advisory Committee on Rules at 39 (West 1993 Supp.) (suggesting that "[i]f significant travel costs would be incurred to resume the deposition, the parties should consider the feasibility of conducting the balance of the examination by telephonic means").

Finally, I note that application of Rule 30(a)(2)(B) to this case does not change the result. Plaintiff has requested that its papers be deemed alternatively a request for authorization under that rule, and both sides appear to agree that this court may address such a request, at least insofar as prejudice to Pfizer is concerned. As for the merits of the application, it is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3
Not Reported in F.Supp., 1994 WL 9690 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1994 WL 9690)**

to be assumed that the court's decision under Rule 30(a)(2)(B) will involve the same "need versus prejudice" analysis as we have already undertaken.[FN4]

## CONCLUSION

In sum, Pfizer's motion to quash is denied, albeit without prejudice to the ultimate resolution of the motion by PSI in California. Counsel are encouraged, but not required, to conduct the deposition by telephone. If such an arrangement is not agreed upon, any of the parties may apply to an appropriate court for an order requiring reimbursement for the reasonable expenses incurred in having counsel travel to and from California and prepare for the deposition. This observation is not intended to reflect any views as to the merits of such an application.

SO ORDERED.

> FN1.Rule 45(c)(1) specifies that "[t]he court on behalf of which the subpoena was issued" may sanction a party or attorney who issued a subpoena for violation of the duty "to avoid imposing undue burden or expense on a person subject to that subpoena." This wording is somewhat more ambiguous, but read in context it appears again to contemplate that the issuing court is the appropriate initial forum to supervise subpoena practice.

> FN2. I note that the Southern District of New York, by order dated December 1, 1993, suspended the effectiveness of several of the new discovery rules, but did not address Rule 30(a)(2)(B).

> FN3. The order of the Supreme Court adopting the new rules provides that they "shall take effect on December 1, 1993, and shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Order of United States Supreme Court dated April 22, 1993, *reprinted in Federal Civil Judicial Procedure and Rules,* 1993 Supplement at 3 (West 1993).

> FN4. At oral argument, counsel for Pfizer suggested that even if approval were given under Rule 30(a)(2)(B), plaintiff should be required to serve the subpoena once again since it did not obtain prior approval. This argument is unpersuasive since (a) the new rule does not specify that court approval must be obtained before service of the subpoena and (b) Pfizer's approach would exalt form over substance in this case and multiply proceedings and expenses, a result at variance with the evident policy of the newly revised discovery rules. *See, e.g.,*Fed.R.Civ.P. 1, Notes of the Advisory Committee on Rules at 3 (West Supp.1993) ("the purpose of the revision" is "to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay.").

S.D.N.Y.,1994.
Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.
Not Reported in F.Supp., 1994 WL 9690 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B-7

1  Howard Holderness, CA Bar No. 169814
   MORGAN, LEWIS & BOCKIUS LLP
2  1 Market Street, Spear Tower, 25th Floor
   San Francisco, CA  94105
3  (415) 442-1000 (Telephone)
   (415) 442-1001 (Facsimile)
4

5  Charles L. Babcock, IV, TX Bar No. 01479500
   JACKSON WALKER L.L.P.
6  1401 McKinney, Suite 1900
   Houston, Texas  77010
7  **(Application for Pro Hac Vice Admission Pending.)**
   (713) 752-4200 (Telephone)
8  (713) 752-4221 (Facsimile)

9
   George L. McWilliams
10 LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
   TX Bar No. 13877000; AR Bar No. 68078
11 406 Walnut, P.O. Box 58
   Texarkana, ARK-TX  75504-0058
12 **(Application for Pro Hac Vice Admission Pending.)**
   (903) 277-0098 (Telephone)
13 (870) 773-2967 (Facsimile)

14
   Attorneys for Movant
15 RICHARD FRENKEL

16                  UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18 ILLINOIS COMPUTER RESEARCH, LLC,          Miscellaneous Action No.
       Plaintiff and Counterclaim Defendant,
19                                           _____
           vs.
20                                           **RICHARD FRENKEL'S NOTICE OF**
   FISH & RICHARDSON P.C.,                   **MOTION; MOTION TO QUASH**
21     Defendant, Counterclaimant and Third  **SUBPOENA; MOTION FOR**
       Party Plaintiff,                      **PROTECTIVE ORDER; AND**
22                                           **MEMORANDUM OF POINTS AND**
           vs.                               **AUTHORITIES**
23
   SCOTT C. HARRIS,
24     Third-Party Defendant and
       Counterclaimant
25
           vs.
26
   FISH & RICHARDSON P.C.,
27     Defendant, Counterclaimant, Third
       Party Plaintiff and Counterclaim
28     Defendant

5071067v1                              1.

1   **NOTICE OF MOTION**

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE THAT on June 20, 2008, at 9:00 a.m. or as soon

4   thereafter as this case may be heard, in the courtroom of the Honorable Ronald M. Whyte,

5   United States District Court, Northern District of California, located at 280 South 1st

6   Street, San Jose, California, non-party Richard Frenkel ("Frenkel"), an employee of Cisco

7   Systems, Inc. ("Cisco"), hereby moves pursuant to Federal Rule of Civil Procedure 45 to

8   quash the deposition subpoena served by Illinois Computer Research ("ICR") and Scott C.

9   Harris ("Harris") on Frenkel in a case pending in federal court in Chicago (the "Chicago

10  case") where Fish & Richardson ("Fish") is the defendant and counter-plaintiff, and for a

11  protective order.

12      Specifically, Frenkel respectfully requests an Order that the subpoena be quashed

13  in its entirety.  In the alternative, Frenkel requests that a protective order be entered which

14  provides that:  (i) the witness shall not be required to and will not produce any privileged

15  material nor will he be required to testify about any privileged materials or on any

16  privileged matter; (ii) any deposition testimony of third party Frenkel be limited to

17  material issues in the Chicago case as enumerated in Harris/ICR's Motion to Proceed –

18  namely, Fish's communications with third party Frenkel, if any, regarding Harris; and (iii)

19  that the deposition shall not be provided to, disclosed to, or shared either directly or

20  indirectly with any person related to the Arkansas or Texas litigation[1] and that counsel in

21  the Chicago case will take appropriate steps to protect its confidentiality, thus insuring

22  that it will not be available to counsel in the Arkansas and Texas cases.

23      Frenkel's motion is based upon this notice of motion; the following memorandum

24  of points and authorities; the accompanying declarations of Richard Frenkel and George

25

26  [1] In these two cases, Frenkel and Cisco are defendants. *John Ward, Jr. v. Cisco Systems, Inc. and Rick Frenkel*; Cause No. 08-4022 in the United States District Court , Western District of Arkansas, Texarkana Division; and *Eric Albritton v. Cisco Systems, Inc. and Richard Frenkel*; Cause No. 6:08-cv-89 in the United States District Court for the Eastern District of Texas, Tyler Division.

27

28

1  L. McWilliams, any reply filed in support of this motion; all other papers filed and

2  proceedings had in this action; oral argument of counsel; and such other matters as the

3  Court may consider.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Illinois Computer Research, L.L.C. ("ICR") is the plaintiff/counterclaim defendant

and Scott C. Harris is the third-party defendant and counterclaimant (collectively, the

"Issuers") in the above-entitled action pending in the United States District Court for the

Northern District of Illinois, Eastern Division, Case No. 07 C 5081 (the "Chicago case").

On March 29, 2008, Issuers served a subpoena from this Court (the "Subpoena") to

Frenkel, who resides in this federal district.[2]  Frenkel Decl. ¶¶ 11-12, incorporated herein

by reference. (A copy of the Subpoena is attached as Exhibit A-1 to Frenkel's Declaration

and is incorporated by reference.)  Frenkel, an employee of Cisco Systems, Inc. ("Cisco"),

is the author of the Patent Troll Tracker website (the "PTT"), a news-oriented website that

reports on news about intellectual property litigation and advocates for reform of the

patent law system.  Frenkel Decl. ¶¶ 3-4, 9.  Neither Frenkel nor Cisco are parties to the

Chicago case.

The Subpoena seeks not only to compel Frenkel to testify in a deposition, but also

to produce documents, including privileged attorney/client communications and attorney

work product, sources of material used by Frenkel on his website, and background on the

website itself.  The subpoenaed testimony and documents have no apparent relevance to

the Chicago case.  On this point, Frenkel fully incorporates by reference the arguments in

Cisco's Memorandum of Points and Authorities in support of its Motion to Quash

Subpoena Served on Richard Frenkel, filed concurrently herewith in this Court.

Moreover, the minute order from the Court in the Chicago case indicates that discovery

---

[2] The subpoena was not technically served.  It was left on Frenkel's doorstep at his
home on a Saturday.  Frenkel Decl. ¶ 11.

1    may be premature due to the contemplated joinder of additional parties. Accordingly,

2    Frenkel objects to being deposed for purposes of discovery in the Chicago case before all

3    parties are joined.

4         The Subpoena is overly broad and not properly limited to relevant and non-

5    privileged information and therefore is unduly burdensome, and the Subpoena does not

6    allow a reasonable time for compliance. Even if the burdens of complying with the

7    Subpoena could be justified, there are serious constitutional ramifications of issuing such

8    a subpoena to a non-party journalist, such as Frenkel, in a civil action. Accordingly,

9    Frenkel seeks an order from the Court quashing the Subpoena, or in the alternative, the

10   entry of a protective order as outlined above.

11   **II.    STATEMENT OF FACTS**

12        A.    BACKGROUND FACTS

13        Frenkel is an attorney employed by Cisco as a Director, Intellectual Property--

14   Consumer and Emerging Technologies and as such oversees certain litigation involving

15   the company. Frenkel Decl. ¶¶ 1-2. Fish represents Cisco on certain matters and Frenkel

16   has been indirectly involved in some of them. *Id.* at ¶ 14.

17        Starting in May of 2007, Frenkel anonymously created the Patent Troll Tracker

18   website to report on issues of interest to the patent community and the general public. *Id.*

19   at ¶ 3. The PTT advocates reform of the patent law system. *Id.* at ¶¶ 3-5, 9. The Issuers'

20   counsel, Raymond Niro ("Niro"), a lawyer specializing in intellectual property disputes,

21   including patent cases, has a competing editorial viewpoint contrary to the PTT. *Id.* at ¶¶

22   6-7. The two attorneys have traded lively, and sometimes heated, exchanges over patent

23   issues, Niro in interviews with the press, and Frenkel on his website. *Id.* at ¶ 6. Niro

24   publicly alleged that a death threat aimed at him and his family was sponsored by the

25   PTT, an allegation Frenkel denied. *Id.* at ¶ 7. Niro also established a reward for anyone

26   who would unmask the identity of the person behind the PTT, raising it from an initial

27   offer of $5000 to $10,000 and finally $15,000 before Frenkel revealed himself as the

28   author of the PTT. *Id.* at ¶¶ 7-8. The reward, we understand, remains unclaimed. *Id.* at ¶

8.

Niro was a guest on an internet radio program ("Lawyer 2 Lawyer") on March 27, 2008, and repeated his criticisms of Frenkel's website, announcing that "I am going to be taking his deposition in a case shortly." *Id.* at ¶ 10. He also made reference to the Arkansas and Texas litigation where Frenkel and Cisco are defendants, stating that "I know Johnny Ward (the Arkansas Plaintiff) very well and I know Eric [Albritton] (the Texas plaintiff) too." *Id.* He then commented on the litigation in a way unfavorable to Frenkel. *Id.*

Frenkel and Cisco are defendants in litigation filed in Arkansas and Texas federal courts[3] over an October 18, 2007, PTT posting which is claimed to be defamatory. *Id.* at ¶ 9. An initial scheduling conference has been set for the Texas case on June 5, 2008. The Arkansas suit has not yet been answered.

B.    SUBPOENA FACTS

The subpoena duces tecum at issue was left on Frenkel's doorstep at home on Saturday, March 29, 2008, (two days after Niro told his radio audience that he was going to take Frenkel's deposition). *Id.* at ¶¶ 10-11.

The subpoena calls for Frenkel to provide information about the Troll Tracker, including: "Factual bases for Patent Troll Tracker blog articles" (Request No. 5); "Investigative materials, sources for, and procedure for Patent Troll Tracker blog articles ..." (Request No. 6); "The origin and history of the Patent Troll Tracker blog" (Request No. 8); and "The decisions on subjects, including but limited to Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney Sherrer, addressed in the Patent Troll Tracker blog" (Request No. 9). The subpoena also calls for "Communications with Kathi Lutton concerning ... Fish and Richardson ..." (Request No. 1) and "All lawsuits where Fish was

---

[3] *John Ward, Jr. v. Cisco Systems, Inc. and Rick Frenkel*; Cause No. 08-4022 in the United States District Court, Western District of Arkansas, Texarkana Division; and *Eric Albritton v. Cisco Systems, Inc. and Richard Frenkel*; Cause No. 6:08-cv-89 in the United States District Court for the Eastern District of Texas, Tyler Division.

1    retained by Cisco for representation, including any in which Kathi Lutton filed an

2    appearance" (Request No. 4).

3        An attorney for Frenkel, George L. McWilliams, has conferred with the Issuers'

4    counsel, but agreement on the scope of the subpoena could not be reached.  McWilliams

5    Decl. ¶ 2, incorporated herein by reference.

6    **III.    ARGUMENT**

7        A court must quash a subpoena if the subpoena (1) requires disclosure of

8    privileged or protected material and no exception or waiver applies, (2) does not allow a

9    reasonable time for compliance, or (3) subjects a person to undue burden.  FED. R. CIV. P.

10   45(c)(3)(A).  Because the Subpoena fails to comply with Rule 45, as demonstrated below,

11   the Court must quash it.  *Id.*

12       A.    The Subpoena Requires Disclosure of Privileged or Protected Material, and

13   No Exemption or Waiver Applies.

14       The Subpoena seeks to compel Frenkel to testify about and produce documents

15   regarding sources and unpublished information Frenkel used to report news about

16   intellectual property litigation on his Patent Troll Tracker website.  Frenkel Decl. ¶ 15.

17   The requests at issue are numbers 5-9.  The free press and speech protections of the First

18   Amendment to the United States Constitution, as recognized by the common law

19   Reporter's Privilege doctrine, and the California Shield Law protect reporters such as

20   Frenkel from such compelled testimony and forced production.

21       As an initial matter, Frenkel properly asserts the Reporter's Privilege and

22   protection under the California Shield Law because he is and was a reporter engaged in

23   newsgathering activities for the purpose of reporting on news about intellectual property

24   litigation on his website.  Frenkel Decl. ¶¶ 3-5, 9, 16-17; *O'Grady v. Superior Court*, 139

25   Cal. App. 4th 1423, 1466, 1468 (Cal. Ct. App. 2006) (holding that the California Shield

26   Law and the Reporter's Privilege doctrine apply to authors of news-oriented websites).

27   Because the Issuers cannot demonstrate that an exemption or waiver applies to these two

28   well-established privileges and protections, the Subpoena must be quashed.

5071067v1                          6.          RICHARD FRENKEL'S NOTICE OF MOTION, MOTION TO
                                               QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER;
                                               AND MEMORANDUM OF POINTS AND AUTHORITIES

1    1.  The Reporter's Privilege.

2    In *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972), the United States Supreme

3 Court recognized that the newsgathering process and the editorial process are entitled to

4 protection under the First Amendment. "Without some protection for seeking out the

5 news, freedom of the press could be eviscerated." *Branzburg*, 408 U.S. at 681. Courts

6 have subsequently held that "[s]ociety's interest in protecting the integrity of the

7 newsgathering process, and in insuring the free flow of information to the public is an

8 interest 'of sufficient social importance to justify some incidental sacrifice of sources of

9 facts needed in the administration of justice.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.

10 1993) (quoting *Herbert v. Lando*, 441 U.S. 153, 183 (1979) (Brennan, J. dissenting)).

11 Courts repeatedly have acknowledged the chilling effect and resulting self-censorship that

12 discovery of a reporter's unpublished information would have on the gathering and

13 reporting of news. Consequently, eight federal circuits have held that the First

14 Amendment protections for the newsgathering process rise to a level of a qualified

15 privilege in favor of journalists when faced with a subpoena seeking discovery of

16 confidential sources or unpublished information.[4]

17    Courts since *Branzburg v. Hayes* have found on such a consistent basis that a

18 qualified privilege exists for reporters that such a privilege must certainly exist as a matter

19 of state and federal common law. Indeed, the Supreme Court of California has recognized

20 a qualified First Amendment privilege for reporters to prevent disclosure of their

21 confidential sources and other unpublished information. *Mitchell v. Superior Court*, 37

22 Cal. 3d 268, 279 (1984); *Miller v. Superior Court*, 21 Cal. 4th 883, 899 (1999). While

23

24   [4]*See, e.g., Clyburn v. New World Communications, Inc.*, 903 F.2d 29 (D.C. Cir. 1990); *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988); *LaRouche v.*

25 *National Broadcasting Co.*, 780 F.2d 1134 (4th Cir. 1986), *cert denied*, 479 U.S. 818 (1986); *United States v. Burk*, 700 F.2d 70 (2d Cir. 1983), *cert denied*, 464 U.S. 816 (1983); *United*

26 *States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980), *cert denied*, 449 U.S. 1126 (1981);

27 *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.), modified on rehearing, 628 F.2d 932 (1980), *cert denied*, 450 U.S. 1041 (1981); See *Shoen v. Shoen*, 5 F.3d at 1292

28 (9th Cir. 1993); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977).

1    recognizing the judicial policy "favoring full disclosure of relevant evidence," the

2    *Mitchell* court found that in civil cases, such as the one before this Court, "courts must

3    recognize that the public interest in a non-disclosure of journalists' confidential news

4    sources will often be weightier than the private interest in compelled disclosure." *Id.* at

5    276-7 (quoting *Baker v. F&F Investment*, 470 F.2d 778, 784-5 (2d Cir. 1972)).

6          The privilege is so well-established that the Ninth Circuit, in holding that a

7    reporter's newsgathering activities were entitled to protection regardless of whether there

8    had been a promise of confidentiality, concluded that the "body of circuit case law and

9    scholarly authority [is] so persuasive that we think it unnecessary to discuss the question

10   further." *Shoen*, 5 F.3d at 1295.

11         The policy behind providing the press with such protection relates to the

12   preservation of the public's right to receive information about matters of public interest

13   which, in turn, depends upon the press's ability to gather such information.  As the Third

14   Circuit held in *United States v. Cuthbertson*, 630 F.2d at 147:

15         The compelled production of a reporter's resource materials can constitute

16         a significant intrusion into the newsgathering and editorial processes.

17         Like the compelled disclosure of confidential sources, it may substantially

18         undercut the public policy favoring the free flow of information to the

19         public that is the foundation for the privilege.  Therefore, we hold that the

20         privilege extends to unpublished materials in the possession of CBS.

21         Similarly, in *Shoen*, 5 F.3d at 1294-95 (quoting *United States v. The* LaRouche

22   *Campaign*, 841 F.2d 1176 (1st Cir. 1988)), the court held that news organizations should

23   be free from:

24         the threat of administrative and judicial intrusion into the newsgathering

25         and editorial process; the disadvantage of a journalist appearing to be an

26         investigative arm of the judicial system or a research tool of government

27         or of a private party; the disincentive to compile and preserve non-

28         broadcast material; and the burden on journalist's time and resources in

RICHARD FRENKEL'S NOTICE OF MOTION; MOTION TO
QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER;
AND MEMORANDUM OF POINTS AND AUTHORITIES

1     responding to subpoenas.

2          Based on these principles, before a reporter can be forced to testify or surrender

3     materials regarding the newsgathering process, there must be a showing that (1) the

4     information sought is highly material and relevant to the inquiry at hand; (2) there is a

5     compelling need for the information; and (3) the information is not obtainable from other

6     available sources. *See, e.g., Shoen*, 5 F.3d at 1296; *In re Petroleum Prods. Antitrust*

7     *Litigation*, 680 F.2d (2d Cir. 1982) (per curiam), *cert denied*, 459 U.S. 909 (1982).

8          The Issuers have not, and cannot, make such a showing in this case.  First, the

9     Issuers have not explained – much less proven – how the information sought by the

10    Subpoena is "highly material and relevant."  Second, even if the information sought is

11    highly material and relevant, there is an additional requirement that there be a "compelling

12    need" for the information beyond mere relevancy – no such compelling need has been

13    articulated, must less proven.  Finally, whatever relevant information may be in the hands

14    of Frenkel is obtainable from other sources.

15         Frenkel is particularly concerned with the forced production and compelled

16    testimony regarding sources and unpublished information, especially to Issuers' counsel

17    who has publicly stated his editorial opposition to Frenkel.  Frenkel Decl. ¶¶ 15-16.  If

18    forced to testify about and produce such material, it would result in a serious detriment to

19    Frenkel's future ability to gather and disseminate news.  *Id.* at ¶ 16.  The newsgathering

20    efforts of a reporter such as Frenkel should not be made part of civil discovery between

21    parties without a showing of the required elements set forth above to ensure that reporters

22    are not burdened with civil lawsuits to which they are not parties.

23         This type of burden is exactly what the federal and state common law and

24    constitutional protections are designed to prevent.  The forced production and compelled

25    testimony regarding confidential sources and unpublished information would make it far

26    more difficult in the future for reporters to secure information or interviews and to report

27    news involving matters of public concern. Ultimately, both public and private litigants

28    would suffer.  There is no compelling reason in this civil case to contribute to such a

RICHARD FRENKEL'S NOTICE OF MOTION; MOTION TO
QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER;
AND MEMORANDUM OF POINTS AND AUTHORITIES

1    result. Accordingly, the Court must quash the Subpoena. Fed. R. Civ. P. 45(c)(3)(A)(iii).

2                2.      Federal Common Law.

3       Federal common law under Federal Rule of Evidence 501 likewise recognizes a

4    qualified reporter's privilege. *See Jaffee v. Redmond*, 518 U.S. 1 (1996). The factors to

5    be considered in determining whether to apply the privilege are:

6           (1) whether important private and public interests would be served by

7           recognition of the privilege; (2) whether the evidentiary cost of

8           recognizing the privilege is likely to be modest; and (3) whether similar

9           protections are afforded by the states, either through legislation or the

10          common law.

11       *See Jaffee*, 518 U.S. at 10-15; *see also In re Williams*, 766 F.Supp. 358, 367 (W.D.

12    Pa. 1991), *aff'd*, 963 F.2d 567 (3d Cir. 1992) (*en banc*); *New York Times v. Gonzalez*, 382

13    F. Supp. 2d 457, 492-508 (S.D.N.Y. 2005), *vacated on other grounds*, 459 F.3d 160, 168

14    (2d Cir. 2006). *But see In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111 (N.D. Cal.

15    2006) (declining to apply *Jaffee* factors to a grand jury subpoena.)

16                3.      The California Shield Law.

17       The California Shield Law is enshrined in the state constitution, CALIF. CONST.

18    Art. I § 2(b), and it precludes compelling a reporter from disclosing confidential sources

19    or any unpublished material. *Id.*; *see also* CAL. EVID. CODE § 1070(a); CAL. CIV. PRO.

20    CODE § 1986.1; *O'Grady*, 139 Cal. App. 4th at 1466. Where, as here, the reporter from

21    whom such information is sought is not a party to the underlying civil litigation, the

22    protections afforded by the California Shield Law are absolute. *New York Times Co. v.*

23    *Superior Court*, 51 Cal.3d 453, 458 (Cal. App. 1990).[5]

24       Indeed, the California courts recognize that the protections afforded to reporters by

25    the California Shield Law must not yield to the competing interests of civil litigants

26    seeking discovery from a nonparty:

27

28       [5] This is a federal proceeding but the claims remaining in the Chicago case are governed by state law and thus state law privileges apply. *See* FED. R. EVID. 501.

1       If every civil litigant who postulates that some information material to his

2       case is contained within the undisseminated materials of a newsperson

3       may compel that nonparty newsperson to present his information to the

4       trial court for inspection, balancing of interests, and probable disclosure,

5       the protection afforded newspersons would be greatly reduced, if not

6       wholly vitiated.

7   *Playboy Enterprises, Inc. v. Superior Court*, 154 Cal. App. 3d 14, 27 (Cal. App. 1984).

8       Specifically, the California Shield Law protects from disclosure any "unpublished

9   information obtained or prepared in gathering, receiving, or processing of information for

10  communication to the public." CALIF. CONST. ART. I § 2(b); CAL. EVID. CODE § 1070(a).

11  "Unpublished information" is broadly defined, and extends to all information not literally

12  published. *Id.*; *New York Times Co.,* 51 Cal. 3d at 456. To be entitled to protection by the

13  Shield Law, the reporter must be engaged in "the gathering and dissemination of news."

14  *O'Grady*, 139 Cal. App. 4th at 1457.

15      As in *O'Grady*, Frenkel is and was engaged in the gathering and dissemination of

16  news about intellectual property litigation on his Patent Troll Tracker website. Frenkel

17  Decl. ¶ 16. The fact that Frenkel chose to disseminate news on a website, as opposed to a

18  more traditional source of journalism, is irrelevant. *O'Grady*, 139 Cal. App. 4th at 1466.

19  Moreover, the Subpoena seeks to compel testimony and force production of documents

20  regarding unpublished information Frenkel obtained or prepared for communication to the

21  public on his Patent Troll Tracker website. Frenkel Decl. ¶ 15. Accordingly, the

22  Subpoena falls squarely within the absolute protections afforded to Frenkel by the

23  California Shield Law, and the Court thus must quash the Subpoena in its entirety. FED.

24  R. CIV. P. 45(c)(3)(A)(iii).

25      B.    The Subpoena Does Not Allow a Reasonable Time for Compliance.

26      Frenkel received service of the Subpoena on March 29, 2008, a mere nine days

27  before the Subpoena requires him to produce a litany of documents and a mere ten days

28  before the Subpoena compels him to testify at a deposition. Frenkel Decl. ¶¶ 11-12.

1    Federal courts interpreting Rule 45's requirement that subpoenas allow a reasonable time

2    for compliance have held that such a short time between the issuance of a subpoena and

3    the deadline for compliance is unreasonable. *Mann v. Univ. of Cincinnati*, 824 F. Supp.

4    1190, 1202 (S.D. Ohio 1993), *aff'd* 152 F.R.D. 119 (S.D. Ohio) (holding that "issuance of

5    the subpoena on one week's notice was unreasonable" and therefore violated Rule 45).

6    Likewise, the Subpoena at issue here is unreasonable. Accordingly, Frenkel moves to

7    quash the Subpoena because it fails to allow a reasonable time for compliance. FED. R.

8    CIV. P. 45(c)(3)(A)(i).

9          C.    The Subpoena is Unduly Burdensome.

10        Pursuant to Federal Rule of Civil Procedure 26(b)(1), all of the document requests

11   contained in the Subpoena are grossly overbroad and not properly limited to relevant and

12   non-privileged information and therefore compliance would impose an undue burden

13   upon Frenkel. Frenkel Decl. ¶ 18. The specific nature of the breadth and burden

14   objections for each document request is set forth in Richard Frenkel's Objections to

15   Subpoena Duces Tecum (attached as Exhibit B-1 to McWilliams' Declaration and

16   incorporated herein by reference). McWilliams Decl. ¶ 3. Accordingly, Frenkel moves to

17   quash the Subpoena on grounds that the document requests are overly broad and not

18   properly limited to relevant and non-privileged information and therefore unduly

19   burdensome. FED. R. CIV. P. 45(c)(3)(A)(iv).

20   **IV.**    **CONCLUSION**

21        The subpoena calls for information of no relevance to the Chicago case as more

22   fully explained in Cisco's Memorandum of Points and Authorities in support of its Motion

23   to Quash, which is incorporated by reference.

24        As explained above, the subpoena calls for privileged and protected information,

25   fails to allow a reasonable time for compliance, and is unduly burdensome, and

26   accordingly, the Motion to Quash or, in the alternative, for a Protective Order should be

27   granted.

28

1    Dated: April 7, 2008                    MORGAN, LEWIS & BOCKIUS LLP

2                                            By _____

3                                               Howard Holderness

4                                            Attorneys for Movant
                                             RICHARD FRENKEL
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5071067v1                        13.        RICHARD FRENKEL'S NOTICE OF MOTION; MOTION TO
                                            QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER;
                                            AND MEMORANDUM OF POINTS AND AUTHORITIES

1

2   Dated: April 4, 2008

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACKSON WALKER L.L.P.

By _Charles L. Babcock_

Charles L. Babcock

Attorneys for Movant
RICHARD FRENKEL

5071067v1

14.

1

2　　Dated: April 4, 2008　　　　　　　　　LAW OFFICE OF GEORGE L. MCWILLIAMS,
　　　　　　　　　　　　　　　　　　　　　P.C.
3

4　　　　　　　　　　　　　　　　　　By

5　　　　　　　　　　　　　　　　　　　　George L. McWilliams

6　　　　　　　　　　　　　　　　　　Attorneys for Movant
　　　　　　　　　　　　　　　　　　RICHARD FRENKEL
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    ILLINOIS COMPUTER RESEARCH, LLC,                Miscellaneous Action No.
         Plaintiff and Counterclaim Defendant,
4                                                    _____
         vs.
5                                                    **ORDER GRANTING FRENKEL'S**
     FISH & RICHARDSON P.C.,                         **MOTION TO QUASH**
6        Defendant, Counterclaimant and Third
         Party Plaintiff,
7
         vs.
8
     SCOTT C. HARRIS,
9        Third-Party Defendant and
         Counterclaimant
10
         vs.
11
     FISH & RICHARDSON P.C.,
12       Defendant, Counterclaimant, Third
         Party Plaintiff and Counterclaim
13       Defendant

14               Came on to be considered Richard Frenkel's Motion to Quash Subpoena.

15   After having reviewed the Motion to Quash Subpoena and response thereto, the Court

16   issues the following order:

17          IT IS HEREBY ORDERED that the Motion to Quash Subpoena is GRANTED in

18   all respects such that Richard Frenkel need not appear or produce records pursuant to

19   Illinois Computer Research, LLC and Scott C. Harris' subpoena duces tecum delivered

20   March 29, 2008.

21

22          Dated: _____

23                                          _____

24                                          UNITED STATES JUDGE

25

26   5073202v.2 132824/00001

27

28
                                                            ORDER GRANTING MOTION TO QUASH
                                    1.

1  HOWARD HOLDERNESS, State Bar No. 237923
   MORGAN, LEWIS & BOCKIUS LLP
2  1 Market Street, Spear Tower, 25th Floor
   San Francisco, CA  94105
3  Tel:  415.442.1000
   Fax:  415.442.1001
4
   CHARLES L. BABCOCK, IV, TX Bar No. 01479500
5  JACKSON WALKER L.L.P.
   1401 McKinney, Suite 1900
6  Houston, Texas 77010
   **(Application for Pro Hac Vice Admission Pending.)**
7  (713) 752-4200 (Telephone)
   (713) 752-4221 (Facsimile)
8
   Attorneys for Movant
9  CISCO SYSTEMS, INC.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  ILLINOIS COMPUTER RESEARCH,          Miscellaneous Action No.
    LLC,
14
         Plaintiff and Counterclaim
15       Defendant,
                                         _____
16            vs.
                                         **PROOF OF SERVICE**
17  FISH & RICHARDSON P.C.,

18       Defendant, Counterclaimant and
         Third Party Plaintiff,
19
              vs.
20
    SCOTT C. HARRIS,
21
         Third Party Defendant and
22       Counterclaimant,

23            vs.

24  FISH & RICHARDSON P.C.,,

25       Defendant, Counterclaimant, Third
         Party Plaintiff and Counterclaim
26       Defendant.

27

28

Miscellaneous Action No.  _____
PROOF OF SERVICE
1-SF/7688094.1

1

## CERTIFICATE OF SERVICE

2

3
I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is One Market St., Spear Tower, San Francisco, CA 94105.

4

5
On April 7, 2008 I served on the interested parties in said action the within document(s) as indicated on the attached service list:

6
CISCO SYSTEM, INC.'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA SERVED ON RICHARD FRENKEL; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

7

8
RICHARD FRENKEL'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

9

10
DECLARATION OF WILLIAM FRIEDMAN IN SUPPORT OF CISCO SYSTEM, INC.'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA SERVED ON RICHARD FRENKEL; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

11

12

13
DECLARATION OF GEORGE L. MCWILLIAMS IN SUPPORT OF RICHARD FRENKEL'S AND CISCO SYSTEM, INC.'S MOTIONS TO QUASH SUBPOENA AND MOTIONS FOR PROTECTIVE ORDER

14

15
DECLARATION OF CHARLES L. BABCOCK, IV, IN SUPPORT OF CISCO SYSTEM, INC.'S MOTIONS TO QUASH SUBPOENA SERVED ON RICHARD FRENKEL AND MOTION FOR PROTECTIVE ORDER

16

17
DECLARATION OF RICHARD FRENKEL IN SUPPORT OF RICHARD FRENKEL'S AND CISCO SYSTEMS, INC.'S MOTIONS TO QUASH SUBPOENA AND MOTIONS FOR PROTECTIVE ORDER

18
ORDER GRANTING FRENKEL'S MOTION TO QUASH

19
ORDER GRANTING CISCO SYSTEMS, INC.'S MOTION TO QUASH

20
APPLICATION FOR ADMISSION OF GEORGE L. MCWILLIAMS *PRO HAC VICE*

21
APPLICATION FOR ADMISSION OF CHARLES L. BABCOCK, IV *PRO HAC VICE*

22
[PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF GEORGE L. MCWILLIAMS *PRO HAC VICE*

23

24
[PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF GEORGE L. MCWILLIAMS *PRO HAC VICE*

25

26
X    (Via Overnight Delivery – Federal Express) by placing the document(s) listed bove in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for overnight delivery

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

1   ☐   by causing the documents to be delivered by electronic mail addressed as set
2       forth below.

3   ☐   by causing the documents to be delivered by hand to the offices of the interested
4       parties.

5

6

7       I declare under penalty of perjury, under the laws of the State of California, that the above
    is true and correct.  Signed this 7th day of April, 2008, in San Francisco, California.

8

9                                   *Catherine Greenblatt*
                                    Catherine Greenblatt

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

**SERVICE LIST**

1

2

3

4

5 Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.

6 Karen L. Blouin
Niro, Scavone, Haller & Niro

7 181 West Madison, Suite 4600
Chicago, IL 60602

8 (312_ 236-0733
(312) 236-3137 - Facsimile

**Attorneys for Plaintiff, ILLINOIS COMPUTER RESEARCH, LLC and SCOTT C. HARRIS, Third Party Defendant**

9

10 David J. Bradford
Terrence J. Truax

11 Eric A. Sacks
Daniel J. Weiss

12 Jenner & Block, LLP
330 North Wabash Avenue

13 Chicago, IL 60611
(312) 222-9350

14 (312) 527-0484 – Facsimile

**Attorneys for FISH & RICHARDSON, P.C., Defendant**

15 Charles L. Babcock, IV
Jackson Walker

16 1401 McKinney, Suite 1900
Houston, Texas 77010

**Attorneys for Movant CISCO SYSTEMS, INC.**

17

18 George L. McWilliams
Law Offices of George L. McWilliams, P.C.
406 Walnut, P.O. Box 58

19 Texarkana, ARK-TX 75504-0058

**Attorneys for Movant RICHARD FRENKEL**

20

21

22

23

24

25

26

27

28

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

EXHIBIT B-8

1    Howard Holderness, CA Bar No. 169814
     MORGAN, LEWIS & BOCKIUS LLP
2    1 Market Street, Spear Tower, 25th Floor
     San Francisco, CA  94105
3    (415) 442-1000 (Telephone)
     (415) 442-1001 (Facsimile)
4

5    Charles L. Babcock, IV, TX Bar No. 01479500
     JACKSON WALKER L.L.P.
6    1401 McKinney, Suite 1900
     Houston, Texas  77010
7    **(Application for Pro Hac Vice Admission Pending.)**
     (713) 752-4200 (Telephone)
8    (713) 752-4221 (Facsimile)

9

10   Attorneys for Movant
     CISCO SYSTEMS, INC.

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14   ILLINOIS COMPUTER RESEARCH, LLC,        | Miscellaneous Action No.
              Plaintiff and    Counterclaim
15   Defendant,                              | _____

16       vs.                                 | **CISCO SYSTEMS, INC.'S NOTICE OF
                                             | MOTION; MOTION TO QUASH
17   FISH & RICHARDSON P.C.,                 | SUBPOENA SERVED ON RICHARD
              Defendant,                      | FRENKEL; MOTION FOR
18            Counterclaimant and            | PROTECTIVE ORDER; AND
              Third Party Plaintiff,         | MEMORANDUM OF POINTS AND
19                                           | AUTHORITIES**
         vs.
20
     SCOTT C. HARRIS,
21            Third-Party Defendant
              and Counterclaimant
22
         vs.
23
     FISH & RICHARDSON P.C.,
24            Defendant,
              Counterclaimant, Third
25            Party Plaintiff and
              Counterclaim Defendant
26

27

28

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 20, 2008, at 9:00 a.m. or as soon thereafter as this case may be heard, in the courtroom of the Honorable Ronald M. Whyte, United States District Court, Northern District of California, located at 280 South 1st Street, San Jose, California, non-party Cisco Systems, Inc. ("Cisco") hereby moves pursuant to Federal Rules of Civil Procedure 45 to quash the deposition subpoena served by Illinois Computer Research ("ICR") and Scott C. Harris ("Harris") on Richard Frenkel ("Frenkel"), an employee of Cisco, in a case pending in federal court in Chicago (the "Chicago case") where Fish & Richardson ("Fish") is the defendant and counter-plaintiff, and for a protective order.

Specifically, Cisco respectfully requests an Order that the subpoena be quashed in its entirety. In the alternative, Cisco requests that a protective order be entered which provides that: (i) the witness shall not be required to and will not produce any privileged material nor will he be required to testify about any privileged materials or on any privileged matter; (ii) any deposition testimony of third party Frenkel be limited to material issues in the Chicago case as enumerated in Harris/ICR's Motion to Proceed – namely, Fish's communications with third party Frenkel, if any, regarding Scott Harris; and (iii) that the deposition shall not be provided to, disclosed to, or shared either directly or indirectly with any person related to the Arkansas or Texas litigation[1] and that counsel in the Chicago case will take appropriate steps to protect its confidentiality thus insuring that it will not be available to counsel in the Arkansas and Texas cases.

Cisco's motion is based upon this notice of motion, the following memorandum of points and authorities; the accompanying declarations of William Friedman, Richard Frenkel, George L. McWilliams and Charles L. Babcock; any reply filed in support of this motion; all other papers

---

[1] In these two cases, Frenkel and Cisco are defendants. *John Ward, Jr. v. Cisco Systems, Inc. and Rick Frenkel*; Cause No. 08-4022 in the United States District Court , Western District of Arkansas, Texarkana Division; and *Eric Albritton v. Cisco Systems, Inc. and Richard Frenkel*; Cause No. 6:08-cv-89 in the United States District Court for the Eastern District of Texas, Tyler Division.

1    filed and proceedings had in this action; oral argument of counsel; and such other matters as the

2    Court may consider.

3                      **MEMORANDUM OF POINTS AND AUTHORITIES**

4    **I.    INTRODUCTION**

5            On Saturday, March 29, 2008, Frenkel was served[2] at home with a subpoena duces tecum

6    calling for a deposition and production of documents at Cisco's offices on April 7, 2008.  Frenkel

7    Decl. ¶¶ 11-12, incorporated herein by reference. (A copy of the Subpoena is attached as Exhibit

8    A-1 to Frenkel's Declaration and is incorporated herein by reference.)  The subpoena comes from

9    a case pending in the United States District Court for the Northern District of Illinois, Eastern

10   Division (the "Chicago case") and was issued at the request of the Plaintiff/Counterclaim

11   Defendant Illinois Computer Research ("ICR") and the third party defendant and counterclaimant

12   Scott C. Harris ("Harris") (collectively "Issuers").  The Defendant and Counter-Plaintiff is Fish &

13   Richardson P.C. ("Fish").    Neither Cisco nor Frenkel are parties to this litigation.

14           The subpoena is overbroad and burdensome, is not relevant to any issue in the Chicago

15   case nor would enforcement reasonably lead to the discovery of admissible evidence and it goes

16   beyond the information the Issuers told the Chicago judge was necessary.  In addition, the

17   subpoena calls for information which is protected by the work product and attorney client

18   privileges  (privileges Cisco owns and asserts) and is protected by the First Amendment to the

19   United States Constitution, the federal common law and the California Shield Law (Cal. Evid.

20   Code § 1070; California Constitution Art. I § 2; and California Code of Civil Procedure §

21   1986.1).  Furthermore, parts of the subpoena seek information related to two cases pending in

22   federal courts in Arkansas and Texas, where Frenkel and Cisco are defendants.  The subpoenaed

23   information has no relevance to the Chicago case but could be used to circumvent the discovery

24   orders of the Texas and Arkansas courts.

25

26

27         [2] The subpoena was not technically served.  It was left on Frenkel's doorstep at his home
28   on a Saturday.  Frenkel Decl. ¶ 11.

II.    **STATEMENT OF FACTS**

A.    BACKGROUND FACTS

Frenkel is an attorney employed by Cisco as a Director, Intellectual Property--Consumer and Emerging Technologies and as such oversees certain litigation involving the company. Frenkel Decl. ¶¶ 1-2.  Fish represents Cisco on certain matters and Frenkel has been indirectly involved in some of them.  *Id.* at ¶ 14.

Starting in May of 2007, Frenkel anonymously created the Patent Troll Tracker website ("PTT") to report on issues of interest to the patent community and the general public.  *Id.* at ¶ 3. The PTT advocates reform of the patent law system.  *Id.* at ¶¶ 3-5, 9.  The Issuers' counsel, Raymond Niro ("Niro"), a lawyer specializing in intellectual property disputes, including patent cases, has a competing editorial viewpoint contrary to the PTT.  *Id.* at ¶¶ 6-7.  The two attorneys have traded lively, and sometimes heated, exchanges over patent issues, Niro in interviews with the press, and Frenkel on his website.  *Id.* at ¶ 6.  Niro publicly alleged that a death threat aimed at him and his family was sponsored by the PTT, an allegation Frenkel denied.  *Id.* at ¶ 7.  Niro also established a reward for anyone who would unmask the identity of the person behind the PTT, raising it from an initial offer of $5000 to $10,000 and finally $15,000 before Frenkel revealed himself as the author of the PTT.  *Id.* at ¶¶ 7-8.  The reward, we understand, remains unclaimed.  *Id.* at ¶ 8.

Niro was a guest on an internet radio program ("Lawyer 2 Lawyer") on March 27, 2008, and repeated his criticisms of Frenkel's website, announcing that "I am going to be taking his deposition in a case shortly."  *Id.* at ¶ 10.  He also made reference to the Arkansas and Texas litigation where Frenkel and Cisco are defendants, stating that "I know Johnny Ward (the Arkansas Plaintiff) very well and I know Eric [Albritton] (the Texas plaintiff) too."  *Id.*  He then commented on the litigation in a way unfavorable to Frenkel.  *Id.*

Frenkel and Cisco are defendants in litigation filed in Arkansas and Texas federal courts[3]

---

[3] *John Ward, Jr. v. Cisco Systems, Inc. and Rick Frenkel*; Cause No. 08-4022 in the United States District Court, Western District of Arkansas, Texarkana Division; and *Eric Albritton v. Cisco Systems, Inc. and Richard Frenkel*; Cause No. 6:08-cv-89 in the United States District Court for the Eastern District of Texas, Tyler Division.

1    over an October 18, 2007, PTT posting which is claimed to be defamatory. *Id.* at ¶ 9. An initial

2    scheduling conference has been set for the Texas case on June 5, 2008. The Arkansas suit has not

3    yet been answered.

4        B.    SUBPOENA FACTS

5        The subpoena duces tecum at issue was left on Frenkel's doorstep at home on Saturday,

6    March 29, 2008, (two days after Niro told his radio audience that he was going to take Frenkel's

7    deposition). *Id.* at ¶ 10-11.

8        The subpoena calls for Frenkel to provide information about the Troll Tracker, including:

9    "Factual bases for Patent Troll Tracker blog articles" (Request No. 5); "Investigative materials,

10   sources for, and procedure for Patent Troll Tracker blog articles ..." (Request No. 6); "The origin

11   and history of the Patent Troll Tracker blog" (Request No. 8); and "The decisions on subjects,

12   including but limited to Scott Harris, Raymond P. Niro, NSHN, James B. Parker, Courtney

13   Sherrer, addressed in the Patent Troll Tracker blog" (Request No. 9). The subpoena also calls for

14   "Communications with Kathi Lutton concerning ... Fish and Richardson ..." (Request No. 1) and

15   "All lawsuits where Fish was retained by Cisco for representation, including any in which Kathi

16   Lutton filed an appearance" (Request No. 4).

17       An attorney for Frenkel, George L. McWilliams, has conferred with the Issuers' counsel,

18   but agreement on the scope of the subpoena could not be reached. McWilliams Decl. ¶ 2,

19   incorporated herein by reference; Babcock Decl. ¶ 2, incorporated herein by reference. Frenkel

20   objected to the subpoena's request for documents in Richard Frenkel's Objections to Subpoena

21   Duces Tecum (attached to Babcock Declaration as Exhibit C-1 and incorporated herein by

22   reference). Babcock Decl. ¶ 3.

23   **III.    ARGUMENT**

24       A.    Cisco Has Standing.

25       Federal Rule of Civil Procedure 45(c)(3)(B) provides that a party "affected by a

26   subpoena" may move to quash or modify. Frenkel is an attorney, employed by Cisco as a

27   Director, Intellectual Property--Consumer and Emerging Technologies, and as such oversees

28   certain litigation involving the company. Frenkel Decl. ¶ 2. By way of example only, the

1   subpoena calls for "all documents that refer to, relate to, comment upon or constitute ... all

2   lawsuits where Fish was retained by Cisco for representation, including any in which Kathi

3   Lutton[4] filed an appearance." This request (as well as others) call for attorney client and work

4   product privileged information on its face.

5          Under these circumstances, Cisco has standing to file this motion. *See Brown v. Braddick*,

6   595 F.2d 961, 967 (5th Cir. 1979); *Abbott Diabetes Care, Inc. v. Roche Diagnostics Corp.*, No.

7   C05-3117 MJJ (BZ), 2007 WL 2255236, *1 n.1 (N.D. Cal. Aug. 3, 2007) (Rule 45 allows "a

8   party to file a motion to quash a third-party subpoena so long as the party demonstrates some

9   right or interest in the documents requested.") (A copy of the unpublished opinion is attached as

10  Exhibit C-5 to Babcock's Declaration.) Babcock Decl. ¶ 7.

11         B.    Certain Categories of Documents Call for Privileged Information.

12         Fish has served as counsel for Cisco in certain litigation and Frenkel has been involved in

13  some of these matters. Frenkel Decl. ¶ 14. Accordingly, the attorney client and/or attorney work-

14  product privileges would attach to some or all of the documents in the following requests from

15  the subpoena:

16         1. Communications with Kathi Lutton concerning Scott Harris, Raymond P. Niro, NSHN,

17  James B. Parker, Courtney Sherrer, Fish and Richardson or the relevant lawsuit[5];

18         3. Communications with Fish or its counsel concerning Scott Harris, NSHN, James B.

19  Parker, Courtney Sherrer, Raymond P. Niro or the relevant lawsuit, including without limitation,

20  an identity of the individuals from Fish with whom communications were made and the substance

21  of those communications; and

22         4. All lawsuits where Fish was retained by Cisco for representation, including any in

23

24   [4] Ms. Lutton is a Fish partner. ICR Amended Complaint at § 11, p. 4 ("Fish partner Kathi
    Lutton...wanted to get Dell as a client.") (relevant excerpts of which are attached as Exhibit C-2
25  to Babcock's Decl.). Babcock Decl. ¶ 4. We attach only excerpts of pleadings from the Chicago
    case. The pleadings are, however, contained on Pacer and we ask the Court to take judicial notice
26  of them.

27   [5] The relevant lawsuit is defined in the subpoena as the Chicago case. Frenkel's motion
    indicates he has no documents responsive to category three and no documents regarding Harris,
28  Niro, NSHN, Parker and Sherrer in response to category one.

1   which Kathi Lutton filed an appearance.

2        Indeed, some or all of the testimony and material covered by these requests concerns

3   confidential communications between Cisco and its lawyers regarding legal advice sought on

4   behalf of Cisco for the purpose of protecting its legal rights.  Friedman Decl. ¶ 4, incorporated

5   herein by reference.  Accordingly, the requests seek to compel material protected by Cisco's

6   attorney client privilege, a privilege that Cisco has not waived.  *Id.*  Moreover, some or all of the

7   testimony and material covered by the requests concerns the impressions, opinions, conclusions,

8   legal theories, and research prepared by Cisco's lawyers for the purpose of protecting Cisco's

9   legal rights in litigation or in anticipation of litigation.  *Id.* at ¶ 5.  Accordingly, the requests seek

10  to compel material protected by the work product privilege, a privilege that has not been waived.

11  *Id.*

12       The Issuers have not, and cannot, explain – much less prove – how these requests are

13  exempt from the protections afforded to Cisco by the attorney-client privilege and the work-

14  product privilege, or how such privileges were waived.  Thus, the Court must quash the subpoena

15  because it "requires disclosure of privileged or other protected material, [and] no exemption or

16  waiver applies."  FED. R. CIV. P. 45(c)(3)(A)(iii).

17       B.    Certain Categories of Documents Call For Information Not Relevant to the

18  Chicago Case But Which May Be at Issue In the Arkansas and Texas cases.

19            1.    The Chicago Case

20       In the Chicago case ICR sued Google for alleged infringement of the so-called "252"

21  patent.  On October 5, 2007, the suit was amended to add Fish as a defendant.  Google was

22  dismissed with prejudice.  ICR claims Fish tortiously interfered with ICR's prospective economic

23  advantage by claiming ownership in the 252 patent and by threatening a key witness, the inventor

24  of the 252 patent who, it turns out, was an employee (and perhaps a principal) of Fish.  The law

25  firm is also said to have accessed privileged communications between Harris and his counsel,

26  Raymond Niro of Niro, Scavone, Haller and Niro ("NSHN").

27       Fish counterclaimed against ICR and added Harris as a third party defendant.  As to

28  Harris, the law firm claims that:

1    While a principal of Fish & Richardson, Mr. Harris:  (a) obtained and

2    prosecuted numerous patents for his own benefit with misappropriated

3    Firm resources and in violation of his duties to the Firm; (b) specifically

4    targeted Firm clients for lawsuits on the patents; (c) purported to sell the

5    patents for his own personal gain to parties that he knew would sue Firm

6    clients; and (d) pledged to assist in those lawsuits against Firm clients and

7    likely retained a financial interest in the proceeds of those suits.

8    Fish Third Party Complaint, § 6 at pp. 2-3 (relevant excerpts of which are attached as

9    Exhibit C-3 to Babcock's Declaration).  Babcock Decl. ¶ 5.

10    Fish alleges Breach of Contract against Harris (Count I), Breach of Fiduciary Duty against

11    Harris (Count II), Declaratory Judgment Against ICR and Harris (Count III); and Constructive

12    Trust against ICR and Harris (Count IV).  Harris then Counterclaimed against Fish asserting

13    claims for tortious interference with prospective economic advantage, defamation and a claim for

14    wrongful withholding of wages under California law.

15    The connection of the Chicago case to either Frenkel or Cisco is not readily apparent from

16    a review of the live pleadings.  What can be discerned, however, is that ICR and Harris' counsel,

17    Niro, appears to have some animus towards Frenkel, although Niro denied this in his radio

18    remarks.  Niro offered a reward to anyone who would uncover the identity of the Patent Troll

19    Tracker but Frenkel unmasked himself so Niro claims the reward was never collected.  Frenkel

20    Decl. ¶¶ 7-8.

21    In any event, Niro claims (erroneously) that the Patent Troll Tracker "has launched

22    numerous attacks on the Niro firm and Mr. Harris" resulting "in the posting of a death threat

23    against Mr. Niro and separate calls for vigilante action against him, his partners and their

24    families…" which "is creating prejudice to Mr. Harris' counsel."  Harris and ICR Motion to

25    Proceed With Discovery ("Motion to Proceed"), § 4 at p. 2 (relevant excerpts of which are

26    attached as Exhibit C-4 to Babcock's Declaration).  Babcock Decl. ¶ 6.  The only cited

27    relationship to the Chicago case is that, according to the issuers, Frenkel "is now identified as a

28    close associate of Fish." *Id.*  The last accusation is not true.  Frenkel Decl. ¶ 13.

1    What may be afoot, and what Cisco fears, is that this subpoena is being used for the

2    improper purpose of conducting discovery in the Arkansas and Texas cases.

3        2.    The Arkansas and Texas cases

4    Frenkel's Patent Troll Tracker is a popular website that provides interesting, timely and

5    important information to the patent community and others. As the name would suggest, its point

6    of view was sometimes critical of shell corporations established solely for the purpose of filing

7    patent litigation (colloquially knows as "patent trolls") and thus, a counterpoint to Harris's

8    website and Niro's written articles which generally extolled their virtue. A posting on October

9    18, 2007 of the Patent Troll Tracker has resulted in defamation litigation in separate federal

10   courts in Arkansas (Texarkana) and Texas (Tyler) brought by two attorneys (not Niro or his firm).

11   The following Deposition Topics from the subpoena might have relevance to the

12   Texas/Arkansas Suit but would seem to have nothing to do with the claims and defenses of the

13   Chicago case:

14   5. Factual bases for Patent Troll Tracker blog articles identified in Exhibits A to C.

15   6. Investigative materials, sources for, and procedure for Patent Troll Tracker blog articles

16   identified in Exhibits A to C.

17   7. All Patent Troll Tracker blog entries concerning Scott Harris, Raymond P. Niro,

18   NSHN, James B. Parker, Courtney Sherrer, or the relevant lawsuit.

19   8. The origin and history of the Patent Troll Tracker blog.

20   9. The decisions on subjects, including but not limited to Scott Harris, Raymond P. Niro,

21   NSHN, James B. Parker, Courtney Sherrer, addressed in the Patent Troll Tracker blog.[6]

22   Using the subpoena power of the court to divulge information for an unrelated case is, of

23   course, improper. *See U.S. v. Santiago-Lugo*, 904 F. Supp. 43, 47-48 (D.P.R. 1995) (holding that

24   the use of civil subpoenas to discover evidence for an unrelated case was an improper "fishing

25

26   [6] Frenkel's motion and his objections to the subpoena duces tecum indicate he has no
     responsive documents related to Scott Harris, Raymond P. Niro, NSHN, James B. Parker, or
27   Courtney Sherrer but that these topics raise important free speech and press concerns, which
     Cisco shares. Cisco thus joins in those portions of Frenkel's motion and objections but will not
28   repeat the arguments here except by reference.

1    expedition" and an abuse of the subpoena power).

2        D.    The Subpoena is Broader than the Discovery Allowed in the Chicago Case.

3        Harris and ICR filed a Motion to Proceed with discovery in the Chicago case, which was

4    granted.  The Motion to Proceed, however, was sought on "a number of topics, including at least:

5        (1) Fish's knowledge and authorization of Mr. Harris's investorship

6        activities; (2) Fish's communications with third parties about Mr. Harris;

7        (3) Fish's investigation of Mr. Harris; (4) Fish's knowledge and treatment

8        of so-called 'side businesses' of its attorneys; and (5) Fish's purported

9        damages, including purported requests for indemnification."

10   Motion to Proceed at 1.

11       The subpoena relates only tangentially, if at all, to these topics.[7]

12       The Patent Troll Tracker is mentioned in paragraph 4 (p. 2) of the Motion to Proceed but

13   only to suggest that delay in discovery "is creating prejudice to Mr. Harris' counsel."  It is also

14   mentioned in paragraph 5 (p. 3) because it is claimed, "discovery will reveal the close connection

15   between Frenkel and Fish."  Even if true (which it is not) it is not clear how that advances the

16   Chicago litigation for any of the parties.  (Relevant excerpts of the Motion to Proceed are attached

17   as Exhibit C-4 to Babcock's Declaration).  Babcock Decl. ¶ 6.

18   **IV.    CONCLUSION**

19       The subpoena calls for information of no relevance to the Chicago case as more fully

20   explained in the Memorandum of Points and Authorities above.  As explained, the subpoena calls

21   for privileged information and the motion to quash should be granted or, in the alternative, the

22   motion for protective order should be granted.

23

24

25

26

27       [7] The Court's minute order also indicates that the discovery may be premature due to the
contemplated joinder of additional parties.  Cisco objects to having its employee deposed before

28   all parties are joined.

1    Dated: April 7, 2008

MORGAN, LEWIS & BOCKIUS LLP

2

3    By

Howard Holderness

4

5    Attorneys for Movant
CISCO SYSTEMS, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11.    CISCO SYSTEMS, INC.'S NOTICE OF MOTION; MOTION TO QUASH
SUBPOENA SERVED ON RICHARD FRENKEL; MOTION FOR
PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND
AUTHORITIES

1
2      Dated: April 4, 2008                    JACKSON WALKER L.L.P.
3
                                               By _Charles L. Babcock_____
4                                                 Charles L. Babcock
5                                              Attorneys for Movant
                                               CISCO SYSTEMS, INC.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF CALIFORNIA

3   ILLINOIS COMPUTER RESEARCH, LLC,          Miscellaneous Action No.
        Plaintiff and Counterclaim Defendant,

4

5           vs.                               **ORDER GRANTING CISCO
                                              SYSTEMS, INC.'S MOTION TO
6   FISH & RICHARDSON P.C.,                   QUASH**
        Defendant, Counterclaimant and Third

7       Party Plaintiff,

8           vs.

9   SCOTT C. HARRIS,
        Third-Party Defendant and
        Counterclaimant
10

11          vs.

12  FISH & RICHARDSON P.C.,
        Defendant, Counterclaimant, Third
        Party Plaintiff and Counterclaim
13      Defendant

14          Came on to be considered Cisco Systems, Inc.'s Motion to Quash

15  Subpoena.  After having reviewed the Motion to Quash Subpoena and response thereto,

16  the Court issues the following order:

17          IT IS HEREBY ORDERED that the Motion to Quash Subpoena is GRANTED in

18  all respects such that Richard Frenkel need not appear or produce records pursuant to

19  Illinois Computer Research, LLC and Scott C. Harris' subpoena duces tecum delivered

20  March 29, 2008.

21

22          Dated: _____

23                                           _____

24                                           UNITED STATES JUDGE

25

26  5073207v.1 132824/00001

27

28

                                             ORDER GRANTING MOTION TO QUASH
                            1.

1   HOWARD HOLDERNESS, State Bar No. 237923
MORGAN, LEWIS & BOCKIUS LLP
2   1 Market Street, Spear Tower, 25th Floor
San Francisco, CA 94105
3   Tel: 415.442.1000
Fax: 415.442.1001

4

5   CHARLES L. BABCOCK, IV, TX Bar No. 01479500
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
6   Houston, Texas 77010
**(Application for Pro Hac Vice Admission Pending.)**
7   (713) 752-4200 (Telephone)
(713) 752-4221 (Facsimile)

8

Attorneys for Movant
9   CISCO SYSTEMS, INC.

10              UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  ILLINOIS COMPUTER RESEARCH, LLC, | Miscellaneous Action No. |
| 14 | |
| 15      Plaintiff and Counterclaim Defendant, | |
| 16          vs. | **PROOF OF SERVICE** |
| 17  FISH & RICHARDSON P.C., | |
| 18      Defendant, Counterclaimant and Third Party Plaintiff, | |
| 19          vs. | |
| 20 | |
| 21  SCOTT C. HARRIS, | |
| 22      Third Party Defendant and Counterclaimant, | |
| 23          vs. | |
| 24  FISH & RICHARDSON P.C.,, | |
| 25      Defendant, Counterclaimant, Third Party Plaintiff and Counterclaim Defendant. | |
| 26 | |

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

1

## CERTIFICATE OF SERVICE

2

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is One Market St., Spear Tower, San Francisco, CA 94105.

3

4

On April 7, 2008 I served on the interested parties in said action the within document(s) as indicated on the attached service list:

5

6

CISCO SYSTEM, INC.'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA SERVED ON RICHARD FRENKEL; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

7

8

RICHARD FRENKEL'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

9

10

DECLARATION OF WILLIAM FRIEDMAN IN SUPPORT OF CISCO SYSTEM, INC.'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA SERVED ON RICHARD FRENKEL; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

11

12

DECLARATION OF GEORGE L. MCWILLIAMS IN SUPPORT OF RICHARD FRENKEL'S AND CISCO SYSTEM, INC.'S MOTIONS TO QUASH SUBPOENA AND MOTIONS FOR PROTECTIVE ORDER

13

14

DECLARATION OF CHARLES L. BABCOCK, IV, IN SUPPORT OF CISCO SYSTEM, INC.'S MOTIONS TO QUASH SUBPOENA SERVED ON RICHARD FRENKEL AND MOTION FOR PROTECTIVE ORDER

15

16

DECLARATION OF RICHARD FRENKEL IN SUPPORT OF RICHARD FRENKEL'S AND CISCO SYSTEMS, INC.'S MOTIONS TO QUASH SUBPOENA AND MOTIONS FOR PROTECTIVE ORDER

17

18

ORDER GRANTING FRENKEL'S MOTION TO QUASH

19

ORDER GRANTING CISCO SYSTEMS, INC.'S MOTION TO QUASH

20

APPLICATION FOR ADMISSION OF GEORGE L. MCWILLIAMS *PRO HAC VICE*

21

APPLICATION FOR ADMISSION OF CHARLES L. BABCOCK, IV *PRO HAC VICE*

22

[PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF GEORGE L. MCWILLIAMS *PRO HAC VICE*

23

24

[PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF GEORGE L. MCWILLIAMS *PRO HAC VICE*

25

26

X    (Via Overnight Delivery – Federal Express) by placing the document(s) listed bove in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for overnight delivery

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

☐  by causing the documents to be delivered by electronic mail addressed as set forth below.

☐  by causing the documents to be delivered by hand to the offices of the interested parties.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.  Signed this 7th day of April, 2008, in San Francisco, California.

*Catherine Greenblatt*

Catherine Greenblatt

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

1

## SERVICE LIST

2

3

4

5

6

7

8

Raymond P. Niro
Paul K. Vickrey
Richard B. Megley, Jr.
Karen L. Blouin
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, IL 60602
(312_ 236-0733
(312) 236-3137 - Facsimile

**Attorneys for Plaintiff, ILLINOIS COMPUTER RESEARCH, LLC and SCOTT C. HARRIS, Third Party Defendant**

9

10

11

12

13

14

David J. Bradford
Terrence J. Truax
Eric A. Sacks
Daniel J. Weiss
Jenner & Block, LLP
330 North Wabash Avenue
Chicago, IL 60611
(312) 222-9350
(312) 527-0484 – Facsimile

**Attorneys for FISH & RICHARDSON, P.C., Defendant**

15

16

Charles L. Babcock, IV
Jackson Walker
1401 McKinney, Suite 1900
Houston, Texas 77010

**Attorneys for Movant CISCO SYSTEMS, INC.**

17

18

19

George L. McWilliams
Law Offices of George L. McWilliams, P.C.
406 Walnut, P.O. Box 58
Texarkana, ARK-TX 75504-0058

**Attorneys for Movant RICHARD FRENKEL**

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Miscellaneous Action No. _____
PROOF OF SERVICE
1-SF/7688094.1

EXHIBIT B-9

Westlaw.

--- F.Supp.2d ----                                                                                              Page 1
--- F.Supp.2d ----, 2007 WL 1994171 (N.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2007 WL 1994171)**

**H**Nidec Corp. v. Victor Co. of Japan
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
NIDEC CORPORATION, Plaintiff,
v.
VICTOR COMPANY OF JAPAN, et al.,
Defendants.
**No. C-05-0686 SBA (EMC).**
**Docket Nos. 672, 677, 681, 693.**

July 5, 2007.

Michael John Lyons, David C. Bohrer, Lorraine M.
Casto, Morgan Lewis & Bockius, LLP, Palo Alto,
CA, Franklin Brockway Gowdy, Thomas D. Kohler,
Morgan Lewis & Bockius, LLP, San Francisco, CA,
for Plaintiff.
Bobbie J. Wilson, Jennifer Deliz Rhodes, Martin R.
Glick, Howard Rice Nemerovski Canady Falk &
Rabkin, Anthony Francis Lo Cicero, Simon J.
Frankel, Covington & Burling, LLP, San Francisco,
CA, Charles R. Macedo, David A. Boag, Howard
Wizenfeld, Marion P. Metelski, Matthew A. Fox,
Morton Amster, Norajean McCaffrey, Amster,
Rothstein & Ebenstein, LLP, New York, NY, for
Defendants.

**AMENDED ORDER GRANTING NONPARTY
TEXAS PACIFIC GROUP, INC.'S MOTION TO
QUASH; AND GRANTING DEFENDANTS'
MOTION TO QUASH**

EDWARD M. CHEN, United States Magistrate
Judge.
**\*1** In connection with the above-referenced case,
Plaintiff Nidec Corporation served, on May 2, 2007,
a subpoena on a nonparty by the name of Texas
Pacific Group, Inc. ("TPGI"). Currently pending
before the Court are TPGI's motion to quash the
subpoena, *see*Docket No. 677, and Defendants'
motion to quash the subpoena. *See*Docket Nos. 672,
693.TPGI has also filed a motion to change time,
which is now moot. *See*Docket No. 681.

Having reviewed the parties and TPGI's briefs and
accompanying submissions, and having considered

the oral argument of counsel, the Court hereby
**GRANTS** both motions to quash.

**I. *FACTUAL & PROCEDURAL BACKGROUND***

Nidec has filed suit against Defendants, asserting
infringement of four patents related to spindle motor
technology. Defendants in turn have filed a
counterclaim for patent infringement. In or about the
spring of 2007, JVC's largest shareholder, Matsushita
Corporation, solicited bids from third parties to
purchase Matsushita's shares (which constituted a
majority interest in JVC). Nidec believed one of the
third-party bidders to be TPGI, and subsequently
served a subpoena on TPGI in May 2, 2007. *See*
Young Decl. ¶ 3 & Ex. A (subpoena).

In response, both TPGI and Defendants moved to
quash the subpoena that was served. According to
TPGI, the subpoena should be quashed because TPGI
is not the proper third party to be served-*i.e.,* the
third-party bidder for the majority interest in JVC
was a Texas Pacific Group ("TPG") fund which is an
entirely different legal entity from TPGI. Defendants
contend that the subpoena should be quashed because
it is untimely and, moreover, seeks production of
privileged documents.

**II. *DISCUSSION***

Defendants contend, as a preliminary matter, that the
subpoena should be quashed because it is untimely:
fact discovery closed on January 10, 2007, but Nidec
did not serve the subpoena until almost four months
later. Nidec, in turn, argues that the subpoena is not
untimely because it is related to the issue of
willfulness, and willfulness discovery did not close
until May 31, 2007, *i.e.,* several weeks after the
subpoena was served.

The Court finds that the subpoena was not targeted to
willfulness discovery. The documents subpoenaed
were very broad in scope, and can only be fairly
characterized as general fact discovery. That being
said, Nidec has demonstrated that it was not possible
to serve the subpoena prior to the fact discovery cut-
off because only recently did a TPG fund bid to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                   Page 2
--- F.Supp.2d ----, 2007 WL 1994171 (N.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2007 WL 1994171)**

purchase a majority interest in JVC. The proper question therefore is whether there is good cause to permit this belated discovery on a nonparty.

In determining whether the subpoena should be enforced, the Court is guided by not only <u>Federal Rule of Civil Procedure 45(c)(3)(A) (iv)</u> which protects subpoenaed parties from "undue burden" but also Rule 26, which provides, *inter alia,* that a court may limit discovery if "the discovery sought ... is obtainable from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit."<u>Fed.R.Civ.P. 26(b)(2)(C)</u>. Here, the vast majority of the discovery sought from TPGI is discovery obtainable from a source more direct, convenient, and less burdensome-namely, from Defendants. Notably, at the hearing on the motions to quash, counsel for Nidec represented that the discovery at issue consisted of, in essence, documents provided by Defendants to third parties-potential bidders for the shares of JVC stock-regarding Defendants' assessment about the patents at issue and the instant litigation. There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.

**\*2** Nidec points out that there is at least one document that Defendants do not have in their possession, custody, or control-*i .e.,* notes that a JVC fund attorney made during a meeting with a JVC representative (Tetsuro Fuse). But this document is likely to be of marginal value. It is unlikely that Mr. Fuse would have conveyed information substantially different from that conveyed in the documents provided to the TPG fund attorney. The burden on the third party (whether the proper third party is TPGI or another TPG entity) outweighs the likely benefit of the subpoena at least in the absence of a convincing showing that the subpoena is likely to yield unique and material evidence from the third party. Accordingly, the Court grants both TPGI and Defendants' motions to quash the subpoena .<sup>FN1</sup>

However, the Court does not bar Nidec from pursuing discovery specifically targeted to the issue of willfulness *from Defendants,* that is, so long as Nidec is seeking to enforce discovery that was timely served or can demonstrate good cause for seeking the discovery past the applicable cutoff date. Nidec and Defendants should immediately meet and confer to

determine what discovery should be provided by Defendants.

To assist the parties in their meet and confer, the Court provides the following guidance on the issue of the application of privileges to documents provided to potential bidders. Under the attorney-client privilege, it is a general rule that attorney-client communications made "in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality ." 1 Paul R. Rice, Attorney-Client Privilege in the United States § 4:35, at 195 (1999 ed.). Similarly, as discussed below, the work-product privilege may be waived by disclosure to third parties which results in disclosure to an adversary party.

However, there is an exception to the waiver rule. Participants in a joint or common defense or individuals with a community of interests

may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.

*Id.* at 192.The joint defense and common interest doctrines are not privileges in and of themselves. Rather, they constitute exceptions to the rule on waiver where communications are disclosed to third parties. *See* <u>United States v. Bergonzi,</u> 216 F.R.D. 487, 495-96 (N.D.Cal.2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege")."The common interest privilege ... applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived."<u>Id. at 495</u>.Of course, since it is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance.

**\*3** "The common interest doctrine has its origins in situations where one attorney acts for two clients."Edna Selan Epstein, Attorney-Client Privilege & Work-Product Doctrine 196 (4th

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 1994171 (N.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2007 WL 1994171)**

ed.2001). It has been applied beyond the joint client context to the joint defense context-for instance, when the defendants are co-defendants in the same action or are defendants in separate actions sued by the same plaintiff. *See B.E. Meyers & Co., Inc. v. United States,* 41 Fed. Cl. 729, 733 (1998)."The theory of this joint defense/community of interest rule is that when an attorney agrees to serve his client's codefendant for a limited purpose, he becomes that codefendant['s] attorney for that purpose." Rice, Attorney-Client Privilege in the United States § 4:35, at 195. In order for the joint defense theory to apply, there need not be actual litigation. *See Union Carbide v. Dow Chemical,* 619 F.Supp. 1036, 1047 (D.Del.1985) (noting that the common interest privilege may also apply where the parties are likely to be involved in "anticipated joint litigation"). Moreover, the joint defense theory can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications."Rice, Attorney-Client Privilege in the United States § 4:35, at 199-201; *see also In re Regents of the Univ. of California,* 101 F.3d 1386, 1390 (Fed.Cir.1996) (noting that the common interest privilege may apply to a patent holder and its licensee)."The protection of the privilege under the community of interest rationale, however, is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests joint forces for the purpose of obtaining more effective legal assistance."Rice, Attorney-Client Privilege in the United States § 4:36, at 216. As noted below, however, that legal assistance must pertain to the matter in which the parties have a joint legal interest, and the communication must be designed to further that specific legal interest.

In the motion at bar, Defendants assert that communications between JVC and potential bidders are protected by the common interest privilege and cannot be disclosed. Defendants contend, for instance, that the litigation abstract originally prepared prior to the litigation by JVC counsel for JVC management, and hence protected by both attorney-client and work product privileges, remains protected even though it was shared with potential bidders for JVC shares. In support of this argument, Defendants rely on *Hewlett-Packard v. Bausch & Lomb, Inc.,* 115 F.R.D. 308 (N.D.Cal.1987), in which Judge Brazil of this district held that the defendant and a prospective buyer of one of the defendant's

divisions had sufficiently overlapping legal interests that justified the defendant's sharing of a patent opinion letter with the prospective buyer.

The Court does not find Defendants' argument persuasive. First, though Judge Brazil's opinion in *Hewlett-Packard* is thoughtful, well reasoned, and has been adopted by other courts, *see, e.g., Britesmile, Inc. v. Discus Dental, Inc.,* C 02-3220 JSW (JL), 2004 U.S. Dist. LEXIS 20023, at *9 (N.D.Cal. Aug. 10, 2004); *Rayman v. American Charter Federal Savings & Loan Ass'n.,* 148 F.R.D. 647, 654-55 (D.Neb.1993), a number of courts have disagreed with its approach to the extent it suggests that the common interest privilege extends generally to disclosures made in connection with the prospective purchase of a business. *See, e.g., Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 349 (N.D.Ohio 1999) (concluding that defendant "sought commercial gain, not legal advantage, through disclosure of its lawyer's advice to [third parties]"); *Bank Brussels Lambert v. Credit Lyonnais,* 160 F.R.D. 437, 447 (S.D.N.Y.1995) (stating that "the common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation"); *Oak Industries v. Zenith Industries,* No. 86 C 4302, 1988 U.S. Dist. LEXIS 7985, at * 12 (N.D.Ill. July 27, 1988) ("declin [ing] to expand the coverage of the attorney-client privilege to information which a party freely shares with other business persons").*See also SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 512-13 (D.Conn.1976) (noting that third party's interest "does not appear to be that of a potential co-defendant in a possible antitrust action"; instead, "it was negotiating the price for relinquishing voting and managerial control [in the joint venture with defendant] to [defendant]," an issue on which the third party and defendant were not commonly interested but rather "adverse, negotiating at arm's length a business transaction between themselves").

**\*4** Properly read, *Hewlett-Packard* did not take issue with the basic requirement of the common interest exception that the parties must have "a common legal, as opposed to commercial, interest."*Bank Brussels Lambert,* 160 F.R.D. at 447. *Hewlett-Packard* did not hold there was a common legal interest between defendant and the third party merely because the third party was a prospective purchaser of one of defendant's divisions. Rather, the court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

found there was a common legal interest because of anticipated joint litigation. The court concluded that given the impending acquisition, it was "quite likely" that both parties would be sued by the plaintiff and that the defendant would defend the marketing of the product in the years preceding the sale to the third party while the third party would defend the same product for the years following the sale. *See Hewlett-Packard,* 115 F.R.D. at 310. In the instant case, there appears little to indicate that Defendants and the TPG fund might ever engage in joint litigation. The TPG fund was simply considering buying a majority share of JVC. It will not likely become a joint defendant with JVC.

Moreover, as noted above, even if there were a common legal interest, the common interest exception requires that the communication at issue be "designed to further *that* [legal] effort." *Bergonzi,* 216 F.R.D. at 495 (emphasis added). In context of the instant case, the disclosures which concern the instant litigation, to be protected, must be made in the course of "formulating a *common legal strategy," Libbey Glass, Inc.,* 197 F.R.D. at 348, or otherwise furthering the parties' joint interest in this litigation. *See also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d 120, 126 (3d Cir.1986) (stating that joint defense privilege requires that "the statements were designed to further the [joint defense] effort"); *Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.,* 212 F.R.D. 567, 572 (E.D.Cal.2002) (noting that "doctrine only protects communication when they are part of an ongoing and joint effort to set up a common defense strategy"); *accord United States ex rel., Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D.Cal.1996). While the JVC litigation abstract might have been helpful to facilitate the potential commercial transaction, it did not further a common legal strategy in connection with the instant litigation. It was not, for instance, a communication coordinating the defense in this case. Rather, Defendants provided the litigation abstract in order to facilitate the TPG fund's and other potential bidders' commercial decision whether to buy the majority share in JVC. Thus, it was designed to further not a joint defense in this litigation, but to further a commercial transaction in which the parties, if anything, have opposing interests. The litigation abstract thus would not qualify for the common interest exception.

To the extent *Hewlett-Packard* implies that policy consideration such as removing barriers to business deals expands to common interest doctrine and obviates the requirement that the protected communication must be intended to further the specific legal effort in which they hold a joint interest, the Court disagrees. Such an exception would remove the common interest doctrine far from its historical antecedent, the joint defense doctrine.

**\*5** Finally, the Court notes that, although the common interest exception to waiver requires that a disclosure be made in furtherance of a common legal interest in order to preserve the attorney-client privilege, the disclosure to a third party does not necessarily constitute a waiver of the work product privilege. For work product, "protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *Bergonzi,* 216 F.R.D. at 497. The work product privilege provides protection against adversaries and is not as easily waived as the attorney-client privilege. *See In re Syncor ERISA Litigation,* 229 F.R.D. 636, 645 (C.D.Cal.2005). Of course, this more restrictive rule on waiver applies only to communications which constitute attorney work product in the first instance.

## II. *CONCLUSION*

For the foregoing reasons, both TPGI and Defendants' motions to quash are granted. The parties are ordered to meet and confer as to discovery from JVC in light of the guidance provided herein.

This order disposes of Docket Nos. 672, 677, and 681.

IT IS SO ORDERED.

> FN1. As to TPGI's motion to quash on the ground that it is only a shell corporation and had no control over the TPG fund(s) actually involved in the JVC transaction and thus no custody, control or possession over the subpoenaed documents, the Court finds Nidec has failed to establish a *prima facie* case that TPGI was a properly named party in the subpoena. While the Court does not condone the "hide the ball" tactics of TPGI

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 1994171 (N.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2007 WL 1994171)**

Page 5

in refusing to identify the properly named TPG fund, the lack of a *prima facie* showing compels the Court to quash the subpoena issued to TPGI.

N.D.Cal.,2007.

Nidec Corp. v. Victor Co. of Japan

--- F.Supp.2d ----, 2007 WL 1994171 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B-10

*Westlaw.*

Not Reported in F.Supp.2d                                                                                                         Page 1
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 128010)**

**C**In re Coan
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
In re Dorothy COAN Subpoena Enforcement Matter.
Union Bank of California 401(K) Plan, Interpleader
Plaintiff,
v.
Shelby Hansen and Dorothy Coan, Interpleader
Defendants.
**No. C 06-80350 MISC SI.**

Jan. 12, 2007.

Union Bank of California 401(K) Plan, pro se.
Michael N. Westheimer, Sedgwick, Detert, Moran &
Arnold LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING MOTION TO COMPEL**

SUSAN ILLSTON, United States District Judge.
*1 On January 12, 2007, the Court heard argument on
interpleader defendant Dorothy Coan's motion to
compel compliance with five subpoenas and one
subpoena duces tecum. Having considered the
arguments of the parties and the papers submitted,
and for good cause shown, the Court hereby
GRANTS Coan's motion to compel.

**BACKGROUND**

Decedent Frank Coan, the son of interpleader
defendant and movant Dorothy Coan ("Coan"), was a
participant in the Union Bank of California 401(k)
Plan ("Plan"). The value of Frank Coan's Plan
account (the "Fund") is currently $623,813.96, and is
to be distributed to his beneficiary. Upon his death,
the Plan's administrative committee determined that
the Fund should be paid to interpleader defendant
Shelby Hansen, Frank Coan's ex-wife, based on a
beneficiary designation that Frank Coan allegedly
made in 1968. After the Plan's determination, Coan
made a claim to the Plan for the Fund, asserting that
she was the proper beneficiary. The Plan denied
Coan's claim and her appeal. The Plan then initiated
an interpleader action in the U.S. District Court for
the Western District of Missouri, naming Coan and

Hansen as interpleader defendants.

Subsequently, the Plan filed a motion with Judge
Gary Fenner, the district judge presiding over the
Missouri action, seeking to be discharged from the
action. In May, 2006, Judge Fenner granted the
motion, holding that "[b]ecause the Plan is a neutral
stakeholder asserting no claim to the disputed funds,
it is entitled to be discharged from this action."Smith
Decl., Ex. C at 4. In opposing the Plan's motion,
Coan argued "that the Plan is not entitled to a full
discharge because it has discoverable information
needed by Coan to properly litigate her claims."Id. at
3. The court rejected her argument, holding that
"Fed.R.Civ.P. 45 provides a comprehensive process
for obtaining discovery from third parties to a
lawsuit. To the extent that further discovery is
available to Coan, it would be available whether or
not the Plan is discharged from the instant suit."Id. at
3-4.The court also stated in a footnote: "The Plan
argues that, under the Employee Retirement Income
Security Act of 1974 ('ERISA'), Coan is not entitled
to further discovery. [ ] However, the Court need not
resolve this issue in the instant Motion."Id. at n. 2.FN1

> FN1. Since that May ruling, no party to date
> has sought a ruling from Judge Fenner on
> the standard of review to be applied or on
> the admissibility of evidence outside the
> administrative record.

On October 24, 2006, Coan served six notices for
deposition, on the Plan and five of its employees
(collectively, the "Subpoenaed Third Parties"). On
October 25, 2006, Coan served subpoenas on each of
the six at their place of business in San Francisco.
The subpoena served on the Plan commanded both
appearance at a deposition and production of
documents, *see* Smith Decl., Ex. E; the other five
subpoenas only commanded appearance at
depositions, *see id.,* Exs. F-J. The subpoenas were
issued from this Court, and the depositions were
scheduled for November 6 and 7, 2006.

On October 31, 2006, the Subpoenaed Third Parties
served a written objection to all six of the subpoenas,
Smith Decl., Ex. K, and subsequently refused to
comply with the subpoenas. The Subpoenaed Third

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 128010)

Page 2

Parties objected to the subpoenas primarily on the ground that such discovery was not permissible under ERISA, which they argue governs the underlying dispute. *See id.*

**\*2** The parties subsequently met and conferred, and on December 7, 2006, Coan filed the instant motion seeking to compel compliance with the subpoenas, and for sanctions.[FN2]

> FN2. The Court GRANTS the Third Parties' motion for administrative relief seeking leave to file surreply papers. (Docket No. 13) The Court also GRANTS Coan's request to take judicial notice of the documents filed in, and issued by, the Missouri district court in the underlying case. Smith Decl., Exs A-J.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(a)(1)(c), any party may serve a subpoena commanding a nonparty "to attend and give testimony or to produce and permit inspection and copying of" documents. The subpoena is subject to the relevance requirements set forth in Fed.R.Civ.P. 26(b).*See* The Rutter Group, Federal Civil Procedure Before Trial 11-831 (1996). Thus, the subpoena may command the production of documents which are "not privileged" and are "relevant to the subject matter" or "reasonably calculated to lead to the discovery of admissible evidence."*See*Fed.R.Civ.P. 26(b)(1).

Under Rule 45, a person commanded to produce documents may serve a written objection to the subpoena. *See*Fed.R.Civ.P. 45(c) (2)(B). After a written objection has been made, the party serving the subpoena may not have access to the requested documents absent a court order, but may at any time move for an order to compel document production. *Id.; see also*Fed.R.Civ.P. 37(a) (any party may upon "reasonable notice" request an order compelling discovery or disclosure).

While a nonparty may challenge a subpoena *duces tecum* via written objection, a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c).*See* 9-45

Moore's Federal Practice-Civil § 45.30 (2006) ("The written objection procedure is available only for a subpoena commanding production or inspection...."). A motion to quash or modify "must be made promptly," allowing it to "be heard *and granted before* the scheduled deposition."*See* The Rutter Group, Federal Civil Procedure Before Trial 11:2288 (2006) (emphasis in original). Under Northern District Local Rule 37-2, a party moving to compel discovery must "detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed.R.Civ.P. 26(b)(2) are satisfied."*See also*Fed.R.Civ.P. 26(b)(2) (requiring that when determining the appropriateness of discovery requests courts should consider whether the discovery is duplicative or overly burdensome and whether the burden and expense of discovery outweighs the benefit). The court has discretion to determine whether to grant a motion to compel. *See Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 (9th Cir.1987).*

### DISCUSSION

The Subpoenaed Third Parties argue that the information sought is, as a matter of law, irrelevant to the proceedings in the Missouri district court, and therefore is not discoverable under Federal Rule of Civil Procedure 26(b)(1). The Court cannot agree.[FN3]

> FN3. As a preliminary matter, the Subpoenaed Third Parties' failure to appear for the noticed depositions is not excused merely by having served a written objection to the subpoenas. As discussed above, according to the Federal Rules of Civil Procedure, a written objection may excuse compliance with a subpoena *duces tecum;* it does not, however, excuse compliance with a deposition subpoena. *See*Fed.R.Civ.P. 45(c)(2)(B). Objections to a deposition subpoena must be voiced either by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c).
>
> Here, the Subpoenaed Third Parties did not move to quash or modify the subpoenas, nor did they move for a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 128010)

Page 3

protective order. They merely issued a written objection to the subpoenas, then refused to show up for the depositions. Their actions thus violated the Federal Rules. The only sanctions available for such a failure to comply with a subpoena are a contempt order, or attorneys' fees and costs associated with bringing a motion to compel compliance. *See* The Rutter Group 11:2460. Coan does not seek a contempt order; attorneys' fees are discussed below.

The Subpoenaed Third Parties argue that the Plan at issue here is governed by ERISA, and that under ERISA, the Missouri court will review the Plan's determination only for abuse of discretion. "When [an ERISA] plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, that determination is reviewed for abuse of discretion." *Gatti v. Reliance Standard Life Ins. Co.,* 415 F.3d 978, 981 (9th Cir.2005). Where the court determines "that the Administrative Committee did not have such discretion under [an ERISA plan]," the court "determine[s], de novo, the proper beneficiary." *Bankamerica Pension Plan v. McMath,* 206 F.3d 821, 827 (9th Cir.2000). This standard of review holds true in interpleader actions, where the plan is no longer a party. *See, e.g., id.* According to the Subpoenaed Third Parties, the Plan at issue here gave the administrative committee complete discretion to determine the beneficiaries of the Fund, and the Missouri district court is therefore tasked with reviewing the Plan's decision to award the Fund to Hansen only for abuse of discretion.

**\*3** The Third Parties argue that, consequently, the Missouri court will only review the administrative record. In both the Eighth and Ninth Circuits, "[w]hen reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life and Accident Ins. Co.,* 414 F.3d 994, 998-99 (8th Cir.2004) (quoting case); *see McKenzie v. Gen. Tel. Co. of Cal.,* 41 F.3d 1310, 1316 (9th Cir.1994) (a district court conducting a review of an ERISA plan's findings for abuse of discretion, "may review only evidence which was presented to the

plan trustees or administrator."). According to the Subpoenaed Third Parties, the Missouri district court is thus limited to reviewing the administrative record. Coan, according to the Subpoenaed Third Parties, has already been provided with the complete administrative record; any additional discovery is therefore unnecessary and would only produce evidence irrelevant to the Missouri district court's limited inquiry.

However, the Subpoenaed Third Parties' argument assumes determinations of fact and law which have not been made, and which this Court cannot make. First, the Subpoenaed Third Parties assume that the Missouri district court will apply ERISA law in analyzing this dispute. As far as this Court can determine, the Missouri district court has as yet reached no such conclusion. Coan contends here that ERISA may not apply, as many of the documents and events at issue in the underlying dispute arose prior to the inception of ERISA. According to Coan, pre-ERISA California law and federal common law may therefore apply to some aspects of the dispute. In the interest of judicial economy and consistency, it would be inappropriate for this Court to determine whether ERISA governs the dispute pending in Missouri.

Second, even if ERISA applies, the Subpoenaed Third Parties presume that the Missouri district court will find that the Plan at issue here gave the administrative committee complete discretion to determine the beneficiaries of the Fund, and that the Missouri district court is therefore tasked with reviewing the Plan's decision only for abuse of discretion. Again, the Missouri district court has yet to make any such determination, and it would be inappropriate for this Court to do so. Determination of the level of discretion a plan gives an administrative committee requires a fairly comprehensive review of the plan documents, and is often subject to dispute. In *Bankamerica Pension Plan v. McMath,* 206 F.3d 821, 827-28 (9th Cir.2000), for example, the Ninth Circuit overturned the district court's determination that the plan at issue there gave discretion to the administrative committee. Furthermore, even if a plan at issue gives complete discretion to the administrative committee, if the administrative committee "utterly fails to follow applicable procedures," or has a demonstrated conflict of interest, then de novo review will apply.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 128010)

*Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 959 (9th Cir.2006). Coan argues that the *Abatie* rule would apply in this case. Only the Missouri district court can resolve this issue and determine the standard of review it will apply to the underlying dispute over the Fund; it would be inappropriate for this Court to make this very important determination or speculate as to the Missouri court's ultimate holding.

**\*4** Finally, even if the Missouri district court were to determine that it should only review the Plan's decision for abuse of discretion, there remains a dispute over whether the discovery at issue here might lead to evidence which the Missouri court would consider relevant. As discussed, in such a situation, the "reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales."*King,* 414 F.3d at 998-99 (quoting case); *see also McKenzie,* 41 F.3d at 1316 (a district court conducting a review of an ERISA plan's findings for abuse of discretion, "may review only evidence which was presented to the plan trustees or administrator."). The Subpoenaed Third Parties contend that they have "disclosed and delivered to both interpleader defendants the entire Administrative Record reviewed by the Plan in making its beneficiary determination."Opp. at 9:13-15 (citing Sheppard Decl. ¶ 7). The Missouri court, they argue, will be limited to reviewing the same "Administrative Record," and therefore no additional discovery is necessary.

There is a dispute, however, over whether the "Administrative Record" produced in fact contains all of the "evidence available to the plan." Coan points out, for example, that the Plan's denial of Coan's appeal relied in part on the fact that "the beneficiary designation Mr. Coan completed and submitted was properly distributed *pursuant to the terms of a predecessor to the Plan ...."* Macey Decl., Ex. 6 at 6 (emphasis added). According to Coan, however, the "Administrative Record" does not contain any of the Plan predecessor documents. If such documents were in fact considered by the Plan in making its determination, such documents would be considered by the Missouri district court, even if it should only conduct a limited, abuse of discretion review. *See King,* 414 F.3d at 998-99;*McKenzie,* 41 F.3d at 1316. The subpoena *duces tecum* at issue here

seeks, among other documents, those predecessor documents. Thus, even if the Missouri court conducts only a limited review under ERISA, the discovery sought here may lead to relevant evidence that has not already been produced.

In sum, production of the "Administrative Record" does not necessarily obviate the need for additional discovery. The Missouri district court may ultimately conduct a de novo review of the Plan's beneficiary determination, in which case the court would not be limited to evidence already produced. Furthermore, even if the Missouri court reviews the Plan's decision only for abuse of discretion, the subpoenas at issue may lead to discovery of relevant evidence that was not produced with the "Administrative Record."

In order to avoid the need for the parties to return to this distant location again at a later date, this Court will assume, only for purposes of the instant dispute, that the Missouri court will conduct a de novo review of the Plan's determination such that discovery beyond the administrative record would be appropriate, and on that basis will order that the discovery sought go forward. The Court will, however, STAY this order until January 26, 2007, to allow the Third Parties the opportunity, should they so desire, to seek guidance from the Missouri court concerning its view of the scope of allowable discovery. (This stay is of such limited duration because of the impending February 16, 2006 discovery cutoff .) This Court will, of course, cooperate with any such guidance.

**\*5** Apart from the ERISA discovery limitation argument rejected above, the Subpoenaed Third Parties also argue that (1) the document requests in the subpoena on the Bank are overbroad and unduly burdensome; (2) the subpoenas seek information that is "potentially privileged"; and (3) that the time, date and location of the depositions were unreasonable and unduly burdensome.[FN4] With respect to their first objection, the Subpoenaed Third Parties have not made any substantive objections to specific discovery requests. A party objecting to discovery requests must state specific facts in support of the objection. *See*Fed.R.Civ.P. 34(b). The Subpoenaed Third Parties did not identify how each discovery request is overly broad, burdensome, or oppressive; they merely provided one general objection to all six subpoenas. *See* Smith Decl., Ex. K at 3 ("The

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 128010)

Page 5

Subpoenas, including the document requests contained in the subpoena to the Plan, are overly broad and unduly burdensome."). In their Opposition, the Third Parties now provide a substantive objection to one of the specific discovery requests, Document Request number 21, as an "illustration" of the problems with all of the requests.

> FN4. The Court notes that the Subpoenaed Third Parties refused to meet and confer with regard to these objections. According to their own Opposition, "counsel for the Third Parties did not think it productive at that time to discuss ways to limit the scope of Coan's discovery requests based on the additional objections because the Third Parties intended to stand on their ERISA-based objections regardless of any resolution with Coan of their other objections."Opp. at 14:8-12. The Third Parties now request the opportunity to "meet and confer further with counsel for Coan to resolve their other objections to the Subpoenas should this Court ultimately determine on this motion that additional discovery should take place ."*Id.* at 14:12-15.

> The Court will not grant such an opportunity. The Third Parties should have met and conferred with respect to *all* of their objections-not just their favored objection-when they had the chance. As the Third Parties are undoubtedly aware, this dispute has already forced the Missouri court to twice extend the discovery deadline. Allowing piecemeal resolution of this dispute will only cause further delay.

Though it need not do so, considering the Third Parties' failure to provide a specific objection in the first instance, and their failure to adequately meet and confer, the Court will consider their objection to Document Request number 21. Number 21 seeks "[e]ach document relating to the Union Bank Profit Sharing Retirement Plan."Smith Decl., Ex. E. The Third Parties argue that this request is overbroad, as it would include all documents "pertaining to every past or present beneficiary of that plan and, conceivably, its successor plans."Opp. at 14:26-28. The Court agrees. Document Request number 21

shall therefore be limited, as counsel for Coan suggested at the hearing, to those documents comprising the Union Bank Profit Sharing Retirement Plan.

With respect to the Third Parties' privilege objection, where discovery requests are objected to because they seek privileged information, the objecting party must submit, with its objections, a privilege log identifying the nature of the document, and may submit affidavits regarding the document's confidential nature. *See*Fed.R.Civ.P. 45(d)(2). The Third Parties failed to do so, and instead only stated, generally, that the subpoenas "potentially call for information protected by the attorney client privilege, the attorney work product doctrine, the trade secret privilege and/or the rights of privacy of persons or entities other than the litigants or decedent in this litigation."Smith Decl., Ex. K at 3. This general assertion of privilege is insufficient. This ruling does not, however, preclude the Third Parties from raising any privilege-related objections in the course of complying with the subpoenas, including during the depositions.

As to the Third Parties' final objection, the Court again notes that the Third Parties failed to provide meaningful objections to any specific subpoena. The Third Parties merely objected that the "times, dates and locations set for the noticed depositions and production of documents are unreasonable and unduly burdensome."*Id.* In their Opposition, the Third Parties now provide a single specific objection, claiming that the subpoena served on Paulette Leahy for a deposition in San Francisco violates the distance limitation of Rule 45(b) because she resides and works in San Diego. Again, though the Court need not do so, it will consider this specific objection. Pursuant to Rule 45(e), referencing Rule 45(c)(3)(A)(ii), adequate cause to not comply with a deposition subpoena exists where the subpoena "requires a person ... to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person ...." The Third Parties have failed to present evidence that Ms. Leahy does not "regularly transact [ ] business in person" in or near San Francisco. Unless and until the Third Parties present such evidence, via declaration or otherwise, Ms. Leahy is not excused from complying with the subpoena.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 128010)**

**\*6** Finally, both parties seek attorneys' fees and costs associated with bringing or defending this motion. Under the Federal Rules of Civil Procedure, if a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party the reasonable expenses incurred in making the motion, including reasonable attorney's fees, unless it finds the opposition was "substantially justified" or other circumstances make such award "unjust." Fed.R.Civ.P. 37(a)(4)(A). As discussed above, *see supra* note 3, the proper procedure by which the Third Parties should have challenged the subpoenas was either a motion to quash or modify pursuant to Federal Rule of Civil Procedure 45(c) (3)(A), or a motion for a protective order pursuant to Rule 26(c). Simply submitting a written objection to the subpoenas did not excuse their appearance at the noticed depositions. Consequently, Coan was forced to bring the instant motion to compel. Bringing a motion normally requires filing two sets of papers-the motion and a reply; opposing a motion normally requires filing only one set. The Court therefore GRANTS Coan's request for sanctions, in an amount roughly equivalent to the additional expense of filing two sets of papers rather than one, in this case, $3,000.00. *See* Westheimer Decl. ¶ 5; Supp. Westheimer Decl. ¶ 3; Smith Decl. ¶ 16.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS interpleader defendant Dorothy Coan's motion to compel compliance with the six subpoenas and for sanctions (with the limitation of the scope of Document Request number 21 discussed above). The Court also GRANTS Coan's request for sanctions, in the amount of $3,000.00. The Court STAYS this order for a period of two weeks, until January 26, 2007. (Docket No. 1)

**IT IS SO ORDERED.**

N.D.Cal.,2007.
In re Coan
Not Reported in F.Supp.2d, 2007 WL 128010 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.